**<u>EXHIBIT A</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

|  |  |
|---|---|
| In re:<br><br><br>THE SISTERS OF ST. ANN<br>d/b/a ANNA MARIA COLLEGE,<br><br><br>Debtor.[1] | Chapter 11<br><br>Case No. 26-40758 |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 AND 507 (I) GRANTING EMERGENCY RELIEF, (II) APPROVING POSTPETITION FINANCING, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) AUTHORIZING USE OF CASH COLLATERAL, (V) GRANTING ADEQUATE PROTECTION, (VI) MODIFYING AUTOMATIC STAY, AND (VII) GRANTING RELATED RELIEF**

THIS MATTER having come before the Court upon the motion (the "Motion") by The Sisters of Saint Ann d/b/a Anna Maria College, a Massachusetts not-for-profit corporation, as a debtor and debtor-in-possession (the "Debtor") in the above-captioned Chapter 11 case (the "Case"), pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of title 11 of the United States Code, (11 U.S.C. §§ 101, *et seq.*, as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Massachusetts (the "MLBR"), seeking entry of an interim order (this "Interim Order") and final order, *inter alia*:

(i)      authorizing, under Sections 364(c) and 364(d) of the Bankruptcy Code and Bankruptcy Rule 4001(c), the Debtor to obtain secured, superpriority post-petition loans, advances

---

[1] The last four digits of the Debtor's taxpayer identification number are 2060. The Debtor's address is 50 Sunset Lane, Paxton, MA 01612.

and other financial accommodations (the "DIP Facility") in the aggregate principal amount of $3,000,000 consisting of new-money delayed-draw term loans (the "DIP Loans) of which up to $1,000,000 of DIP Loans shall be available upon entry of this Interim Order pending entry of the Final Order (such time period, the "Interim Period"), pursuant to the terms and conditions of that certain Senior Secured Superpriority Debtor-In-Possession Financing Term Sheet attached hereto as **Exhibit B** (the "DIP Term Sheet"), by and among (a) the Debtor and (b) Citizens Bank, N.A. as Lender (the "DIP Lender");

(ii)    authorizing the Debtor to execute and deliver the DIP Term Sheet and to perform such other acts as may be necessary or desirable in connection with the DIP Term Sheet and this Interim Order;

(iii)    granting allowed superpriority administrative expense claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in the Case and any Successor Case (as defined herein) to all DIP Obligations (as defined in the DIP Term Sheet), subject to the priorities set forth herein; and

(iv)    authorizing the Debtor to use "Cash Collateral," as defined in Section 363(a) of the Bankruptcy Code (the "Cash Collateral"), that the Debtor is holding or may obtain, pursuant to Bankruptcy Code Section 361 and 363 and Bankruptcy Rules 4001(b) and 6004; and

(v)    providing adequate protection to the Prepetition Secured Creditor (as defined herein) to the extent set forth herein; and

(vi)    granting to the DIP Lender automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting Cash Collateral, which liens shall be subject to the priorities set forth herein; and

(vii)    waiving any applicable stay and provisions for immediate effectiveness of this Interim Order; and

(viii)    vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order; and

(ix)    scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion on a final basis and approving the form of notice thereof; and

(x)    granting related relief.

The Court having considered (i) the Motion and the exhibits referenced therein or attached thereto, (ii) the *Declaration of Dr. Sean J. Ryan in Support of Chapter 11 Petition and First Day Pleadings*, (iii) the evidence submitted or adduced, and (iv) the arguments of counsel made at the interim hearing held on the Motion (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014, and Local Rule 4001-2; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that, pursuant to MLBR 4001(c)(2), granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors, and is essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTOR, INCLUDING THE SUBMISSIONS OF DECLARATIONS, THE FACTS IN THE

4

MOTION AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]

A.      *Petition Date*.  On June 26, 2026, (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts (the "Court") commencing this Case.

B.      *Debtor in Possession*.  The Debtor is continuing in the management and operation of its business and its real and personal property as debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Case.

C.      *Jurisdiction and Venue*.  This Court has jurisdiction over the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for this Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      *Committee Formation*.  As of the date hereof, the United States Trustee for the District of Massachusetts (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in this Case pursuant to Section 1102 of the Bankruptcy Code (the "Committee").

E.      *Debtor's Stipulations*.  The Debtor after reasonable inquiry, and without prejudice to the rights of any Committee, and other parties in interest as set forth in paragraph [35] herein, admits, stipulates, acknowledges and agrees that (collectively, paragraphs E(i) through E[(viii)] below are referred to herein as the "Debtor's Stipulations"):

---

[2] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

(i)      *Prepetition Bond Documents.*   As of the Petition Date, the Debtor was indebted to the Prepetition Secured Creditor pursuant to that certain $24,500,000 original aggregate principal amount Massachusetts Development Finance Agency Revenue Bond, Anna Maria College Issue, Series 2017, dated as of November 30, 2017, reissued on November 8, 2018, and amended as of June 20, 2023 (as amended and restated, the "Bonds"), purchased by Citizens Funding Corp., a New Hampshire corporation (the "Purchaser"), with the proceeds of the Bonds lent to the Debtor by Citizens Bank, N.A., a national banking association, as disbursing agent (the "Disbursing Agent" and, together with the Purchaser, collectively, the "Prepetition Secured Creditor").   The terms and conditions of the Bonds, and the relationship among the Prepetition Secured Creditor, the Massachusetts Development Finance Agency (the "Issuer"), and the Debtor, are governed by, among other things:

(a)      That certain Loan and Security Agreement dated as of November 1, 2017, by and among the Issuer, the Prepetition Secured Creditor, and the Debtor, as amended by that certain First Amendment to Loan and Security Agreement dated November 8, 2018, and as further amended by that certain Second Supplemental Loan and Security Agreement dated June 20, 2023 and effective as of July 3, 2023 (as amended, the "LSA");

(b)      That certain Continuing Covenants Agreement dated as of November 30, 2017 by and between the Purchaser and the Debtor, as amended by that certain Amendment to Continuing Covenants Agreement and Related Documents dated as of November 8, 2018, and as further amended by that certain Second Amendment to Continuing Covenants Agreement and Related Documents dated September 30, 2024 (as amended, the "Continuing Covenants Agreement");

(c)     That certain Security Agreement (All Assets) dated November 30, 2017 by the Debtor in favor of the Disbursing Agent, for itself and as agent for the Purchaser (the "Security Agreement");

(d)     That certain Mortgage, Security Agreement and Fixture Filing, dated as of November 30, 2017 (the "Original Mortgage") by the Debtor in favor of the Prepetition Secured Creditor, as amended by that certain Amendment No 1 to Mortgage, Security Agreement and Fixture Filing dated as of September 30, 2024 (the "Mortgage Amendment" and, together with the Original Mortgage, the "Mortgage"), which Mortgage encumbers the real property in Paxton, Massachusetts known as 50 Sunset Lane as well as additional parcels off Grove Street, as more fully set forth in the Prepetition Bond Documents (the "Mortgaged Property") and secures the Prepetition Bond Obligations;

(e)     That certain Waiver and Covenant Modification dated as of March 17, 2023 by and between the Disbursing Agent and the Debtor (the "First Waiver");

(f)     That certain Second Waiver and Covenant Modification dated as of December 26, 2023 by and between the Prepetition Secured Creditor and the Debtor, as amended by the Amendment No. 1 to Second Waiver and Covenant Modification dated September 30, 2024 (the "Second Waiver"); and

(g)     That certain Third Waiver of Covenants dated as of December 19, 2024, by and between the Prepetition Secured Creditor and the Debtor (the "Third Waiver" and, together with the Bonds, the LSA, the Security Agreement, the Mortgage, the First Waiver, and the Second Waiver, and along with all other documents executed by the Debtor in connection therewith, collectively, the "Prepetition Bond Documents").

(ii) *Prepetition Bond Obligations.* As of the Petition Date, the aggregate outstanding principal amount owed by the Debtor under the Prepetition Bond Documents was not less than $[17,734,804.13], subject to final reconciliation and without prejudice to the rights preserved in paragraph [35] herein (together with any interest, fees (including, without limitation, prepayment fees), costs and other charges or amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Bond Documents, and further including all "Obligations" as described in the LSA, and all interest, fees, costs and other charges allowable under Section 506(b) of the Bankruptcy Code, the "Prepetition Bond Obligations").

(iii) *Prepetition Bond Liens and Prepetition Collateral.* As more fully set forth in the Prepetition Bond Documents, prior to the Petition Date, the Debtor granted security interests in and liens on, among other things, substantially all assets of the Debtor, other than Donor Restricted Funds (as defined herein) (collectively, the "Prepetition Collateral") to the Secured Creditor (the "Prepetition Bond Liens").

