**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br><br>THE SISTERS OF ST. ANN<br>d/b/a ANNA MARIA COLLEGE,<br><br><br>Debtor.[1] | Chapter 11<br><br>Case No. 26-40758 |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR
TO (A) CONTINUE ITS INSURANCE PROGRAM, AND (B) RENEW, SUPPLEMENT,
OR ENTER INTO NEW INSURANCE COVERAGE IN THE ORDINARY COURSE OF
BUSINESS; AND (II) GRANTING RELATED RELIEF**
**(REQUEST FOR EMERGENCY DETERMINATION)**

The Sisters of St. Ann d/b/a Anna Maria College, as debtor and debtor in possession in the

above-captioned chapter 11 case (the "College" or the "Debtor"), hereby moves (the "Motion")

pursuant to sections 105(a),  363(b), 363(c), 503(b), 1107(a) and 1112(b)(4)(C) of title 11 of the

United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and 9013-1 of the Local Bankruptcy Rules of the

United States Bankruptcy Court for the District of Massachusetts (the "MLBR"), for entry of an

order substantially in the form attached as **Exhibit A** (the "Order") (a) authorizing, but not

directing, the Debtor to (i) maintain its Insurance Program (as defined herein) in accordance with

the applicable insurance policies and agreements, and perform under such policies and agreements

during the pendency of the Chapter 11 Case, and (ii) supplement, amend, extend, renew, or replace

its Insurance Policies as needed, in the Debtor's business judgment, without further order of the

---

[1] The last four digits of the Debtor's taxpayer identification number are 2060. The Debtor's address is 50 Sunset Lane, Paxton, MA 01612.

Court, and to pay the Renewal Premiums (defined below) in accordance with the terms of any orders entered by the Court (1) approving the Debtor's entry into any postpetition debtor in possession financing facility and (2) authorizing the Debtor's use of cash collateral (the "Financing Orders"); and (b) granting related relief. In support of the Motion, the Debtor relies upon and incorporates by reference the *Declaration of Dr. Sean J. Ryan in Support of Chapter 11 Petition and First Day Pleadings* (the "First-Day Declaration"), filed contemporaneously herewith, and respectfully states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a), 363(b), 363(c), 503(b), 1107(a) and 1112(b)(4)(C) of the Bankruptcy Code, as complemented by Bankruptcy Rules 6003 and 6004, and MLBR 9013-1.

## BACKGROUND

4. On the date hereof (the "Petition Date"), the Debtor commenced the above-captioned proceeding by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor continues to operate its business and manage its property as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. To date, no creditors' committee has been appointed by the Office of the United States Trustee and no trustee or examiner has been appointed in the Chapter 11 Case.

6. As described in the First-Day Declaration, for the past approximately 80 years, the Debtor operated a private, nonprofit, Catholic institution of higher education known as "Anna Maria College," offering a variety of undergraduate programs that integrated liberal arts education

2

with career preparation and graduate programs that promoted professional achievement and responsibility. The College is situated on an approximately 260-acre residential campus at 50 Sunset Lane, Paxton, Massachusetts, just outside the City of Worcester, Massachusetts ("Campus").

7.      Prior to the Petition Date, the Debtor's board of trustees made the difficult decision to close the College and wind down operations following graduation of the senior class in May 2026 when it became clear that the Debtor's tuition revenue was no longer able to sustain College operations on a go-forward basis. The majority of the Debtor's employees were terminated on June 4, 2026 and paid in full through June 30, 2026, with only a skeletal team in place as of the Petition Date. The Debtor commenced this Chapter 11 Case to facilitate a Court-supervised process for liquidation of the College's assets for the benefit of the Debtor's creditor body.

8.      Additional factual background information about the Debtor, including its business operations, its corporate and capital structures, its restructuring efforts and the events leading to the filing of the Chapter 11 Case, is set forth in detail in the First-Day Declaration.[2]

## DEBTOR'S INSURANCE PROGRAM

### A.      Overview of Insurance Policies and Program, Generally

9.      In connection with the operation of the College and preservation of the Campus, the Debtor maintains various insurance policies providing coverage pertaining to, among other things, commercial property, general liability, umbrella liability, commercial automobile liability, directors' and officers' ("D&O") liability, employment practices liability ("EPL"), crime, and cyber liability (collectively, the "Insurance Policies," and together with all premiums and other

---

[2] All capitalized terms not expressly defined herein shall have the same meaning as ascribed in the First-Day Declaration.

obligations related thereto, including any broker or advisor fees, taxes, surcharges, other fees and deductibles, collectively, the "Insurance Obligations").

