**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br><br>THE SISTERS OF ST. ANN<br>d/b/a ANNA MARIA COLLEGE,<br><br><br><br>Debtor. [1] | Chapter 11<br><br>Case No. 26-40758 |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I)
AUTHORIZING THE DEBTOR TO (A) CONTINUE LIMITED USE OF ITS CASH
MANAGEMENT SYSTEM, (B) OPEN AND USE A NEW DEBTOR-IN-POSSESSION
ACCOUNT, (C) MAINTAIN CERTAIN EXISTING BANK ACCOUNTS FOR LIMITED
PURPOSES AND CLOSE CERTAIN EXISTING BANK ACCOUNTS, AND (D)
CONTINUE USING CERTAIN EXISTING BUSINESS FORMS RELATING TO
RESTRICTED ACCOUNTS; (II) GRANTING A LIMITED WAIVER OF SECTION
345(B) REQUIREMENTS; AND (III) GRANTING RELATED RELIEF
(REQUEST FOR EMERGENCY DETERMINATION)**

The Sisters of St. Ann d/b/a Anna Maria College, as debtor and debtor in possession in the

above-captioned chapter 11 case (the "College" or the "Debtor"), hereby moves (the "Motion")

this Court pursuant to sections 105, 345(b) and 363 of title 11 of the United States Code (the

"Bankruptcy Code"), and  Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for entry of interim and final orders substantially in the forms attached as

**Exhibit A** ("Interim Order") and **Exhibit B** ("Final Order") (i) authorizing, but not directing, the

Debtor to (a) open and use a new debtor-in-possession account in accordance with the U.S. Trustee

Guidelines, (b) continue to operate its existing Cash Management System (as defined below) as

described herein, including authorizing the continued maintenance of certain existing Bank

---

[1] The last four digits of the Debtor's taxpayer identification number are 2060. The Debtor's address is 50 Sunset Lane, Paxton, MA 01612.

Accounts (as defined below) at Banks (as defined below) for the limited purposes described herein, (c) close existing Bank Accounts that are no longer in use or become obsolete, and (d) continue using certain existing Business Forms (as defined below) relating to the Restricted Accounts (defined below); (ii) waiving the requirements of section 345(b) of the Bankruptcy Code to the extent they apply to the Debtor's Restricted Accounts; and (iii) granting related relief. In support of the Motion, the Debtor relies upon and incorporates by reference the *Declaration of Dr. Sean J. Ryan in Support of Chapter 11 Petition and First Day Pleadings* (the "First-Day Declaration"),[2] filed contemporaneously herewith, and respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are Bankruptcy Code Sections 105, 345(b), and 363 and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

4.      On the date hereof (the "Petition Date"), the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 case ("Chapter 11 Case"). The Debtor continues to operate its business and manage its property as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      To date, no creditors' committee has been appointed by the Office of the United States Trustee (the "U.S. Trustee") and no trustee or examiner has been appointed in the Chapter 11 Case.

---

[2] All capitalized terms not expressly defined herein shall have the same meaning as ascribed in the First-Day Declaration.

6.　　As described in the First-Day Declaration, for the past approximately 80 years, the Debtor operated a private, nonprofit, Catholic institution of higher education in Paxton, Massachusetts known as "Anna Maria College," offering members of the local community a variety of undergraduate programs that integrated liberal arts education with career preparation and graduate programs that promoted professional achievement and responsibility.

7.　　Like many small, private, tuition-dependent institutions in New England, the College has faced the "demographic cliff," reflecting a sustained decline in the population of traditional college-age students in the region. That decline and other factors have yielded a five year long steady decrease in enrollment from 1,853 in 2021 to 1,529 in this just completed academic year.  During that same period, its average discount rate increased from 54% to 60%.  Its 2021 net tuition revenues of $19.2 million fell to $14.3 million in fiscal year 2025. As a tuition dependent college, those drops in financial performance led to an inability to meet its obligations as they came due and an attendant default in loan covenants, an increase in trade and other debt delinquencies, unsatisfied obligations to government regulatory administrators of student loan and educational grant programs and inability to meet obligations to faculty and staff without substantial assistance from supportive donors.

8.　　The Debtor's board of trustees made the difficult decision to close the College and wind-down operations following graduation of the senior class in May 2026 when it became clear that the Debtor's tuition revenue is no longer able to sustain College operations on a go-forward basis.  The majority of the Debtor's employees were terminated on June 4, 2026 and paid in full, with only a skeletal team in place as of the Petition Date. The Debtor commenced this Chapter 11 Case to initiate a Court-supervised process for liquidation of the College's assets for the benefit of the Debtor's creditor body.

