**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>THE SISTERS OF ST. ANN<br>d/b/a ANNA MARIA COLLEGE,<br><br><br>Debtor.[1] | Chapter 11<br><br>Case No. 26-40758 |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(A) APPROVING ADEQUATE ASSURANCE PROCEDURES PURSUANT TO 11 U.S.C.
§ 366; (B) PROHIBITING UTILITIES FROM ALTERING, REFUSING OR
DISCONTINUING SERVICES, (C) ESTABLISHING PROCEDURES FOR
ADDITIONAL ADEQUATE ASSURANCE; AND (D) SCHEDULING FINAL HEARING
(REQUEST FOR EMERGENCY DETERMINATION)**

The Sisters of St. Ann d/b/a Anna Maria College, as debtor and debtor in possession in the

above-captioned chapter 11 case (the "College" or the "Debtor"), hereby moves (the "Motion")

pursuant to sections 105 and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

(the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and Rules 6012-1 and 9013-1(f) of the Local Bankruptcy Rules for the

District of Massachusetts ("Local Rules"), for entry of interim and final orders substantially in the

forms attached as **Exhibit B** (the "Interim Order") and **Exhibit C** (the "Final Order," and together

with the Interim Order, the "Orders") (i) approving the Adequate Assurance Procedures (discussed

herein); (ii) prohibiting Utility Providers (defined below) from altering, refusing, or discontinuing

services or discriminating against the Debtor solely on the basis of the commencement of this

---

[1] The last four digits of the Debtor's taxpayer identification number are 2060. The Debtor's address is 50 Sunset Lane, Paxton, MA 01612.

Chapter 11 Case or the Debtor's nonpayment of a debt that accrued prior to the Petition Date; (iii) approving the Additional Assurance Procedures; and (iv) scheduling the Final Hearing (the "Final Hearing"). In support of the Motion, the Debtor relies upon and incorporates by reference the *Declaration of Dr. Sean J. Ryan in Support of Chapter 11 Petition and First Day Pleadings* (the "First-Day Declaration"), filed contemporaneously herewith, and respectfully states as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004 and Local Rules 6012-1 and 9013-1(f).

### BACKGROUND

4.      On the date hereof (the "Petition Date"), the Debtor commenced the above-captioned proceeding by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor continues to operate its business and manage its property as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      To date, no creditors' committee has been appointed by the Office of the United States Trustee (the "U.S. Trustee") and no trustee or examiner has been appointed in the Chapter 11 Case.

6.      As described in the First-Day Declaration, for the past approximately 80 years, the Debtor operated a private, nonprofit, Catholic institution of higher education in Paxton, Massachusetts known as "Anna Maria College," offering its students a variety of undergraduate programs that integrated liberal arts education with career preparation and graduate programs that promoted professional achievement and responsibility.

2

7.      Also as detailed in the First-Day Declaration, the Debtor's board of trustees made the difficult decision to close the College and wind-down operations following graduation of the senior class in May, 2026 when it became clear that the Debtor's tuition revenue is no longer able to sustain College operations on a go-forward basis.  The majority of the Debtor's employees were terminated on June 4, 2026 and paid in full through June 30, 2026, with only a skeletal team in place as of the Petition Date, including the Debtor's President, Dr. Sean Ryan. The Debtor initiated this Chapter 11 Case to initiate a Court-supervised process for liquidation of the College's assets for the benefit of the Debtor's creditor body.

8.      Additional factual background information about the Debtor, including its business operations, its corporate and capital structures, its restructuring efforts and the events leading to the filing of the Chapter 11 Case, is set forth in detail in the First-Day Declaration.[2]

### THE DEBTOR'S UTILITY SERVICES

9.      In the ordinary course of operating the College, the Debtor incurs utility expenses for water, electricity, gas, telephone service, internet service, waste management service and other services (collectively, the "Utility Services") from approximately ten utility providers, identified on **Exhibit A**[3] (the "Utility Providers List" and the entities listed thereon, collectively, the "Utility Providers"). Until the College ceased operating earlier this month, the Debtor incurred costs averaging (based on a twelve-month period) approximately $88,214.00 each month for Utility Services provided by the Utility Providers (collectively, the "Utility Costs").

