**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br><br>THE SISTERS OF ST. ANN<br>d/b/a ANNA MARIA COLLEGE,<br><br><br>Debtor.[1] | Chapter 11<br><br>Case No. 26-40758 (EDK) |

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING
RETENTION AND EMPLOYMENT OF HOLLAND & KNIGHT LLP AS GENERAL
BANKRUPTCY COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION**

The Sisters of St. Ann d/b/a Anna Maria College, as debtor and debtor in possession (the "College" or the "Debtor") in the above-captioned chapter 11 case, hereby submits this application (the "Application") for entry of an order substantially in the form attached as Exhibit B hereto (the "Order") authorizing the retention by the Debtor of Holland & Knight LLP ("H&K" or the "Firm") as its outside bankruptcy counsel, on terms described herein, effective as of the Petition Date, under sections 327(a), 328(a), 330, and 1107(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Massachusetts (the "Local Rules"), and granting related relief as described herein. In support of the Application, the Debtor relies upon and incorporates by reference the accompanying *Declaration of John J. Monaghan* (the "Monaghan Declaration"), attached hereto as Exhibit A, as well as the *Declaration of Dr. Sean J. Ryan in Support of Chapter*

---

[1] The last four digits of the Debtor's taxpayer identification number are 2060. The Debtor's address is 50 Sunset Lane, Paxton, MA 01612.

*11 Petition and First Day Pleadings* [ECF No. 9] (the "First Day Declaration"), and respectfully states as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider the Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 327(a), 328(a), 329, and 330 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1.

## FACTUAL BACKGROUND

4.      On June 26, 2026 (the "Petition Date"), the Debtor commenced the above-captioned case (the "Chapter 11 Case") by filing a voluntary chapter 11 petition with the United States Bankruptcy Court for the District of Massachusetts ("Court"). The Debtor continues to operate its business and manage its property as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      To date, no creditors' committee has been appointed by the Office of the United States Trustee (the "U.S. Trustee") and no trustee or examiner has been appointed.

6.      As described in the First-Day Declaration, for the past approximately 80 years, the Debtor operated a private, nonprofit, Catholic institution of higher education known as "Anna Maria College," offering a variety of undergraduate programs that integrated liberal arts education with career preparation and graduate programs that promoted professional achievement and responsibility. The College is situated on an approximately 260-acre residential campus at 50 Sunset Lane, Paxton, Massachusetts, just outside the City of Worcester, Massachusetts ("Campus").

7.      Prior to the Petition Date, the Debtor's board of trustees made the difficult decision to close the College and wind down operations following graduation of the senior class in May 2026 when it became clear that the Debtor's tuition revenue was no longer able to sustain College operations on a go-forward basis. The majority of the Debtor's employees were terminated on June 4, 2026 and paid in full through June 30, 2026, with only a skeletal team in place as of the Petition Date. The Debtor commenced this Chapter 11 Case to facilitate a Court-supervised process for liquidation of the College's assets for the benefit of the Debtor's creditor body.

8.      Additional factual background information about the Debtor, including its business operations, its corporate and capital structures, its restructuring efforts and the events leading to the filing of the Chapter 11 Case, is set forth in detail in the First-Day Declaration.[2]

### **RETENTION OF H&K**

9.       The Debtor first retained H&K in mid-April, 2026 to assist it with evaluating its ability to continue operating the College for the 2025/2026 academic year following the issuance by the Massachusetts Department of Higher Education of a Financial Assessment and Risk Monitoring ("FARM") of public notification stating that it could not confirm that the College had sufficient resources to sustain operations and the increased regulatory uncertainty facing the College.

10.     Around this time, the College's Board of Trustees ("Board") undertook an extensive review of the College's financial condition, and with assistance of H&K as well as the Debtor's financial advisors, Verdolino & Lowey, P.C. ("V&L"), determined that since the College was in a state of "financial exigency" as that term is understood under applicable accreditation standards and academic governance principles, the best course of action for the College's enrolled

---

[2] All capitalized terms not expressly defined herein shall have the same meaning as ascribed in the First-Day Declaration.

students, faculty, staff, creditors, and the public, was to implement an orderly teach-out of enrolled students, cease academic operations following the conclusion of the Spring, 2026 semester, and not accept further student enrollments.  The Board voted to approve this liquidation process on or about April 22, 2026.

11.     Subsequently, on May 8, 2026, the Board also determined that conducting the orderly wind-down of the College through a Section 363 sale process in a chapter 11 with Court oversight would serve to maximize the value of the Debtor's assets, authorizing the filing of this Case, as well as the engagement of H&K as lead restructuring counsel and V&L as financial advisor to the Debtor.

