## EXHIBIT A

**Monaghan Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

In re:

THE SISTERS OF ST. ANN
d/b/a ANNA MARIA COLLEGE,

Debtor.[1]

Chapter 11

Case No. 26-40758 (EDK)

**DECLARATION OF JOHN J. MONAGHAN IN SUPPORT OF
DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING
RETENTION AND EMPLOYMENT OF HOLLAND & KNIGHT LLP AS GENERAL
BANKRUPTCY COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION**

I, John J. Monaghan, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that:

1.      I am a partner of the law firm of Holland & Knight LLP ("H&K" or the "Firm")

practicing in H&K's Boston office. I am admitted to practice law in the Commonwealth of

Massachusetts and before the United States District Court for the District of Massachusetts, the

United States District Court for the Southern District of California, the United States District Court

for the Eastern District of Michigan, the United States Court of Appeals for the First Circuit, and

the Supreme Court of the United States. I am a member in good standing in such jurisdictions and

there are no disciplinary proceedings pending against me.

2.      I am over the age of eighteen, am authorized to submit this declaration (the

"Declaration") on H&K's behalf and am competent to testify on the matters contained herein.

Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal

knowledge, information supplied to me by other H&K professionals or paraprofessionals, or

---

[1] The last four digits of the Debtor's taxpayer identification number are 2060. The Debtor's address is 50 Sunset Lane, Paxton, MA 01612.

learned from my review of relevant documents.

3. This Declaration is submitted pursuant to section 327(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Massachusetts ("Local Rules") in support of *Debtor's Application for Entry of an Order Authorizing Retention and Employment of Holland & Knight LLP as General Bankruptcy Counsel for the Debtor and Debtor in Possession* (the "Application"),[2] filed contemporaneously herewith by The Sisters of St. Ann d/b/a Anna Maria College, as debtor and debtor in possession in the above-captioned chapter 11 case (the "College" or the "Debtor").

## H&K'S Qualifications

4. In or about April, 2026, the Debtor retained H&K pursuant to an engagement letter dated April 15, 2026 (the "Engagement Letter")[3] as its outside regulatory and restructuring counsel, eventually requesting that H&K assist it with preparation and filing of the Debtor's Chapter 11 Case as well as serving as lead bankruptcy counsel throughout the pendency of the Debtor's bankruptcy case.

5. H&K has extensive knowledge of the Debtor's capital structure, financing documents, and other material agreements, and is familiar with the Debtor's business affairs and many of the potential legal issues that may arise in the context of this Chapter 11 Case.

6. I and other attorneys at H&K that are involved in advising the Debtor have represented debtors, official committees and trustees, asset purchasers, bank groups, secured

---

[2] Capitalized terms not herein defined shall have the meanings ascribed to them in the Application unless otherwise indicated.
[3] A true and accurate copy of the Engagement Letter will be provided to the Office of the U.S. Trustee.

lenders, unsecured creditors, and other parties in both in-court and out-of-court restructurings, and in related litigation before the U.S. Bankruptcy Courts.

7.     I have personally been involved in the representation of over two dozen financially distressed not-for-profit higher education institutions in more than six states. Those representations have generally been for tuition-dependent financially distressed colleges and universities with limited endowments that projected insufficient liquidity to sustain operations for a period that would enable the institution to confer degrees on all then-existing students. In those representations, H&K's engagement has involved the wind-down, merger or restructuring of the institution or the monetization of its assets. In executing the institution-determined strategy, H&K's representation has included, in addition to the insolvency and transactional issues, compliance with state specific regulatory requirements, region-specific accreditor requirements and United States Department of Education obligations relating to Title IV fund use restrictions, all of which are implicated in this case. Those representations have also involved advice and litigation regarding the fiduciary duties of not-for-profit college cabinet members and trustees and the qualified immunities benefitting unpaid members of the board of trustees.

