**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

|  |  |
|---|---|
| In re:<br><br><br>THE SISTERS OF ST. ANN<br>d/b/a ANNA MARIA COLLEGE,<br><br><br>Debtor.[1] | Chapter 11<br><br>Case No. 26-40758-EDK |

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING**
**RETENTION AND EMPLOYMENT OF KELLEHER & SADOWSKY ASSOCIATES,**
**INC. AS REAL ESTATE BROKER TO THE DEBTOR AND DEBTOR IN POSSESSION**

The Sisters of St. Ann d/b/a Anna Maria College, debtor and debtor in possession  in the

above-captioned chapter 11 case (the "College" or the "Debtor"), hereby submits this application

(the "Application") for entry of an order authorizing the Debtor's retention of Kelleher &

Sadowsky Associates, Inc. ("Kelleher") as exclusive listing agent for the Debtor's real property

and real estate broker to the Debtor, effective as of the Petition Date, on the terms negotiated with

Kelleher as set forth in the Broker Services Agreement (defined below), under sections 327(a) and

328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1, 2016-1, and

6005-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of

Massachusetts (the "Local Rules"), and granting related relief as described herein. In support of

the Application, the Debtor relies upon and incorporates by reference the accompanying

*Declaration of William D. Kelleher IV in Support of Debtor's Application for Entry of an Order*

---

[1] The last four digits of the Debtor's taxpayer identification number are 2060. The Debtor's address is 50 Sunset Lane, Paxton, MA 01612.

*Authorizing Retention and Employment of Kelleher & Sadowsky Associates, Inc. as Real Estate Broker to the Debtor and Debtor in Possession* (the "Kelleher Declaration"), attached hereto as Exhibit A, as well as the *Declaration of Dr. Sean J. Ryan in Support of Chapter 11 Petition and First Day Pleadings* (the "First-Day Declaration"), filed on the Petition Date, and respectfully states as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider the Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1, 2016-1, and 6005-1.

## BACKGROUND

4.  On June 26, 2026 (the "Petition Date"), the Debtor commenced the above-captioned case (the "Chapter 11 Case") by filing a voluntary chapter 11 petition with the United States Bankruptcy Court for the District of Massachusetts ("Court"). The Debtor continues to operate its business and manage its property as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      To date, no creditors' committee has been appointed by the Office of the United States Trustee (the "U.S. Trustee") and no trustee or examiner has been appointed.

6.      As described in the First-Day Declaration, for the past approximately 80 years, the Debtor operated a private, nonprofit, Catholic institution of higher education known as "Anna Maria College," offering a variety of undergraduate programs that integrated liberal arts education with career preparation and graduate programs that promoted professional achievement and

responsibility. The College is situated on an approximately 260-acre residential campus at 50 Sunset Lane, Paxton, Massachusetts, just outside the City of Worcester, Massachusetts ("Campus").

7.      Prior to the Petition Date, the Debtor's board of trustees made the difficult decision to close the College and wind down operations following graduation of the senior class in May 2026 when it became clear that the Debtor's tuition revenue was no longer able to sustain College operations on a go-forward basis. The majority of the Debtor's employees were terminated on June 4, 2026 and paid in full through June 30, 2026, with only a skeletal team in place as of the Petition Date. The Debtor commenced this Chapter 11 Case to facilitate a Court-supervised process for liquidation of the College's assets for the benefit of the Debtor's creditor body.

8.      Additional factual background information about the Debtor, including its business operations, its corporate and capital structures, its restructuring efforts and the events leading to the filing of the Chapter 11 Case, is set forth in detail in the First-Day Declaration.[2]

**THE SALE PROCESS**

9.      As detailed in the First-Day Declaration, the Debtor initiated this Chapter 11 Case with the objective of maximizing value for its estate and creditors through the marketing and sale pursuant to Section 363(b) and Section 363(f) of the Debtor's Campus (the "Real Estate Sale"), consisting of approximately 261.75 acres, including 17 buildings totaling approximately 300,622 square feet of gross building area, the value of which, according to a recent appraisal prepared by BBG, Inc. dated January 7, 2025, has substantial value above the secured debt. In furtherance of this, the Debtor has filed the *Motion for Entry of (I) An Order (A) Approving Sale Procedures in Connection with the Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction*

---

[2] All capitalized terms not expressly defined herein shall have the same meaning as ascribed in the First-Day Declaration.

