**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br><br><br>THE SISTERS OF SAINT ANN<br>d/b/a ANNA MARIA COLLEGE,<br><br><br>Debtor.[1] | Chapter 11<br><br>Case No. 26-40758-EDK |

**MEMORANDUM IN FURTHER SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) CONTINUE LIMITED USE OF ITS CASH MANAGEMENT SYSTEM, (B) OPEN AND USE A NEW DEBTOR-IN-POSSESSION ACCOUNT, (C) MAINTAIN CERTAIN EXISTING BANK ACCOUNTS FOR LIMITED PURPOSES AND CLOSE CERTAIN EXISTING BANK ACCOUNTS, AND (D) CONTINUE USING CERTAIN EXISTING BUSINESS FORMS RELATING TO RESTRICTED ACCOUNTS; (II) GRANTING A LIMITED WAIVER OF SECTION 345(B) REQUIREMENTS; AND (III) GRANTING RELATED RELIEF**

The Sisters of Saint Ann d/b/a Anna Maria College, as debtor and debtor in possession in the above-captioned chapter 11 case (the "College" or the "Debtor"), hereby files this Memorandum in further support of and to supplement the arguments made in the pending *Motion for Entry of Interim and Final Orders (i) Authorizing the Debtor to (a) Continue Limited Use of its Cash Management System, (b) Open and Use a New Debtor-in-Possession Account, (c) Maintain Certain Existing Bank Accounts for Limited Purposes and Close Certain Existing Bank Accounts, and (d) Continue Using Certain Existing Business Forms Relating to Restricted Accounts; (ii) Granting a Limited Waiver of Section 345(b) Requirements; and (iii) Granting Related Relief* [Dkt. No. 16] (the "Cash Management Motion")[2] filed on June 26, 2026 and

---

[1] The last four digits of the Debtor's taxpayer identification number are 2060. The Debtor's address is 50 Sunset Lane, Paxton, MA 01612.

[2] Capitalized terms not defined herein shall have the meanings ascribed in the Cash Management Motion.

scheduled for further interim hearing on Thursday, August 13, 2026 before the United States Bankruptcy Court, District of Massachusetts (J. Katz).  The scheduled hearing is primarily to address the arguments made in the United States Trustee's pending objection to the Cash Management Motion [Dkt. No. 37] ("Objection") as to whether the requirements of section 345(b) of the Bankruptcy Code ("Section 345") apply to donor-restricted endowment  funds held by the College (defined in the Motion as "Donor Restricted Funds"), and if so, whether "cause" exists to grant the Debtor a waiver of those requirements.  In support of this Memorandum, the Debtor incorporates by reference the *Declaration of Dr. Sean J. Ryan in Support of Chapter 11 Petition and First Day Pleadings*, Docket No. 9 (the "First-Day Declaration"), and respectfully states as follows:

### BACKGROUND

1.      As is described in the Cash Management Motion, in the ordinary course of business, the Debtor maintains a cash management system historically used to collect funds generated by its operations and to disburse funds to satisfy its financial obligations and operational expenses as well as for forecasting and reporting purposes. Also as indicated in the Cash Management Motion, the Debtor maintains investment accounts established by its investment advisor, CDW Advisors, LLC, with Fidelity Investments ("Fidelity"), as brokerage firm, to hold and manage donor funds previously donated to the College that are subject to donor-imposed restrictions rendering those funds not accessible to support the College's operations, generally, or to pay the College's financial obligations.

2.      Since the filing of the Cash Management Motion, following entry of the *Motion for Entry of Interim and Final Orders (i) Authorizing the Debtor to (a) Continue Limited Use of its Cash Management System, (b) Open and Use a New Debtor-in-Possession Account, (c) Maintain Certain Existing Bank Accounts for Limited Purposes and Close Certain Existing Bank Accounts,*

*and (d) Continue Using Certain Existing Business Forms Relating to Restricted Accounts; (ii)*
*Granting a Limited Waiver of Section 345(b) Requirements; and (iii) Granting Related Relief* [Dkt.
No. 48] ("Interim Order"), and in accordance with the Guidelines and Section 345, the Debtor has:
a) opened a debtor-in-possession account at Citizens Bank, N.A. ("Citizens"), and b) closed all
Bank Accounts, *other than the accounts maintained at Fidelity Investments ("Fidelity") that hold*
*the Donor Restricted Funds*.

