**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

|  |  |
|---|---|
| In re:<br><br>THE SISTERS OF SAINT ANN<br>d/b/a ANNA MARIA COLLEGE,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 26-40758-EDK |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503
AND 507 (I) APPROVING POSTPETITION FINANCING, (II) GRANTING
LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE
STATUS, (III) AUTHORIZING USE OF CASH COLLATERAL, (IV) GRANTING
ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY,
AND (VI) GRANTING RELATED RELIEF**

THIS MATTER having come before the Court upon the *Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Obtain Postpetition Financing, (II) Granting Consensual Priming Liens and Providing Superpriority Administrative Expense Status to DIP Lender, (III) Authorizing Consensual Use of Cash Collateral, (IV) Granting Adequate Protection to Prepetition Secured Creditor, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Dkt. No. 14] (the "Motion") filed by The Sisters of Saint Ann d/b/a Anna Maria College, a Massachusetts not-for-profit corporation, as a debtor and debtor-in-possession (the "Debtor") in the above-captioned Chapter 11 case (the "Case"), pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of title 11 of the United States Code, (11 U.S.C. §§ 101, *et seq.*, as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of

---

[1] The last four digits of the Debtor's taxpayer identification number are 2060. The Debtor's address is 50 Sunset Lane, Paxton, MA 01612.

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Massachusetts (the "MLBR"), seeking entry of an interim order (the "Interim Order") and final order (this "Final Order" and, together with the Interim Order, the "Orders"), *inter alia*:

(i)     authorizing, under Sections 364(c) and 364(d) of the Bankruptcy Code and Bankruptcy Rule 4001(c), the Debtor to obtain secured, superpriority post-petition loans, advances and other financial accommodations (the "DIP Facility")[2] in the aggregate principal amount of $3,000,000 consisting of new-money delayed-draw term loans (the "DIP Loans") of which up to $1,000,000 of DIP Loans was made available upon entry of the Interim Order, pursuant to the terms and conditions of that certain Senior Secured Superpriority Debtor-In-Possession Financing Term Sheet attached to the Interim Order as **Exhibit B** (the "DIP Term Sheet"), by and among (a) the Debtor and (b) Citizens Bank, N.A. as Lender (the "DIP Lender");

(ii)     authorizing the Debtor to execute and deliver the DIP Term Sheet and to perform such other acts as may be necessary or desirable in connection with the DIP Term Sheet, the Interim Order, and this Final Order;

(iii)     granting allowed superpriority administrative expense claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in the Case and any Successor Case (as defined herein) to all DIP Obligations (as defined in the DIP Term Sheet), subject to the priorities set forth herein;

(iv)     authorizing the Debtor to use "Cash Collateral," as defined in Section 363(a) of the Bankruptcy Code (the "Cash Collateral"), that the Debtor is holding or may obtain, pursuant to Bankruptcy Code Section 361 and 363 and Bankruptcy Rules 4001(b) and 6004;

(v)     providing adequate protection to the Prepetition Secured Creditor (as defined herein) to the extent set forth herein;

(vi)     granting the DIP Lender priming, senior-secured, valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens on (collectively, the "DIP Liens") the DIP Collateral (as defined herein), subject to the terms of this Final Order and the DIP Term Sheet;

(vii)     waiving any applicable stay and provisions for immediate effectiveness of this Final Order;

(viii)     vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order; and

(ix)     granting related relief.

---

[2] For clarity, certain capitalized terms not defined herein shall have the meanings ascribed in the DIP Motion, Docket No. 14.

2

The Court having considered (i) the Motion and the exhibits referenced therein or attached thereto, (ii) the *Declaration of Dr. Sean J. Ryan in Support of Chapter 11 Petition and First Day Pleadings* [Dkt. No. 9], (iii) the *Supplemental Declaration of Dr. Sean J. Ryan in Support of Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Obtain Postpetition Financing, (II) Granting Consensual Priming Liens and Providing Superpriority Administrative Expense Status to DIP Lender, (III) Authorizing Consensual Use of Cash Collateral, (IV) Granting Adequate Protection to Prepetition Secured Creditor, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Dkt. No. 38], (iv) a hearing having been held on July 1, 2026 (the "Interim Hearing") and August [6], 2026 (the "Final Hearing" and together with the Interim Hearing, the "Hearings") regarding the relief requested in the Motion, and upon consideration of the records of the Hearings; and notice of the Hearings having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014, and Local Rule 4001-2; and all objections, if any, to the interim relief requested in the Motion having been withdrawn or resolved pursuant to the terms of this Final Order; and it appearing to the Court that granting the relief requested is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors, and is essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE HEARINGS BY THE DEBTOR, INCLUDING THE SUBMISSIONS OF DECLARATIONS, THE FACTS IN THE MOTION AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW: [3]

---

[3] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

A.  *Petition Date*.  On June 26, 2026, (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts (the "Court") commencing this Case.

B.  *Debtor in Possession*.  The Debtor is continuing in the management and operation of its business and its real and personal property as debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Case.

C.  *Jurisdiction and Venue*.  This Court has jurisdiction over the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for this Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.  *Committee Formation*.  On July 16, 2026, the United States Trustee Region One (the "U.S. Trustee") appointed an official committee of unsecured creditors in this Case pursuant to Section 1102 of the Bankruptcy Code (the "Committee").

E.  *Debtor's Stipulations*.  The Debtor after reasonable inquiry, and without prejudice to the rights of the Committee, and other parties in interest as set forth in paragraph 35 herein, admits, stipulates, acknowledges and agrees that (collectively, paragraphs E(i) through E(ix) below are referred to herein as the "Debtor's Stipulations"):

(i)  *Prepetition Bond Documents*.  As of the Petition Date, the Debtor was indebted to the Prepetition Secured Creditor pursuant to that certain $24,500,000 original aggregate principal amount Massachusetts Development Finance Agency Revenue Bond, Anna Maria College Issue, Series 2017, dated as of November 30, 2017, reissued on November 8, 2018, and amended as of June 20, 2023 (as amended and restated, the "Bonds"), purchased by Citizens Funding Corp., a New Hampshire corporation (the "Purchaser"), with the proceeds of the Bonds lent to the Debtor by Citizens Bank, N.A., a national banking association, as disbursing agent (the "Disbursing Agent" and, together with the Purchaser, collectively, the "Prepetition Secured Creditor").  The terms and conditions of the Bonds, and the relationship among the Prepetition Secured Creditor, the Massachusetts Development Finance Agency (the "Issuer"), and the Debtor, are governed by, among other things:

(a)    That certain Loan and Security Agreement dated as of November 1, 2017, by and among the Issuer, the Prepetition Secured Creditor, and the Debtor, as amended by that certain First Amendment to Loan and Security Agreement dated November 8, 2018, and as further amended by that certain Second Supplemental Loan and Security Agreement dated June 20, 2023 and effective as of July 3, 2023 (as amended, the "LSA");

(b)    That certain Continuing Covenants Agreement dated as of November 30, 2017 by and between the Purchaser and the Debtor, as amended by that certain Amendment to Continuing Covenants Agreement and Related Documents dated as of November 8, 2018, and as further amended by that certain Second Amendment to Continuing Covenants Agreement and Related Documents dated September 30, 2024 (as amended, the "Continuing Covenants Agreement");

(c)    That certain Security Agreement (All Assets) dated November 30, 2017 by the Debtor in favor of the Disbursing Agent, for itself and as agent for the Purchaser (the "Security Agreement");

(d)    That certain Mortgage, Security Agreement and Fixture Filing, dated as of November 30, 2017 (the "Original Mortgage") by the Debtor in favor of the Prepetition Secured Creditor, as amended by that certain Amendment No 1 to Mortgage, Security Agreement and Fixture Filing dated as of September 30, 2024 (the "Mortgage Amendment" and, together with the Original Mortgage, the "Mortgage"), which Mortgage encumbers the real property in Paxton, Massachusetts known as 50 Sunset Lane as well as additional parcels off Grove Street, as more fully set forth in the Prepetition Bond Documents (the "Mortgaged Property") and secures the Prepetition Bond Obligations;

(e)    That certain Waiver and Covenant Modification dated as of March 17, 2023 by and between the Disbursing Agent and the Debtor (the "First Waiver");

(f)    That certain Second Waiver and Covenant Modification dated as of December 26, 2023 by and between the Prepetition Secured Creditor and the Debtor, as amended by the Amendment No. 1 to Second Waiver and Covenant Modification dated September 30, 2024 (the "Second Waiver"); and

(g)    That certain Third Waiver of Covenants dated as of December 19, 2024, by and between the Prepetition Secured Creditor and the Debtor (the "Third Waiver" and, together with the Bonds, the LSA, the Security Agreement, the Mortgage, the First Waiver, and the Second Waiver, and along with all other documents executed by the Debtor in connection therewith, collectively, the "Prepetition Bond Documents").