(iv) Validity, Perfection and Priority of Prepetition Bond Liens and Prepetition Bond Obligations. Without limiting the rights of any Committee and other parties in interest under paragraph [35] of this Interim Order: (a) the Prepetition Bond Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Secured Creditor for fair consideration and reasonably equivalent value; (b) the Prepetition Bond Liens are senior in priority over any and all other liens, if any, on the Prepetition Collateral, including the Federal Interest (as defined herein), subject only to certain liens otherwise permitted by the Prepetition Bond Documents (solely to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the applicable Prepetition Bond Liens as of the Petition Date, the "Prepetition

Permitted Priority Liens"), provided that, in no event shall any alleged right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) be deemed or treated hereunder as a Prepetition Permitted Priority Lien;[3] (c) the Prepetition Bond Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor enforceable in accordance with the terms of the applicable Prepetition Bond Documents; (d) the Debtor has no offsets, challenges, objections, defenses, claims, impairments or counterclaims to any of the Prepetition Bond Liens or Prepetition Bond Obligations, or any basis to challenge or defend against any portion of the Prepetition Bond Liens or Prepetition Bond Obligations including, without limitation, avoidance, disallowance, disgorgement, recharacterization, recoupment, reductions, setoff or subordination (whether equitable, contractual or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (e) the Debtor and its estate have no claims, objections, challenges, causes of action, counterclaims and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against the Prepetition Secured Creditor, or any of its respective heirs, predecessors, successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, advisors, professionals and agents, past, present and future, and their respective heirs, predecessors, successors and assigns arising out of, based upon or related to the Prepetition Bond Documents; and (f) as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Bond Obligations exceeds the amount of the Prepetition Bond Obligations.

---

[3] Nothing herein shall constitute a finding or ruling by this Court that any such Prepetition Permitted Priority Liens are valid, senior, enforceable, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest, including, but not limited to, the Debtor and the Prepetition Secured Creditor to challenge, consistent with the terms of this Interim Order, the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Prepetition Permitted Priority Lien and/or security interest. The rights and remedies of any holder of a Prepetition Permitted Priority Lien pursuant to the applicable documents and applicable law are reserved.

(v)     *Notice of Federal Interest.* On September 30, 2023, the Community Program Funding/Congressionally Directed Spending Construction awarded Grant No. 6CE1HS52504-01-03 (the "Grant") to the Debtor.  As a condition of the Grant, a Notice of Federal Interest (the "Federal Interest") was required to be recorded with respect to Miriam Hall, which is part of the Mortgaged Property ("Miriam Hall").  The Prepetition Secured Creditor's mortgage on Miriam Hall was granted to the Prepetition Secured Creditor pursuant to the Original Mortgage on November 30, 2017, and the Prepetition Secured Creditor recorded the Original Mortgage on the same date.  The recorded Mortgage securing the Prepetition Secured Creditor's interest in Miriam Hall was attached and perfected prior to the issuance of the Grant.  The Mortgage is the only security interest that has been recorded on the Mortgaged Property, including Miriam Hall.

(vi)     *Cash Collateral*.  All of the Debtor's cash, other than Donor Restricted Funds, including, without limitation, the cash in its deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral and is DIP Collateral and Prepetition Collateral of the Prepetition Secured Creditor.

(vii)     *Default by the Debtor*.  The Debtor acknowledges and stipulates that the Debtor is presently in default under the Prepetition Bond Documents.

(viii)     *No Other Liens*.  As of the Petition Date, other than the Federal Interest, the Prepetition Permitted Priority Liens or as permitted by the Prepetition Bond Documents, there were no security interests or liens on the Prepetition Collateral other than the Prepetition Bond Liens.[4]

---

[4] The Debtor and Prepetition Secured Creditor agree and acknowledge that an order of the Superior Court Department of the Commonwealth of Massachusetts dated July 24, 2025 purports to enjoin the transfer of a portion of "Parcel 3" (as referred to in that certain "Plan of Property in Paxton, Mass owned by The Sisters of Saint Ann" dated May 7, 1979) of the Debtor's owned real property, but are of the view that the injunction does not constitute a lien.

(ix)    *Release.*   The Debtor hereby forever unconditionally and irrevocably releases, discharges and acquits the Prepetition Secured Creditor, the DIP Lender and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, advisors, professionals and agents, past, present and future, and its respective heirs, predecessors, successors and assigns (collectively, the "Releasees") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses, debts, liens, actions and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the negotiations over and entry into the DIP Facility, the Prepetition Bond Documents, the Prepetition Bond Liens and/or the transactions contemplated hereunder or thereunder including, without limitation, (A) any so-called "lender liability" or equitable subordination claims or defenses, (B) any and all claims and causes of action arising under the Bankruptcy Code, and (C) any and all claims, causes of action, challenges, objections and/or choses in action arising out of, based upon, or related to the validity, priority, perfection or avoidability of the DIP Facility, DIP Liens, DIP Obligations, Prepetition Bond Documents, Prepetition Bond Obligations and the Prepetition Bond Liens.   The Debtor further waives and releases any defense, right of counterclaim, right of set-off or deduction to the payment of the DIP Obligations and the Prepetition Bond Obligations that the Debtor now has or may claim to have against the Releasees, arising out of, connected with or relating to any and all acts, omissions or events occurring prior to the Bankruptcy Court entering this Interim Order and, if applicable, the Final Order.

F.      *Findings Regarding the Postpetition Financing*.

(i)      *Request for Postpetition Financing*.  The Debtor seeks authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Term Sheet, and (b) use Cash

Collateral on the terms described herein to administer this Case and fund its operations in accordance with the Budget (as defined herein), this Interim Order and any proposed final order, which shall be on terms and conditions acceptable to the Debtor and the DIP Lender and approved by the Court (the "Final Order", and together with the Interim Order, the "Orders").  At the Final Hearing, the Debtor will seek final approval of the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to the Final Order.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)      *Priming of the Prepetition Bond Liens; Consent to Use of Cash Collateral.* The priming of the Prepetition Bond Liens on the Prepetition Collateral by the DIP Liens as set forth in this Interim Order will enable the Debtor to obtain the DIP Facility and to continue to operate its business for the benefit of its estate and creditors.  The Prepetition Secured Creditor has consented to such priming liens, to the Debtor's use of Cash Collateral, and to the subordination of the Prepetition Bond Liens to the DIP Carve-Out on the terms and conditions set forth in this Interim Order and is entitled to receive adequate protection of its interests as more fully described below.

(iii)     *Immediate Need for Postpetition Financing and Use of Cash Collateral.* The Debtor's need to use Cash Collateral and to obtain credit pursuant to the DIP Facility is immediate and critical in order to enable the Debtor to continue operations and to administer and preserve the value of its estate.  The ability of the Debtor to protect the value of its assets and otherwise finance its operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtor, its estate, its creditors, and the possibility for a successful administration of this Case.  As demonstrated in the Budget and otherwise, the Debtor does not have sufficient available

12

sources of working capital and financing to operate its businesses or to maintain its properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)     *No Credit Available on More Favorable Terms*.  Given its current financial condition, financing arrangements and capital structure, the Debtor is unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Facility.  The Debtor has been unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor has also been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the DIP Lender, (1) perfected security interests in and liens on (each as provided herein) substantially all of the Debtor's existing and after-acquired assets, other than Donor Restricted Funds, with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in this Interim Order and the DIP Term Sheet.

(v)     *Use of Proceeds of the DIP Facility.* As a condition to the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Lender requires, and the Debtor has agreed, that, other than in the ordinary course of business (but subject to the Budget and the Permitted Expense Variance (as defined herein) (a) the Debtor shall not use, lease, sell, or expend, directly or indirectly, the Collateral, including, without limitation, any of the Cash Collateral, in any manner, except as expressly provided herein, and (b) all Cash Collateral shall be used solely in accordance with the Budget.  A summary of the initial Budget is attached hereto as **Exhibit A** (the "Initial Budget").  The consent of the DIP Lender and the Prepetition Secured

13

Creditor, not to be unreasonably withheld, shall be required to approve any amendments, supplements or modifications of the Initial Budget (as so amended, supplemented, updated or otherwise modified from time to time, the "Budget"); provided that the Debtor may seek Court approval of any proposed Budget amendment, supplement, update, or modification on shortened notice if the DIP Lender or Prepetition Secured Creditor does not consent.

G.     *Adequate Protection*.   As a result of the grant of the DIP Liens, the incurrence of the DIP Obligations, the subordination of the Prepetition Bond Liens to the DIP Carve-Out (as defined herein), the use of Cash Collateral authorized herein, and the imposition of the automatic stay, the Prepetition Secured Creditor is entitled to receive adequate protection pursuant to Sections 361, 362 and 363 of the Bankruptcy Code and as set forth in paragraphs [6] and [7] of this Interim Order.  The Prepetition Secured Creditor reserves the right to seek additional adequate protection beyond the adequate protection provided in this Interim Order, and nothing in this Interim Order or otherwise shall be deemed or construed to limit, impair, or otherwise prejudice the Prepetition Secured Creditor's rights to seek and/or obtain such other additional adequate protection or other relief.

H.     *Sections 506(c) and 552(b)*.   In light of (i) the DIP Lender's agreement to subordinate its liens and superpriority claims, as applicable, to the DIP Carve-Out; and (ii) the Prepetition Secured Creditor's agreement to subordinate the Adequate Protection Superpriority Claims and the Adequate Protection Liens to the DIP Carve-Out, the DIP Liens, and the DIP Superpriority Claim, effective as of the entry of the Final Order, the Debtor waives and the Prepetition Secured Creditor and the DIP Lender are deemed to receive the benefits of a waiver of (a) the provisions of Section 506(c) of the Bankruptcy Code as provided herein or in the Final Order, and (b) any "equities of the case" claims under Section 552(b) of the Bankruptcy Code.