10.     The Debtor maintains its Insurance Policies through several different third-party insurance carriers (collectively, the "Insurance Carriers"), as described in more detail below. The Insurance Policies and all related obligations are collectively referred to as the "Insurance Program."  The Insurance Policies are currently procured through the Debtor's insurance broker, Brown & Brown, based in Boston, Massachusetts ("Broker"). The Broker is compensated via commissions assessed from the Insurance Carriers.

**B.      Specific Insurance Policies and Premiums**

**1.      Debtor's Commercial Package Policy, Commercial Auto Policy, and Commercial Umbrella Policy**

11.     Specifically, the Debtor maintains a Commercial Package Policy, a Commercial Auto Policy and a Commercial Umbrella Policy through The Hanover Insurance Group. These policies were originally bound for the policy period from July 1, 2025 to July 1, 2026, expiring effective July 1, 2026.

12.     The Commercial Package Policy provides coverage for the Debtor's campus buildings and related property located at 50 Sunset Lane, Paxton, MA 01612, with a total insured property value of approximately $107,721,685. The Commercial Package Policy includes a blanket property coverage limit of $107,721,685, an equipment breakdown coverage of $100,000,000, with a general deductible of $25,000 and additional coverage for business income and related perils, such as a claims-made Police Policy.  Citizens Bank, N.A. is listed as mortgagee and lender loss payee under the Commercial Package Policy.

13.     The Commercial Auto Policy provides damage and liability coverage for vehicles used in the Debtor's operations; the Commercial Umbrella Policy provides excess liability

coverage of $10 million for claims in excess of underlying policy coverage. The total premium paid for the Commercial Package Policy, Commercial Auto Policy, and Commercial Umbrella Policy was approximately $225,555.00.

**2.      Debtor's D&O/EPL Policy**

14.      The Debtor maintains a Non-Profit Organization Management Liability Policy providing Directors and Officers Liability Insurance, Employment Practices Liability Insurance (including Third Party Liability Coverage), through Landmark American Insurance Company, for the period July 1, 2025 through July 1, 2026.

15.      The D&O/EPL Policy provides an aggregate limit of liability for all coverage sections of $3,000,000, with a Directors and Officers Limit of Liability of $3,000,000, and an Employment Practices Limit of Liability of $3,000,000. The annual premium for the D&O/EPL Policy with applicable taxes and fees was $63,520.12.

**3.      Debtor's Crime Insurance Policy**

16.      The Debtor maintains a Crime Insurance policy through the Hanover Insurance Company, for the policy period July 1, 2025 to July 1, 2026, expiring effective July 1, 2026. The Crime Insurance policy provides coverage for dishonest acts by employees, third-party frauds, and various forms of theft and forgery. The annual premium paid for the Crime Insurance policy was $2,783.00.

**4.      Debtor's Cyber Liability Policy**

17.      The Debtor maintains a Cyber Liability policy through Endurance American Specialty Insurance Company, for the policy period July 1, 2025 to July 1, 2026, expiring effective July 1, 2026. The annual premium paid for the Cyber Liability policy with applicable taxes and fees was $5,205.20.

18.      A detailed summary of the Debtor's Insurance Policies is set forth as **Exhibit B**

attached hereto (the "Insurance Schedule").[3]

### C.  Insurance Policy Renewals.

19.  As stated above with exceptions noted below, each of the Insurance Policies is set to expire effective July 1, 2026, shortly after the Petition Date.

20.  In preparation for filing of the Chapter 11 Case, the Debtor requested that its Broker secure endorsements to each Insurance Policy to extends the claims period of the claims-made Policies for the next several months as the Chapter 11 Case proceeds.

21.  Other than with regard to the D&O Policy, each of the Insurance Policies is set to expire effective July 1, 2026, shortly after the Petition Date. The Debtor has previously secured a two-year Management Liability Run-Off endorsement extending the claims period with regard to the D&O/EPL Policy through July 1, 2028, at a total cost of $78,881.92, paid prior to the Petition Date; a portion of this premium charge was funded by the individual members of the Board. In addition, the Debtor has extended its Cyber Policy through July 1, 2027, with no additional premium due at this time.