3

9.      Additional factual background information about the Debtor, including its business operations, its corporate and capital structures, its restructuring efforts and the events leading to the filing of the Chapter 11 Case, is set forth in detail in the First-Day Declaration. [3]

## THE DEBTOR'S CASH MANAGEMENT SYSTEM

10.      In the ordinary course of business, the Debtor maintains a cash management system to collect funds generated by its operations and to disburse funds to satisfy its financial obligations and operational expenses (the "Cash Management System"). The Cash Management System is also used for forecasting and reporting purposes.

11.      For clarity, by filing this Motion, the Debtor recognizes that the relief and postpetition use of the Cash Management System will be subject to limitations imposed by any orders of the Court ("Financing Orders") granting the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Consensual Priming Liens and Providing Superpriority Administrative Expense Status to DIP Lender, (III) Authorizing Consensual Use of Cash Collateral, (IV) Granting Adequate Protection to the Prepetition Secured Creditor, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* and any order entered by the Court approving the Debtor's entry into any postpetition debtor-in-possession financing facility.

## THE DEBTOR'S BANK ACCOUNTS

12.      The Cash Management System is currently comprised, in part, of four accounts maintained with Citizens Bank, N.A. ("Citizens Bank") to manage the Debtor's financial operations (the "Citizens Accounts"). The main operating account (ending 989-3) (the "Operating

---

[3] All capitalized terms not expressly defined herein shall have the same meaning as ascribed in the First-Day Declaration.

Account") serves as the central hub for the Debtor's unrestricted funds from which direct ACH payments to vendors are also processed. Funds are transferred from the Operating Account to a dedicated payroll account (ending 277-5) (the "Payroll Account") on a bi-weekly basis. Similarly, a separate accounts payable account (ending 276-7) (the "AP Account") is funded through daily transfers from the Operating Account to cover checks as they clear.

13.    In addition, the Debtor maintains an account at Citizens Bank that was formerly utilized exclusively to receive Federal grant and loan payments ("Citizens Grant Account") as they were disbursed to the Debtor, which funds were then transferred to the Operating Account. The Citizens Grant Account is no longer in use.

14.    The Debtor separately has an account at Country Bank (ending 7724) (the "Gift Account") that was utilized prior to the Petition Date to receive student cash deposits and to fund the Debtor's petty cash and meal expenses for athletic groups during winter and spring breaks. More recently, the Debtor was required to receive, hold and distribute the proceeds of an anonymous, restricted donation funded with the sole purpose of ensuring that the Debtor had funds on deposit to satisfy accrued wage, paid time off, and benefit obligations that accrued through the June 3, 2026 layoff of the majority of the Debtor's staff. All funds in the Gift Account have been, or will imminently be, utilized.

15.    The Debtor also maintains investment accounts with CW Advisors, LLC through Fidelity ("Fidelity," and together with Citizens Bank and Country Bank, the "Banks") (accounts ending 5130, 2608, and 2570) (the "Investment Accounts," and together with the Grant Account, the "Restricted Accounts," and with the Citizens Accounts, the "Bank Accounts") to hold restricted funds previously donated to the College. The Investment Accounts are managed separately from

the Debtor's other Bank Accounts to ensure that restricted funds are used in accordance with their designated purposes.

16. A list of the Bank Accounts is attached as **Exhibit C**.

17. In the ordinary course of its business, the Debtor is required to pay certain fees to the Banks in connection with administration of the Bank Accounts ("Bank Fees").

## THE DEBTOR'S EXISTING BUSINESS FORMS AND CHECKS

18. As part of the Cash Management System, and in the ordinary course of its business, the Debtor uses a variety of correspondence, preprinted checks, and preprinted business forms (collectively, the "Business Forms").

19. The Debtor will prepare communication materials to be distributed to the various parties with whom it conducts business, which will, among other things, inform such parties of the commencement of this Chapter 11 Case. The Debtor believes that these direct communications will provide adequate notice of the Debtor's status as a "debtor in possession."

20. Further, to the extent the Debtor exhausts its existing supply of Business Forms during this Chapter 11 Case, the Debtor will transition to using Business Forms with the "debtor in possession" designation and corresponding bankruptcy case number.