---

[2] All capitalized terms not expressly defined herein shall have the same meaning as ascribed in the First-Day Declaration.

[3] The Debtor reserves the right, without the need for further order of the Court, to supplement the Utility Providers List if any Utility Provider has been omitted. Procedures to address any Utility Provider that is to be added to the Utility Providers List is addressed herein. Additionally, the listing of an entity on the Utility Providers List is not an admission that such entity is a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtor reserves the right to contest any such characterization in the future.

10. While students and faculty are no longer in attendance at the College, the Debtor will maintain limited staff and operations during the postpetition period, focusing primarily on securing and maintaining the condition and value of the campus and buildings situated thereupon during the pendency of this Chapter 11 Case, as the Debtor's assets are marketed for sale with Court approval. It is critical, therefore, for the Debtor to have uninterrupted access to the Utility Services for the foreseeable future.

### PROPOSED ADEQUATE ASSURANCE

11. The Debtor has budgeted sufficient amounts to pay postpetition obligations that are estimated to become due to the Utility Providers in a timely manner during the postpetition period, with the consent of the Debtor's lender the proposed budget ("Budget") filed in connection with the contemporaneously filed *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Obtain Postpetition Financing, (II) Granting Consensual Priming Liens and Providing Superpriority Administrative Expense Status to DIP Lender, (III) Authorizing Consensual Use of Cash Collateral, (IV) Granting Adequate Protection to Prepetition Secured Creditor, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* ("Financing Motion").

12. In addition, consistent with section 366(c)(1)(A) of the Bankruptcy Code, defining the phrase "assurance of payment" to include, among other things, a cash deposit, the Debtor proposes to set aside funds in the amount of $44,107.00 in the Debtor's operating account at Citizens Bank, N.A. or such other account as is approved by the Court (the "Deposit Account") within five days of entry of the Interim Order,[4] to be held exclusively for and allocated among the

---

[4] As detailed in the pending *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Maintain its Cash Management System and Existing Bank Accounts, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, (D) Granting Limited Waiver of Section 345(b) Requirements and (II) Granting Related Relief* (the "Cash Management Motion").

Utility Providers in the amounts set forth on the Utility Providers List (collectively, the "Adequate Assurance Deposit"), in accordance with the Orders. The Adequate Assurance Deposit may be adjusted by the Debtor to account for the termination of Utility Services by the Debtor or other arrangements reached with the Utility Providers and will not be used for any other purpose not permitted through the Orders.

13.    The Debtor further proposes the following procedures (as described herein, the "Delinquency Procedures") to the extent that the Debtor becomes delinquent with respect to a Utility Provider's account after the Petition Date.  In such event, the impacted Utility Provider will have the ability to file a written notice of delinquency with the Court (a "Delinquency Notice"), to be served on: (i) the Debtor, Sisters of St. Ann d/b/a Anna Maria College, 50 Sunset Lane, Paxton, MA 01612, Attn: Dr. Sean J. Ryan, President; (ii) proposed counsel to the Debtor, Holland & Knight LLP, 10 St. James Avenue, 11th Floor, Boston, MA 02116, Attn.: Lynne B. Xerras, Esq. (lynne.xerras@hklaw.com) (iii) counsel to any statutory committee appointed in this Chapter 11 Case (if one has been appointed); (iv) counsel to Citizens Funding Corp and Citizens Bank, N.A., Douglas Gooding, Esq., Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, dgooding@choate.com;    and    (v)    the    Office    of    the    United    States    Trustee, USTP.Region01@ust.doj.gov (collectively, the "Delinquency Notice Parties"). Such Delinquency Notice must set forth the amount of the delinquency with enough detail for the Debtor and other parties-in-interest to determine the amount owing, by account number, and the dates applicable Utility Services were provided.  If none of the Delinquency Notice Parties have objected to the Delinquency Notice within ten (10) days of receipt, the Debtor will be required to remit to the respective Utility Provider from the Deposit Account the amount of postpetition charges claimed

as delinquent and also replenish the Deposit Account accordingly. Any disputes regarding a Delinquency Notice must be determined through separate court order.