12.     As a result, for the past two and a half months, professionals in various specialty teams at H&K have become intimately familiar with the challenges facing the College and its asset and debt structure, and have been assisting the College with obtaining regulatory approval for various aspects of its wind-down, implementing its teach-out plan, executing reductions in force, maintaining and securing the campus and communicating with state and federal regulators.. H&K's insolvency team members have also been working closely with V&L and the Debtor's President to prepare the College for a chapter 11 filing, negotiating with the Debtor's lender to reach agreement on the high level strategy for marketing of the Debtor's real and personal property assets for sale and also on terms for financing that will enable the Debtor to fund operations through closing of a sale, anticipated for October, 2026.

13.     The Debtor originally selected H&K as its outside counsel due to the Firm's extensive experience in representing dozens of non-profit colleges across more than six states in connection with financial distress, wind-down, mergers, asset disposition and liquidation outside of bankruptcy, frequently alongside professionals at V&L. When the Board decided that the

various financial and regulatory factors facing the College could be best addressed in chapter 11, the College also determined that H&K is best suited to serve as bankruptcy counsel, given both its familiarity with the Debtor's operations and management, as well as extensive experience representing both colleges in distress and for-profit corporate entities as chapter 11 debtor. H&K has proven its commitment to ensure that the College has every opportunity available to it to maximize its value as efficiently as possible, having provided valuable services to the Debtor at a substantially reduced cost, as detailed below.

14.     It is the carefully considered view of the Debtor that, given the circumstances of the Chapter 11 Case as detailed in the First-Day Declaration and the various interests involved, that representation of the Debtor by the Firm is necessary, advisable, and in the best interests of the Debtor and its estate and will promote efficiencies that benefit all parties in interest.

## RELIEF REQUESTED

15.     Accordingly, through this Application, the Debtor respectfully requests entry of an order pursuant to section 327(a) of the Bankruptcy Code, substantially in the form attached hereto as Exhibit B, authorizing it to employ and retain H&K as its restructuring counsel on an hourly basis, effective as of the Petition Date, in this Chapter 11 Case.

16.     Pursuant to Section 327(a) of the Bankruptcy Code, a debtor, subject to Court approval:

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, *that do not hold or represent an interest adverse to the estate*, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a) (emphasis added).

17.     Relatedly, filing an application to retain outside counsel, Bankruptcy Rule 2014(a) requires that a debtor's retention application include:

> specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

See Fed. R. Bank. P. 2014.

18.    As stated above, the Debtor has an urgent need to retain the Firm as its lead bankruptcy counsel and believes that its selection of the Firm is sound and will be beneficial to all constituents as the Case proceeds.

19.    As will be demonstrated below, the remaining factors support retention and employment of H&K under the applicable standard.

### 1.    Scope of Employment

20.    Broadly, the professional services that H&K will render to the Debtor may include, but shall not be limited to, the following:

- a. advising the Debtor with respect to its powers and duties as debtor-in-possession in the continued management and operation of its business;
- b. advising and consulting on the conduct of the Chapter 11 Case, including all of the legal and administrative requirements of operating in chapter 11;
- c. preparing on behalf of the Debtor, as debtor in possession, necessary motions, applications, answers, orders, reports, and other legal papers in connection with the administration of the Debtor's estate and restructuring efforts;
- d. appearing in the Bankruptcy Court and any appellate courts to advocate for and protect the interests of the Debtor throughout the pendency of this Chapter 11 Case;
- e. taking all necessary action to protect and preserve the Debtor's estate, including the prosecution of actions on the Debtor's behalf, the defense of any action commenced against the Debtor in the Bankruptcy Court and assistance, as needed, in defense of actions pending in state and federal courts, negotiations concerning the resolution of litigation in which the Debtor is or may become involved, and objections to claims filed against the Debtor's estate;
- f. negotiating and preparing on the Debtor's behalf a plan of reorganization, disclosure statement, and all related agreements and/or documents, and taking any necessary action on behalf of the Debtor to obtain confirmation of such plan;

g.  representing the Debtor in connection with any required postpetition financing;

h.  advising the Debtor regarding, and assisting with all tasks associated with the consummation of, the sale of the Debtor's assets as a going-concern, or otherwise, upon appropriate Court order;

i.  reviewing and responding to, if appropriate, all pleadings filed in this case;

j.  assisting the Debtor in its selection, retention, and compensation of other professional firms;

k.  representing the Debtor with respect to general corporate and transactional matters as they arise; and

l.  performing all other necessary legal services and providing all other necessary legal advice to the Debtor in connection with this Chapter 11 Case.