8.     H&K, or attorneys currently employed by H&K, also have extensive experience representing companies in connection with out-of-court restructuring matters, as well as serving as counsel to chapter 11 debtors, including, among others, approved engagements in the following cases: *In re Ector County Energy Center*, Case No.  22-10230 (JTD)(Bankr. D. Del.); *Approach Resources Inc.,* No. 19-36444 (Bankr. S.D. Tex.); *In re Reed & Barton Corp.,* No. 15-10534 (HJB) (Bankr. D. Mass.); *In re Parallel Energy LP,* No. 15-12263 (KG) (Bankr. D. Del.); *In re Barcalounger Corp*., No. 10-11637-BLS (Bankr. D. Del.); *In re Palm Harbor Homes, Inc.,* No. 10-13850-CSS (Bankr. D. Del.); In re PHH Co.,* No. 10-13850 (CSS) (Bankr. D. Del.); *In re NV

*Broadcasting, LLC,* No. 09-12473 (KG) (Bankr. D. Del.); *In re LaVigne, Inc.*, No. 09-42771 (JBR) (Bankr. D. Mass.); *In re Idleaire Techs. Corp.,* No. 08-10960 (KG) (Bankr. D. Del.); and *In re Far & Wide Travel Corp.,* No. 03-40415-RAM (Bankr. S.D. Fla.).

9.      In addition, given the breadth of the scope of the expertise that H&K professionals have, generally, the Firm will be able to provide additional assistance and advice relating to virtually any non-bankruptcy matter that arises over the course of this Chapter 11 Case, such as in connection with the Debtor's proposed sale transaction, and other regulatory and transactional issues, on an as-needed basis.

10.      Accordingly, I believe that H&K is both well-qualified and able to represent the Debtor in the Chapter 11 Case, and that such representation will contribute to the efficient administration of the Debtor's estate, thereby minimizing expense and facilitating the progress of the Chapter 11 Case for the benefit of all involved.

**Services to Be Rendered**

11.      The Debtor has requested that H&K render the following services in connection with this Chapter 11 Case:

a.   advising the Debtor with respect to its powers and duties as debtor-in-possession in the continued management and operation of its business;

b.   advising and consulting on the conduct of the Chapter 11 Case, including all of the legal and administrative requirements of operating in chapter 11;

c.   preparing on behalf of the Debtor, as debtor in possession, necessary motions, applications, answers, orders, reports, and other legal papers in connection with the administration of the Debtor's estate and restructuring effort;

d.   appearing in the Bankruptcy Court and any appellate courts to advocate for and protect the interests of the Debtor throughout the pendency of this case;

e.   taking all necessary action to protect and preserve the Debtor's estate, including the prosecution of actions on the Debtor's behalf, the defense of any action commenced against the Debtor in the Bankruptcy Court and assistance, as needed, in defense of actions pending in state and federal courts, negotiations concerning the resolution of litigation in which the Debtor is or may become involved, and objections to claims filed against the Debtor's estate;

f. negotiating and preparing on the Debtor's behalf a plan of reorganization, disclosure statement, and all related agreements and/or documents, and taking any necessary action on behalf of the Debtor to obtain confirmation of such plan;

g. representing the Debtor in connection with any required post-petition financing and the use of cash collateral;

h. advising the Debtor regarding, and assisting with all tasks associated with the consummation of the sale of the Debtor's assets as a going-concern, or otherwise, upon appropriate Court order;

i. reviewing, and responding to, if appropriate, all pleadings filed in this case;

j. assisting the Debtor in its selection, retention, and compensation of other professional firms;

k. representing the Debtor with respect to general corporate and transactional matters as they arise; and

l. performing all other necessary legal services and providing all other necessary legal advice to the Debtor in connection with this Chapter 11 Case.

12. The Firm shall use its best efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals in this case.

## Disinterestedness of Professionals

13. H&K is one of the largest law firms in the United States, employing over 2,100 attorneys with multiple offices in the United States and abroad, and with several foreign representative offices.

14. The Firm maintains and updates its conflict check system in the ordinary course of its business. The system includes every matter in which the firm is currently or was previously engaged, including details related to the identity of the client, adverse parties, dates of representation, and the attorney(s) at Holland & Knight with responsibility for the engagement. Before the firm takes on a new engagement, the list of interested parties is run through the conflicts system, and any hits are reviewed by in-house conflicts counsel as well as the attorneys responsible for the engagement. Accordingly, the database is updated for every new matter undertaken by