*and Hearing to Approve the Sale and the Form and Manner of Notice Thereof, and (C) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (D) Granting Related Relief; and (II) An Order (A) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* (the "Sale Motion"), requesting that the Court initially approve marketing and bidding procedures relating to the potential Real Estate Sale or Sales (among other relief), and ultimately, after the conclusion of marketing process and selection of the highest and best bid or combination of bids, enter an order approving the terms of the Real Estate Sales.

10.     At the start of the Real Estate Sale process, the Debtor interviewed several local and national real estate brokerage firms, and after proper diligence and consultation with the Debtor's secured creditor, Citizens Bank, N.A., selected Kelleher & Sadowsky Associates, Inc. as its real estate brokerage firm based on its experience and familiarity with the local area, to market the Campus for sale and lead the Debtor's Real Estate Sale Efforts. The Debtor and Kelleher entered into an Exclusive Right to Sell Agreement dated June 4, 2026 (the "Broker Services Agreement") through which the Debtor retained Kelleher as its exclusive listing agent for an initial 12 month period, which term continues automatically thereafter on a month-to-month basis until terminated in writing by either party upon thirty (30) days' prior written notice to the other. A true and correct copy of the Broker Services Agreement is attached hereto as Exhibit B.

11.     By this Application, the Debtor respectfully requests entry of the Order authorizing it to employ and retain Kelleher as its real estate broker and compensate Kelleher in accordance with the terms and conditions set forth in the Broker Services Agreement.

**Kelleher's Qualifications**

12.     Kelleher is a commercial real estate agency in Worcester, Massachusetts, and it has been recognized by the Boston Business Journal as the highest ranked independent and locally-owned commercial real estate firm in the metro-Boston region and the Commonwealth of Massachusetts.

13.     Kelleher specializes in commercial real estate brokerage in Worcester, Central Massachusetts, the MetroWest region, and beyond. Kelleher's depth of experience in property management, marketing, and brokerage services makes Kelleher uniquely qualified to deal effectively with the issues that may arise in the context of this Chapter 11 Case, and its professionals have extensive experience working with companies from a variety of industries in complex financial restructurings, both out-of-court and in chapter 11 cases.

14.     After interviewing several other firms, the Debtor ultimately determined that Kelleher is not only a qualified and experienced brokerage firm with the resources, capabilities, and experience of Kelleher to assist it in pursuing a Real Estate Sale with respect to the Campus, but Kelleher's professionals have the familiarity with the Campus and its surrounding market, as well as applicable zoning regulations, that render it the most appropriate choice, particularly given the reasonableness of its fee and expense structure, as described below.

**Services to be Rendered**

15.     The Broker Services Agreement provides that Kelleher shall be the Debtor's exclusive broker to arrange the sale or other disposition of the Campus. In that role, Kelleher will work with the Debtor to identify prospective purchasers and other transaction partners, and to market the Campus in a manner that will assist the Debtor to maximize the recovery to the estate, through one sale, or separate sales to individual purchasers, depending on the results of the marketing process.

16.    Under the Broker Services Agreement, in exchange for the Transaction Fee (discussed below and as defined in the Broker Services Agreement), Kelleher has agreed to use commercially reasonable, good faith efforts to sell the Campus and to develop a marketing program that includes the following activities:

a.    Marketing Administration: Kelleher will administer and plan all activities related to the marketing of the Campus, subject at all times to the Debtor's approval.

b.    Follow-Up on Inquiries: Kelleher will conduct a proactive system of following up on all inquiries resulting from mailings, brochures, distributed promotional literature, and telephone calls.

c.    Cooperation with Other Brokers: Kelleher will cooperate with other licensed brokers.

d.    Preparation of Promotional Material: Kelleher will coordinate and assist in the preparation of descriptive promotional material.

e.    Signage: Kelleher will place signage on the Campus to stimulate inquiries, if requested by the Debtor.

f.    Listing on Marketing Platforms: Kelleher will list the Campus with Kelleher & Sadowsky Associates, Inc., RCM, Co-Star, Crexi, and LoopNet to gain local, regional, and national marketing exposure.

17.    The Debtor believes that the offered services will facilitate the sale process underway, as described in the Sale Motion, for the Debtor to obtain the maximum possible price for the Campus, without duplication of the services to be provided by other of the Debtor's professionals.