3.      The Debtor is seeking entry of a further interim order and ultimately, entry of a
final order providing that, to the extent Section 345 is applicable to the Restricted Accounts, the
requirements of Section 345 are waived so that the Debtor may continue to maintain the Restricted
Accounts at Fidelity pending donor-directed or Massachusetts Attorney General agreed and
Massachusetts Supreme Judicial Court approved charitable repurposing of the funds held in the
Restricted Accounts in accordance with Massachusetts law and requirements.

4.      Through the Objection, the U.S. Trustee opposed the Debtor's request to maintain
the Restricted Accounts at Fidelity, a financial institution that is not on the U.S. Trustee's list of
approved depositary banks, urging that whatever interest the Debtor holds, be it legal or equitable,
would be best protected from risk of loss if the Restricted Accounts were liquidated and funded in
a separate, newly opened, DIP account at an approved institution. The U.S. Trustee insists that the
Debtor has failed to meet its burden to waive the requirements of Section 345(b) under the standard
set by the holding in *In re Service Merchandise Co., Inc.*, 240 B.R. 894 (Bankr. M.D. Tenn. 1999).

5.      At the initial hearing held regarding the Cash Management Motion on July 1, 2026,
the Debtor stated its view that, given the nature of the Restricted Funds, it is prohibited by the
Uniform Prudent Management of Institutional Funds Act ("UPMIFA"), codified at M.G.L. c.
180A, sec. 1 et seq., and its fiduciary obligations as a charitable organization from invading the

3

Restricted Funds for any use contrary to donor restrictions, and especially from putting those funds at risk of being available to satisfy creditor claims.

6.      Since filing the Opposition and entry of the Interim Order, the Debtor has been in communication with counsel to the U.S. Trustee in an effort to narrow the areas of dispute, having provided account statements that demonstrate that the Restricted Accounts were opened in 2004, and that the investments have realized collective gains of no less than $1.2 million since that date.[3] The Debtor has also communicated with counsel to the AGO, who indicated that the AGO takes the position that donor restricted funds are not property of the charitable organization available to support the charity, generally, and as a result, not property of that organization's bankruptcy estate subject to being used to satisfy the debtor-charity's debt obligations.

7.      Not surprisingly, this is not the first time that a not-for-profit charitable organization debtor finds itself in a position of balancing its fiduciary duties to maximize return to its creditors and its fiduciary duty to abide by donor directives and invest and hold their donated funds in accordance with the prudent investment requirements of UPMIFA. Perhaps almost equally as unsurprising, decisional law is nearly uniform, including First Circuit Court of Appeals precedent, in the view that the donor-imposed restrictions dictate the administration of restricted endowment funds, and filing a bankruptcy petition does not relieve a debtor from its UPMIFA-provided obligations with respect to those donor restrictions.

I.      <u>The Donor-Restricted Accounts Do Not Hold Estate Property</u>.

8.      As set forth in the Cash Management Motion as well as the Debtor's Schedules of Assets and Liabilities, the Debtor maintains three accounts at Fidelity holding investments and cash assets of the Petition Date of approximately $878,342, constituting the Debtor's Restricted

---

[3] During these discussions, counsel to the U.S. Trustee agreed to permit the Debtor to file its response to the Objection to through and including August 6, 2026.

Accounts. These Restricted Accounts hold investments sourced by funds donated by third-party individuals or entities to the College with specific donor-established restrictions as to use of the funds; the College accepted such funds subject to those restrictions.

9.      Records filed by the College with the AGO as charitable organization demonstrate that:  in any given fiscal year, the College solicited charitable funds, grants and donations, including through an outside professional solicitor, and that the Debtor carefully reported the amount received each year in for contributions, gifts, grants, as well as accounting for donor restricted funds and their use. For instance, audited financial statements and federal tax filings filed with the AGO list the value of donor restricted funds separate and apart from unrestricted assets, such as the following, for Fiscal year ending June 30, 2024:

| | | | | |
|---|---|---|---|---|
| Total liabilities | 25,410,446 | - | 25,410,446 | 24,106,796 |
| Net assets | | | | |
| Without donor restrictions | 11,611,172 | - | 11,611,172 | 14,947,855 |
| With donor restrictions | - | 4,395,037 | 4,395,037 | 4,445,335 |
| Total net assets | 11,611,172 | 4,395,037 | 16,006,209 | 19,393,190 |

10.     The notes to the Debtor's 2024 audited financial statements, filed with the AGO, explain:

> Net assets with donor restrictions - Net assets with donor restrictions are resources that are restricted by a donor for use for a particular purpose or in a particular future period. Some donor-imposed restrictions are temporary in nature, and the restriction will expire when the resources are used in accordance with the donor's instructions or when the stipulated time has passed. Other donor-imposed restrictions are perpetual in nature; the College must continue to use the resources in accordance with the donor's instructions. The College's unspent contributions are included in this class if the donor limited their use, as are its donor restricted endowment funds.