(ii)    *Prepetition Bond Obligations.*   As of the Petition Date, the aggregate outstanding principal amount owed by the Debtor under the Prepetition Bond Documents was not less than $17,734,804.13 subject to final reconciliation and without prejudice to the rights preserved in paragraph 35 herein (together with any interest, fees (including, without limitation, prepayment fees), costs and other charges or amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Bond Documents, and further including all "Obligations"

5

as described in the LSA, and all interest, fees, costs and other charges allowable under Section 506(b) of the Bankruptcy Code, the "Prepetition Bond Obligations").

(iii) *Prepetition Bond Liens and Prepetition Collateral.* As more fully set forth in the Prepetition Bond Documents, prior to the Petition Date, the Debtor granted security interests in and liens on substantially all assets of the Debtor, other than cash and other investments on deposit with the Debtor that constitutes gifts, grants, bequests, donations or contributions that were designated or restricted at the time they were made by the donor or maker as being for certain specified purposes, solely to the extent such cash and other investments on deposit remains subject to such designations or restrictions (such cash the "Donor Restricted Funds")[4] (collectively, and excluding Donor Restricted Funds, the "Prepetition Collateral") to the Secured Creditor (the "Prepetition Bond Liens").

(iv) Validity, Perfection and Priority of Prepetition Bond Liens and Prepetition Bond Obligations. Subject only to the rights of the Committee and other parties in interest under paragraph 35 of this Final Order to challenge the validity, priority, perfection, enforceability, seniority, extent, nature, amount or avoidability of the Prepetition Bond Liens the Debtor stipulates that (a) the Prepetition Bond Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Secured Creditor for fair consideration and reasonably equivalent value; (b) the Prepetition Bond Liens are senior in priority over any and all other liens, if any, on the Prepetition Collateral, subject only to those preexisting liens that hold a senior position to the Prepetition Bond Liens by virtue of the agreement of the Prepetition Secured Creditor through the express provisions of the Prepetition Bond Documents, if any (solely to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the applicable Prepetition Bond Liens as of the Petition Date, the "Prepetition Permitted Priority Liens"), provided that, in no event shall any alleged right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) be deemed or treated hereunder as a Prepetition Permitted Priority Lien; (c) the Prepetition Bond Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor enforceable in accordance with the terms of the applicable Prepetition Bond Documents; (d) the Debtor has no offsets, challenges, objections, defenses, claims, impairments or counterclaims to any of the Prepetition Bond Liens or Prepetition Bond Obligations, or any basis to challenge or defend against any portion of the Prepetition Bond Liens or Prepetition Bond Obligations including, without limitation, avoidance, disallowance, disgorgement, recharacterization, recoupment, reductions, setoff or subordination (whether equitable, contractual or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtor and its estate have no claims, objections, challenges, causes of action, counterclaims and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against the Prepetition Secured Creditor, or any of its respective heirs, predecessors, successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees,

---

[4] To the extent Donor Restricted Funds were used to purchase or improve assets subject to the sale process contemplated by the Bid Procedure Order, or otherwise offered for sale, all parties reserve any and all rights with respect to the allocation of proceeds of any such sale. Further, all parties reserve any and all rights with respect to any future proposed use, transfer, encumbrance, investment, deposit, application, or other disposition of the Donor Restricted Funds.

6

attorneys, advisors, professionals and agents, past, present and future, and their respective heirs, predecessors, successors and assigns arising out of, based upon or related to the Prepetition Bond Documents; and (f) based on information available to the Debtor, as of the Petition Date, the value of the Prepetition Collateral exceeds the amount of the Prepetition Bond Obligations.

(v)     *Notice of Federal Interest.* On September 30, 2023, the Community Program Funding/Congressionally Directed Spending Construction awarded Grant No. 6CE1HS52504-01-03 (the "Grant") to the Debtor.  As a condition of the Grant, a Notice of Federal Interest (the "Federal Interest") was required to be recorded with respect to Miriam Hall, which is part of the Mortgaged Property ("Miriam Hall"). The Federal Interest was not recorded prior to the Petition Date, and to the extent it is a valid, perfected lien with regard to Miriam Hall, it is subordinate in interest to the Prepetition Bond Liens.

(vi)     *Cash Collateral.*  All of the Debtor's cash, including, without limitation, the cash in its deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, other than Donor Restricted Funds, constitutes Cash Collateral and is DIP Collateral and Prepetition Collateral of the Prepetition Secured Creditor.

(vii)     *Default by the Debtor.*  The Debtor acknowledges and stipulates that the Debtor is presently in default under the Prepetition Bond Documents.

(viii)     *Other Liens and Interests.* Other than the Federal Interest, the Mechanics' Lien and The Superior Court Injunction/Right of First Refusal, each as defined in the Motion (collectively, the "Disputed Liens and Interests"), the Prepetition Bond Liens, and the Prepetition Permitted Priority Liens, the Debtor is not aware of any security interests that have been filed or could be asserted against, or interest asserted in[5], or liens asserted against the Prepetition Collateral.

(ix)     *Release.*  The Debtor hereby forever unconditionally and irrevocably releases, discharges and acquits the Prepetition Secured Creditor, the DIP Lender and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, advisors, professionals and agents, past, present and future, and its respective heirs, predecessors, successors and assigns (collectively, the "Releasees") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses, debts, liens, actions and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the negotiations over and entry into the DIP Facility, the Prepetition Bond Documents, the Prepetition Bond Liens and/or the transactions contemplated hereunder or thereunder including, without limitation, (A) any so-called "lender liability" or equitable subordination claims or defenses, (B) any and all claims and causes of action arising under the Bankruptcy Code, and (C) any and all claims, causes of action, challenges, objections and/or choses in action arising out of, based upon, or related to the validity, priority, perfection or avoidability of the DIP Facility, DIP Liens, DIP Obligations, Prepetition Bond Documents, Prepetition Bond Obligations and the Prepetition Bond Liens. The Debtor further waives and releases any defense, right of counterclaim,

---

[5] The reference to "interest in" any of the Debtor's assets and property throughout this Final Order shall have the meaning set forth in 11 U.S.C. § 363(f).

right of set-off or deduction to the payment of the DIP Obligations and the Prepetition Bond Obligations that the Debtor now has or may claim to have against the Releasees, arising out of, connected with or relating to any and all acts, omissions or events occurring prior to the Bankruptcy Court entering this Final Order.

F.     *Findings Regarding the Postpetition Financing.*

(i)     *Request for Postpetition Financing.*  The Debtor seeks authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Term Sheet, and (b) use Cash Collateral on the terms described herein to administer this Case and fund its operations in accordance with the Budget (as defined herein) and this Final Order.

(ii)     *Priming of Existing Liens and Interests; Consent to Use of Cash Collateral.* The priming by the DIP Liens of the Prepetition Bond Liens and Disputed Liens and Interests on the Prepetition Collateral pursuant to this Final Order is necessary in order for the Debtor to obtain the funding available through the DIP Facility for the purpose of conducting a sale process for the benefit of the estate and the Debtor's creditors.  Notwithstanding the foregoing, nothing in this Final Order shall constitute a finding or ruling with regard to the validity and priority of the Disputed Liens and Interests subject to the DIP Liens with regard to any assets constituting the Prepetition Collateral, with all rights of the holders of Disputed Liens and Interests fully reserved, including with regard to requesting additional adequate protection beyond that may be available through this Final Order, with regard to the Prepetition Bond Liens and Prepetition Collateral.

(iii)     *Need for Postpetition Financing and Use of Cash Collateral.*  The Debtor's need to use Cash Collateral and to obtain credit pursuant to the DIP Facility is critical in order to enable the Debtor to continue operations and to administer and preserve the value of its estate. The ability of the Debtor to protect the value of its assets and otherwise finance its operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtor, its estate, its creditors, and

8

the possibility for a successful administration of this Case.  As demonstrated in the Budget and otherwise, the Debtor does not have sufficient available sources of working capital and financing to operate its businesses or to maintain its properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)     *No Credit Available on More Favorable Terms.*  Given the information in the record demonstrating the Debtor's current financial condition, financing arrangements and capital structure, the Debtor is unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Facility. The Debtor has been unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor has also been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Lender, (1) perfected security interests in and liens on (each as provided herein) substantially all of the Debtor's existing and after-acquired assets, other than Donor Restricted Funds, with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in the Orders and the DIP Term Sheet.