I. *Good Faith*.

(i) *Willingness to Provide Financing*. The DIP Lender has indicated a willingness to provide financing to the Debtor subject to: (a) the entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility as contemplated by this Interim Order and the DIP Term Sheet; and (c) entry of findings by this Court that such financing is essential to the Debtor's estate, that the DIP Lender is extending credit to the Debtor pursuant to this Interim Order in good faith, and that the DIP Lender's claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

(ii) *Business Judgment and Good Faith Pursuant to Section 364(e)*. The extension of credit under the DIP Facility reflects the Debtor's exercise of prudent business judgment, consistent with its fiduciary duties, and is supported by reasonably equivalent value and consideration. The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtor and the DIP Lender. The use of Cash Collateral and credit to be extended under the DIP Facility, and the financial accommodations provided thereunder, shall be deemed to have been so allowed, advanced, made, provided, used or extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by Section 364(e) of the Bankruptcy Code, and the claims, security interests and liens, and other rights, benefits and protections granted to the DIP Lender shall be entitled to the full protection and benefits of Section 364(e) of the

15

Bankruptcy Code and this Interim Order in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

J.      *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the U.S. Trustee; (ii) the creditors included on the Debtor's lists of twenty (20) largest unsecured creditors; (iii) counsel to the DIP Lender and the Prepetition Secured Creditor; (iv) all holders of record of liens on the Prepetition Collateral; and (v) all other parties specified in MLBR 4001-2(b).  The Debtor has made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

K.      *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  Absent entry of this Interim Order, the Debtor's businesses, properties and estates would be immediately and irreparably harmed.  This Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and stakeholders.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      DIP Facility Approved.  The Motion is granted on an interim basis, the DIP Facility is authorized and approved on an interim basis, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order and the DIP Term Sheet.

16

2.      <u>Objections Overruled</u>.  All objections to the Motion to the extent not withdrawn or resolved are hereby overruled.

3.      <u>Authorization of the DIP Financing</u>.  The Debtor is expressly and immediately authorized and empowered to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order, the DIP Term Sheet and the Budget, and to deliver all instruments and documents that may be necessary or required for performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order.

4.      <u>DIP Obligations</u>.  This Interim Order shall constitute and evidence the validity and binding effect of the Debtor's DIP Obligations, which DIP Obligations shall be enforceable against the Debtor, its estate and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Case or any Successor Case (as defined herein).

5.      <u>Postpetition Liens and Collateral</u>.

(a)      Effective immediately upon the entry of this Interim Order, pursuant to Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the Debtor is authorized to grant and does hereby grant to the DIP Lender continuing valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens on (collectively, the "<u>DIP Liens</u>") any and all presently owned and hereafter acquired assets and real and personal property of the Debtor, other than Donor Restricted Funds, including, without limitation, the following (the "<u>DIP Collateral</u>" and, together with the Prepetition Collateral, the "<u>Collateral</u>"):[5]

---

[5] All terms not specifically defined in the description of DIP Collateral shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

(i)     all Accounts;

(ii)     all Goods, including, without limitation, Equipment, Inventory and Fixtures;

(iii)     all Documents, Instruments and Chattel Paper;

(iv)     all Letters of Credit and Letter-of-Credit Rights;

(v)     all Securities Collateral;

(vi)     all Investment Property;

(vii)     all Intellectual Property Collateral;

(viii)     all Commercial Tort Claims;

(ix)     all General Intangibles (including, without limitation, all Payment Intangibles);

(x)     all Deposit Accounts;

(xi)     all Supporting Obligations;

(xii)     all money, cash or cash equivalents;

(xiii)     all credit balances, deposits and other property now or hereafter held or received by or in transit to the DIP Lender or at any other depository or other institution from or for the account of the Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(xiv)     all proceeds of leases of real property;[6]

(xv)     all owned real property;

---

[6] For the avoidance of doubt, the DIP Liens extend only to the proceeds of leased real property and are not direct liens on the Debtor's leases of real property unless such liens are expressly permitted pursuant to the underlying lease documents.

(xvi)   all proceeds of claims or causes of action that the Debtor may be entitled to assert under Section 549 of the Bankruptcy Code and any and all recoveries and settlements thereof;

(xvii)   subject to entry of the Final Order, all proceeds of claims or causes of action that the Debtor may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtor or the estate of the Debtor under Chapter 5 or Section 724(a) of the Bankruptcy Code, other than those arising under Section 549 of the Bankruptcy Code and any and all recoveries and settlements thereof;

(xviii)   to the extent not otherwise described above, all receivables and all present and future claims, rights, interests, assets and properties recovered by or on behalf of the Debtor;

(xix)   all books, records, and information relating to any of the foregoing and/or to the operation of the Debtor's business, and all rights of access to such books, records, and information, and all property in which such books, records and information are stored, recorded and maintained; and

(xx)   to the extent not otherwise covered by clause (i) through (xx) above, all other personal property of the Debtor, whether tangible or intangible and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing; provided, however, that notwithstanding the foregoing, cash existing as of the Petition Date that constitutes gifts, grants, bequests, donations or contributions that were designated or restricted at the time they were made by the donor or maker as being for certain specified purposes (such cash the "Donor Restricted Funds") shall not constitute DIP Collateral.

19

6.      DIP Lien Priority.

(a)      *DIP Liens*.  The DIP Liens shall be junior only to the (i) DIP Carve-Out, and (ii) the Prepetition Permitted Priority Liens, and shall otherwise (subject to the terms hereof) be senior in priority and superior to the Prepetition Bond Liens and the Adequate Protection Liens (as defined herein) and the Adequate Protection Superpriority Claims (as defined herein) and any other security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral.  Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Case or any Successor Case or any claim for reclamation or return (whether asserted pursuant to Section 546(c) of the Bankruptcy Code or otherwise).  The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Case, upon the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Case or Successor Case.  Subject in all respects to paragraph [35] herein, the DIP Liens shall not be subject to challenge under Sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

7.      DIP Superpriority Claim.

(a)      *DIP Superpriority Claim*.  Upon entry of this Interim Order, the DIP Lender is hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case and any Successor Case (collectively, the "DIP Superpriority Claim") for all DIP Obligations.  The DIP Superpriority Claim shall be subordinate only to the DIP Liens, the DIP Carve-Out and Prepetition Permitted Priority Liens, and shall otherwise have priority over any and all administrative expenses of the kinds specified in or

20

ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 and 1114 of the Bankruptcy Code.

(b)      *Priority of DIP Superpriority Claim.* The DIP Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof, other than Donor Restricted Funds, subject only to the DIP Carve-Out and amounts secured by the Prepetition Permitted Priority Liens to the extent paid from identifiable proceeds of the assets subject to such Prepetition Permitted Priority Liens.

8.      No Obligation to Extend Credit.  The DIP Lender shall not have any obligation to make any loan or advance unless all of the conditions precedent to the making of such extension of credit under this Interim Order and the DIP Term Sheet have been satisfied in full or waived by the DIP Lender.

9.      Use of DIP Facility Proceeds.  From and after the Petition Date, the Debtor shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Interim Order, and in compliance with the Budget, a copy of which has been delivered to the DIP Lender and the Prepetition Secured Creditor.

10.      Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Interim Order and the DIP Term Sheet, and in compliance with the Budget, the Debtor is authorized to use Cash Collateral until the earliest of (x) [30 days after the entry of this Interim Order] and (y) the Termination Notice Date; provided, however, that during the Remedies Notice Period (as defined herein) the Debtor may use Cash Collateral solely to: (i) pay expenses critical to the preservation of the Debtor and its estate as agreed by the DIP Lender and the Debtor (with such agreement not to be unreasonably withheld); (ii) fund the DIP Carve-Out in the amount of

the Post-Carve-Out Trigger Notice Cap; and (iii) fund fees payable to the U.S. Trustee and Clerk of the Court, in each case in accordance with the terms and provision of the Budget.

11.     Budget.  The Budget and any modification to, or amendment or update of, the Budget shall be in form and substance reasonably satisfactory to and approved by the DIP Lender and the Prepetition Secured Creditor, which approval shall not be unreasonably withheld.  The Debtor shall comply with and update the Budget from time to time (provided that any update shall be in form and substance reasonably satisfactory to the DIP Lender and the Prepetition Secured Creditor). The Debtor shall deliver to the DIP Lender and the Prepetition Secured Creditor a proposed update to the Budget no later than five (5) days following consummation of any disposition of Collateral occurring outside of the ordinary course of business.  If the DIP Lender or the Prepetition Secured Creditor does not approve any proposed Budget update, amendment, supplement, or modification, the Debtor may seek approval of such update, amendment, supplement, or modification from the Court on shortened notice, and the Debtor's authority to use Cash Collateral subject to the existing approved Budget shall continue pending further order of the Court.

12.     Permitted Expense Variance Covenants.

(a)     In no event shall the Debtor's actual disbursements of the type included in the Budget line items listed under "Expenses" exceed 110% of the aggregate amounts set forth in the Budget for such expense categories tested cumulatively on a four-week rolling basis (the "Permitted Expense Variance");

(b)     Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business (which shall be subject to further Orders of this Court), or the Debtor's use of any Cash Collateral or other proceeds resulting

22

therefrom, except as permitted by this Interim Order and in accordance with the Budget and the Permitted Expense Variance.