22.  In preparation for filing of the Chapter 11 Case, the Debtor requested that its Broker secure endorsements to each other Insurance Policy to ensure that the Debtor is properly insured as the Chapter 11 Case proceeds. As part of this process, the Debtor has procured, through the Broker, renewals or extensions of the coverage period for the Insurance Policies as follows ("Renewals"):

(a)  endorsements extending coverage through October 1, 2026 for the Commercial Package Policy for a total cost of $56,840.00;

(b)  endorsements extending coverage through October 1, 2026 for the Commercial

---

[3] It is possible that certain of the Debtor's Insurance Policies may have been inadvertently omitted from the Insurance Schedule. The Debtor requests authority to continue such Insurance Policies uninterrupted and honor the Insurance Obligations related thereto, regardless of whether the Debtor inadvertently fails to include a particular insurance policy herein.

Umbrella Policy for a total cost of $14,317.00;

(c)      endorsements extending coverage through October 1, 2026 for the Commercial Auto Policy, with the removal of coverage for three vehicles no longer in use by the College's staff, for a total cost of $6,972.00; and

(d)      a renewal of the Fiduciary/Nonprofit Entity Policy through July 1, 2027 for a total premium of $2,316.00.[4]

The total cost associated with the Renewals is approximately **$83,259.00** ("Renewal Premiums").[5]

23.      Based on the limited operations on the Campus, the Debtor made the decision not to renew the Crime Policy.

24.      Through this Motion, the Debtor requests authority, at its discretion and in consultation with the Prepetition Secured Creditor and DIP Lender, to continue to maintain its Insurance Program during the post-petition period, and fund the Renewal Premiums on or about July 1, 2026, with cash on deposit pursuant to terms of any governing Financing Orders.

**BASIS FOR RELIEF**

A.      **Continuation of the Insurance Program Is Necessary for the Continued Protection of the Debtor's Assets.**

25.      Although the Debtor no longer provides academic services on its Campus, the Debtor must continue to maintain its Insurance Policies as protection against risks of property damage, casualty loss, theft, liability claims, employment-related claims, cyber events, and director and officer exposure during the pendency of this Chapter 11 Case. A lapse in insurance coverage postpetition could impair the Debtor's ability to complete its remaining wind-down, sale, and estate-administration activities, expose the estate to significant claims, compromise the

---

[4] The Debtor has previously remitted this amount to the Broker; as of the Petition Date, the Broker was in the process of funding the payments on behalf of the Debtor.

[5] This amount includes $31.00 in current invoice charges associated with the Commercial Auto Policy, consisting of a $25.00 policy late fee and a $6.00 installment fee.

Debtor's ability to attract prospective purchasers, and materially harm students, donors, creditors, regulators and the Debtor's estate.

26. Importantly, the Debtor is required pursuant to the Prepetition Loan Documents as well as the Operating Guidelines and Reporting Requirements for Chapter 11 Cases for Region 1 (the "UST Guidelines") adopted by the Office of the U.S. Trustee to maintain its Insurance Program.

<u>**APPLICABLE AUTHORITY**</u>

**A. The Court Has Authority to Grant the Relief Requested**

27. The Debtor submits that the relief requested is within the "ordinary course" of the Debtor's operations that can be approved pursuant to section 363(c)(1) since the Debtor's business is authorized to be operated under section 1108, providing that "[u]nless the court...orders otherwise, the [debtor-in-possession] may operate the debtor's business." 11 U.S.C. § 1108. Here, the Debtor is not requesting to fund any portion of the Insurance Premiums that accrued during the *prepetition* period; the Renewal Premiums *accrue on or about July 1, 2026* on account of coverage that goes into effect on July 1, 2026. Undeniably, given that the Debtor *must* maintain appropriate insurance coverage in order to operate in chapter 11, the decision to do so is a sound exercise of the Debtor's business judgment that should not be disturbed, even if tested under the standard of section 363(b). *See, e.g.*, *Rosa Dairy Farm, Inc.*, 622 B.R. 806, 813 (B.A.P. 1st Cir. 2020) ("When considering whether to authorize a debtor-in-possession's use, sale or lease of property of the estate, courts usually apply a 'business judgment test' and will approve the motion 'where the debtor has used reasonable business judgment and articulated a business justification for such use.'" (quoting *In re SW Bos. Hotel Venture, LLC*, No. 10-14535-JNF, 2010 WL 3396863, at *3 (Bankr. D. Mass. Aug. 27, 2010))). A debtor has, among other things, a duty to protect and preserve the estate for the benefit of creditors. *See In re Energy Res. Co., Inc.*, 871 F.2d 223, 229 (1st Cir.