## RELIEF REQUESTED

21. Through the Motion, and to minimize the expense and burden imposed on the Debtor and its remaining staff, the Debtor requests entry of an Interim Order and a Final Order (i) authorizing, but not directing, the Debtor to (a) open and use a new debtor-in-possession account in accordance with the U.S. Trustee Guidelines, (b) continue to operate its existing Cash Management System on the terms described herein, including the continued maintenance of certain existing Bank Accounts at Banks for the limited purposes described herein, (c) close existing Bank Accounts that are no longer in use or become obsolete, and (d) continue using certain existing

Business Forms relating to the Restricted Accounts; (ii) waiving the requirements of section 345(b) of the Bankruptcy Code to the extent they apply to the Debtor's Restricted Accounts; and (iii) granting related relief.

## BASIS FOR RELIEF REQUESTED

### A.   Maintenance of the Bank Accounts Is Appropriate.

22.   The Office of the U.S. Trustee has established the Operating Guidelines and Reporting Requirements for Chapter 11 Cases (the "Guidelines") that apply to chapter 11 debtors in possession in Region 1. The Guidelines require a chapter 11 debtor to, among other post-filing tasks, close all of its existing bank accounts and open new bank accounts that are designated as "debtor in possession" accounts, or "DIP Accounts." In turn, all money of the bankruptcy estate must be deposited into a DIP Account. One DIP Account must be maintained solely for the purpose of setting aside funds to pay taxes, and another is for cash collateral purposes in accordance with section 363(c)(4) of the Bankruptcy Code. All DIP Accounts must be maintained with financial institutions whose deposits are insured by the Federal Deposit Insurance Corporation ("FDIC"), that are on a list of approved depositaries, and that have executed a Uniform Depository Agreement on request of the Office of the U.S. Trustee.

23.   Relatedly, Section 345(a) of the Bankruptcy Code allows the trustee (or debtor in possession) to "make such deposit or investment of the money of the estate for which such trustee serves as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). However, unless otherwise ordered by the Court, a debtor's ability to maintain and invest estate funds is qualified by section 345(b) of the Bankruptcy Code, which requires a debtor to either maintain all "funds in an account insured or guaranteed by the United States of America (or a department or instrumentality thereof), or secure any uninsured funds with surety bonds and/or governmental securities." 11 U.S.C. § 345(b).

7

A court may, however, relieve a debtor in possession of the restrictions imposed by section 345(b) of the Bankruptcy Code for "cause."

24.     In compliance with the Guidelines, the Debtor and its advisors are presently working with Citizens Bank to open a new "debtor in possession" account ("DIP Account"), to be utilized during the pendency of the Chapter 11 Case for the receipt of funds, and distribution of payments, in compliance with the Budget and any order relating to the DIP Motion. The Debtor is in the process of determining whether it should close all other active Citizens Accounts, particularly those that are no longer in use.

25.     Through this Motion, out of an abundance of caution, the Debtor requests that despite the requirements of the Guidelines and section 345, it be permitted to maintain those of the existing Citizens Accounts that the Debtor and Citizens Bank determine must be maintained to adequately oversee the Cash Management System, *in addition to the DIP Account*, for limited purposes during the pendency of this Case in accordance with any Financing Orders and further orders of the Court. Citizens Bank is an approved depository under the Guidelines, and Citizens Bank has approved use of the Citizens Accounts by the Debtor in connection with any Financing Orders. There should not be any increased risk should the existing Citizens Accounts be maintained for a limited purpose or timeframe, given the prior approval by the Office of the U.S. Trustee of Citizens Bank as an approved depositary bank.

26.     Separately, the Debtor requests that it be able to maintain the Restricted Accounts for the duration of the Case in order to comply with the directives of the donors until such funds are exhausted or transferred to another charity with appropriate authority of the Commonwealth of Massachusetts, Office of the Attorney General.  The funds on deposit in the Restricted Accounts are not property of the Debtor's estate available to fund the Debtor's operating expenses or

distribute to creditors. *See, e.g.*, *In re Parkview Hosp.*, 211 B.R. 619, 641 (Bankr. N.D. Ohio 1997) (holding that a debtor had only legal title to restricted funds, not an equitable interest, and thus the funds were not property of the debtor's bankruptcy estate); *Animal Rescue League of Boston v. Bourne's Assessors*, 310 Mass. 330, 334, 37 N.E.2d 1019, 1022 (1941) (holding that when funds are donated to a charity with specific use restrictions, "the property is held by the corporation not as its own but in its capacity as a trustee and as an instrumentality of the settlor or testator in carrying out his directions in its use of the property."); *see also In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 108 (1st Cir. 2005) ("Charitable gifts are impressed with a kind of quasi-trust, which demands that they be applied to charitable purposes."). Accordingly, the Investment Accounts are beyond the scope of section 345 of the Bankruptcy Code, as well as the Guidelines. Closure of those accounts will not offer any benefit or protection to the Debtor or its estate, but will only increase the burden on the Debtor associated with opening suitable replacement accounts.