14. Given the circumstances of this Chapter 11 Case, the Debtor submits that the funding of the Adequate Assurance Deposit, in conjunction with the Debtor's ability and commitment to pay for postpetition utility services in the ordinary course of business through cash on deposit, access to cash collateral, and debtor-in-possession financing (collectively, the "Proposed Adequate Assurance," and together with the procedures outlined relating to the Proposed Adequate Assurance, the "Adequate Assurance Procedures"), constitutes adequate assurance to the Utility Providers to satisfy the requirements of section 366 of the Bankruptcy Code.

15. Through this Motion, the Debtor further requests that this Court enter an order adopting the following procedures (the "Additional Assurance Procedures") in the event any Utility Provider makes a request of the Debtor to provide additional adequate assurance ("Additional Assurance") in accordance with Bankruptcy Code section 366(c)(2):

   a. Absent compliance with the Additional Assurance Procedures, no Utility Provider may alter, refuse or discontinue service to or otherwise discriminate against the Debtor on account of the commencement of the Chapter 11 Case or any unpaid prepetition charges, or request payment of a deposit or receipt of other security in connection with any unpaid prepetition charges.

   b. The Debtor will serve copies of the Motion and the Interim Order via overnight mail, within three (3) business days after the date of entry on all Utility Providers identified on the Utility Providers List.

   c. Any Utility Provider desiring Additional Assurance must serve a written request (an "Additional Assurance Request") on: (i) the Debtor, Sisters of St. Ann d/b/a Anna Maria College, 50 Sunset Lane, Paxton, MA 01612, Attn: Dr. Sean J. Ryan, President; (ii) proposed counsel to the Debtor, Holland & Knight LLP, 10 St. James Avenue, 11th Floor, Boston, MA 02116, Attn.: Lynne B. Xerras, Esq. (lynne.xerras@hklaw.com); (iii) counsel to any statutory committee appointed in this Chapter 11 Case (if one has been appointed); (iv) counsel to Citizens Funding Corp and Citizens Bank, N.A., Douglas Gooding, Esq., Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, dgooding@choate.com; and (v) the Office of the United States Trustee, USTP.Region01@ust.doj.gov (collectively,

the "Adequate Assurance Notice Parties") so that it is actually received within fourteen (14) days of the date of the Interim Order (the "Request Deadline").

d.  Any Additional Assurance Request must: (i) set forth the type of Utility Service(s) provided as well as the applicable account number(s); and (ii) include a proposal for what the Utility Provider believes would constitute adequate assurance from the Debtor, along with an explanation as to why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of postpetition payment in light of the circumstances.

e.  Upon the Debtor's receipt of a properly made Adequate Assurance Request, the Debtor shall have fourteen (14) days from receipt to negotiate with the Utility Provider to resolve the Adequate Assurance Request (the "Resolution Period"); provided that such period may be extended by written agreement between the Debtor and the applicable Utility Provider (email being sufficient) without further order of the Court.

f.  The Debtor may, in its discretion and without further order of this Court, (i) resolve any Additional Assurance Request by mutual agreement with the Utility Provider and (ii) in connection with any agreement, provide a Utility Provider with Additional Assurance the Debtor believes is reasonable, including, but not limited to, cash deposits, prepayments, or other forms of security, in accordance with the Budget (as may be amended).  To the extent any Utility Provider receives any other value from the Debtor as adequate assurance of payment, the Debtor may reduce the Adequate Assurance Deposit maintained on account of such Utility Provider by the amount of such other value, provided that there is no dispute regarding postpetition payments for services.