2.  **Professional Compensation**

21.  Subject to this Court's approval, and in accordance with 11 U.S.C. § 330(a), Bankruptcy Rule 2014 and Local Rule 2014-1, the Debtor requests that H&K be compensated on an hourly basis and be reimbursed for the actual, necessary expenses it incurs, subject to approval of its compensation at a later point in this case upon properly filed application.

22.  A list of the professionals at H&K currently providing services to the Debtor and anticipated to represent the Debtor during the pendency of this Chapter 11 Case with proposed hourly billing rates is set forth in the Monaghan Declaration.  The Debtor understands that all rates are commensurate with the standard hourly rates charged by H&K to other similarly situated clients and on similar matters, as discounted in furtherance of achieving the College's goals as a non-profit entity at reduced expense.

23.  Moreover, the Debtor, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, proposes to reimburse H&K for its actual and necessary expenses. The Debtor understands that it is the Firm's policy to charge its clients in all areas of practice for expenses incurred in connection with the client's matters. The Firm will charge the Debtor for these expenses in a manner and at rates consistent with charges made generally to the

Firm's other clients and consistent with the Bankruptcy Rules, Local Rules, and orders of the Court.

24. Since its retention in mid-April, 2026 and in accordance with the Engagement Letter, the Debtor has funded three payments to the Firm, as follows: (1) an initial fee payment of $45,000, in advance, to pay the accrued fees for services performed and expenses incurred on behalf of the Debtor on a go forward basis; (2) payment of $50,000 funded on June 4, 2026, with the $95,000 payment applied to attorneys' fees and expense totaling approximately $334,000 incurred through on or about June 10, 2026; and (3) payment of $70,000 funded on June 24, 2026 for attorneys' fees and expenses incurred in connection with chapter 11 preparation, from June 1, 2026 through June 22, 2026 totaling approximately $258,000. H&K had not yet invoiced the Debtor as of the Petition Date for services provided from June 23, 2026 through and including June 25, 2026, informing the Debtor that it will seek payment of these bankruptcy-related fees as part of H&K's initial interim application for compensation ("Filing Preparation Fees"). Other than the Filing Preparation Fees, the Debtor does not owe H&K any amounts for legal services rendered before the Petition Date.

25. As indicated in the Monaghan Declaration, pursuant to Bankruptcy Rule 2016(b), H&K has not shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, counsel and associates of H&K, or (b) any compensation another person or party has received or may receive.

**3.    The Firm Does Not Hold or Represent Any Adverse Interest**

26. It is the Debtor's position that retention of H&K as its counsel is in accordance with the parameters of Bankruptcy Code section 327(a), in that the Firm does not possess any interest materially adverse to the Debtor with regard to the matters upon which it has been retained. In

addition, the Debtor believes that the Firm and its professionals are "disinterested persons" as that term is defined in Section 101(A)(14) of the Bankruptcy Code.

27.     Further, to the best of the Debtor's knowledge, and except as otherwise disclosed in the Monaghan Declaration, the professionals at H&K do not have any connection with the Debtor, its affiliates, creditors, any other party in interest, the U.S. Trustee or any person employed in the office of the same, or any judge in the United States Bankruptcy Court for the District of Massachusetts or any person employed in the offices of the same.

28.     As set forth in greater detail in the Monaghan Declaration, H&K has in the past represented, currently represents, and may in the future represent certain parties in interest in connection with matters other than the Chapter 11 Case or in relation to the Debtor.

29.     In particular, Citizens Bank, National Association ("Citizens") is the Debtor's prepetition lender, and now, source of debtor-in-possession financing. Citizens is a current client of H&K, and other professionals at the Firm that are involved with representation of the Debtor will continue to represent Citizens and its affiliates on loan origination and related matters involving unrelated third-parties. The Firm has received a written conflict waiver from Citizens out of an abundance of caution.

30.     The Debtor submits that this and any other unrelated engagements with parties in interest do not disqualify H&K under Bankruptcy Code section 327(c), since the simultaneous engagement of the Debtor and third-parties does not give rise to an actual conflict of interest. To the extent, however, at some future point that the Firm is determined to have a conflict with respect to a particular client as it relates to this case, H&K will work with the Debtor to select special counsel to provide the representation as necessary to protect the legal interests of the Debtor, as client.

31.     Based on the foregoing, the Debtor requests that the Court approve the retention of H&K as its bankruptcy counsel to represent during the course of this chapter 11 case.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, substantially in the form attached hereto as Exhibit B, authorizing the Debtor to employ and retain H&K as counsel for the Debtor effective as of the Petition Date on the terms described herein, and granting such other further relief as is just and proper.

Dated: July 10, 2026                          Respectfully submitted,

THE SISTERS OF ST. ANN
d/b/a ANNA MARIA COLLEGE,

_____
By:  Sean J. Ryan, EdD.
Its: President