H&K. The accuracy of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

15.     In preparing this Declaration, H&K used a set of procedures developed to ensure compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules regarding the retention of professionals by a debtor under the Bankruptcy Code (the "Disclosure Procedures") to be performed in order to determine whether the Firm: (i) holds or represents any interests adverse to the estate of the Debtor, (ii) has any connections with the Debtor, its creditors, any other party-in-interest, that could give rise to an interest that is materially adverse to the Debtor or its estate, and (iii) is a "disinterested person" as required pursuant to the Bankruptcy Code and Bankruptcy Rules.  An overview of the Disclosure Procedures is as follows:

    a.  First, the Firm prepared a list of interested parties (the "Interested Parties"), which includes: the Debtor; the Debtor's management and board members, its secured creditors and their respective professionals; the Debtor's twenty (20) largest unsecured creditors; various regulatory and taxing agencies, contract and litigation counterparties; key members of the office for the United States Trustee for Region 1; the judges for the Bankruptcy Court for the District of Massachusetts and members of the Office of the U.S. Trustee for the D their respective counsel. A list of the Interested Parties separated by category is attached hereto as Schedule 1.

    b.  The list of Interested Parties was run through the Firm's electronic conflict database, which is designed to include: (i) every matter for which the firm is now or has been engaged; (ii) the entity by which the firm is now or has been engaged; (iii) the identity of related parties; (iv) the identity of adverse parties; and (v) the attorney in the firm that is knowledgeable about the matter.

    c.  H&K identified any matches between its electronic conflict database and the Interested Parties. To the extent that any Interested Parties were identified as present clients of H&K, the current status of that relationship was ascertained.

    d.  With respect to Interested Parties identified as current clients of H&K, it was confirmed that H&K does not represent the Interested Party with respect to matters involving the Debtor or this Chapter 11 Case.

    e.  The Firm also determined that none of its professionals are creditors of or otherwise hold an interest materially adverse to the Debtor or the Debtor's sole member.

16.     The results of this conflict check were compiled and analyzed by H&K attorneys acting under my supervision. Based on the Disclosure Procedures as conducted to date and

described herein, to the best of my knowledge, the Firm and each of its professionals is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14), and neither I, the Firm, nor its professionals, insofar as I have been able to ascertain, represents any interest adverse to the Debtor, or has any connection with the Debtor, its significant creditors or any other parties-in-interest, or their respective attorneys and accountants, or any person employed in the Office of the United States Trustee, or any bankruptcy judge currently serving on the United States Bankruptcy Court for the District of Massachusetts, except as disclosed or as otherwise described herein.

17.     I am not related, and to the best of my knowledge, no attorney at the Firm is related, to any United States Bankruptcy Judge in District of Massachusetts, the United States Trustee for Region 1, or any assistant United States Trustee in Region 1.

18.     To the best of my knowledge, neither I, the Firm, nor any partner, counsel, or associate thereof, has any connection with the United States Trustee, or any employee of the United States Trustee's Boston, Massachusetts office that gives rise to an adverse interest.

19.     After applying the Disclosure Procedures, to the best of my knowledge and except as otherwise disclosed below, H&K is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, since H&K is not, nor are H&K's partners, counsel or associates:

    a.     creditors, equity security holders, or insiders of the Debtor;

    b.     directors, officers, or employees of the Debtor, presently or within two years before the date of filing of the Debtor's Chapter 11 petition; and

    c.     holding interests materially adverse to the interest of the estate or of any class of creditors or equity security holders.

20.     Although not changing the conclusion that H&K is "disinterested," certain of the Debtor's creditors and other interested parties are current clients, of the Firm, although on matters unrelated to the Debtor, and not materially adverse to the Debtor's estate.

21.     For instance, Citizens Bank, National Association ("Citizens") is the Debtor's

prepetition lender, and now, source of debtor-in-possession financing. Citizens is a current client of H&K, and other professionals at the Firm will continue to represent Citizens and its affiliates on loan origination and related matters involving unrelated third-party clients; the Firm has received a written conflict waiver from Citizens out of an abundance of caution. I do not believe that H&K's past or current representation of Citizens in matters unrelated to the Debtor or the College precludes H&K from being a "disinterested party" under the Bankruptcy Code. In the event that the Debtor and Citizens become directly adverse to one another in an adversary proceeding in the Chapter 11 Case, H&K will work with the Debtor to select special counsel to provide the representation as necessary to protect the legal interests of the Debtor, as client.