**Professional Compensation**

18.    In consideration of the services to be provided by Kelleher, and as more fully set forth in the Broker Services Agreement, subject to Court approval, the Debtor has agreed to pay Kelleher in accordance with the following fee structure (the "Transaction Fee Structure"):

a.    Transaction Fee: Consistent with Local Rule 6005-1(b)(1), and in the event the Campus is sold for $10,000,000, or less, Kelleher shall be entitled to be paid a transaction fee (the "Transaction Fee") equal to five percent (5%) of the gross sale

price of the Campus upon the closing of a Sale. In the event the "Listing Brokerage Team" of William D. Kelleher, IV and Drew Higgins are the sole broker of record related to the transaction, the Transaction Fee shall be reduced to four percent (4%) of the gross sale price of the Campus upon the closing of a Sale. In the event the Campus is sold for $10,000,000, or more, Kelleher shall be entitled to be paid a Transaction Fee equal to four percent (4%) of the gross sale price of the Campus upon the closing of a Sale. In the event the "Listing Brokerage Team" of William D. Kelleher, IV and Drew Higgins are the sole broker of record related to the transaction, the Transaction Fee shall be reduced to three percent (3%) of the gross sale price of the Campus upon the closing of a Sale.

b. The Transaction Fee shall be earned, due and payable by the Debtor upon the closing of a Sale; provided, however, that the Transaction Fee shall be payable regardless of when the closing of a Sale occurs so long as (i) a contract for such transaction is executed prior to the Termination Date of the Broker Services Agreement, or (ii) a contract for such transaction is executed with a Qualified Purchaser within twelve (12) months after the Termination Date of the Broker Services Agreement, provided in all events that the closing of a Sale does occur. In no event shall the Transaction Fee exceed $600,000, which shall be considered the "Commission Cap."

c. Consistent with Local Rule 6005-1(b)(3)-(4), and in light of the competitive auction process for the Campus anticipated to be conducted under the Sale Motion, the Debtor discloses that the Transaction Fee will be calculated based on the actual gross sale price achieved at the closing of the Sale ultimately approved by the Court (i.e., the final bid accepted by the Court, and not any earlier or original bid amount). Because Kelleher has been retained as the Debtor's exclusive listing broker for the Campus generally, rather than as the exclusive representative of any single prospective purchaser, the Debtor is not aware of any agreement whereby Kelleher would receive a commission limited to the amount of an unsuccessful original bid in the event that a purchaser identified by Kelleher participates in, but does not prevail in, competitive bidding at an auction.

19. The terms and conditions of the Broker Services Agreement were negotiated at arm's length and in good faith between the Debtor and Kelleher and reflect the mutual agreement as to the substantial efforts that will be required in connection with this engagement.

20. Consistent with Local Rule 6005-1(b)(2), and as set forth in the Kelleher Declaration, Kelleher has no agreement with any other entity to share with such entity any compensation received by Kelleher in connection with the Chapter 11 Case.

**Basis for Relief Requested**

A.      **The Retention of Kelleher under the Terms Described Herein is Appropriate
Under Sections 327(a) and 328(a) of the Bankruptcy Code**

21.     The retention of Kelleher under the terms described herein is appropriate under

sections 327(a), and 328(a) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code

empowers the Debtor, with the Court's approval, to employ professionals "that do not hold or

represent an interest adverse to the estate, and that are disinterested persons, to represent or assist

the [Debtor] in carrying out the [Debtor's] duties under this title." 11 U.S.C. § 327(a).

22.     In addition, the Debtor seeks approval of the Broker Services Agreement pursuant

to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtor "with

the court's approval, may employ or authorize the employment of a professional person under

section 327 . . . on any reasonable terms and conditions of employment, including on a retainer,

on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." Section 328

of the Bankruptcy Code permits the compensation of professionals, including sale and financial

advisors, on more flexible terms that reflect the nature of their services and market conditions.

23.     The Debtor believes that the retention of Kelleher on the terms negotiated through

the Broker Services Agreement is necessary and appropriate given the scope of services to be

provided by Kelleher, as outside broker, and the reasonableness of the Transaction Fee Structure.

B.      **The Transaction Fee Structure is Appropriate and Reasonable and Should be
Approved under Section 328(a) of the Bankruptcy Code**

24.     The Transaction Fee Structure is consistent with Kelleher's normal and customary

billing practices for complex cases and transactions of a similar size, comparable to those generally

charged by brokers of similar stature to Kelleher for comparable engagements in and out-of-court,

and reflects a balance between a fixed, monthly fee, and a contingency amount, which is tied to

the consummation and closing of the transaction and services contemplated in the Broker Services

Agreement. The Debtor believes that the Transaction Fee Structure is both reasonable and market based.