*See,* The Sisters of Saint Ann filings with the AGO, maintained at: https://masscharities.my.site.com/FilingSearch/s/.

11.     While the Debtor's outside advisors are still in the process of assembling the historical records that contain original copies of the agreements that established each endowment comprising the Restricted Accounts, a review of the Debtor's records to date indicates that the Restricted Accounts contain restricted funds received from as many as 100 separate donors, other than governmental grants previously applied to student accounts, expressly required to be used to, for instance, fund scholarships for students enrolled at the College, as well as to support various programs offered by the College, such as the Athletics Department and Library, and at one point until expended, capital improvement projects around the Campus.

12.     There should be no doubt that no matter the identity of the donors, the donations and endowments that the College received with donor restrictions constitute "institutional funds" of a charitable organization subject to the requirements of UPMIFA and M.G.L. c. 180A, §§ 1-9. This law provides that, in addition to complying with the duty of loyalty imposed by law, "each person responsible for managing and investing an institutional fund shall manage and invest the fund in good faith and with the care that an ordinarily prudent person in a like position would exercise under similar circumstances." M.G.L. c. 180A, § 2(b). Section 3 of UPMIFA further imposes the statutory obligation to adhere to donor restrictions in using or investing endowment funds, stating:

> *Subject to the intent of a donor expressed in the gift instrument*, an institution may appropriate for expenditure or accumulate so much of an endowment fund as the institution determines is prudent for the uses, benefits, purposes and duration for which the endowment fund is established. Unless stated otherwise in the gift instrument, *the assets in an endowment fund shall be donor-restricted assets until appropriated for expenditure by the institution*.

c. 180A, § 3 (emphasis added). Pursuant to UPMIFA Section 5, it is only if the donor provides consent that a restriction can be released, *without appropriate court order*.

13.     Administration of the UPMIFA constraints on use of restricted endowments and institutional funds is within the AGO's statutory mandate to "enforce the due application of funds given or appropriated to public charities within the commonwealth and prevent breaches of trust in the administration thereof." M.G.L. c. 12, § 8.[4] As the AGO has explained in a recent publication, "Donor-restricted endowment funds are an important, perpetual source of support for charities and their missions; t**hey are not available for unlimited discretionary spending.**" *See,* https://www.mass.gov/doc/endowment-guidance-revised-2025/download (emphasis added).  The AGO is a necessary party to a charity's request for judicial relief to modify charitable restrictions.

14.     Just as importantly for present purposes, the funds on deposit in the Restricted Accounts *are Institutional Funds subject to UPMIFA* that are *not* property of the Debtor's estate available to fund the Debtor's operating expenses or distribute to creditors. The Court of Appeals for the First Circuit has made clear that donor-restricted investments, even under the control of a chapter 11 debtor, constitute property in which the Debtor at-best holds bare legal title for the benefit of another, stating as follows:

> Charitable gifts are impressed with a kind of quasi-trust, which demands that they be applied to charitable purposes. *See Hillman v. Roman Catholic Bishop of Fall River*, 24 Mass.App.Ct. 241, 508 N.E.2d 118, 119 n. 3 (1987) ("A gift with a general charitable intent, of course, imposes a trust of a sort in the sense that the grantee may not use the assets for private, personal purposes; the assets must be used for charitable purposes consistent with those of the designated charity."); see also *Brigham v. Peter Bent Brigham Hosp.*, 134 F. 513, 517 (1st Cir.1904) (describing this phenomenon, under Massachusetts law, as "a quasi trust" not "a true trust"); *Smith v. Livermore*, 298 Mass. 223, 10 N.E.2d 117, 125 (1937) (stating