(v)     *Use of Proceeds of the DIP Facility.* As a condition to the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Lender requires, and the Debtor has agreed, that, other than in the ordinary course of business (but subject to the Budget and the Permitted Expense Variance (as defined herein)) (a) the Debtor shall not use, lease, sell, or expend, directly or indirectly, the Collateral, including, without limitation, any of the Cash

Collateral, in any manner, except as expressly provided herein, and (b) all Cash Collateral shall be used solely in accordance with the Budget.  A summary of the initial Budget is attached to the Interim Order as **Exhibit A** (the "Initial Budget").  The consent of the DIP Lender and the Prepetition Secured Creditor, not to be unreasonably withheld, shall be required to approve any amendments, supplements or modifications of the Initial Budget (as so amended, supplemented, updated or otherwise modified from time to time, the "Budget"); provided that the Debtor may seek Court approval of any proposed Budget amendment, supplement, update, or modification on shortened notice if the DIP Lender or Prepetition Secured Creditor does not consent.

G.      *Adequate Protection*.  As a result of the grant of the DIP Liens, the incurrence of the DIP Obligations, the subordination of the Prepetition Bond Liens to the DIP Carve-Out (as defined herein), the use of Cash Collateral authorized herein, and the imposition of the automatic stay, the Prepetition Secured Creditor is entitled to receive adequate protection pursuant to Sections 361, 362 and 363 of the Bankruptcy Code and as set forth in paragraphs 13 and 14 of this Final Order. The Prepetition Secured Creditor reserves the right to seek additional adequate protection beyond the adequate protection provided in this Final Order, and nothing in this Final Order or otherwise shall be deemed or construed to limit, impair, or otherwise prejudice the Prepetition Secured Creditor's rights to seek and/or obtain such other additional adequate protection or other relief.

H.      *Section 506(c)*.  In light of (i) the DIP Lender's agreement to subordinate its liens and superpriority claims, as applicable, only to the DIP Carve-Out; and (ii) the Prepetition Secured Creditor's agreement to subordinate the Adequate Protection Superpriority Claims and the Adequate Protection Liens to the DIP Carve-Out, the DIP Liens, and the DIP Superpriority Claim,

the Debtor waives and the Prepetition Secured Creditor and the DIP Lender are deemed to receive the benefits of a waiver of the provisions of Section 506(c) of the Bankruptcy Code.

I.    *Good Faith*.

(i)    *Willingness to Provide Financing*. The DIP Lender has indicated a willingness to provide financing to the Debtor subject to:  (a) the entry of this Final Order; (b) approval of the terms and conditions of the DIP Facility as contemplated by the Orders and the DIP Term Sheet; and (c) entry of findings by this Court that such financing is essential to the Debtor's estate, that the DIP Lender is extending credit to the Debtor pursuant to this Final Order in good faith, and that the DIP Lender's claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to the Orders will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Final Order or any other order.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The obtaining of credit under the DIP Facility reflects the Debtor's exercise of prudent business judgment, consistent with its fiduciary duties, and is supported by reasonably equivalent value and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtor and the DIP Lender.  The use of Cash Collateral and credit to be extended under the DIP Facility, and the financial accommodations provided thereunder, shall be deemed to have been so allowed, advanced, made, provided, used or extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by Section 364(e) of the Bankruptcy Code, and the claims, security interests and liens, and other rights, benefits and protections granted

11

to the DIP Lender shall be entitled to the full protection and benefits of Section 364(e) of the Bankruptcy Code and this Final Order in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

J.     *Notice*.  The record of the Hearings demonstrates that notice of the Hearings and the relief requested in the Motion was provided by the Debtor, whether by email or overnight courier, to certain parties in interest, including:  (i) the Office of the U.S. Trustee; (ii) the entities included on the Debtor's lists of twenty (20) largest unsecured creditors; (iii) counsel to the DIP Lender and the Prepetition Secured Creditor; (iv) the holders of Disputed Liens and Interests; and (v) all other parties required to be served pursuant to the applicable rules and orders of this Court. The Debtor made reasonable efforts to afford the best notice possible under the circumstances and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.     DIP Facility Approved.  The Motion is granted on a final basis, the DIP Facility is authorized and approved on a final basis, and the use of Cash Collateral on a final basis is authorized, subject to the terms and conditions set forth in this Final Order and the DIP Term Sheet.

2.     Objections Overruled.  All objections to the Motion to the extent not withdrawn or resolved during the Final Hearing are hereby overruled.

3.     Authorization of the DIP Financing.  The Debtor is expressly and immediately authorized and empowered to incur the DIP Obligations and to perform pursuant to the DIP Facility in accordance with, and subject to, the terms of the Orders, the DIP Term Sheet and the

Budget, and to deliver all instruments and documents that may be necessary or required for performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by the Orders.

4.      DIP Obligations.  The Orders shall constitute and evidence the validity and binding effect of the Debtor's DIP Obligations, which DIP Obligations shall be enforceable against the Debtor, its estate and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Case or any Successor Case (as defined herein), on the terms set forth herein.

5.      Postpetition Liens and Collateral.

(a)      Effective immediately upon the entry of this Final Order, pursuant to Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the Debtor is authorized to grant and does hereby grant the DIP Liens to the DIP Lender on a final, priming basis, to be secured by any and all presently owned and hereafter acquired assets and real and personal property of the Debtor, including, without limitation, the following categories of assets and property, and expressly excluding the Donor Restricted Funds in all respects (the "DIP Collateral" and, together with the Prepetition Collateral, the "Collateral"):[6]

(i)      all Accounts;

(ii)      all Goods, including, without limitation, Equipment, Inventory and Fixtures;

(iii)      all Documents, Instruments and Chattel Paper;

(iv)      all Letters of Credit and Letter-of-Credit Rights;

(v)      all Securities Collateral;

---

[6] All terms not specifically defined in the description of DIP Collateral shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

(vi)     all Investment Property;

(vii)    all Intellectual Property Collateral;

(viii)   all Commercial Tort Claims;

(ix)     all General Intangibles (including, without limitation, all Payment Intangibles);

(x)      all Deposit Accounts;

(xi)     all Supporting Obligations;

(xii)    all money, cash or cash equivalents;

(xiii)   all credit balances, deposits and other property now or hereafter held or received by or in transit to the DIP Lender or at any other depository or other institution from or for the account of the Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(xiv)    all proceeds of leases of real property;[7]

(xv)     all owned real property;

(xvi)    to the extent not otherwise described above, all receivables and all present and future claims, rights, interests, assets and properties recovered by or on behalf of the Debtor; provided that, for the avoidance of doubt, DIP Collateral shall not include avoidance actions, including claims or causes of action under Chapter 5 of the Bankruptcy Code or Section 724(a) of the Bankruptcy Code or the proceeds of ("Avoidance Actions");

(xvii)   all books, records, and information relating to any of the foregoing and/or to the operation of the Debtor's business, and all rights of access to such books, records, and information, and all property in which such books, records and information are stored, recorded and maintained; and

(xviii)  to the extent not otherwise covered by clause (i) through (xvii) above, all other personal property of the Debtor, whether tangible or intangible, excluding the Donor Restricted Funds, and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing.

---

[7] For the avoidance of doubt, the DIP Liens extend only to the proceeds of leased real property and are not direct liens on the Debtor's leases of real property unless such liens are expressly permitted pursuant to the underlying lease documents.

6.      DIP Lien Priority.

(a)      *DIP Liens*.  The DIP Liens shall be first priority, senior-secured liens, junior only to the (i) DIP Carve-Out and (ii) the Prepetition Permitted Priority Liens, senior in priority and superior to the Prepetition Bond Liens and the Adequate Protection Liens (as defined herein), and the DIP Obligations shall be senior in priority to any and all Adequate Protection Superpriority Claims (as defined herein) and any other security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral, including, for the avoidance of doubt, the Disputed Liens and Interests. Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Case or any Successor Case or any claim for reclamation or return (whether asserted pursuant to Section 546(c) of the Bankruptcy Code or otherwise). The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Case, upon the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Case or Successor Case.  Subject in all respects to paragraph 35 herein, the DIP Liens shall not be subject to challenge under Sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

7.      DIP Superpriority Claim.

(a)      *DIP Superpriority Claim*.  Upon entry of this Final Order, the DIP Lender is hereby granted, on a final basis, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case and any Successor Case (collectively, the "DIP Superpriority Claim") for all DIP Obligations. The DIP Superpriority Claim shall be subordinate only to the DIP Carve-Out and shall otherwise have priority over any and all

15

administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 and 1114 of the Bankruptcy Code, including those superpriority claims granted to the Prepetition Secured Creditor and, to the extent applicable and in accordance with paragraph 15 hereof, holders of Disputed Liens and Interests, in each case as granted pursuant to this Final Order.