**Adequate Protection Provisions**

13.   <u>Adequate Protection Liens; Adequate Protection With Respect to Sales; Access to Records</u>.  As adequate protection for the interest of the Prepetition Secured Creditor in the Prepetition Collateral (including Cash Collateral) on account of the subordination of the Prepetition Bond Liens to the DIP Liens, the DIP Carve-Out, the Debtor's use of Cash Collateral, and any other diminution in value arising out of the imposition of the automatic stay or the Debtor's use, sale, depreciation, or disposition of the Prepetition Collateral and Cash Collateral during the pendency of this Case or any Successor Case (collectively, "<u>Diminution in Value</u>"), the Prepetition Secured Creditor shall receive adequate protection as follows:

(a)   *Creation of Adequate Protection Liens*.  The Prepetition Secured Creditor is hereby granted, pursuant to Sections 361 and 363 of the Bankruptcy Code, continuing, valid, binding, enforceable and automatically perfected replacement liens on and additional security interests in (the "<u>Adequate Protection Liens</u>") the DIP Collateral solely to the extent of any actual Diminution in Value of the Prepetition Secured Creditor's interests in the Prepetition Collateral.

(b)   The Adequate Protection Liens are and shall be (x) valid, binding, enforceable and fully perfected, and (y) subordinate and subject only to (i) the Prepetition Permitted Priority Liens; (ii) the DIP Liens; and (iii) the DIP Carve-Out.  Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in this Case or any case under chapter 7 of the Bankruptcy Code upon the conversion of this Case (a "<u>Successor Case</u>"), and shall be valid and enforceable against any trustee or other estate representative appointed in this Case or any

23

Successor Case, or upon the dismissal of this Case or any Successor Case.  The Adequate Protection Liens shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the Debtor's estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Bond Liens or the Adequate Protection Liens.

(c)      *Credit Bidding.*  In connection with any sale process authorized by the Court, subject to the priorities set forth in this Interim Order and paragraph [35] herein, each of the DIP Lender and Prepetition Secured Creditor may seek to credit bid some or all of its secured claims for its collateral (each a "Credit Bid") pursuant to Section 363(k) of the Bankruptcy Code without the need for further Court order authorizing the same and whether any such sale is effectuated through Section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise.  A Credit Bid may be applied only to reduce the cash consideration with respect to those assets in which the DIP Lender or Prepetition Secured Creditor holds a valid, perfected, enforceable and non-avoidable security interest.  For the avoidance of doubt, no Credit Bid shall be permitted with respect to Donor Restricted Funds.  Each of the DIP Lender and Prepetition Secured Creditor shall be considered a "Qualified Bidder" in connection with any sale process with respect to its rights to acquire all or any of the assets by Credit Bid, subject to the foregoing limitations.

14.    Adequate Protection Superpriority Claims.

(a)      *Superpriority Claims of Prepetition Secured Creditor.*  As further adequate protection of the interests of the Prepetition Secured Creditor with respect to the Prepetition Bond Obligations, the Prepetition Secured Creditor is hereby granted an allowed administrative claim against the Debtor's estate under Section 503 of the Bankruptcy Code, with priority over all

24

administrative expense claims and unsecured claims against the Debtor and its estate as provided for by Section 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claims"), but subject to the DIP Carve-Out, to the extent that the Adequate Protection Liens and other adequate protection provided under this Interim Order do not adequately protect against actual Diminution in Value of the Prepetition Secured Creditor's interests in the Prepetition Collateral.

(b)      *Priority of Adequate Protection Superpriority Claims*.   The Adequate Protection Superpriority Claims granted to the Prepetition Secured Creditor shall be junior to the DIP Liens, DIP Superpriority Claim, DIP Carve-Out, the Prepetition Permitted Priority Liens and the Adequate Protection Liens and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code.

15.      Nothing herein shall impair or modify the application of the Prepetition Secured Creditor's rights under Section 507(b) of the Bankruptcy Code or the rights of the Prepetition Secured Creditor to seek additional adequate protection pursuant Section 363(e) of the Bankruptcy Code, including, without limitation, in connection with any debtor-in-possession financing that the Debtor may seek, in the event that the adequate protection provided to the Prepetition Secured Creditor hereunder is insufficient to compensate for the Diminution in Value of the interest of the Prepetition Secured Creditor in the Prepetition Collateral during this Case or any Successor Case.

16.      Adequate Protection Payments. Subject to the rights preserved in paragraph [35] herein and the procedures set out in paragraph [28] herein, the Prepetition Secured Creditor shall receive additional adequate protection in the form of the following:

(i)      The current payment of reasonable and documented out-of-pocket costs and expenses in accordance with the Prepetition Bond Documents, including, without limitation, the

25

reasonable and documented out-of-pocket fees and expenses of the attorneys, advisers, accountants, and other consultants of the Prepetition Secured Creditor; and

(ii)    On the first day of each calendar month, accrual of all unpaid interest and fees at the non-default rate and as provided in the Prepetition Bond Documents, which interest shall be paid in kind unless otherwise agreed by the Debtor and the DIP Lender; provided that all such accruals and payments shall be without prejudice to the provisions of paragraph [35] herein.

17.    Modification of Automatic Stay. The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to permit the Debtor to grant the DIP Liens, DIP Superpriority Claim, Adequate Protection Liens and the Adequate Protection Superpriority Claims.

18.    Automatic Perfection of DIP Liens and Adequate Protection Liens. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, filing of Uniform Commercial Code financing statements or similar documents or entering into any deposit account control agreement, collateral access agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, Adequate Protection Liens, or to entitle the DIP Lender and Prepetition Secured Creditor to the priorities granted herein.

19.    Application of Proceeds of DIP Collateral.

26

(a)  Subject to the rights, if any, of holders of the Prepetition Permitted Priority Liens in particular DIP Collateral, and to the DIP Carve-Out, the proceeds of DIP Collateral shall be applied as follows: *first*, to payment of fees, costs and expenses payable and reimbursable by the Debtor under this Interim Order and the DIP Term Sheet; *second*, to payment of all DIP Obligations in accordance with this Interim Order and the DIP Term Sheet; *third*, to payment of Prepetition Bond Obligations; and *fourth*, upon payment in full in cash of the Prepetition Bond Obligations, to the Debtor's operating account, or for the account of and paid to whoever may be lawfully entitled thereto.

(b)  The Debtor shall not, directly or indirectly, voluntarily purchase, redeem, defease, or prepay any principal of, premium, if any, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than (i) the DIP Obligations, (ii) the Prepetition Bond Obligations, and (iii) obligations authorized by an order of the Court (which may include, without limitations, obligations secured by Prepetition Permitted Priority Liens).

20.  Proceeds of Subsequent Financing.  If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in this Case or a Successor Case shall obtain credit or incur debt pursuant to Sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of this Interim Order at any time prior to the repayment in full in cash of all DIP Obligations, Prepetition Bond Obligations, and the termination of the DIP Lender's obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to the Debtor and the Debtor's estate, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender to be applied as set forth in paragraph [19] herein.

27

21.     <u>Compliance with Prepetition Bond Documents</u>.  The Debtor shall comply with all applicable terms and provisions of the Prepetition Bond Documents (as modified herein) solely to the extent such terms and provisions are not inconsistent with the Bankruptcy Code, this Interim Order, any other order of the Court, or the Debtor's fiduciary duties, including the maintenance of adequate insurance, the maintenance of the Debtor's existing cash management system and the payment of taxes as required by the Prepetition Bond Documents, and, subject to the prior consent of the Prepetition Secured Creditor, not to be unreasonably withheld, or further order of the Court, the payment of all allowed claims that could result in a lien on the Collateral having priority over the liens of the Prepetition Secured Creditor.

22.     <u>Financial Information and Reporting Requests</u>.   The Debtor shall allow the DIP Lender, the Prepetition Secured Creditor and their representatives reasonable access during business hours, upon reasonable advance written notice to the Debtor and its counsel, to the premises, officers, employees, auditors, appraisers, financial advisors, investment bankers, and the books and records of the Debtor in order to conduct analyses and audits of the Collateral and the Debtor's financial affairs, and shall otherwise cooperate in providing any other financial information reasonably requested by the DIP Lender or the Prepetition Secured Creditor; <u>provided</u> that the Debtor shall not be required to provide information that is subject to attorney-client privilege, work-product protection, confidentiality obligations, donor confidentiality restrictions, student privacy restrictions, or other applicable legal restrictions.  The Debtor shall also provide to the DIP Lender and Prepetition Secured Creditor a copy of each monthly operating report as and when submitted to the Office of the United States Trustee (each an "<u>MOR</u>") and such other non-privileged reports and information as reasonably requested by the DIP Lender or Prepetition Secured Creditor.

23. <u>Access to Debtor's Consultants.</u>  The DIP Lender and the Prepetition Secured Creditor are authorized to communicate directly with the Debtor's professionals, including the Debtor's financial advisor(s), appraiser(s), real estate brokers and investment banker(s), as applicable, regarding non-privileged matters related to the services to be rendered by such professionals, terms and term sheets, the preparation of the Budget, and such other non-privileged matters as the DIP Lender and Prepetition Secured Creditor shall reasonably request from time to time as to any such professionals; <u>provided</u> that the Debtor and the Debtor's counsel must be copied on any written communications (including e-mail or other electronic communications) and invited to participate in any meetings (including meetings via telephone or other electronic means); <u>provided</u>, <u>further</u>, that no such communications shall impair or waive any privilege, work-product protection, confidentiality obligation, fiduciary duty, sale-process protocol, or professional obligation owed to the Debtor or its estate.  Subject to the foregoing, such professionals are authorized and directed to communicate directly with the DIP Lender and the Prepetition Secured Creditor regarding all such matters.