1989), *aff'd sub nom. United States v. Energy Res. Co., Inc.*, 495 U.S. 545 (1990) (noting that "the debtor-in-possession . . . must act as a 'fiduciary' for the benefit of the creditor"); *see also In re DN Associates*, 3 F.3d 512, 514 (1st Cir. 1993).

28.     Just as importantly, failure of the Debtor to timely fund payment of the Renewal Premiums gives rise to accrual under section 503(b)(1)(A) of a first-priority administrative claim under section 507(a)(2) for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Payment of the Renewal Premiums, therefore, would be a condition for the effectiveness of any plan of reorganization proposed by the Debtor later in the Chapter 11 Case, under section 1129(a)(9).

29.     With the Prepetition Secured Creditor and DIP Lender having agreed to permit the Debtor to utilize cash on deposit to fund the Renewal Premiums when they become due in accordance with the governing Financing Orders, however, the Debtor submits that the most appropriate approach is to pay the Renewal Premiums as and when due, to ensure that the Debtor's assets are insured while the sale process now underway proceeds to closing.

30.     Accordingly, the Debtor submits that approval of this Motion is a necessary and appropriate method to preserve value for the benefit of all constituents, and requests entry of the Order.

**BANKRUPTCY RULE 6003 HAS BEEN SATISFIED**
**AND BANKRUPTCY RULE 6004 SHOULD BE WAIVED**

31.     The Debtor submits that the facts set forth herein and in the First-Day Declaration demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and, thus, Bankruptcy Rule 6003 has been satisfied. Relief on an emergency basis is necessary to avoid any lapse in coverage or disruption to the Debtor's remaining wind-down, sale, and estate-administration activities at this critical time.

32. Additionally, with respect to any aspect of the relief sought herein that constitutes use of property under section 363(b) of the Bankruptcy Code, including payment of the Renewal Premiums, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a), to the extent not satisfied, and of the fourteen-day stay under Bankruptcy Rule 6004(h).

33. As described above, the relief requested in this Motion is immediately necessary for the Debtor to continue administering this Chapter 11 Case, preserve the value of its estate, and maintain uninterrupted insurance coverage.

## RESERVATION OF RIGHTS

34. Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity, amount, or priority of any claim against the Debtor; (ii) a waiver of the Debtor's rights to dispute any claim; (iii) a promise or requirement to pay any claim; (iv) a waiver of any claim or cause of action of the Debtor that exists against any entity; (v) a ratification or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (vi) a waiver or limitation of the Debtor's rights under the Bankruptcy Code, any other applicable law, or any agreement; or (vii) an admission or concession by the Debtor that any lien acknowledged or satisfied under this Motion is valid, and the Debtor expressly reserves and preserves its rights to contest the extent, validity, or perfection, or seek avoidance of, any such lien.

## NOTICE

35. Notice of the Motion will be provided by electronic mail, the Court's ECF system, regular mail, postage prepaid, or overnight delivery to: (a) the Office of the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) counsel to the DIP Lender and the Prepetition Secured Creditor, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: Douglas R. Gooding and Jonathan D. Marshall, c/o dgooding@choate.com; (d) the Internal Revenue Service; (e) the U.S. Department of Education; (f) the Attorney General for

the Commonwealth of Massachusetts; (g) the New England Commission on Higher Education; (h) the Massachusetts Department of Higher Education; (i) the Insurance Carriers and the Broker; (j) those persons who have formally appeared in the Chapter 11 Case and requested service pursuant to Bankruptcy Rule 2002; and (k) any other party entitled to notice pursuant to MLBR 9013-3(a) (the "Notice Parties").

36.     The Debtor submits that, given the scope of the relief requested, no other notice is required.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A: (i) authorizing the Debtor to (a) maintain the Debtor's existing Insurance Program during the post-petition period; and (b) supplement, amend, extend, renew, or replace its Insurance Policies as needed, in the Debtor's business judgment, and pay the Renewal Premiums without further order of the Court, in accordance with the Financing Orders; and (ii) granting such other and further relief as is requested herein or as the Court otherwise deems necessary or appropriate.

Dated: June 26, 2026

Respectfully submitted,

/s/ *John J. Monaghan*
John J. Monaghan (MA Bar #546454)
Lynne B. Xerras (MA Bar #632441)
Kathleen St. John (MA Bar #681565)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue
Boston, MA  02116
Telephone: (617) 523-2700
Facsimile: (617) 523-6850
E-mail: john.monaghan@hklaw.com
        lynne.xerras@hklaw.com
        kathleen.stjohn@hklaw.com

*Proposed Counsel to the Debtor*