27.     Finally, the Debtor requests that it be permitted to close, in consultation with the Prepetition Secured Creditor (as defined in the Financing Orders), Citizens Accounts that are no longer in use as of the Petition Date or that become obsolete postpetition.

28.     The Debtor believes that its proposed continued "use" of the Cash Management System and of the Bank Accounts on the terms described herein is appropriate under section 363(c)(1) of the Bankruptcy Code and the circumstances of this case  - *particularly as the Debtor intends to use the DIP Account to hold and report all funds received or paid during the pendency of this Case*. This System will enable the Debtor to conduct "routine transactions" necessitated by the Cash Management System without unnecessary oversight. *See, e.g.*, *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3d Cir. 1993) (A centralized cash management system "allows efficient utilization of cash resources and

9

recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."). In order to do so, however, the Debtor must be able to pay any associated Bank Fees as they become due in the ordinary course during the postpetition period.

29. The Debtor will work closely with the Banks to ensure that appropriate procedures are in place so that checks issued before the Petition Date will not be honored without approval from this Court. The Debtor will also maintain records of all transfers within the Cash Management System so that all transfers and transactions will be documented in its books and records, including to reflect the Debtor's revenues and expenses, to the same extent such information was maintained by the Debtor prior to the Petition Date.

**B.** **The Debtor's Continued Use of Existing Business Forms Is Appropriate.**

30. The Debtor also requests authority to continue to use all Business Forms relating to the Restricted Accounts, as maintained during the prepetition period, in order to avoid confusion given the inability of the Debtor to access funds in those accounts without donor consent, or without approval of the Attorney General's Office.

31. Based on the limited nature of the Debtor's remaining operations and the established purpose of the Restricted Accounts, the Debtor submits that the limited relief requested is necessary and appropriate and in the best interests of the estate and the donors.

32. Based on the foregoing a, the Debtor submits that the relief requested in the Motion is narrowly tailored, and necessary and appropriate.

**RESERVATION OF RIGHTS**

33. Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (e) otherwise

10

affecting the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to the Motion.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

34.     Certain aspects of the relief requested herein are subject to Bankruptcy Rule 6003, which governs the availability of certain types of relief within 21 days after the Petition Date. Pursuant to Bankruptcy Rule 6003, a court may grant this relief on an expedited basis if it is necessary to avoid immediate and irreparable harm. The Debtor submits that the facts set forth herein and in the First-Day Declaration demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtor, and thus, Bankruptcy Rule 6003 has been satisfied.

35.     With respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a), to the extent not satisfied, and of the fourteen-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtor seeks in this Motion is immediately necessary for the Debtor to be able to continue to operate its business and preserve the value of its estate. The Debtor thus submits that the requested waiver of the notice requirements of Bankruptcy Rule 6004(a) and of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is appropriate.

## NOTICE

36.     Notice of the Motion will be provided by electronic mail, the Court's ECF system, regular mail, postage prepaid, or overnight delivery to: (a) the Office of the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) counsel to the DIP Lender and the Prepetition Secured Creditor, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: Douglas R. Gooding and Jonathan D. Marshall, c/o dgooding@choate.com; (d)

11

the Internal Revenue Service; (e) the U.S. Department of Education; (f) the Attorney General for the Commonwealth of Massachusetts; (g) the New England Commission on Higher Education; (h) the Massachusetts Department of Higher Education; (i) the Banks; (j) those persons who have formally appeared in the Chapter 11 Case and requested service pursuant to Bankruptcy Rule 2002; and (k) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-3(a) (the "Notice Parties").  The Debtor submits that, in light of the nature of the relief requested, no further notice is required.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court: (a) enter an Interim Order and following a final hearing, a Final Order, granting this Motion and the relief requested herein; and (b) grant such other relief as the Court may deem just and proper.

Dated: June 26, 2026                              Respectfully submitted,


/s/ *John J. Monghan*
John J. Monaghan (MA Bar #546454)
Lynne B. Xerras (MA Bar #632441)
Kathleen St. John (MA Bar #681565)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue
Boston, MA  02116
Telephone: (617) 523-2700
Facsimile: (617) 523-6850
E-mail: john.monaghan@hklaw.com
        lynne.xerras@hklaw.com
        kathleen.stjohn@hklaw.com

*Proposed Counsel to the Debtor*

12