g.  If the Debtor determines, in its sole discretion, that an Adequate Assurance Request is unreasonable, the Debtor shall file a motion pursuant to section 366(c) of the Bankruptcy Code (a "Determination Motion") during or immediately following the expiration of the Resolution Period. The Determination Motion shall seek a determination from the Court that the Adequate Assurance Deposit, plus any additional consideration offered by the Debtor, constitutes sufficient adequate assurance of payment.

h.  During any Resolution Period, and, if applicable, pending the outcome by final order of any Determination Hearing, the relevant Utility Provider shall not discontinue, alter, or refuse service to the Debtor on account of: (i) unpaid charges for prepetition service; (ii) a pending Additional Assurance Request; (iii) any objections filed in response to the Proposed Adequate Assurance or to the Additional Assurance Procedures; or (iv) the commencement of this Chapter 11 Case.

i.  Any Utility Provider that fails to make a timely Additional Assurance Request shall be deemed to have received adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code and shall further be deemed to have waived any right to seek additional adequate assurance during the course of this Case.

7

j.  The Adequate Assurance Deposit for any Utility Provider (including any additional amount deposited upon request of any applicable Utility Provider) will be returned to the Debtor, less any amounts owed on account of unpaid, postpetition Utility Costs, by no later than five (5) business days following the earlier of the date upon which (i) a chapter 11 plan becomes effective after being confirmed in this Chapter 11 Case or (ii) the Debtor provides notice to a Utility Provider that services provided to the Debtor by such Utility Provider will no longer be needed.

16.     The Debtor further requests that this Court schedule the Final Hearing, to be held within twenty-five (25) days after the Petition Date to ensure that if a Utility Provider does not believe that the Adequate Assurance Procedures are appropriate, that Utility Provider is not entitled to unilaterally alter, refuse, or discontinue services to the Debtor until the Debtor has had the ability to propose additional measures of assurance of payment through the Final Order.

17.     In preparing this Motion, the Debtor has made extensive and good faith efforts to identify all Utility Providers providing Utility Services to the Debtor and to include such Utility Providers on the Utility Providers List.

18.     Nonetheless, to the extent that the Debtor subsequently identifies additional Utility Providers or if a Utility Provider begins or ceases to provide Utility Services to the Debtor during the pendency of this Chapter 11 Case, the Debtor seeks authority, in its discretion, to amend the Utility Providers List to add or remove any Utility Provider before or after entry of any interim or final order approving the Motion.  Any such amended Utility Providers List will be filed with the Court.

19.     The Debtor further requests that any order on this Motion be deemed to apply to any subsequently identified Utility Provider, regardless of when such Utility Provider is added to the Utility Providers List.  To the extent the Debtor subsequently identifies any additional Utility Providers that provide Utility Services to the Debtor, the Debtor proposes to add such Utility Provider to the Utility Providers List and to have the terms of the orders with respect to this Motion apply to any such Utility Providers.  The Debtor will promptly serve on any of the subsequently

identified Utility Providers a copy of this Motion and any order entered with respect to the Motion, along with an amended Utility Providers List that includes such Utility Provider.  In addition, the Debtor will deposit an amount equal to two weeks of the Debtor's average cost of utility services in the Deposit Account for the benefit of such Utility Provider. Subsequently added Utility Providers shall be required to make Additional Assurance Requests, if any, in accordance with the Additional Assurance Procedures.