22.     Of the remaining Interested Parties, the Firm has determined that its past and present representation of those client-related entities has only been in connection with matters unrelated to the Debtor, the Debtor's affiliates, or the Chapter 11 Case, and that none of the Interested Parties, if a current client, have an interest materially adverse to the Debtor. Insofar as I have been able to ascertain, therefore, H&K has no conflict of interest that would preclude H&K's representation of the Debtor in the Chapter 11 Case. The Firm discloses the following connections between the Firm and the List of Interested Parties:

a)     Certain insurance companies pay the legal bills of H&K clients, including those listed on Schedule 2. None of these insurance companies, however, is an H&K client as a result of the fact that it pays legal fees on behalf of a client of H&K. Also, the Debtor's past insurance broker, RSC Insurance Brokerage, Inc. d/b/a Risk Strategies Company, and Brown & Brown LLC, its affiliate, are current Firm clients, with neither representation relating to the Debtor or its operations;

b)     The Massachusetts Development Finance Agency, the issuer of the bonds relating to the prepetition debt owed by the Debtor to Citizens is a current Firm client on one discrete matter unrelated to the Debtor;

c)     In addition, certain regulatory agencies are adverse parties with regard to several current Firm engagements for clients other than the Debtor;

d)     The Debtor's past health insurance benefit provider, Mass General Brigham Health

Plan Inc. ("MGBHP"), is a current Firm client, as is the former administrator of the Debtor's 401(b) retirement plan, Teachers Insurance and Annuity Association of America ("TIAA"), the Debtor has informed the Firm that it does not believe that MGBHP or TIAA are creditors of the Debtor in this Case;

e)     CW Investment Advisers, LLC, the Debtor's investment advisory firm with regard to its charitable funds, is a current Firm client; the Firm does not advise CW Investment Advisers, LLC on any matters that relate in any way to the Debtor's operations;

f)     Utility providers, Verizon Communications Inc., and Charter Communications and its affiliates, including Spectrum Enterprises, as well as past supplier, HD Supply, are current Firm clients, on matters unrelated to the Debtor;

g)     BSN Sports appears to be affiliated with firm client, Varsity Brands; the Firm does not advise either of those entities on matters that relate in any way to the Debtor's operations; and

h)     RIZE Education is a current client of the Firm, with regard to one discrete matter, which does not involve in any way the Debtor or the College.

23.     From time to time, H&K has referred work to other professionals to be retained in this Chapter 11 Case, and certain such professionals have referred work to H&K.  Also, as part of its practice, H&K appears in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants, and investment bankers, some of whom now or may in the future represent claimants and other parties in interest in this case. For example, I and/or other professionals at H&K have a preexisting professional relationship with professionals at Verdolino & Lowey P.C., having represented common clients on restructuring engagements that are unrelated to this case, with the Firm having served as lead counsel to the client, and V&L serving as financial advisor to the client.  However, H&K does not have any relationship with any such attorneys, accountants, financial consultants, or investment bankers that would be adverse to the Debtor or its estate.

24.     Given the number of attorneys in its various offices, attorneys at H&K may have professional, working or social relationships with firms or professionals at firms that may be adverse to the Debtor.  In addition, certain attorneys at H&K have spouses, parents, children,

siblings, and close acquaintances, who are attorneys at other law firms or companies, or employees of one or more of the Interested Parties. H&K policy precludes the sharing of confidential information regarding its clients to anyone outside of H&K, and that policy will be enforced during the pendency of this case.

25.     H&K will periodically review its files while this Chapter 11 Case is pending to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, H&K will use reasonable efforts to identify such further developments and will promptly file a supplemental affidavit as Bankruptcy Rule 2014(a) requires.

26.     If this Court approves the proposed employment of H&K by the Debtor, H&K will not accept any engagement or perform any service in this case for any entity or person other than the Debtor. H&K may, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtor or parties-in-interest in this Chapter 11 Case; provided, however, H&K will not advise any entity, other than the Debtor, in matters related to this Chapter 11 Case.

27.     H&K submits that none of the representations described herein involve client matters that are materially adverse to the interests of the estate or any class of creditors. Moreover, pursuant to section 327(c) of the Bankruptcy Code, H&K is not disqualified from acting as the Debtor's counsel merely because it represents creditors in unrelated matters.