25.     In light of the foregoing and given the numerous issues that Kelleher may be required to address in the performance of its services hereunder, Kelleher's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Kelleher's services for engagements of this nature in both in- and out-of-court contexts, the Debtor believes that the amount of the Transaction Fee is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

26.     The terms and conditions of the Broker Services Agreement were negotiated by the Debtor and Kelleher at arm's length and in good faith.

27.     Accordingly, the Debtor requests that the Court approve the Transaction Fee Structure set forth in the Broker Services Agreement, as may be modified by the order of the Court, and as described below.

### C.     Waiver of Time Entry Detail Requirements is Warranted

28.     Through the Order, the Debtor requests that the Court excuse Kelleher from certain time-keeping and reporting requirements imposed on other professionals retained by a debtor, such as outside counsel.

29.      Specifically, the Debtor respectfully requests that, in lieu of requiring Kelleher to submit monthly, interim, or final fee applications pursuant to sections 330 and 331 of the Bankruptcy Code, the Debtor be required to  (i) disclose the compensation to be paid to Kelleher in connection with any motion to approve a Real Estate Sale;  (ii) and work with Kelleher to file a fee statement calculating and supporting the Transaction Fee that the Debtor proposes to pay to

Kelleher upon closing of a Real Estate Sale or Real Estate Sales within fourteen days of any hearing relating to the Real Estate Sale or Sales at issue.

30.     Local Rule 2016-1(a) provides additional, independent support for this request, as that rule excludes "any broker (other than an investment banker) whose compensation is determined by a commission on the sale price of an asset" from the obligation to file an application for compensation under Fed. R. Bankr. P. 2016. Because Kelleher's compensation under the Broker Services Agreement is a commission based on the sale price of the Campus, Local Rule 2016-1(a) independently supports waiving the fee application requirements of sections 330 and 331 of the Bankruptcy Code as to Kelleher.

31.     Consistent with its ordinary practice and the practice of brokerage firms in other chapter 11 cases whose fee arrangements are typically not hours-based, Kelleher does not ordinarily maintain contemporaneous time records in one-tenth hour increments (similar to those customarily kept by attorneys) or provide or conform to a schedule of hourly rates for its professionals.

32.     Accordingly, the Debtor requests that Kelleher be excused from such requirements. Kelleher will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in this Chapter 11 Case.

**Kelleher's Disinterestedness**

33.     It is the Debtor's position that retention of Kelleher as its real estate broker is in accordance with the parameters of Bankruptcy Code section 327(a), in that Kelleher does not possess any interest materially adverse to the Debtor with regard to the matters upon which it has been retained.

34.     To the best of the Debtor's knowledge, Kelleher is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent an interest materially adverse to the Debtor's estate.

35.     As set forth in further detail in the Kelleher Declaration, Kelleher does not hold or represent an interest adverse to the Debtor or its estate, and Kelleher is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, with respect to the matters for which it is to be retained.

36.     Further, to the best of the Debtor's knowledge, the professionals at Kelleher do not have any connection with the Debtor, its affiliates, creditors, any other party in interest, the U.S. Trustee or any person employed in the office of the same, or any judge in the United States Bankruptcy Court for the District of Massachusetts or any person employed in the offices of the same.

37.     It is possible that Kelleher may have, at one time, provided services to one or more prospective parties to a Real Estate Sale; Kelleher cannot exclude those prospective parties from this process, but will disclose any prior relationship with a prospective purchaser to the Office of the U.S. Trustee, if applicable. In addition, under the Broker Services Agreement, the Debtor acknowledges that Kelleher may represent purchasers, and the Debtor consents to such dual representation, provided that such representation is disclosed to the Debtor prior to submission of any Offer to Purchase. To that end, the Debtor has consented to Kelleher's engagement in this Chapter 11 Case, notwithstanding any past representation of a prospective party to a Sale.

38.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Kelleher's retention are discovered or arise, Kelleher will

use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

39.    The Debtor submits that for all the reasons stated above and in the Kelleher Declaration, the retention and employment of Kelleher is necessary and in the best interests of the Debtor, its estate, and its creditors, and should be approved, effective as of the Petition Date.

WHEREFORE, the Debtor respectfully requests that the Court enter an order authorizing and approving the employment and retention of Kelleher & Sadowsky Associates, Inc. as real estate broker for the Debtor, effective as of Petition Date on the terms of the Broker Services Agreement and as described herein, and granting any other such relief as is just and equitable.

Dated: July 10, 2026                    Respectfully submitted,

THE SISTERS OF ST. ANN
d/b/a ANNA MARIA COLLEGE,

_____
By:  Sean J. Ryan, EdD.
Its: President