---

[4] This provision generally vests the Attorney General with the exclusive authority to correct abuses in the administration of public charities, including breaches of fiduciary duty by directors or trustees that result in such misuse of charitable assets. *See, e.g., Ames v. Atty. Gen.*, 332 Mass. 246, 250 (1955) ("It is well settled that it is the exclusive function of the Attorney General to correct abuses in the administration of a public charity by the institution of proper proceedings."); *Lopez v. Medford Community Ctr., Inc.*, 384 Mass. 163, 167 (1981)(same);*Garland v. Beverly Hosp. Corp.*, 48 Mass. App. Ct. 913, 914 (1999)("The Legislature has determined that only the Attorney General, on behalf of the general public, has the requisite standing to bring an action alleging the misuse of charitable assets."); *Burbank v. Burbank* 152 Mass. 254, 256, 25 N.E. 427 (1890) (court reiterated the Attorney General's role in protecting the public interest in the administration of public charities).

that gifts to charitable corporations in Massachusetts are considered gifts upon trust for charitable purposes).

*In re Boston Regional Medical Center, Inc.*, 410 F.3d 100, 108 (1st Cir. 2005).

15. The Court of Appeals is not alone in its view that restricted endowment funds fall outside even the broad parameters of Bankruptcy Code section 541. *See, e.g.*, *In re Parkview Hosp.*, 211 B.R. 619, 641 (Bankr. N.D. Ohio 1997) (holding that a debtor had only legal title to restricted funds, not an equitable interest, and thus the funds were not property of the debtor's bankruptcy estate); *In re Bishop College*, 151 B.R. 394 (Bankr. N.D. Tex. 1993) (holding that a bankruptcy estate of a defunct college had no enforceable property interest in charitable trusts established to support charitable educational mission of the college and excluding charitable trust from college's estate); *Animal Rescue League of Boston v. Bourne's Assessors*, 310 Mass. 330, 334, 37 N.E.2d 1019, 1022 (1941) (holding that when funds are donated to a charity with specific use restrictions, "the property is held by the corporation not as its own but in its capacity as a trustee and as an instrumentality of the settlor or testator in carrying out his directions in its use of the property.").

16. The very loan documents evidencing the secured debt of the Prepetition Secured Creditor (as defined in the First-Day Declaration) specifically carved out any donor-restricted endowments and funds from the scope of its collateral, as does the proposed consensual form of Final Order approving the terms of the Debtor's post-petition financing submitted to the Court on August 5, 2026, excepting the liens granted "Donor Restricted Funds" in recognition that the Restricted Accounts are property to be administered in accordance with donor-restrictions and UPMIFA, but are not available for the creditor body.

17. By administering the Restricted Accounts with Fidelity, a leading, reputable, brokerage firm with low risk of financial collapse with coverage for loss available through S.I.P.C.

and for cash reserves, through the F.D.I.C.,[5] in the manner the donors and UPMIFA require, the Debtor is, in all salient respects, complying with the spirit of Section 345(a)'s requirement that a debtor "make such deposit or investment of the money of the estate for which such trustee serves as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). While the Debtor cannot agree to close the Restricted Accounts at this time, as with its Bank Accounts, the Debtor will agree to report all activity relating to the Restricted Accounts within each Monthly Operating Report filed.

18.     For these reasons, the Debtor submits that grounds exist to overrule the Objection, and for entry of a final order granting the Cash Management Motion, on the terms set forth in the Interim Order, expressly carving the Restricted Accounts from the Section 345 requirements; in the alternative, the Debtor has established the necessary "cause" for a limited waiver of the Section 345 protocol.

19.     Granting the limited remaining relief requested through the Cash Management Motion is necessary, and appropriate, to protect all constituents.

WHEREFORE, the Debtor respectfully requests that this Court: (a) enter a Final Order granting the Cash Management Motion, on the terms described herein, following a final hearing, a Final Order, granting this Motion and the relief requested herein, overruling the Objection; and (b) grant such other relief as the Court may deem just and proper.

---

[5] In addition, the Fidelity Accounts hold U.S. Government issued bonds, backed by the full faith and credit of the Federal Government.

Dated: August 6, 2026

Respectfully submitted,

/s/ *John J. Monaghan*
John J. Monaghan (MA Bar #546454)
Lynne B. Xerras (MA Bar #632441)
Kathleen St. John (MA Bar #681565)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue
Boston, MA  02116
Telephone: (617) 523-2700
Facsimile: (617) 523-6850
E-mail: john.monaghan@hklaw.com
        lynne.xerras@hklaw.com
        kathleen.stjohn@hklaw.com

*Counsel to the Debtor*