(b)   *Payment Priority of DIP Superpriority Claim.* The DIP Superpriority Claim shall have a senior right to payment from the net proceeds of all pre- and post-petition property of the Debtor, other than Donor Restricted Funds, subject only to the DIP Carve-Out, until the DIP Superpriority Claim is satisfied in full.

8.   No Obligation to Extend Credit.  The DIP Lender shall not have any obligation to make any loan or advance unless all of the conditions precedent to the making of such extension of credit under this Final Order and the DIP Term Sheet have been satisfied in full or waived by the DIP Lender.

9.   Use of DIP Facility Proceeds.  From and after the Petition Date, the Debtor shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Final Order, and in compliance with the Budget, a copy of which has been delivered to the DIP Lender and the Prepetition Secured Creditor.

10.   Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Order and the DIP Term Sheet, and in compliance with the Budget, the Debtor is authorized to use Cash Collateral until the earliest of (x) October 31, 2026 and (y) the Termination Notice Date; provided, however, that during the Remedies Notice Period (as defined herein) the Debtor may use Cash Collateral solely to: (i) pay expenses critical to the preservation of the Debtor and its estate as agreed by the DIP Lender and the Debtor (with such agreement not to be unreasonably

16

withheld); (ii) fund the DIP Carve-Out in the amount of the Post-Carve-Out Trigger Notice Cap; and (iii) fund fees payable to the U.S. Trustee and Clerk of the Court, in each case in accordance with the terms and provision of the Budget.

11. Budget. The Budget and any modification to, or amendment or update of, the Budget shall be in form and substance reasonably satisfactory to and approved by the DIP Lender and the Prepetition Secured Creditor, and in consultation with the Committee, which approval shall not be unreasonably withheld. The Debtor shall comply with and update the Budget from time to time (provided that any update shall be in form and substance reasonably satisfactory to the DIP Lender and the Prepetition Secured Creditor). The Debtor shall deliver to the DIP Lender, the Prepetition Secured Creditor, and the Committee a proposed update to the Budget no later than five (5) days following consummation of any disposition of Collateral occurring outside of the ordinary course of business. If (i) the DIP Lender or the Prepetition Secured Creditor does not approve any proposed Budget update, amendment, supplement, or modification, or (ii) the Committee objects to any proposed Budget update, amendment, supplement, or modification, then the Debtor, the DIP Lender, the Prepetition Secured Creditor or the Committee may seek approval of such update, amendment, supplement, modification, or such other relief from the Court as may be appropriate on shortened notice, and the Debtor's authority to use Cash Collateral subject to the existing approved Budget shall continue pending further order of the Court.

12. Permitted Expense Variance Covenants.

(a) In no event shall the Debtor's actual disbursements of the type included in the Budget line items listed under "Expenses" exceed 110% of the aggregate amounts set forth in the Budget for such expense categories tested cumulatively on a four-week rolling basis (the "Permitted Expense Variance");

17

(b)     Nothing in this Final Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business (which shall be subject to further Orders of this Court), or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted by this Final Order and in accordance with the Budget and the Permitted Expense Variance.

**Adequate Protection Provisions**

13.     <u>Adequate Protection Liens; Adequate Protection With Respect to Sales; Access to Records</u>.  As adequate protection for the interest of the Prepetition Secured Creditor in the Prepetition Collateral (including Cash Collateral) on account of the subordination of the Prepetition Bond Liens to the DIP Liens, the DIP Carve-Out, the Debtor's use of Cash Collateral, and any other diminution in value arising out of the imposition of the automatic stay or the Debtor's use, sale, depreciation, or disposition of the Prepetition Collateral and Cash Collateral during the pendency of this Case or any Successor Case (collectively, "<u>Diminution in Value</u>"), the Prepetition Secured Creditor shall receive adequate protection as follows:

(a)     *Creation of Adequate Protection Liens*.  The Prepetition Secured Creditor is hereby granted, on a final basis, pursuant to Sections 361 and 363 of the Bankruptcy Code, continuing, valid, binding, enforceable and automatically perfected replacement liens on and additional security interests in (the "<u>Adequate Protection Liens</u>") the DIP Collateral solely to the extent of any actual Diminution in Value of the Prepetition Secured Creditor's interests in the Prepetition Collateral; <u>provided</u> <u>that</u> such grant shall be without prejudice to the rights of the Committee and other parties in interest as set forth in paragraph 35 herein; <u>provided</u> <u>further</u> <u>that</u> notwithstanding anything herein, Adequate Protection Liens shall not encumber Commercial Tort Claims (including, without limitation, any and all claims, causes of action, or choses in action

18

against any current or former director, officer, trustee, or fiduciary of the Debtor, together with any proceeds thereof, including any proceeds of any directors' and officers' liability insurance policy or any other insurance policy providing coverage for such claims (collectively, "D&O Claims")).

(b)     The Adequate Protection Liens are and shall be (x) valid, binding, enforceable and fully perfected, and (y) subordinate and subject only to (i) the Prepetition Permitted Priority Liens; (ii) the DIP Liens; and (iii) the DIP Carve-Out. Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in this Case or any case under chapter 7 of the Bankruptcy Code upon the conversion of this Case (a "Successor Case"), and shall be valid and enforceable against any trustee or other estate representative appointed in this Case or any Successor Case, or upon the dismissal of this Case or any Successor Case, without prejudice to the rights of the Committee and other parties in interest as set forth in paragraph 35 herein. The Adequate Protection Liens shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the Debtor's estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Bond Liens or the Adequate Protection Liens.

(c)     *Credit Bidding.* In connection with any sale process authorized by the Court, subject to the priorities set forth in this Final Order and paragraph 35 herein, each of the DIP Lender and Prepetition Secured Creditor may seek to credit bid some or all of its secured claims for its collateral (each a "Credit Bid") pursuant to Section 363(k) of the Bankruptcy Code without the need for further Court order authorizing the same and whether any such sale is effectuated through Section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under

19

Section 725 of the Bankruptcy Code, or otherwise.  A Credit Bid may be applied only to reduce the cash consideration with respect to those assets in which the DIP Lender or Prepetition Secured Creditor holds a valid, perfected, enforceable and non-avoidable security interest.  For the avoidance of doubt, no Credit Bid shall be permitted with respect to Donor Restricted Funds.  Each of the DIP Lender and Prepetition Secured Creditor shall be considered a "Qualified Bidder" in connection with any sale process with respect to its rights to acquire all or any of the assets by Credit Bid, subject to the foregoing limitations.

14.     Adequate Protection Superpriority Claims.

(a)     *Superpriority Claims of Prepetition Secured Creditor.*  As further adequate protection of the interests of the Prepetition Secured Creditor with respect to the Prepetition Bond Obligations, the Prepetition Secured Creditor is hereby granted, on a final basis, an allowed administrative claim against the Debtor's estate under Section 503 of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtor and its estate as provided for by Section 507(b) of the Bankruptcy Code, other than the DIP Superpriority Claim, (the "Adequate Protection Superpriority Claims"), but subject to the DIP Carve-Out, to the extent that the Adequate Protection Liens and other adequate protection provided under this Final Order do not adequately protect against actual Diminution in Value of the Prepetition Secured Creditor's interests in the Prepetition Collateral.

(b)     *Priority of Adequate Protection Superpriority Claims.* The Adequate Protection Superpriority Claims granted to the Prepetition Secured Creditor shall be junior to the DIP Liens, DIP Superpriority Claim, DIP Carve-Out, the Prepetition Permitted Priority Liens and the Adequate Protection Liens and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code.

20

15.    Nothing herein shall impair or modify the application of the Prepetition Secured Creditor's rights under Section 507(b) of the Bankruptcy Code or the rights of the Prepetition Secured Creditor to seek additional adequate protection pursuant Section 363(e) of the Bankruptcy Code, including, without limitation, in connection with any debtor-in-possession financing that the Debtor may seek, in the event that the adequate protection provided to the Prepetition Secured Creditor hereunder is insufficient to compensate for the Diminution in Value of the interest of the Prepetition Secured Creditor in the Prepetition Collateral during this Case or any Successor Case.