24. <u>Reporting Requirements</u>. Subject to the terms of any order approving bid procedures through which the Debtor may solicit offers for the purchase of some of or all of its assets (the "<u>Bid Procedures Order</u>"), which Bid Procedures Order shall be reasonably acceptable to the DIP Lender and the Prepetition Secured Creditor, the Debtor as and when required shall furnish to the DIP Lender and the Prepetition Secured Creditor, within two Business Days after receipt, copies of all term sheets and/or letters of intent (whether preliminary, interim or final in form and content), and all offers for the purchase of any asset(s) of the Debtor, subject to any confidentiality restrictions, bidder protocols, and Court-approved sale procedures.

25.     Disposition of Collateral.  Unless otherwise authorized by the Court, the Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Collateral outside of the ordinary course, including Cash Collateral, other than in accordance with the Budget. Nothing provided herein shall limit the rights of the DIP Lender and the Prepetition Secured Creditor to object to any proposed disposition of the Collateral.

26.     Termination Event. Upon written notice from the DIP Lender, the occurrence and continuation of any of the following (unless waived by the DIP Lender) shall constitute a "Termination Event" under this Interim Order:

(a)     other than in connection with (x) the payment in full of the DIP Obligations and Prepetition Bond Obligations, or (y) with the prior written consent of the DIP Lender and the Prepetition Secured Creditor, the Debtor shall file a motion with the Court seeking the authority to sell, transfer or dispose of any of the Debtor's assets outside the ordinary course of business;

(b)     other than in connection with (x) the payment in full of the DIP Obligations and Prepetition Bond Obligations, or (y) with the prior written consent of the DIP Lender and the Prepetition Secured Creditor, the bringing of a motion or the taking of any action by or on behalf of the Debtor or its Estate in this Case or any Successor Case: (i) to obtain financing; (ii) to grant any lien (other than the Prepetition Permitted Priority Liens) upon or affecting any Collateral if such lien would be senior or *pari passu* with any of the DIP Liens, Prepetition Bond Liens or the Adequate Protection Liens; (iii) to use Cash Collateral in a way that is inconsistent with the Orders; or (iv) that seeks to prohibit the DIP Lender or Prepetition Secured Creditor from credit bidding on any or all of the Debtor's assets during the pendency of this Case or any Successor Case;

(c)     the filing of any plan of reorganization or liquidation or disclosure statement attendant thereto by or on behalf of the Debtor or its Estate in this Case or any Successor Case that

30

does not provide for the payment in full of the DIP Obligations and Prepetition Bond Obligations in cash on the effective date of such plan of reorganization or liquidation;

(d)     the entry of a final order by the Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien on any Collateral with a value exceeding [$50,000.00];

(e)     the commencement of a suit or action against the Prepetition Secured Creditor by the Debtor;

(f)     the commencement of a suit or action against the DIP Lender by the Debtor;

(g)     the entry of an order in this Case avoiding or permitting recovery of any payments made on account of the Prepetition Bond Obligations;

(h)     the entry of an order in this Case avoiding or permitting recovery of any payments made on account of the DIP Obligations;

(i)     the entry of an order in this Case granting any other superpriority administrative claim or lien equal or superior to that granted to the DIP Lender without the prior written consent of the DIP Lender;

(j)     the entry of an order in this Case granting any other superpriority administrative claim or lien equal or superior to that granted to the Prepetition Secured Creditor without the prior written consent of the Prepetition Secured Creditor, other than a superpriority administrative claim or lien granted to the DIP Lender;

(k)     the entry of an order of this Court terminating the right of the Debtor to use Cash Collateral;

(l)  the entry of any order of the Court that avoids or disallows in any way the security interests, liens, priority claims or rights granted to the DIP Lender or the Prepetition Secured Creditor under the terms of the Orders;

(m)  the Orders shall cease, for any reason, to be in full force and effect, or the Debtor shall so assert in writing, or any liens or claims created in favor of the DIP Lender or Prepetition Secured Creditor under the Orders shall cease to be enforceable and of the same effect and priority purported to be created hereby;

(n)  except as set forth in the "first day" orders, the payment of, or application for authority to pay, any prepetition indebtedness or prepetition claim without the prior written consent of the DIP Lender and the Prepetition Secured Creditor;

(o)  any material misrepresentation by the Debtor in the financial reporting or certifications provided by the Debtor to the Prepetition Secured Creditor;

(p)  the appointment of a permanent chapter 11 trustee in this Case, the disallowance of a motion by the Debtor seeking leave to employ Holland & Knight, LLP as counsel to the Debtor or Verdolino & Lowey as financial advisor to the Debtor, the appointment of a receiver or an examiner in this Case with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Debtor;

(q)  the dismissal of this Case, or the conversion of this Case from chapter 11 to chapter 7 of the Bankruptcy Code, or the Debtor shall file a motion or other pleading seeking the dismissal of this Case under Section 1112 of the Bankruptcy Code or otherwise;

(r)  the failure of the Debtor to comply with any Milestone (as defined in the DIP Term Sheet); and

(s)     the failure of the Debtor to perform any material obligation as and when required under this Interim Order or the DIP Term Sheet.

27.     <u>Rights and Remedies Following Termination Event</u>.

(a)     *Termination.* Immediately upon the occurrence and during the continuance of a Termination Event: (i) all DIP Obligations shall be immediately due and payable, (ii) all commitments to extend credit under the DIP Facility will terminate, and (iii) all authority to use Cash Collateral shall cease, <u>provided</u>, <u>however</u>, that during the Remedies Notice Period (as defined herein), the Debtor may use Cash Collateral solely as set forth in paragraph [10] herein.

(b)     *Notice of Termination*. The DIP Lender, or, in the event the DIP Facility is paid in full, the Prepetition Secured Creditor, may provide notice of its intent to terminate or restrict the Debtor's authority to use Cash Collateral by providing written notice as set forth in this paragraph [27(b)] (such notice, a "<u>Termination Notice</u>"). Any Termination Notice shall be given by electronic mail (or other electronic means) to counsel to the Debtor, counsel to the Committee (if any) and the U.S. Trustee (the earliest date any such Termination Notice is sent shall be referred to herein as the "<u>Termination Notice Date</u>"). The automatic stay in this Case otherwise applicable to the DIP Lender and the Prepetition Secured Creditor is hereby modified so that five (5) days after the Termination Notice Date (the intervening period, the "<u>Remedies Notice Period</u>"), the DIP Lender and the Prepetition Secured Creditor shall be entitled to exercise their respective rights and remedies to satisfy the DIP Obligations, DIP Liens, DIP Superpriority Claim, Prepetition Bond Obligations, Adequate Protection Superpriority Claims and Adequate Protection Liens, as applicable, subject to and consistent with (i) the DIP Carve-Out, (ii) the exclusion of Donor Restricted Funds, and (iii) this Interim Order. Following the issuance of a Termination Notice, the Debtor, a Committee, if any, and any other party in interest shall be entitled to seek an emergency

33

hearing within the Remedies Notice Period with the Court to contest, *inter alia*, whether a Termination Event has occurred and/or is continuing (a "Termination Challenge Hearing"), and the DIP Lender and Prepetition Secured Creditor shall consent to such emergency hearing. Unless the Court during the Remedies Notice Period orders otherwise, at the end of the Remedies Notice Period and without further notice, order or application to the Court, the automatic stay as to the DIP Lender and Prepetition Secured Creditor shall automatically be terminated and the DIP Lender and Prepetition Secured Creditor shall be permitted to exercise all rights and remedies with respect to the Debtor and the Collateral as set forth herein and as otherwise permitted under the Prepetition Bond Documents and applicable law; provided that so long as the Debtor, a Committee, if any, the U.S. Trustee, or any other party in interest has requested that a Termination Challenge Hearing take place at the Court's first availability, if a Termination Challenge Hearing has been requested but the Court is unable to hold such a hearing within the Remedies Notice Period, the Remedies Notice Period shall be extended through the first business day following the conclusion of the Termination Challenge Hearing.

28. Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay of this Interim Order. The Prepetition Secured Creditor and the DIP Lender have acted in good faith in connection with this Interim Order, the DIP Term Sheet, and the DIP Facility, and their reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, the DIP Lender and the Prepetition Secured Creditor are entitled to the protections provided in Section 364(e) of the Bankruptcy Code. In the event any or all of the provisions of this Interim Order are hereafter reversed, modified, amended, stayed or vacated by a subsequent order of this Court, or any other court, such reversal,

34

modification, amendment, stay or vacatur shall not affect the validity and enforceability of any lien, claim or priority authorized or created hereby.

29.     <u>DIP and Other Expenses</u>.  The Debtor is authorized and directed to pay all reasonable and documented out-of-pocket costs and expenses of (x) the DIP Lender in connection with the DIP Facility (including, without limitation, costs and expenses incurred prior to the Petition Date), and (y) the Prepetition Secured Creditor (including, without limitation, costs and expenses incurred prior to the Petition Date) as provided in the Prepetition Bond Documents. Payment of all such costs and expenses shall not be subject to allowance by the Court and professionals for the DIP Lender and the Prepetition Secured Creditor shall not be required to comply with the U.S. Trustee fee guidelines.  The professionals for the DIP Lender and the Prepetition Secured Creditor shall deliver a summary of services to counsel for the Debtor, counsel for the Committee, if any, and the U.S. Trustee, redacted as necessary with respect to any privileged or confidential information contained therein.  Any objections raised by the Debtor, the U.S. Trustee or the Committee, if any, with respect to such invoices within ten (10) days of the receipt thereof will be subject to resolution by the Court.  In the event of any objection, the provisions of Section 107 of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy Procedure shall apply.  Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtor.  Notwithstanding the foregoing, the Debtor is authorized and directed to pay on the closing of the DIP Facility all reasonable fees, costs and expenses of the DIP Lender and the Prepetition Secured Creditor incurred on or prior to such date after delivery of a summary invoice to counsel for the Debtor, without prejudice to the rights of the Debtor, the U.S. Trustee or the Committee, if any, to object to any such amounts and seek appropriate relief from the Court.