20.     For the avoidance of doubt, the Debtor requests that any order approving this Motion be binding on all Utility Providers, regardless of whether such Utility Provider is presently identified on the Utility Providers List

21.     Finally, the Debtor requests that its obligation to maintain the Adequate Assurance Deposit terminate upon the earlier of: (i) the closing of a sale of all or substantially all of the Debtor's assets; (ii) the effective date of a chapter 11 plan; or (iii) the date the Chapter 11 Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

## APPLICABLE AUTHORITY FOR RELIEF REQUESTED

22.     Section 366 of the Bankruptcy Code prohibits utilities from altering, refusing, or discontinuing services to a debtor solely on account of unpaid prepetition amounts and provides the debtor with a period in which to establish adequate assurance of postpetition payment. *See* 11 U.S.C. §§ 366(a)–(c). Under section 366(b) of the Bankruptcy Code, a debtor must furnish adequate assurance of payment within twenty (20) days after the entry of the order for relief in the form of a deposit or other security for postpetition service. As a result, a utility provider may only alter, refuse, or discontinue utility service if a chapter 11 debtor has *not* provided adequate assurance of payment within thirty (30) days of its bankruptcy filing that is satisfactory to the utility.

23. Congress enacted section 366 of the Bankruptcy Code to balance a debtor's need to avoid utility service interruption after filing for bankruptcy against the utility providers' concerns for non-payment during the postpetition period. *See* H.R. REP. No. 95-595, at 350 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6306; *see also In re Jones*, 369 B.R. 745, 748 (B.A.P. 1st Cir. 2007) ("The purpose of § 366 is 'to prevent the threat of termination from being used to collect pre-petition debts while not forcing the utility to provide services for which it may never be paid.'") (citing *Begley v. Phila. Elec. Co. (In re Begley)*, 760 F.2d 46, 49 (3d Cir. 1985)).

24. Local Rule 6012-1 provides a presumption that the tender of adequate assurance payments for utility services is satisfactory under section 366(c)(2) unless a utility provider provides timely, written notice after receipt of a debtor's tender of adequate assurance.

**A.      The Proposed Adequate Assurance Procedures Are Sufficient.**

25. Courts recognize that "adequate" assurance of performance is not an absolute guarantee of a debtor's ability to pay. *See, e.g., In re Steinebach*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance. . .'[A] Bankruptcy Court is not required to give a utility company the equivalent of a guarantee of payment, but must only determine that the utility is not subject to any unreasonable risk of non-payment for postpetition services.'") (*quoting In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002)); *see also In re Caldor, Inc. NY*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("[Section 366(b)] does not require an 'absolute guarantee of payment.'") (quoting *In re Utica Floor Maint., Inc.*, 25 B.R. 1010, 1013 (N.D.N.Y. 1982)), *aff'd sub nom., Va. Elec. & Power Co. v. Caldor, Inc. NY*, 117 F.3d 646 (2d Cir. 1997).

26. When determining the requisite level of assurance required under section 366, bankruptcy courts typically "focus upon the need of the utility for assurance, and [] require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to

conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (quoting *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming bankruptcy court's ruling that utility deposits were not necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected"). Indeed, "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full." *In re Great Atl. & Pac. Tea Co.*, Case No. 11-CV-1338 (CS), 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (collecting cases).

27.     Here, the Debtor:  a) proposes to fund the Adequate Assurance Deposit following entry of the Interim Order; and b) has also demonstrated that it maintains the ability to pay any postpetition obligations that become due and owing to the Utility Providers from revenue and cash on deposit, as is set forth in the Financing Motion and First-Day Declaration. The proposed amount of each Adequate Assurance Deposit is "adequate," as reflecting the reduced demand for Utility Services going-forward with the cessation of the Debtor's primary operations, appropriately balancing the Debtor's need to maintain its property and conserve cash against the risk faced by the Utility Providers pending plan confirmation.[5] The Adequate Assurance Procedures are reasonable, as they contemplate providing Utility Providers the ability to challenge the adequacy of the Proposed Adequate Assurance along the timeline required of Local Rule 6012-1 and are

---

[5] Courts in this district have found that a deposit equal to fifty percent (50%) of a debtor's estimated monthly utility cost, or two (2) weeks' estimated utilities costs, satisfies the requirements of section 366 of the Bankruptcy Code. *See In re Wachusett Ventures, LLC*, Case No. 18-bk-11053 (FJB) (Bankr. D. Mass. Apr. 23, 2018) [Dkt. No. 190] (approving utility service reserve equal to two weeks of average utility service); *In re N. Berkshire Healthcare, Inc.*, Case No. 11-bk-31114 (EDK) (Bankr. D. Mass. July 7, 2011) [Dkt. No. 117] (same); *In re Heywood Healthcare, Inc.*, Case No. 23-40817 (Bankr. D. Mass Oct. 6, 2023) [Dkt. No. 81] (approving a deposit of an amount equal to approximately half of the debtor's average monthly utility costs).

designed to ensure that each Utility Provider receives adequate assurance within thirty days of the Petition Date.