### Professional Compensation

28.     Subject to this Court's approval, and in accordance with 11 U.S.C. § 330(a), the Federal Rules of Bankruptcy Procedure, Local Rule 2016-1, and any orders of this Court, the

Debtor requests that the Firm be compensated on an hourly basis, and be reimbursed for the actual, necessary expenses it incurs.

29.     Since its retention in mid-April, 2026 and in accordance with the Engagement Letter, the Debtor has funded three payments to the Firm, as follows:  (1) an initial fee payment of $45,000, in advance, to pay the accrued fees for services performed and expenses incurred on behalf of the Debtor on a go forward basis; (2) payment of $50,000 funded on June 4, 2026, with the $95,000 payment applied to attorneys' fees and expense totaling approximately $334,000 incurred through on or about June 10, 2026; and (3) payment of $70,000 funded on June 24, 2026 for attorneys' fees and expenses incurred in connection with chapter 11 preparation, from June 1, 2026 through June 22, 2026 totaling approximately $258,000.  H&K had not yet invoiced the Debtor for services provided from June 23, 2026 through and including June 25, 2026, informing the Debtor that it will seek payment of these bankruptcy-related fees as part of H&K's initial interim application for compensation ("Filing Preparation Fees"). Other than the Filing Preparation Fees, the Debtor does not owe H&K any amounts for legal services rendered before the Petition Date.

30.     During the pendency of this Case, compensation for services and for reasonable costs and expenses shall be paid as approved by this Court, upon application as required by the Bankruptcy Code, Bankruptcy and Local Rules, and any applicable fee guidelines.

31.     H&K will charge its customary hourly rates in effect from time to time, which are consistent with the rates charged by H&K in bankruptcy and non-bankruptcy matters of this type, at the discounted amounts set forth in the Engagement Letter. These hourly rates are subject to periodic adjustment to reflect economic and other conditions. In addition, it is the Firm's policy to charge its clients in all areas of practice for expenses incurred in connection with the client's

matters. The Firm will charge the Debtor for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients and consistent with the Bankruptcy Rules, Local Rules, and orders of the Court. H&K has not received a retainer in connection with its engagement.

32.     H&K operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the Firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

33.     The specific attorneys and paralegals presently designated to represent the Debtor and their current hourly rates are:

| | | |
|---|---|---|
| John J. Monaghan | Partner | $950.00 |
| Paul Lannon | Partner | $910.00 |
| Richard Yanofsky | Partner | $950.00 |
| Lynne B Xerras | Partner | $895.50 |
| Kathleen St. John | Senior Counsel | $765.00 |
| Chris Bailey | Associate | $715.50 |
| Lisa Kim | Associate | $625.50 |
| Morgan L. Allred | Associate | $607.50 |
| Heather C. Montoya | Associate | $607.50 |
| Andrew Silvia | Associate | $765.00 |

34.     H&K further states, pursuant to Bankruptcy Rule 2016(b) and Local Rule 2016-1, that it has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, counsel and associates of H&K, or (b) any compensation another person or party has received or may receive.

35.     I have read the Application of the Debtor accompanying this Declaration for an order approving the retention of H&K, as attorneys, and, to the best of my knowledge, information, and belief, the contents of said Application are true and correct.

36.     I shall amend this statement immediately upon my learning that (A) any of the within representations are incorrect or (B) there is any change of circumstance relating thereto.

37.     I have reviewed the provisions of MLBR 2016-1.

**<u>Reservation of Rights</u>**

38.     Although H&K has taken reasonable steps to ascertain whether past and current clients are creditors of the Debtor, affiliated with the Debtor, or are otherwise parties-in-interest, the Firm's analysis is ongoing. Accordingly, H&K reserves the right to supplement this Declaration as appropriate and necessary.

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information, and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

Signed this 10th day of June, 2026 at Boston, Massachusetts.

John J. Monaghan
Partner

## SCHEDULE 1

### LIST OF POTENTIAL PARTIES IN INTEREST

THE SISTERS OF SAINT ANN d/b/a ANNA MARIA COLLEGE
LIST OF POTENTIAL PARTIES IN INTEREST

Debtor:

The Sisters of Saint Ann d/b/a Anna Maria College

Non-Debtor Affiliated Non-Profit:

The Community of the Sisters of Saint Anne

Directors, Officers and Other Management:

Members of the Debtor's Former and Current Board of Trustees and past management

Lender:

Citizens Funding Corp.
Citizens Bank, National Association
Massachusetts Development Finance Agency

*Depositary Banks*:

Citizens Bank, N.A.
CW Advisors, LLC
Country Bank
Gateway Financial Partners

*Proposed DIP Lender*:

See "Lenders."