(a)    Notwithstanding the provisions of Paragraphs 13 and 14 herein, nothing in this Final Order shall constitute a determination as to the validity and priority, if valid, of any Disputed Liens and Interests.  Solely to the extent that the holder of any Disputed Lien and Interests timely asserts and is determined by this Court to hold a valid, secured interest with regard to any of the Prepetition Collateral that is either senior to or on par with the Prepetition Bond Liens (such interest that is adjudicated by this Court on a final basis, a "Valid Secured Interest"), the holder of such Valid Secured Interest shall be entitled to assert an Adequate Protection Superpriority Claim solely to the extent of any actual Diminution in Value of the holder of the Valid Secured Interest's secured interest in any Prepetition Collateral; provided that such Adequate Protection Superpriority Claim shall be junior in all respects to the DIP Carve-Out, Adequate Protection Liens, and DIP Superpriority Claim, and, unless the Court makes a determination that the Valid Secured Interest is senior in right to that of the Prepetition Secured Creditor, subordinate in payment right to the Adequate Protection Superpriority Claim of the Prepetition Secured Creditor.

16.    Adequate Protection Payments. Subject to the rights preserved in paragraph 35 herein and the procedures set out in paragraph 29 herein, the Prepetition Secured Creditor shall receive additional adequate protection in the form of the following:

21

(i)      The current payment of reasonable and documented out-of-pocket costs and expenses in accordance with the Prepetition Bond Documents, including, without limitation, the reasonable and documented out-of-pocket fees and expenses of the attorneys, advisers, accountants, and other consultants of the Prepetition Secured Creditor; and

(ii)      On the first day of each calendar month, accrual of all unpaid interest and fees at the non-default rate and as provided in the Prepetition Bond Documents, which interest shall be paid in kind unless otherwise agreed by the Debtor and the DIP Lender; provided that all such accruals and payments shall be without prejudice to the provisions of paragraph 35 herein.

17.      Modification of Automatic Stay.  The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to permit the Debtor to grant the DIP Liens, DIP Superpriority Claim, Adequate Protection Liens and the Adequate Protection Superpriority Claims.

18.      Automatic Perfection of DIP Liens and Adequate Protection Liens.  The Orders shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein and therein, including the DIP Liens and Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, filing of Uniform Commercial Code financing statements or similar documents or entering into any deposit account control agreement, collateral access agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, Adequate Protection Liens, or to entitle the DIP Lender and Prepetition Secured Creditor to the priorities granted herein.

19.      Application of Proceeds of DIP Collateral.

(a)      Subject to the DIP Carve-Out, the net proceeds of DIP Collateral shall be applied as follows: *first*, to payment of fees, costs and expenses payable and reimbursable by the

22

Debtor under the Orders and the DIP Term Sheet; *second*, to payment of all DIP Obligations in accordance with the Orders and the DIP Term Sheet; and *third*, to payment of Prepetition Bond Obligations and any claims judicially determined pursuant to a final order to be *pari passu* with the Prepetition Bond Obligations; and *fourth*, to the payment of any claims secured by Valid Secured Interests judicially determined pursuant to a final order to be junior to the Prepetition Bond Obligations, with the remaining balance after satisfaction in full of secured claims in accordance with the priorities set forth in this paragraph 19 to be held in the Debtor's operating account, pending distribution in accordance with further orders of the Court.

(b)     The Debtor shall not, directly or indirectly, voluntarily purchase, redeem, defease, or prepay any principal of, premium, if any, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than (i) the DIP Obligations, (ii) the Prepetition Bond Obligations, and (iii) obligations authorized by an order of the Court (which may include, without limitations, obligations secured by Prepetition Permitted Priority Liens).

20.     <u>Proceeds of Subsequent Financing</u>.  If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in this Case or a Successor Case shall obtain credit or incur debt pursuant to Sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of this Final Order at any time prior to the repayment in full in cash of all DIP Obligations, Prepetition Bond Obligations, and the termination of the DIP Lender's obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to the Debtor and the Debtor's estate, all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender to be applied as set forth in paragraph 19 herein.

21.     <u>Compliance with Prepetition Bond Documents</u>.  The Debtor shall comply with all applicable terms and provisions of the Prepetition Bond Documents (as modified herein) solely to the extent such terms and provisions are not inconsistent with the Bankruptcy Code, this Final Order, any other order of the Court, or the Debtor's fiduciary duties, including the maintenance of adequate insurance, the maintenance of the Debtor's existing cash management system and the payment of taxes as required by the Prepetition Bond Documents, and, subject to the prior consent of the Prepetition Secured Creditor, not to be unreasonably withheld, or further order of the Court, the payment of all allowed claims that could result in a lien on the Collateral having priority over the liens of the Prepetition Secured Creditor.

22.     <u>Financial Information and Reporting Requests</u>.  The Debtor shall allow the DIP Lender, the Prepetition Secured Creditor and their representatives reasonable access during business hours, upon reasonable advance written notice to the Debtor and its counsel, to the premises, officers, employees, auditors, appraisers, financial advisors, investment bankers, and the books and records of the Debtor in order to conduct analyses and audits of the Collateral and the Debtor's financial affairs, and shall otherwise cooperate in providing any other financial information reasonably requested by the DIP Lender or the Prepetition Secured Creditor; <u>provided that</u> the Debtor shall not be required to provide information that is subject to attorney-client privilege, work-product protection, confidentiality obligations, donor confidentiality restrictions, student privacy restrictions, or other applicable legal restrictions.  The Debtor shall also provide to the DIP Lender and Prepetition Secured Creditor a copy of each monthly operating report as and when submitted to the Office of the U.S. Trustee (each an "<u>MOR</u>") and such other non-privileged reports and information as reasonably requested by the DIP Lender or Prepetition Secured Creditor.

23.     Access to Debtor's Consultants.   The DIP Lender and the Prepetition Secured Creditor are authorized to communicate directly with the Debtor's professionals, including the Debtor's financial advisor(s), appraiser(s), real estate brokers and investment banker(s), as applicable, regarding non-privileged matters related to the services to be rendered by such professionals, terms and term sheets, the preparation of the Budget, and such other non-privileged matters as the DIP Lender and Prepetition Secured Creditor shall reasonably request from time to time as to any such professionals; provided that the Debtor and the Debtor's counsel must be copied on any written communications (including e-mail or other electronic communications) and invited to participate in any meetings (including meetings via telephone or other electronic means); provided, further, that no such communications shall impair or waive any privilege, work-product protection, confidentiality obligation, fiduciary duty, sale-process protocol, or professional obligation owed to the Debtor or its estate.   Subject to the foregoing, such professionals are authorized and directed to communicate directly with the DIP Lender and the Prepetition Secured Creditor regarding all such matters.

24.     Reporting Requirements. Subject to the terms of the Bid Procedures Order, [8] the Debtor shall furnish to the DIP Lender, the Prepetition Secured Creditor, and counsel to the Committee, within two Business Days after receipt, copies of all term sheets and/or letters of intent (whether preliminary, interim or final in form and content), and all offers for the purchase of any asset(s) of the Debtor, subject to any confidentiality restrictions, bidder protocols, and Court-approved sale procedures.   The Debtor shall report to the DIP Lender, the Prepetition Secured

---

[8] The "Bid Procedures Order" means the *Order (A) Approving Sale Procedures in Connection with the Sale of Substantially All of the Debtor's Assets in One or More Transactions, (B) Approving the Form and Manner of Notice of the Auction and Sale Hearing, (C) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Authorizing De Minimis Sales of Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, and (E) Granting Related Relief* [Dkt. No. 80].

Creditor, and counsel to the Committee no later than close of business every other Thursday regarding the Debtor's use of Cash Collateral and DIP Facility proceeds in the prior two week period and providing a comparison of such uses to the Budget.

25. <u>Disposition of Collateral</u>. Unless otherwise authorized by the Court, the Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Collateral outside of the ordinary course, including Cash Collateral, other than in accordance with the Budget. Nothing provided herein shall limit the rights of the DIP Lender and the Prepetition Secured Creditor to object to any proposed disposition of the Collateral.