30.     Indemnification. The Debtor shall indemnify and hold harmless the DIP Lender, and each of its respective shareholders, members, directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Facility, the DIP Term Sheet or the transactions contemplated thereby and by this Interim Order, whether such indemnified party is party thereto, or in connection with this Case, any plan, or any action or inaction by the Debtor; provided, that such indemnity shall not, as to any indemnified party, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted directly from the gross negligence or willful misconduct of such indemnified party.   The indemnity includes indemnification for the DIP Lender's exercise of discretionary rights granted under the DIP Facility, the DIP Term Sheet and this Interim Order.   In all such litigation, or the preparation therefor, the DIP Lender shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtor agrees to promptly pay the reasonable and documented fees and expenses of such counsel.

31.     Proof of Claim.  Any order entered by the Court in relation to the establishment of a bar date for any claims (including, without limitation, administrative claims) in this Case or any Successor Case shall not apply to the DIP Lender or the Prepetition Secured Creditor, each of which shall not be required to file a proof of claim in this Case or any Successor Case, and the

provisions of this Interim Order relating to the amount of the Prepetition Bond Obligations shall constitute a timely filed proof of claim.

32.     DIP Carve-Out.

(a)     *DIP Carve-Out.*  As used in this Interim Order, the "DIP Carve-Out" shall consist of the following fees and expenses:  (i) all allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6) for fees payable to the Office of the United States Trustee, as determined by agreement of the U.S. Trustee or by final order of the Court, and 28 U.S.C. § 156(c) for fees required to be paid to the clerk of the Court; (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code; (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all paid and unpaid fees and expenses ("Allowed Professional Fees") of the Debtor's and any Committee's professionals (the "Professional Persons"), in each case retained under Sections 327, 328, 363 or 1103 of the Bankruptcy Code, as applicable, incurred at any time prior to the delivery of a Carve-Out Trigger Notice (as defined herein), less the amount of any remaining and unapplied fee retainers held by any such Professional Person pursuant to Sections 327, 328, or 1103 of the Bankruptcy Code; provided, however, the Allowed Professional Fees (I) shall not at any time exceed the aggregate amount of the fees and expenses identified in the Budget, plus any Permitted Expense Variance, for each such Professional Person or category of Professional Persons covering the period of time commencing on the Petition Date through the earlier of the (A) the date of determination and, (B) the last day of the week in which a Carve-Out Trigger Notice (defined below) is served and (II) shall be permanently reduced with respect to each Professional Person by the aggregate amount of professional fees and expenses actually received by such Professional Person following the Petition Date; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount

37

not to exceed $50,000 incurred after the delivery of a Carve-Out Trigger Notice to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap").  The DIP Carve-Out shall be funded solely with cash on hand and with the first proceeds of Collateral received by the Debtor after the delivery of the Carve Out Trigger Notice.  No portion of the DIP Carve-Out or any Cash Collateral may be used in violation of this Interim Order.  So long as the Carve-Out Trigger Notice has not been delivered, the Debtor shall be permitted to pay, as the same may become due and payable in accordance with an order approving interim compensation procedures for fees and expenses of Professional Persons as provided for in the Budget, and the same shall not reduce the Post-Carve Out Trigger Notice Cap.  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to the Debtor's counsel, counsel to any Committee, if any, and the U.S. Trustee (together, the "Carve-Out Notice Parties"), which notice may be delivered following the occurrence and during the continuation of a Termination Event, stating that the Post-Carve-Out Trigger Notice Cap has been invoked (such date of delivery, the "Carve-Out Termination Date").

(b)     *Seniority of DIP Carve-Out.*     For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order or in any Prepetition Bond Documents, the DIP Carve-Out shall be senior to all liens and claims securing the Collateral, the DIP Liens, the DIP Superpriority Claim, Adequate Protection Liens and the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or Prepetition Bond Obligations solely to the extent provided herein.

(c)    *Payment of DIP Carve-Out On or After the Carve-Out Termination Date.* Any payment or reimbursement made on or after the occurrence of the Carve-Out Termination Date shall permanently reduce the DIP Carve-Out on a dollar-for-dollar basis.

(d)    *No Direct Obligation to Pay Allowed Professional Fees.* Other than satisfying the obligations set forth in this Interim Order to fund the Carve Out, neither the DIP Lender nor the Prepetition Secured Creditor shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with this Case or any Successor Case. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender or Prepetition Secured Creditor in any way to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement. Nothing in this Interim Order or otherwise shall be construed to increase the DIP Carve-Out if actual allowed fees and/or disbursements are higher in fact than the amounts subject to the DIP Carve-Out as set forth in this Interim Order.

33.    <u>Prohibited Use of Cash Collateral and DIP Carve-Out</u>.  The Collateral, including Cash Collateral, and the DIP Carve-Out may not be used:  (a) except with respect to seeking and prosecuting a Termination Challenge Hearing, but subject in all respects to the Budget, in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type adverse to or against the interests of: (i) the DIP Lender or its rights and remedies under this Interim Order; or (ii) the Prepetition Secured Creditor or its rights and remedies under the Prepetition Bond Documents or the Orders; (b) to make any distribution under a plan of reorganization without the consent of the DIP Lender and Prepetition Secured Creditor; (c) to make any payment greater than $50,000 individually or $150,000 in the aggregate during this Case in settlement of any claim, action or proceeding, before any court, arbitrator or

39

other governmental body without the prior written consent of the DIP Lender and the Prepetition Secured Creditor unless otherwise ordered by this Court; or (d) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the DIP Lender or Prepetition Secured Creditor; provided, that the foregoing limitations shall not encompass any investigation of the Prepetition Bond Obligations and the Prepetition Bond Liens or Challenge thereto conducted by Professional Persons retained by the Committee, if any, so long as the costs, fees and expenses incurred by such Professional Persons do not exceed $10,000 in the aggregate, unless otherwise agreed by the DIP Lender and Prepetition Secured Creditor.

34.     Payment of Compensation.  Nothing herein shall be construed as consent to the allowance of any fees or expenses of any Professional Persons or shall affect the right of the Prepetition Secured Creditor to object to the allowance and payment of such fees and expenses.

35.     Reservation of Certain Third Party Rights and Bar of Challenges and Claims. Nothing in this Interim Order shall prejudice the rights of a Committee, if granted standing, and/or any other party in interest granted standing by the Court (other than the Debtor and/or its successors), to seek to assert claims against the Prepetition Secured Creditor on behalf of the Debtor or the Debtor's creditors and interest holders, or to object to or to challenge the stipulations, findings or Debtor's Stipulations set forth herein.  A party in interest, including a Committee (if appointed) that has been granted standing by the Court, must commence, as appropriate, a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim against the Prepetition Secured Creditor, a claim in the nature of a setoff, counterclaim or defense to the Prepetition Bond Obligations or any other claim (each, a "Challenge") within seventy-five (75) calendar days following the date of entry of this Interim Order (the "Challenge Period").  The Challenge Period may only be extended with the written

40

consent of the Prepetition Secured Creditor or by order of the Court for cause.  Upon the expiration of the Challenge Period (the "Challenge Period Termination Date") without the filing of a Challenge:  (A) any and all such Challenges and objections by any party shall be deemed to be forever waived, released and barred, (B) all matters not subject to a Challenge, findings, Debtor's Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to the Prepetition Secured Creditor's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor, the Debtor's estate, and all creditors, interest holders, and other parties in interest in this Case and any Successor Case; and (C) any and all claims or causes of action against the Prepetition Secured Creditor and its successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, advisors, professionals and agents, past, present and future, and its respective heirs, predecessors, successors and assigns relating in any way to the Debtor or the Prepetition Bond Documents shall be forever waived and released by the Debtor's estate.  For the avoidance of doubt, nothing in this paragraph shall waive, release, bar, or impair any independent direct claim of any creditor, interest holder, governmental unit, or other party in interest that is not property of the Debtor's estate.

36.     No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, or any direct, indirect, or incidental beneficiary.

37.     Section 506(c) Claims.  Subject to approval by the Court in the Final Order, no costs or expenses of administration which have been or may be incurred in this Case at any time shall be charged against the DIP Lender or the Prepetition Secured Creditor or the Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

38.     No Marshaling/Applications of Proceeds.  Subject to approval by the Court in the Final Order, neither the DIP Lender nor the Prepetition Secured Creditor shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.

39.     Section 552(b).  Subject to approval by the Court in the Final Order, the DIP Lender and the Prepetition Secured Creditor shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code.  Subject to approval by the Court in the Final Order, the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender or the Prepetition Secured Creditor with respect to proceeds, products, offspring or profits of any of the Collateral.

40.     Discharge Waiver.  The Debtor expressly stipulates, and the Court finds and adjudicates that, none of the DIP Obligations, the DIP Superpriority Claim, the DIP Liens, the Adequate Protection Liens or the Adequate Protection Superpriority Claims shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the DIP Obligations, the Adequate Protection Superpriority Claims and claims secured by the Adequate Protection Liens have been paid in full on or before the effective date of a confirmed plan of reorganization.