28.     Accordingly, the Debtor submits that granting the relief requested through this Motion and the Orders is necessary and appropriate.

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED AND BANKRUPTCY RULE 6004 SHOULD BE WAIVED

29.     Certain aspects of the relief requested herein are subject to Bankruptcy Rule 6003, which governs the availability of certain types of relief within 21 days after the Petition Date. Pursuant to Bankruptcy Rule 6003, a court may grant this relief on an expedited basis if it is necessary to avoid immediate and irreparable harm.

30.     The Debtor submits that the facts set forth herein and in the First-Day Declaration demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and, thus, Bankruptcy Rule 6003 has been satisfied. Relief on an emergency basis is necessary to avoid disruption to the Debtor's remaining operations at this critical time, particularly, as the Debtor is in the process of selling its assets.

31.     Additionally, with respect to any aspect of the relief sought herein that constitutes use of property under section 363(b) of the Bankruptcy Code, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a), to the extent not satisfied, and of the fourteen-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtor seeks in this Motion is immediately necessary for the Debtor to be able to continue to operate its business and preserve the value of its estate.

## RESERVATION OF RIGHTS

32.     Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity, amount, or priority of any claim against the Debtor; (ii) a waiver of the Debtor's

rights to dispute any claim; (iii) a promise or requirement to pay any claim; (iv) a waiver of any claim or cause of action of the Debtor that exists against any entity; (v) a ratification or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (vi) a waiver or limitation of the Debtor's rights under the Bankruptcy Code, any other applicable law, or any agreement; or (vii) an admission or concession by the Debtor that any lien acknowledged or satisfied under this Motion is valid, and the Debtor expressly reserves and preserves its rights to contest the extent, validity, or perfection, or seek avoidance of, any such lien.

## NOTICE

33.     Notice of the Motion will be provided by electronic mail, the Court's ECF system, regular  mail, postage prepaid, or overnight delivery to: (a) the Office of the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) counsel to the DIP Lender and the Prepetition Secured Creditor, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: Douglas R. Gooding and Jonathan D. Marshall, c/o dgooding@choate.com; (d) the Internal Revenue Service; (e) the U.S. Department of Education; (f) the Attorney General for the Commonwealth of Massachusetts; (g) the New England Commission on Higher Education; (h) the Massachusetts Department of Higher Education; (i) any party directly impacted by the relief requested in this Motion, as reflected in the Service List; (j) those persons who have formally appeared in the Chapter 11 Case and requested service pursuant to Bankruptcy Rule 2002; and (k) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-3(a) (the "Notice Parties").  The Debtor submits that, in light of the nature of the relief requested, no further notice is required.

WHEREFORE, the Debtor respectfully requests that the Court enter interim and final orders, substantially in the forms attached as **Exhibit B** and **Exhibit C**, granting the relief requested in this Motion, and grant such other relief as is just and proper under the circumstances.

Dated: June 26, 2026                                    Respectfully submitted,


/s/ *John J. Monaghan*_____
John J. Monaghan (MA Bar #546454)
Lynne B. Xerras (MA Bar #632441)
Kathleen St. John (MA Bar #681565)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue
Boston, MA  02116
Telephone: (617) 523-2700
Facsimile: (617) 523-6850
E-mail: john.monaghan@hklaw.com
         lynne.xerras@hklaw.com
         kathleen.stjohn@hklaw.com

*Proposed Counsel to the Debtor*