Regulatory and Taxing Agencies:

Internal Revenue Service
U.S. Environmental Protection Agency
U.S. Dept. of Education
Massachusetts Dept. of Higher Education
Massachusetts Dept. of Revenue
Massachusetts Dept. of Environmental Protection
Massachusetts Dept. of Unemployment Assistance
Massachusetts Dept. of Public Health
Massachusetts Office of the Attorney General
Massachusetts Board of Registration in Nursing
MassHire Department of Career Services
Town of Paxton

Massachusetts Dept. of Public Health
New England Commission of Higher Education
Accreditation Commission for Education in Nursing, Inc.
American Music Therapy Association
Massachusetts Department of Veterans Services
National Association of Schools of Music
Massachusetts Office of
 Emergency Medical Services
Arkansas Dept. of Finance & Administration
Connecticut Dept. of Revenue Services
Kansas Dept. of Revenue
Michigan Dept. of Treasury
New Jersey Division of Taxation
Rhode Island Division of Taxation
Vermont Department of Taxes
Ohio Department of Taxation
Council on Social Work Education
United States Attorney's Office for the District of Massachusetts
Town of Paxton Fire Dept.

Contract Counter-Parties (Active):

Marlin Leasing Corp.
Xerox/Connecticut Business Systems
Waybetter Marketing Inc.
Risepoint, LLC
Charter Communications / Spectrum
Pharos Resources, LLC
Automatic Laundry Services Company, Inc.
Town of Paxton
Spectrum Enterprise/Charter Communications
Wiley edu, LLC
John Wiley & Sons, Inc.
Karin Ciance
James Bidwell
Connecticut Business Systems, LLC
Judith LeDoux
David McCauley
Sean Ryan
Chioma Ugochukwu

Employee Benefits:

TIAA-CREF
University Health Plans
Paycom

Mass General Brigham Health Plan Inc.
Altus Dental
Reliance Standard Life Insurance
Fidelity Investments

Litigation Parties:

David E. Roy
Elaina M. Roy
David E. Roy, Jr.

Utilities/Local Service Providers:

Paxton Municipal Light Department
RoadRunner Recycling, Inc.
Chemsearch FE
Dileo Gas Inc.
Holden Municipal Light Department
Mohawk Communications LLC
Peterson Oil Service Inc.
Spectrum Enterprise
Charter Communications
Stericycle Inc.
Verizon Wireless
Uniti Solutions Services
City of Worcester

Insurance Providers:

Brown & Brown
Landmark American Insurance Company
RSC Insurance Brokerage, Inc.
The Hanover Insurance Group, Inc.
Citizens Ins. Co. of America
Endurance American Insurance Company

Twenty Largest Creditors:[1]

Automatic Laundry Services Co Inc
Bowdoin Construction
BSN Sports LLC
City of Worcester – Dept. of Conservation and Recreation
Emergency Education Consultants
Flood Fire Pro Inc.
Fun Enterprises Inc.

---

[1] Certain creditors are listed previously and omitted from this Section.

Lyme Green Heat
Meadow Technologies
Risepoint, LLC
Rize Education
Sodexo, Inc
Technolutions, Inc.
Town of Paxton
Town of Paxton Police Dept.
U.S. Department of Education – IHE Program Management
U.S. Department of Education – Oversight Enforcement
Waybetter Marketing Inc
Whitewater Inc
Xerox Financial Services

Professionals retained by Debtors:

Holland & Knight LLP
Verdolino & Lowey, P.C.
Boston Growth Partners
Kelleher & Sadowsky Associates, Inc.

Counsel to Creditors/Third Parties:

Choate, Hall & Stewart LLP
Robins Kaplan LLP
Segal Roitman, LLP
Kelleher & Sadowsky Associates, Inc.

U.S. Trustee for Region 1 and U.S. Trustee's Office (Massachusetts) Key Staff Members:

William K. Harrington, U.S. Trustee

Massachusetts Judges (the Honorable):

Chief Judge Elizabeth D. Katz
Judge Christopher J. Panos
Judge Janet E. Bostwick