26. <u>Termination Event</u>. Upon written notice from the DIP Lender, the occurrence and continuation of any of the following (unless waived by the DIP Lender) shall constitute a "<u>Termination Event</u>" under this Final Order:

(a) other than in connection with (x) the payment in full of the DIP Obligations and Prepetition Bond Obligations, or (y) with the prior written consent of the DIP Lender and the Prepetition Secured Creditor, the Debtor shall file a motion with the Court seeking the authority to sell, transfer or dispose of any of the Debtor's assets outside the ordinary course of business;

(b) other than in connection with (x) the payment in full of the DIP Obligations and Prepetition Bond Obligations, or (y) with the prior written consent of the DIP Lender and the Prepetition Secured Creditor, the bringing of a motion or the taking of any action by or on behalf of the Debtor or its Estate in this Case or any Successor Case: (i) to obtain financing; (ii) to grant any lien (other than the Prepetition Permitted Priority Liens) upon or affecting any Collateral if such lien would be senior or *pari passu* with any of the DIP Liens, Prepetition Bond Liens or the Adequate Protection Liens; (iii) to use Cash Collateral in a way that is inconsistent with the Orders; or (iv) that seeks to prohibit the DIP Lender or Prepetition Secured Creditor from credit bidding on any or all of the Debtor's assets during the pendency of this Case or any Successor Case;

(c) the filing of any plan of reorganization or liquidation or disclosure statement attendant thereto by or on behalf of the Debtor or its Estate in this Case or any Successor Case that does not provide for the payment in full of the DIP Obligations and Prepetition Bond Obligations in cash on the effective date of such plan of reorganization or liquidation;

(d) the entry of a final order by the Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien on any Collateral with a value exceeding $50,000.00;

26

(e)     the commencement of a suit or action against the Prepetition Secured Creditor by the Debtor;

(f)     the commencement of a suit or action against the DIP Lender by the Debtor;

(g)     the entry of an order in this Case avoiding or permitting recovery of any payments made on account of the Prepetition Bond Obligations;

(h)     the entry of an order in this Case avoiding or permitting recovery of any payments made on account of the DIP Obligations;

(i)     the entry of an order in this Case granting any other superpriority administrative claim or lien equal or superior to that granted to the DIP Lender without the prior written consent of the DIP Lender;

(j)     the entry of an order in this Case granting any other superpriority administrative claim or lien equal or superior to that granted to the Prepetition Secured Creditor without the prior written consent of the Prepetition Secured Creditor, other than a superpriority administrative claim or lien granted to the DIP Lender;

(k)     the entry of an order of this Court terminating the right of the Debtor to use Cash Collateral;

(l)     the entry of any order of the Court that avoids or disallows in any way the security interests, liens, priority claims or rights granted to the DIP Lender or the Prepetition Secured Creditor under the terms of the Orders;

(m)     the Orders shall cease, for any reason, to be in full force and effect, or the Debtor shall so assert in writing, or any liens or claims created in favor of the DIP Lender or Prepetition Secured Creditor under the Orders shall cease to be enforceable and of the same effect and priority purported to be created hereby;

(n)     except as set forth in the "first day" orders, the payment of, or application for authority to pay, any prepetition indebtedness or prepetition claim without the prior written consent of the DIP Lender and the Prepetition Secured Creditor;

(o)     any material misrepresentation by the Debtor in the financial reporting or certifications provided by the Debtor to the Prepetition Secured Creditor;

(p)     the appointment of a permanent chapter 11 trustee in this Case, the disallowance of a motion by the Debtor seeking leave to employ Holland & Knight, LLP as counsel to the Debtor or Verdolino & Lowey as financial advisor to the Debtor, the appointment of a receiver or an examiner in this Case with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Debtor;

(q)     the dismissal of this Case, or the conversion of this Case from chapter 11 to chapter 7 of the Bankruptcy Code, or the Debtor shall file a motion or other pleading seeking the dismissal of this Case under Section 1112 of the Bankruptcy Code or otherwise;

(r)  the failure of the Debtor to comply with any Milestone (as defined in the DIP Term Sheet in modified form, as attached to the Interim Order as **Exhibit B**); and

(s)  the failure of the Debtor to perform any material obligation as and when required under this Final Order or the DIP Term Sheet.

27.  Rights and Remedies Following Termination Event.

(a)  *Termination.* Immediately upon the occurrence and during the continuance of a Termination Event:  (i) all DIP Obligations shall be immediately due and payable, (ii) all commitments to extend credit under the DIP Facility will terminate, and (iii) all authority to use Cash Collateral shall cease, provided, however, that during the Remedies Notice Period (as defined herein), the Debtor may use Cash Collateral solely as set forth in paragraph 10 herein.

(b)  *Notice of Termination.* The DIP Lender, or, in the event the DIP Facility is paid in full, the Prepetition Secured Creditor, may provide notice of its intent to terminate or restrict the Debtor's authority to use Cash Collateral by providing written notice as set forth in this paragraph 27(b) (such notice, a "Termination Notice"). Any Termination Notice shall be given by electronic mail (or other electronic means) to counsel to the Debtor, counsel to the Committee and the Office of the U.S. Trustee (the earliest date any such Termination Notice is sent shall be referred to herein as the "Termination Notice Date").  The automatic stay in this Case otherwise applicable to the DIP Lender and the Prepetition Secured Creditor is hereby modified so that five (5) days after the Termination Notice Date (the intervening period, the "Remedies Notice Period"), the DIP Lender and the Prepetition Secured Creditor shall be entitled to exercise their respective rights and remedies to satisfy the DIP Obligations, DIP Liens, DIP Superpriority Claim, Prepetition Bond Obligations, Adequate Protection Superpriority Claims and Adequate Protection Liens, as applicable, subject to and consistent with (i) the DIP Carve-Out, (ii) the exclusion of Donor Restricted Funds, and (iii) this Final Order.  Notwithstanding the foregoing, upon issuance of a Termination Notice, to the extent the basis for the Termination Notice is contested, the Debtor,

28

the Committee, and any other party in interest shall be entitled to file a motion prior to the expiration of the Remedies Notice Period ("Termination Challenge Motion") requesting that the Court hold an emergency hearing to determine, *inter alia*, whether a Termination Event has occurred and/or is continuing, and the DIP Lender and Prepetition Secured Creditor shall consent to such emergency hearing. Unless the Court determines upon consideration of a timely filed Termination Challenge Motion that the Termination Notice was not validly issued by the DIP Lender or Prepetition Secured Creditor, upon the earlier of (i) the expiration of the Remedies Notice Period in the event that a Termination Challenge Motion was not filed, or (ii) the first business day following issuance of an oral ruling or written order denying a Termination Challenge Motion, then without further notice, order or application to the Court, the automatic stay as to the DIP Lender and Prepetition Secured Creditor shall automatically be terminated and the DIP Lender and Prepetition Secured Creditor shall be permitted to exercise all rights and remedies with respect to the Debtor and the Collateral as set forth herein and as otherwise permitted under the Prepetition Bond Documents and applicable law. For the avoidance of doubt, so long as a Termination Challenge Motion is filed prior to the expiration of the Remedies Notice Period, and the moving party requests that a hearing on the Termination Challenge Motion take place at the Court's first availability, the automatic stay shall remain in effect for so long as the Termination Challenge Motion remains pending.

28. <u>Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay of this Final Order</u>. The Prepetition Secured Creditor and the DIP Lender have acted in good faith in connection with the Orders, the DIP Term Sheet, and the DIP Facility, and their reliance on this Final Order is in good faith. Based on the findings set forth in the Orders and the record made during the Hearings, the DIP Lender and the Prepetition Secured Creditor are entitled to the

protections provided in Section 364(e) of the Bankruptcy Code. In the event any or all of the provisions of this Final Order are hereafter reversed, modified, amended, stayed or vacated by a subsequent order of this Court, or any other court, such reversal, modification, amendment, stay or vacatur shall not affect the validity and enforceability of any lien, claim or priority authorized or created hereby.

29.      <u>DIP and Other Expenses</u>.   The Debtor is authorized and directed to pay all reasonable and documented out-of-pocket costs and expenses of (x) the DIP Lender in connection with the DIP Facility (including, without limitation, costs and expenses incurred prior to the Petition Date), and (y) the Prepetition Secured Creditor (including, without limitation, costs and expenses incurred prior to the Petition Date) as provided in the Prepetition Bond Documents. Payment of such costs and expenses to the Prepetition Secured Creditor shall be without prejudice to, and shall not impair, the right of the Committee to seek reallocation, recharacterization, or application of another appropriate remedy to any such payments (including, but not limited to, as reductions of principal of the Prepetition Bond Obligations) in the event it is finally determined by the Court that the Prepetition Secured Creditor is not oversecured. Payment of all such costs and expenses shall not be subject to allowance by the Court and professionals for the DIP Lender and the Prepetition Secured Creditor shall not be required to comply with the U.S. Trustee fee guidelines. The professionals for the DIP Lender and the Prepetition Secured Creditor shall deliver a summary of services to counsel for the Debtor, counsel for the Committee, and the U.S. Trustee, redacted as necessary with respect to any privileged or confidential information contained therein. Any objections raised by the Debtor, the U.S. Trustee or the Committee, with respect to such invoices within ten (10) days of the receipt thereof will be subject to resolution by the Court.  In the event of any objection, the provisions of Section 107 of the Bankruptcy Code and Rule 9018

of the Federal Rules of Bankruptcy Procedure shall apply. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtor. Notwithstanding the foregoing, the Debtor is authorized and directed to pay on the closing of the DIP Facility all reasonable fees, costs and expenses of the DIP Lender and the Prepetition Secured Creditor incurred on or prior to such date after delivery of a summary invoice to counsel for the Debtor, without prejudice to the rights of the Debtor, the U.S. Trustee or the Committee to object to any such amounts and seek appropriate relief from the Court.