41.     Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the right of the DIP Lender, Prepetition Secured Creditor, the Debtor, any Committee, the U.S. Trustee, or any other party in interest to seek any other or supplemental relief in respect of the Debtor, in each case subject to the terms of this Interim Order and applicable law.  The failure of any party to seek relief or otherwise exercise rights and remedies under this Interim

Order, the Prepetition Bond Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of such party.

42.    <u>Binding Effect of Interim Order</u>.  Immediately upon entry by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtor, the Prepetition Secured Creditor, all other creditors of the Debtor, and all parties in interest, subject in all respects to the rights and limitations expressly preserved herein, including paragraph [35].  Any applicable stay is hereby waived and shall not apply to this Interim Order.

43.    <u>No Modification of Interim Order</u>.  The Debtor irrevocably waives the right to seek and shall not seek or consent to, directly or indirectly, without the prior written consent of the DIP Lender, any reversal, modification, stay, vacatur or amendment to this Interim Order.

44.    <u>Interim Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Term Sheet or this Interim Order, the provisions of this Interim Order shall govern and control.

45.    <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order in this Case or any Successor Case.

46.    <u>Objection Deadline</u>: Objections, if any, to the relief sought in the Motion at the Final Hearing shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, and shall be filed and served as provided in MLBR 4001-2(e) so as to be received by such parties and the following parties no later than five (5) days before the Final Hearing:  (a) counsel to the Debtor, Holland & Knight LLP, Attn: John J. Monaghan and Lynne B. Xerras, c/o lynne.xerras@hklaw.com; (b) counsel to the DIP Lender and the Prepetition Secured Creditor, Choate, Hall & Stewart LLP, Attn: Douglas R. Gooding, dgooding@choate.com, and

Jonathan D. Marshall, jmarshall@choate.com, (c) counsel to the U.S. Trustee, and (d) counsel to the Committee, if any.

47.  Final Hearing.  The Final Hearing to consider entry of the Final Order is scheduled for [____], 2026 at [_____], before the Honorable _____, United States Bankruptcy Judge for the District of Massachusetts, _____.

48.  Notice of Final Hearing.  The Debtor shall serve, by first-class mail, postage prepaid, a copy of the Motion and this Interim Order upon:  (i) the U.S. Trustee; (ii) the creditors included on the Debtor's lists of twenty (20) largest unsecured creditors; (iii) counsel to the DIP Lender and the Prepetition Secured Creditor; (iv) all holders of record of liens on the Prepetition Collateral; (v) the Committee, if any; and (vi) all other parties specified in MLBR 4001-2(b).

49.  Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: [_____]
       [_____]

_____
THE HONORABLE [_____]
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

## <u>INITIAL BUDGET</u>

Anna Maria College
13 Week Cash Flow Forecast - Extended to 12/31/26
Draft as of 06/25/2026

| | 1 Week Ending 06/27/26 | 2 Week Ending 07/04/26 | 3 Week Ending 07/11/26 | 4 Week Ending 07/18/26 | 5 Week Ending 07/25/26 | 6 Week Ending 08/01/26 | 7 Week Ending 08/08/26 | 8 Week Ending 08/15/26 | 9 Week Ending 08/22/26 | 10 Week Ending 08/29/26 | 11 Week Ending 09/05/26 | 12 Week Ending 09/12/26 | 13 Week Ending 09/19/26 | Total Forecast (Weeks 1 through 13) | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | | | | | | |
| Land/Asset Sales (Note 2) | | | | | | | | | | | | | | $ - | | | | | $ - |
| Dividend Income | 33,775 | | | | | | | | | | | | | $ 33,775 | | | | | $ 33,775 |
| DIP Loan (Note 1) | | 250,000 | 250,000 | 350,000 | | 250,000 | | | 400,000 | | | | | $ 1,500,000 | 800,000 | 700,000 | | | $ 3,000,000 |
| Tuition, Room, Board | 65,794 | | | | | | | | | | | | | $ 65,794 | | | | | $ 65,794 |
| **Total Income** | $ 99,569 | $ 250,000 | $ 250,000 | $ 350,000 | $ - | $ 250,000 | $ - | $ - | $ 400,000 | $ - | $ - | $ - | $ - | $ 1,599,569 | $ 800,000 | $ 700,000 | $ - | $ - | $ 3,099,569 |
| **Expenses** | | | | | | | | | | | | | | | | | | | |
| Business Insurance Ext. | 2,542 | 83,259 | | | | | | | | | | | | $ 85,801 | 400,000 | | | | $ 485,801 |
| Destruction of Hazardous Waste | | | 20,000 | 25,000 | | 25,000 | | | | | | | | $ 70,000 | | | | | $ 70,000 |
| Office and Miscellaneous Expense | 6,310 | 10,000 | 10,000 | | | | | 10,000 | | | | | | $ 36,310 | | 10,000 | 10,000 | 10,000 | $ 76,310 |
| Professional Fees | 100,000 | | | | 350,000 | | | | 275,000 | | | | | $ 725,000 | 275,000 | 350,000 | 350,000 | 350,000 | $ 2,050,000 |
| Property Maintenance | 600 | 16,000 | 5,000 | 5,000 | 5,000 | 5,000 | 16,000 | 5,000 | 5,000 | 5,000 | 16,000 | 5,000 | 5,000 | $ 93,600 | 5,000 | 25,000 | 25,000 | 25,000 | $ 173,600 |
| Security | 25,000 | | | | 25,000 | | | | | 25,000 | | | | $ 75,000 | | 25,000 | 25,000 | 25,000 | $ 175,000 |
| Storage - Eagle Leasing | | 3,000 | | | | 3,000 | | | | | 3,000 | | | $ 9,000 | 3,000 | | | | $ 12,000 |
| Student Refunds | 4,700 | | | | | | | | | | | | | $ 4,700 | | | | | $ 4,700 |
| Transition Team Payroll | 157,298 | | 43,000 | | 48,500 | | 31,500 | | 18,000 | | 17,500 | | 17,000 | $ 332,798 | 8,500 | 26,000 | 26,000 | 26,000 | $ 419,298 |
| US Trustee Fee | | | 5,000 | | | | | | | | | | | $ 5,000 | | 21,000 | | | $ 26,000 |
| Utilities (including utility deposits) | | | 75,000 | 50,000 | | 50,000 | | | 50,000 | | | | | $ 225,000 | | 50,000 | 75,000 | 75,000 | $ 475,000 |
| DIP Loan Interest | | | | 153 | | | | 6,569 | | | | | 12,833 | $ 19,556 | | 16,439 | 28,417 | 28,417 | $ 92,828 |
| Contingency | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | $ 120,000 | 10,000 | 20,000 | 20,000 | 20,000 | $ 190,000 |
| **Total Expenses** | $ 296,449 | $ 122,259 | $ 168,000 | $ 90,153 | $ 438,500 | $ 90,000 | $ 60,500 | $ 31,569 | $ 358,000 | $ 40,000 | $ 46,500 | $ 15,000 | $ 44,833 | $ 1,801,763 | $ 786,500 | $ 543,439 | $ 559,417 | $ 559,417 | $ 4,250,536 |
| **Net Change** | $ (196,880) | $ 127,741 | $ 82,000 | $ 259,847 | $ (438,500) | $ 160,000 | $ (60,500) | $ (31,569) | $ 42,000 | $ (40,000) | $ (46,500) | $ (15,000) | $ (44,833) | $ (202,194) | $ 13,500 | $ 156,561 | $ (559,417) | $ (559,417) | $ (1,150,967) |
| **Beginning Cash Balance Surplus (Deficit)** | $ 249,892 | $ 53,012 | $ 180,753 | $ 262,753 | $ 522,600 | $ 84,100 | $ 244,100 | $ 183,600 | $ 152,031 | $ 194,031 | $ 154,031 | $ 107,531 | $ 92,531 | $ 249,892 | $ 47,698 | $ 61,198 | $ 217,759 | $ (341,658) | $ 249,892 |
| **Ending Available Cash Surplus (Deficit)** | $ 53,012 | $ 180,753 | $ 262,753 | $ 522,600 | $ 84,100 | $ 244,100 | $ 183,600 | $ 152,031 | $ 194,031 | $ 154,031 | $ 107,531 | $ 92,531 | $ 47,698 | $ 47,698 | $ 61,198 | $ 217,759 | $ (341,658) | $ (901,075) | $ (901,075) |

Note 1: A DIP loan for up to $3M at a rate of SOFR plus 7% has been assumed for purposes of this cash flow forecast.

Note 2: AMC and a regional college continue to work on a proposed transaction in which the regional college would acquire certain assets related to AMC's Nursing program. The transaction still requires approval of MBORN and further due diligence on the part of the regional college. Although there is no certainty of the transaction closing, it is AMC's belief that assuming MBORN were to give its approval, there is a reasonable probability of the transaction closing. Expected proceeds range from $1.1M to $1.3M.