30.     <u>Indemnification</u>. The Debtor shall indemnify and hold harmless the DIP Lender, and each of its respective shareholders, members, directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Facility, the DIP Term Sheet or the transactions contemplated thereby and by the Orders, whether such indemnified party is party thereto, or in connection with this Case, any plan, or any action or inaction by the Debtor; <u>provided</u>, that such indemnity shall not, as to any indemnified party, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted directly from the gross negligence or willful misconduct of such indemnified party. The indemnity includes indemnification for the DIP Lender's exercise of discretionary rights granted under the DIP Facility, the DIP Term Sheet and the Orders. In all such litigation, or the preparation therefor, the DIP Lender shall be entitled to select its own counsel and, in addition to the foregoing indemnity,

31

the Debtor agrees to promptly pay the reasonable and documented fees and expenses of such counsel.

31.     Proof of Claim.  Any order entered by the Court in relation to the establishment of a bar date for any claims (including, without limitation, administrative claims) in this Case or any Successor Case shall not apply to the DIP Lender or the Prepetition Secured Creditor, each of which shall not be required to file a proof of claim in this Case or any Successor Case, and the provisions of this Final Order relating to the amount of the Prepetition Bond Obligations shall constitute a timely filed proof of claim.

32.     DIP Carve-Out.

(a)     *DIP Carve-Out.*  As used in this Final Order, the "DIP Carve-Out" shall consist of the following fees and expenses:  (i) all allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6) for fees payable to the Office of the U.S. Trustee, as determined by agreement of the U.S. Trustee or by final order of the Court, and 28 U.S.C. § 156(c) for fees required to be paid to the clerk of the Court; (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code; (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all paid and unpaid fees and expenses ("Allowed Professional Fees") of the Debtor's and the Committee's professionals (the "Professional Persons"), in each case retained under Sections 327, 328, 363 or 1103 of the Bankruptcy Code, as applicable, incurred at any time prior to the delivery of a Carve-Out Trigger Notice (as defined herein), less the amount of any remaining and unapplied fee retainers held by any such Professional Person pursuant to Sections 327, 328, or 1103 of the Bankruptcy Code; provided, however, the Allowed Professional Fees (I) shall not at any time exceed the aggregate amount of the fees and expenses identified in the Budget, plus any Permitted Expense Variance,

for each such Professional Person or category of Professional Persons covering the period of time commencing on the Petition Date through the earlier of the (A) the date of determination and, (B) the last day of the week in which a Carve-Out Trigger Notice (defined below) is served and (II) shall be permanently reduced with respect to each Professional Person by the aggregate amount of professional fees and expenses actually received by such Professional Person following the Petition Date; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $50,000 incurred after the delivery of a Carve-Out Trigger Notice to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap"). The DIP Carve-Out shall be funded solely with cash on hand and with the first proceeds of Collateral received by the Debtor after the delivery of the Carve Out Trigger Notice. No portion of the DIP Carve-Out or any Cash Collateral may be used in violation of this Final Order. So long as the Carve-Out Trigger Notice has not been delivered, the Debtor shall be permitted to pay, as the same may become due and payable in accordance with an order approving interim compensation procedures for fees and expenses of Professional Persons as provided for in the Budget, and the same shall not reduce the Post-Carve Out Trigger Notice Cap. For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to the Debtor's counsel, counsel to the Committee, and the U.S. Trustee (together, the "Carve-Out Notice Parties"), which notice may be delivered following the occurrence and during the continuation of a Termination Event, stating that the Post-Carve-Out Trigger Notice Cap has been invoked (such date of delivery, the "Carve-Out Termination Date"). The DIP Carve-Out for Allowed Professional Fees shall be exclusively for the benefit of Professional Persons whose

33

retentions have been approved by the Court prior to the appointment of a chapter 11 trustee or the entry of an order converting the Case to a case under chapter 7 of the Bankruptcy Code.

(b)  *Seniority of DIP Carve-Out.*   For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order or in any Prepetition Bond Documents, the DIP Carve-Out shall be senior to all liens and claims securing the Collateral, the DIP Liens, the DIP Superpriority Claim, Adequate Protection Liens and the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or Prepetition Bond Obligations solely to the extent provided herein.

(c)  *Payment of DIP Carve-Out On or After the Carve-Out Termination Date.* Any payment or reimbursement made on or after the occurrence of the Carve-Out Termination Date shall permanently reduce the DIP Carve-Out on a dollar-for-dollar basis.

(d)  *No Direct Obligation to Pay Allowed Professional Fees*. Other than satisfying the obligations set forth in this Final Order to fund the Carve Out, neither the DIP Lender nor the Prepetition Secured Creditor shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with this Case or any Successor Case. Nothing in this Final Order or otherwise shall be construed to require the DIP Lender or Prepetition Secured Creditor in any way to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement. Nothing in this Final Order or otherwise shall be construed to increase the DIP Carve-Out if actual allowed fees and/or disbursements are higher in fact than the amounts subject to the DIP Carve-Out as set forth in this Final Order.

33.   Prohibited Use of Cash Collateral and DIP Carve-Out.  The Collateral, including Cash Collateral, and the DIP Carve-Out may not be used:  (a) except with respect to prosecuting a

Termination Challenge Motion, but subject in all respects to the Budget, in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type adverse to or against the interests of: (i) the DIP Lender or its rights and remedies under this Final Order; or (ii) the Prepetition Secured Creditor or its rights and remedies under the Prepetition Bond Documents or the Orders; (b) to make any distribution under a plan of reorganization without the consent of the DIP Lender and Prepetition Secured Creditor; (c) to make any payment greater than $50,000 individually or $150,000 in the aggregate during this Case in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the DIP Lender and the Prepetition Secured Creditor unless otherwise ordered by this Court; or (d) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the DIP Lender or Prepetition Secured Creditor; provided, that the foregoing limitations shall not encompass any investigation of the Prepetition Bond Obligations and the Prepetition Bond Liens or Challenge thereto conducted by Professional Persons retained by the Committee, so long as the costs, fees and expenses incurred by such Professional Persons do not exceed $25,000 in the aggregate, unless otherwise agreed by the DIP Lender and Prepetition Secured Creditor.

34.     Payment of Compensation.  Nothing herein shall be construed as consent to the allowance of any fees or expenses of any Professional Persons or shall affect the right of the Prepetition Secured Creditor to object to the allowance and payment of such fees and expenses.

35.     Reservation of Certain Third-Party Rights and Bar of Challenges and Claims. Nothing in this Final Order shall prejudice the rights of the Committee, if granted standing, and/or any other party in interest granted standing by the Court (other than the Debtor and/or its successors), to seek to assert claims against the Prepetition Secured Creditor on behalf of the

Debtor or the Debtor's creditors and interest holders, or to object to or to challenge the stipulations, findings or Debtor's Stipulations set forth herein. A party in interest, including the Committee, that has been granted standing by the Court, must commence, as appropriate, a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim against the Prepetition Secured Creditor, a claim in the nature of a setoff, counterclaim or defense to the Prepetition Bond Obligations or any other claim (each, a "Challenge") within seventy-five (75) calendar days after the appointment of the Committee (the "Challenge Period"). The Challenge Period may only be extended with the written consent of the Prepetition Secured Creditor or by order of the Court for cause, provided, however, that to the extent an order converting this Case to one under chapter 7 enters prior to the expiration of the Challenge Period, the duly appointed chapter 7 trustee shall have a period of sixty (60) days following the date of his or her appointment to bring a Challenge in accordance with the requirements of this paragraph 35. Upon the expiration of the Challenge Period (the "Challenge Period Termination Date") without the filing of a Challenge: (A) any and all such Challenges and objections by any party shall be deemed to be forever waived, released and barred, (B) all matters not subject to a Challenge, findings, Debtor's Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to the Prepetition Secured Creditor's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor, the Debtor's estate, and all creditors, interest holders, and other parties in interest in this Case and any Successor Case; and (C) any and all claims or causes of action against the Prepetition Secured Creditor and its successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, advisors, professionals and agents, past, present and future, and its respective heirs, predecessors, successors and assigns relating in any way to the Debtor or the Prepetition Bond

Documents shall be forever waived and released by the Debtor's estate.  For the avoidance of doubt, nothing in this paragraph shall waive, release, bar, or impair any independent direct claim of any creditor, interest holder, governmental unit, or other party in interest that is not property of the Debtor's estate.