**EXHIBIT B**

**DIP TERM SHEET**

**ANNA MARIA COLLEGE
SENIOR SECURED SUPERPRIORITY
DEBTOR-IN-POSSESSION FINANCING TERM SHEET**

This Senior Secured Superpriority Debtor-in-Possession Financing Term Sheet (including any schedules, annexes and exhibits hereto, as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, this "DIP Term Sheet") describes certain terms and conditions of the senior secured superpriority debtor-in-possession term loan facility (the "DIP Facility") to be provided by the DIP Lender (as defined herein) to The Sisters of Saint Ann d/b/a Anna Maria College, a Massachusetts not-for-profit corporation ("AMC" or the "Borrower"), in connection with the chapter 11 case (the "Chapter 11 Case") filed by AMC in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") pursuant to chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") on June 26, 2026 (the "Petition Date"). This DIP Term Sheet shall constitute legal, valid and binding obligations of each party hereto, and shall be enforceable against each party hereto in accordance with its terms.

This Term Sheet is not an offer for the purchase, sale or subscription or invitation of any offer to buy, sell or to subscribe for any securities.

| | |
|---|---|
| **Borrower:** | AMC (the "Debtor"), in its capacity as debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code. |
| **DIP Lender:** | Citizens Bank, N.A. ("Citizens"), together with its successors and assigns. |
| **DIP Facility:** | The DIP Lender agrees to make a senior secured superpriority debtor in possession loan to the Borrower in a total aggregate principal amount not to exceed $3,000,000 (the "DIP Facility"). The DIP Facility will consist of new money delayed-draw term loans (the "DIP Loans). |
| | A total aggregate amount of $1,000,000 will be available on an interim basis (the "Interim Amount") following entry of the Interim DIP Order (as defined herein). |
| | "DIP Loans" means any and all loans extended under the DIP Facility. |
| | "DIP Obligations" means any and all loans, other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtor to Citizens in its capacity as DIP Lender, including, without limitation, the DIP Loans, and all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Orders, the DIP Facility and this DIP Term Sheet. |
| **Maturity Date:** | The date (the "Maturity Date") which is the earliest to occur of (a) |

| | |
|---|---|
| | October 31, 2026, (b) fourteen (14) days after an order confirming a plan of reorganization for the Debtor is entered by the Bankruptcy Court, (c) the date of consummation of a sale of all or substantially all of the Debtor's assets under Section 363 of the Bankruptcy Code, and (d) the Termination Notice Date. All amounts outstanding under the DIP Facility shall be due and payable in full on the Maturity Date. |
| **Availability:** | The Debtor may request the funding of DIP Loans (each such request a "<u>Funding Request</u>") no more frequently than once weekly with a minimum request amount of $250,000. Funding Requests may only be made in accordance with the Budget. For the avoidance of doubt, the aggregate amount of all Funding Requests may not exceed $1,000,000 during the Interim Period[7] and may not exceed $3,000,000 in total. |
| **Interest Rate:** | Interest will be payable on the unpaid principal amount of the DIP Facility. Interest shall be paid in cash on the first day of each month. <br><br> The "<u>DIP Margin</u>" shall be 7% per annum. <br><br> DIP Loans shall bear interest at the Daily Simple SOFR Rate (as defined in the Prepetition Bond Documents) plus the DIP Margin. |
| **Default Rate:** | Automatically following the occurrence and during the continuance of a Termination Event, all principal, interest and all other amounts in respect of the DIP Facility obligations shall bear interest at a rate equal to 5% per annum in excess of the interest rate set forth under "Interest Rate" above and such default interest shall be payable solely in cash. |
| **Closing Date:** | The closing date of the DIP Facility (the "<u>Closing Date</u>") shall occur within two (2) business days of the entry of the Interim DIP Order and shall be the first business day on which the conditions precedent set forth herein governing the DIP Facility have been satisfied or waived by the DIP Lender. |
| **Mandatory Prepayments:** | Mandatory prepayments of the DIP Loans shall be made in connection with: <br><br> (a)   <u>Asset Dispositions</u>. Immediately upon receipt by the Debtor of net cash proceeds from any asset disposition of DIP Collateral, the Debtor shall prepay the DIP Obligations in an amount equal to 100% of the proceeds so received in excess of the DIP Carve-Out. <br><br> (b)   <u>Incurrence of Indebtedness</u>. Immediately upon the Debtor's |

---

[7] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Interim DIP Order.

| | |
|---|---|
| | receipt of cash proceeds of indebtedness not permitted to be incurred hereunder, Debtor's receipt of any cash proceeds from any issuance or incurrence by the Debtor of Indebtedness, the Debtor shall prepay the DIP Obligations in an amount equal to 100% of such net cash proceeds so received. |
| **Conditions Precedent to Funding:** | The obligations of the DIP Lender to make the loans under the DIP Facility will be subject to satisfaction, or written waiver by the DIP Lender, of each of the following conditions precedent:<br><br>(a) the Debtor shall have timely delivered to the DIP Lender and its advisors the initial Budget (which shall be in form and substance acceptable to the DIP Lender) or any update thereto then required to be delivered in accordance with this DIP Term Sheet and the Interim DIP Order;<br><br>(b) DIP Lender shall in its sole discretion be satisfied with results of all due diligence inquiries;<br><br>(c) with respect to the Interim Amount, an order approving on an interim basis, the DIP Facility, and the DIP Term Sheet (the "Interim DIP Order"), in form and substance satisfactory to the Borrower and DIP Lender, shall have been entered by the Bankruptcy Court (after a hearing on notice to all parties having or asserting a lien on all or any portion of the DIP Collateral) and shall not have been reversed, modified, amended, stayed or vacated, or in the case of any modification or amendment, in any manner without the consent of the DIP Lender, and the Debtor shall be in compliance in all respects with the Interim DIP Order;<br><br>(d) with respect to the balance of the DIP Facility above the Interim Amount, a final order approving the DIP Facility, and the DIP Term Sheet (a "Final DIP Order"; collectively, the Interim DIP Order and Final DIP Order shall be referred to as the "DIP Orders"), in form and substance satisfactory to the Borrower and DIP Lender, shall have been entered by the Bankruptcy Court, which Final DIP Order shall be in full force and effect and shall not have been reversed, vacated or stayed, and shall not have been amended, supplemented or otherwise modified without the prior written consent of the DIP Lender; and the Debtor shall be in compliance in all respects with the DIP Orders;<br><br>(e) no Termination Event shall have occurred and be continuing or shall exist following the entry of the Interim DIP Order and the Debtor shall be in compliance with the DIP Orders;<br><br>(f) the DIP Lender shall have received, or shall receive concurrently |

49

| | |
|---|---|
| | with the funding of the DIP Loans, all fees and other amounts due and payable, including reimbursement or payment of all reasonable and documented out-of-pocket expenses (including reasonable fees, charges and disbursements of counsel) required to be reimbursed or paid by the Debtor, including all reasonable and documented out-of-pocket expenses of counsel to the DIP Lender); and

(g) the Debtor shall be in compliance in all respects with the section below entitled "Milestones." |
| **Milestones:** | "Milestones" in respect of the Chapter 11 Case under the DIP Facility are listed below (as any such time and date may be extended with the written consent of the DIP Lender (which consent may be confirmed via e-mail by counsel on behalf of the DIP Lender)), in each case, subject to Bankruptcy Court availability:

(a) not later than the Petition Date, the Debtor shall have filed a motion in the Bankruptcy Court seeking entry of an order, in form and substance acceptable to the DIP Lender, approving, among other things, bidding procedures for the sale (the "Sale") of all, substantially all, or a portion of the Debtor's assets (the "Bidding Procedures Motion");

(b) not later than three (3) days after the Petition Date the Interim DIP Order shall have been entered;

(c) not later than July 10, 2026, the objection deadline with respect to the Bidding Procedures Motion shall have occurred;

(d) not later than July 13, 2026, an order, in form and substance acceptable to the DIP Lender, approving the Bidding Procedures Motion (the "Bidding Procedures Order") shall have been entered;

(e) the Debtor shall serve and publish notice of the proposed Sale, in accordance with the Bidding Procedures Order, not later than July 17, 2026;

(f) not later than thirty (30) days after the entry of the Interim DIP Order the Final DIP Order shall have been entered;

(g) not later than October 16, 2026, the deadline for submission of bids to purchase any portion of, or all or substantially all of, the Debtor's assets in connection with the Sale shall have occurred;

(h) not later than October 19, 2026, the Debtor shall have distributed all received bids to the DIP Lender; and |

|  | |
|---|---|
|  | (i)      not later than October 20, 2026, an auction held in accordance with the Bidding Procedures Order shall have concluded, <u>provided</u> that this Milestone will not apply if the Debtor does not receive two or more qualified bids for the sale by the bid deadline; and<br><br>(j)      not later than October 30, 2026, the Bankruptcy Court shall have entered an order approving a Sale, in form and substance acceptable to the DIP Lender. |
| **Affirmative Covenants:** | The Debtor will:<br><br>(a)      deliver to the DIP Lender and its counsel for review and comment prior to filing all pleadings, motions and other documents relating to the DIP Facility at least one (1) business day prior to filing of the same, and<br><br>(b)      adhere to the Budget, subject to the Permitted Expense Variance. |
| **DIP Orders Govern:** | To the extent of any conflict or inconsistency between this DIP Term Sheet and any applicable DIP Order, such DIP Order shall govern. |
| **Amendment and Waiver:** | Except as otherwise expressly provided herein or therein, no provision of this DIP Term Sheet, or any DIP Order may be amended other than by an instrument in writing signed by (i) the DIP Lender and (ii) the Debtor. |
| **Assignment:** | DIP Lender shall have the right to make assignments of all or part of the DIP Facility. The parties to each such assignment shall execute and deliver to the DIP Lender an assumption agreement in form and substance acceptable to the DIP Lender. |

51

#540492931_v3