36.     No Third-Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, or any direct, indirect, or incidental beneficiary.

37.     Section 506(c) Claims. No costs or expenses of administration which have been or may be incurred in this Case at any time shall be charged against the DIP Lender or the Prepetition Secured Creditor or the Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

38.     Satisfaction of DIP Liens. The DIP Lender shall use reasonable efforts to satisfy its DIP Liens from proceeds of DIP Collateral other than Commercial Tort Claims (including, for the avoidance of doubt, D&O Claims) and proceeds therefrom prior to satisfying its DIP Liens from Commercial Tort Claims and proceeds therefrom.

39.     Discharge Waiver.  The Debtor expressly stipulates, and the Court finds and adjudicates that, none of the DIP Obligations, the DIP Superpriority Claim, the DIP Liens, the Adequate Protection Liens or the Adequate Protection Superpriority Claims shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the DIP Obligations, the Adequate Protection Superpriority Claims and claims secured by the Adequate Protection Liens have been paid in full on or before the effective date of a confirmed plan of reorganization.

37

40.     Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the right of the DIP Lender, Prepetition Secured Creditor, the Debtor, the Committee, the U.S. Trustee, or any other party in interest to seek any other or supplemental relief in respect of the Debtor, in each case subject to the terms of this Final Order and applicable law.  The failure of any party to seek relief or otherwise exercise rights and remedies under this Final Order, the Prepetition Bond Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of such party.

41.     Binding Effect of Final Order.  Immediately upon entry by this Court, the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtor, the Prepetition Secured Creditor, all other creditors of the Debtor, and all parties in interest, subject in all respects to the rights and limitations expressly preserved herein, including paragraph 35.  Any applicable stay is hereby waived and shall not apply to this Final Order.

42.     No Modification of Final Order.  The Debtor irrevocably waives the right to seek and shall not seek or consent to, directly or indirectly, without the prior written consent of the DIP Lender, any reversal, modification, stay, vacatur or amendment to this Final Order.

43.     Final Order Controls.  In the event of any inconsistency between the terms and conditions of the DIP Term Sheet, the Interim Order, or this Final Order the provisions of this Final Order shall govern and control.

44.     Survival.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order in this Case or any Successor Case.

45.     Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: August 7, 2026

_____

THE HONORABLE ELIZABETH D. KATZ
UNITED STATES BANKRUPTCY JUDGE

**Anna Maria College**
**13 Week Cash Flow Forecast - Extended to 12/31/26**
**Draft as of 06/25/2026**

| | 1 Week Ending 06/27/26 | 2 Week Ending 07/04/26 | 3 Week Ending 07/11/26 | 4 Week Ending 07/18/26 | 5 Week Ending 07/25/26 | 6 Week Ending 08/01/26 | 7 Week Ending 08/08/26 | 8 Week Ending 08/15/26 | 9 Week Ending 08/22/26 | 10 Week Ending 08/29/26 | 11 Week Ending 09/05/26 | 12 Week Ending 09/12/26 | 13 Week Ending 09/19/26 | Total Forecast (Weeks 1 through 13) | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | | | | | | |
| Land/Asset Sales (Note 2) | | | | | | | | | | | | | | $ - | | | | | $ - |
| Dividend Income | 33,775 | | | | | | | | | | | | | $ 33,775 | | | | | $ 33,775 |
| DIP Loan (Note 1) | | 250,000 | 250,000 | 350,000 | | 250,000 | | | 400,000 | | | | | $ 1,500,000 | 800,000 | 700,000 | | | $ 3,000,000 |
| Tuition, Room, Board | 65,794 | | | | | | | | | | | | | $ 65,794 | | | | | $ 65,794 |
| **Total Income** | $ 99,569 | $ 250,000 | $ 250,000 | $ 350,000 | $ - | $ 250,000 | $ - | $ - | $ 400,000 | $ - | $ - | $ - | $ - | $ 1,599,569 | $ 800,000 | $ 700,000 | $ - | $ - | $ 3,099,569 |
| **Expenses** | | | | | | | | | | | | | | | | | | | |
| Business Insurance Ext. | 2,542 | 83,259 | | | | | | | | | | | | $ 85,801 | 400,000 | | | | $ 485,801 |
| Destruction of Hazardous Waste | | | 20,000 | 25,000 | | 25,000 | | | | | | | | $ 70,000 | | | | | $ 70,000 |
| Office and Miscellaneous Expense | 6,310 | 10,000 | 10,000 | | | | | 10,000 | | | | | | $ 36,310 | | 10,000 | 10,000 | 10,000 | $ 76,310 |
| Professional Fees | 100,000 | | | | 350,000 | | | | 275,000 | | | | | $ 725,000 | 275,000 | 350,000 | 350,000 | 350,000 | $ 2,050,000 |
| Property Maintenance | 600 | 16,000 | 5,000 | 5,000 | 5,000 | 5,000 | 16,000 | 5,000 | 5,000 | 5,000 | 16,000 | 5,000 | 5,000 | $ 93,600 | 5,000 | 25,000 | 25,000 | 25,000 | $ 173,600 |
| Security | 25,000 | | | | 25,000 | | | | | 25,000 | | | | $ 75,000 | | 25,000 | 25,000 | 25,000 | $ 175,000 |
| Storage - Eagle Leasing | | 3,000 | | | | | 3,000 | | | | 3,000 | | | $ 9,000 | 3,000 | | | | $ 12,000 |
| Student Refunds | 4,700 | | | | | | | | | | | | | $ 4,700 | | | | | $ 4,700 |
| Transition Team Payroll | 157,298 | | 43,000 | | 48,500 | | 31,500 | | 18,000 | | 17,500 | | 17,000 | $ 332,798 | 8,500 | 26,000 | 26,000 | 26,000 | $ 419,298 |
| US Trustee Fee | | | 5,000 | | | | | | | | | | | $ 5,000 | | 21,000 | | | $ 26,000 |
| Utilities (including utility deposits) | | | 75,000 | 50,000 | | 50,000 | | | 50,000 | | | | | $ 225,000 | 50,000 | 50,000 | 75,000 | 75,000 | $ 475,000 |
| DIP Loan Interest | | | | 153 | | | | 6,569 | | | | | 12,833 | $ 19,556 | | 16,439 | 28,417 | 28,417 | $ 92,828 |
| Contingency | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | $ 120,000 | 10,000 | 10,000 | 20,000 | 20,000 | $ 190,000 |
| **Total Expenses** | $ 296,449 | $ 122,259 | $ 168,000 | $ 90,153 | $ 438,500 | $ 90,000 | $ 60,500 | $ 31,569 | $ 358,000 | $ 40,000 | $ 46,500 | $ 15,000 | $ 44,833 | $ 1,801,763 | $ 786,500 | $ 543,439 | $ 559,417 | $ 559,417 | $ 4,250,536 |
| **Net Change** | $ (196,880) | $ 127,741 | $ 82,000 | $ 259,847 | $ (438,500) | $ 160,000 | $ (60,500) | $ (31,569) | $ 42,000 | $ (40,000) | $ (46,500) | $ (15,000) | $ (44,833) | $ (202,194) | $ 13,500 | $ 156,561 | $ (559,417) | $ (559,417) | $ (1,150,967) |
| **Beginning Cash Balance Surplus (Deficit)** | $ 249,892 | $ 53,012 | $ 180,753 | $ 262,753 | $ 522,600 | $ 84,100 | $ 244,100 | $ 183,600 | $ 152,031 | $ 194,031 | $ 154,031 | $ 107,531 | $ 92,531 | $ 249,892 | $ 47,698 | $ 61,198 | $ 217,759 | $ (341,658) | $ 249,892 |
| **Ending Available Cash Surplus (Deficit)** | $ 53,012 | $ 180,753 | $ 262,753 | $ 522,600 | $ 84,100 | $ 244,100 | $ 183,600 | $ 152,031 | $ 194,031 | $ 154,031 | $ 107,531 | $ 92,531 | $ 47,698 | $ 47,698 | $ 61,198 | $ 217,759 | $ (341,658) | $ (901,075) | $ (901,075) |

Note 1: A DIP loan for up to $3M at a rate of SOFR plus 7% has been assumed for purposes of this cash flow forecast.

Note 2: AMC and a regional college continue to work on a proposed transaction in which the regional college would acquire certain assets related to AMC's Nursing program.  The transaction still requires approval of MBORN and further due diligence on the part of the regional college.  Although there is no certainty of the transaction closing, it is AMC's belief that assuming MBORN were to give its approval, there is a reasonable probability of the transaction closing.  Expected proceeds range from $1.1M to $1.3M.