**THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>THE SISTERS OF SAINT ANN<br>d/b/a ANNA MARIA COLLEGE,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 26-40758-EDK |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE PRIVATE SALE OF NURSING PROGRAM ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (II) GRANTING RELATED RELIEF
(EXPEDITED DETERMINATION REQUESTED)**

The Sisters of Saint Ann d/b/a Anna Maria College, debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor" or the "College"), hereby moves (the "Private Sale Motion") pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1(c), and 6006-1 of the Local Rules for the United States Bankruptcy Court for the District of Massachusetts (the "Local Rules"), for entry of an order substantially in the form attached hereto as *Exhibit A* (the "Sale Order"), authorizing the Debtor to transfer a discrete set of assets once supporting the undergraduate and graduate nursing programs ("Nursing Programs") offered through the Debtor's School of Nursing and Health Science (the "Nursing Program Assets") to Assumption University, a Massachusetts non-profit corporation ("Assumption"), by *private sale,* free and clear of all liens,

[1] The last four digits of the Debtor's taxpayer identification number are 2060. The Debtor's address is 50 Sunset Lane, Paxton, MA 01612.

claims, encumbrances, and other interests, pursuant to the terms of an Asset Purchase Agreement ("APA") and related Transfer Agreement ("Transfer Agreement", and with the APA, the "Sale Documents") (attached at *Exhibit B*) negotiated by and between the Debtor and Assumption (the "Assumption Transaction").

Given the unique structure of the transaction and the limited scope of assets in relation to those currently being marketed for sale pursuant to the Bid Procedures Order (discussed below) and exigency involved with transfer of the Debtor's 45 nursing program seats to Assumption with authority from the Massachusetts Board of Registration in Nursing ("MBORN") at the earliest possible opportunity so that past enrollees at the College's Nursing Program have the option to continue their studies at Assumption this Fall, the Debtor has determined that there is no financial or other benefit to the estate to be gained by exposing the APA to the market to solicit competing or higher offers for the Nursing Program Assets and therefore, requests that the Court approve the form of Notice of Private Sale attached hereto as *Exhibit C*, schedule a hearing regarding this Motion at its earliest convenience, and enter the Sale Order at or following the conclusion of the Hearing, to ensure that all pre-conditions to closing can be achieved to enable the transaction to close prior to September 30, 2026. Consent to the relief requested has been obtained from the Debtor's lender, Citizens Bank, N.A. ("Citizens"). The Debtor shared a copy of this Private Sale motion with the Official Committee of Unsecured Creditors ("Committee") prior to filing, and you is working collaboratively with the Committee to answer any questions and resolve any issues that may arise. In support of this Motion, the Debtor relies upon and incorporates by reference the *Declaration of Dr. Sean J. Ryan in Support of Chapter 11 Petition and First Day Pleadings* [Dkt. No. 9] (the "First-Day Declaration"), and respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief requested herein are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 2002-1, 6004-1, and 6006-1.

## BACKGROUND

5. On June 26, 2026 (the "Petition Date"), the Debtor commenced the above-captioned proceeding by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor continues to operate its business and manage its property as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On July 16, 2026, the United States Trustee (the "U.S. Trustee") filed a notice of the appointment of an Official Committee of Unsecured Creditors (the "Committee") [Dkt. No. 69].

7. As described in the First-Day Declaration, for the past approximately 80 years, the Debtor operated a private, nonprofit, Catholic institution of higher education in Paxton, Massachusetts known as "Anna Maria College," offering members of the local community a variety of undergraduate programs that integrated liberal arts education with career preparation and graduate programs that promoted professional achievement and responsibility.

8. Like many small, private, tuition-dependent institutions in New England, the College faced several years of declining enrollment and a corresponding drop in tuition revenue, ultimately resulting in the inability of the College to sustain its operations on a go-forward basis.

The Debtor's board of trustees made the difficult decision to close the College and wind-down operations following graduation of the senior class in May 2026, remaining committed to ensuring that then-enrolled students have a clear path to degree completion at another local institution. The College has entered into Pathway Agreements with Worcester State University, Regis College, Springfield College, Bay Path University, Elms College, Fitchburg State University and UMass Lowell through which partner institutions have agreed to guarantee admission to eligible Anna Maria College students seeking to continue their studies at accredited institutions offering comparable programs. In addition, despite its declining resources, the College has been cooperating with the applicable regulatory agencies, including the Massachusetts Department of Higher Education and the United States Department of Education, in connection with the closure of the College.

9. With secured debt of approximately $17.8 million plus substantial unsecured liabilities, the Debtor commenced this Chapter 11 Case to initiate a Court-supervised process for liquidation of the College's assets for the benefit of the Debtor's creditor body.

10. In particular, as described in the *Motion for Entry of (I) An Order (A) Approving Sale Procedures in Connection with the Sale of Substantially All of the Debtor's Assets in One or More Transactions, (B) Scheduling an Auction and Hearing to Approve the Sale(s) and the Form and Manner of Notice Thereof, (C) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Authorizing De Minimis Sales of Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (E) Granting Related Relief; and (II) An Order (A) Approving the Sale of Substantially All of the Debtor's Assets, in One or More Transactions, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts*

*and Unexpired Leases, and (C) Granting Certain Related Relief* [Dkt. No. 5] (the "Sale Motion"), the Debtor's assets consist, in large part, of its campus located at 50 Sunset Lane, Paxton, Massachusetts 01612 (the "Campus") comprised of approximately 261.75 acres, including 17 buildings totaling approximately 300,622 square feet of gross building area, the value of which, according to a recent appraisal prepared by BBG, Inc. dated January 7, 2025, has substantial value above the secured debt.

11. In accordance with the *Order (A) Approving Sale Procedures in Connection with the Sale of Substantially All of the Debtor's Assets in One or More Transactions, (B) Approving the Form and Manner of Notice of the Auction and Sale Hearing, (C) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Authorizing De Minimis Sales of Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, and (E) Granting Related Relief* [ECF No. 80] ("Bid Procedures Order") and with assistance from a regional brokerage firm, the Campus and its contents are in the process of being marketed for sale.

12. Separately, as the Debtor was preparing to file this chapter 11 case, representatives of Assumption SALE ORcontacted the College to express an interest in absorbing the 45 student "seats" associated with the Debtor's Nursing Program previously approved by and accredited by MBORN pursuant to 244 C.M.R. 6.00, et seq. ("Nursing Program Seats")[2] to expand Assumption's Froelich School of Nursing program to offer, in the first instance, admission to the College's Nursing Program students, as well as in acquiring certain proprietary teaching materials and related assets, for value. As these discussions led to execution of a Memorandum of

---

[2] To the extent of inconsistency between definition of a defined term used in a Sale Document and this Motion, the terms of the Sale Document shall control.

Understanding ("MOU"), the Debtor specifically excluded the Nursing Program Assets from the scope of those being marketed through the Bid Procedures Order, envisioning a separate, streamlined process to transfer the Debtor's Nursing Program Assets upon execution of the Sale Documents.

13. The Debtor and Assumption have since finalized the forms of the Sale Documents as contemplated by the MOU, and obtained the required approval of MBORN ("MBORN Approval") to assignment of the Nursing Program Seats to Assumption through application of the Debtor made pursuant to 244 C.M.R. § 6.09 and of Assumption, to request approval of the expansion of Assumption's existing allocated nursing student enrollment capacity from 90 to 135, a critical step to ensuring that the Nursing Program students have the ability to resume their nursing studies at Assumption by the start of the Fall semester.

14. Through this Motion, with MBORN Approval secured and the Transaction Documents executed, the Debtor requests authority to consummate the Assumption Transaction in accordance with the Sale Documents at the earliest possible date, no later than by September 30, 2026.

## THE PROPOSED SALE

### A. Overview of the Proposed Sale

15. As described in the attached APA, the assets that Assumption seeks to acquire by private sale consist of all of Anna Maria College's right, title, and interest in the following tangible and intangible assets and properties (collectively, the "Assets"):

a. all of the curricular materials, other files, plans, documents, correspondence, lists, notebooks, creative materials, studies, reports, or records of Anna Maria College owned by Anna Maria College and relating solely to the AMC Nursing School or its provision of educational services to the Current Anna Maria Nursing Students, as set forth on Schedule 1.04(a) to the APA, in each case whether written or electronically stored or otherwise recorded; and

b. all goodwill of the Assets.

16. Importantly, through the Transfer Agreement, Assumption has agreed to offer (i) Anna Maria College Nursing prelicensure and Nursing RN-BSN students enrolled in Anna Maria College's Spring 2026 semester who were in good academic standing at the freshman, sophomore or junior level and (ii) students admitted by Anna Maria College for enrollment in the class of 2030 of the AMC Nursing School continued enrollment in the nursing program at Assumption University's Froelich School to teach out the nursing curriculum.

17. In doing so, through the Transfer Agreement, Assumption has agreed that, among other terms benefitting the students enrolled in the Nursing Program, tuition charged by Assumption to those Nursing Program students that enroll with Assumption for the 2026-2027 academic year (defined in the Transfer Agreement as "Enrolled Students") shall be no greater than the net tuition charged by the College for the 2025-2026 academic year, increased by the same percentage increase as the increase, if any, in Assumption's tuition for its legacy nursing students for 2026-2027 as compared to its 2025-2026 tuition for such legacy students. Assumption will also consider all Enrolled Students for financial aid, and recognize academic credits recognized by the Debtor.

18. In consideration for the ability to acquire the Assets on an expedited basis and through private sale, in addition to that offered through the Transfer Agreement, Assumption has agreed to fund a payment to the Debtor of $1,100,000.00 (the "Purchase Price") at closing of the Assumption Transaction, less a hold-back reserve of $110,000.00 ("Holdback"), for a total closing payment of $990,000.00 ("Closing Payment"). The APA provides that the Holdback shall serve as Assumption's exclusive remedy and source of recovery to the extent Assumption suffers "Indemnifiable Damages" as defined in the APA; the balance of the Holdback shall be released to the Debtor on the one year anniversary of the date of the closing of the Assumption Transaction.

19. Closing of the Assumption Transaction is conditioned upon entry of the Sale Order, and MBORN Approval; Assumption holds the right to terminate the APA to the extent the Closing does not occur on or prior to September 30, 2026.

20. The Debtor has determined that proceeding with the Assumption Transaction on the terms negotiated and agreed upon is necessary and appropriate to implement the teach-out plan embodied in the Transfer Agreement for the benefit of current Nursing Program students, while capturing the attendant value associated with the Nursing Program Assets on an expedited basis. No other party has expressed an interest in purchasing the Nursing Program Assets for value, or to compensate the College for its role in teach-out programs underway. Importantly, through the APA, the Debtor has agreed that until the Closing or termination, unless otherwise ordered, the Debtor shall not solicit proposals from prospective purchasers of the Nursing Program Assets, although the Debtor does not believe that it would benefit from a further extended period of marketing and solicitation.

21. Based on the foregoing, the Debtor proposes that the sale proceed as a private sale, with transfer of the Nursing Program Assets to result in a sale to Assumption free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f), with the consent of Citizens, with the proceeds of the Assumption Transaction to be applied in accordance with the terms of the Financing Order (as defined herein).

22. The Debtor has prepared the Sale Notice in compliance with the requirements of Local Rule 6004-1(c), and following scheduling of a hearing and objection deadline, will serve the Sale Notice on all required parties in interest.

## BASIS FOR REQUESTED RELIEF

**A. The Private Sale Should Be Approved under Bankruptcy Code Section 363(b).**

23. Under 11 U.S.C. § 363(b)(1), a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in this Circuit apply the business judgment standard to a debtor's proposed use, sale, or lease of estate property outside the ordinary course under section 363(b). *See In re BankVest Capital Corp.*, 360 F.3d 291, 301 (1st Cir. 2004); *Milk Indus. Regulatory Office of P.R. v. Rosa Dairy Farm, Inc. (In re Rosa Dairy Farm, Inc.)*, 622 B.R. 806 (B.A.P. 1st Cir. 2020); *In re Healthco International, Inc.*, 136 F.3d 45, 50 n.5 (1st Cir. 1998); *In re Culp*, 550 B.R. 683, 697 (D. Del. 2015); *In re Trans World Airlines*, No. 01-0056, 2001 WL 1820326, at *10 (Bankr. D. Del. Apr. 2, 2001) ("It is not the function of a bankruptcy court to independently exercise business judgment as to which proposal among competing proposals should be adopted by the debtor in effecting a § 363(b) sale.").

24. As is described in the Sale Motion, the First Day Declaration, and above, a compelling business justification exists for the Debtor to move forward with the Assumption Transaction, to generate funds for the estate as well as to ensure that the College complies with its obligation to ensure that its prior student-body may secure acceptance at colleges or universities that will teach out the programs underway. The Debtor is not aware of any other opportunity to monetize the Nursing Program Assets.

25. Sale of the Nursing Program Assets "free and clear" pursuant to Section 363(f) of the Bankruptcy Code is appropriate, given that Citizens, Debtor's prepetition and post-petition lender with a senior, first-priority position as to the Nursing Program Assets, including through the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Approving Postpetition Financing, (II) Granting Liens And Providing Superpriority Administrative Expense*

*Status, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief,* ECF No. 146, as may be amended or supplemented ("Financing Order"), has consented to the relief requested in this Motion, subject to entry of the Sale Order. *See, e.g., BAC Home Loans Servicing LP v. Grassi*, No. 08-21085-JBH, 2011 WL 6096509, at *5 (B.A.P. 1st Cir. Nov. 21, 2011) ("Because the language of § 363(f) is in the disjunctive, courts can approve a sale if any one of the five conditions is satisfied.").

26. The Debtor submits that a private sale, rather than a public sale or auction, is in the best interest of the estate given that the MBORN Approval process is buyer-specific and time-consuming, and the universe of viable purchasers capable of acquiring the Nursing Program Assets is limited to institutions of higher education with existing nursing programs or the capacity to obtain MBORN approval to operate a nursing program; just as importantly, any delay in entry of the Sale Order will make it less likely that current Nursing Program students will be able to take advantage of the Transfer Agreement and secure spots in the Assumption nursing program as early as the start of the Fall semester. There is no surmisable benefit to be gained through further marketing or a lengthy sale process. Just as importantly, the Committee has indicated that it is supportive of granting the relief requested in this Motion, and moving forward to close the Assumption Transaction as expeditiously as possible.

27. Pursuant to the APA, to the extent that the Debtor is "the beneficiary of certain restricted gifts that are intended to benefit the AMC Nursing School (such restricted gifts, the "Applicable Gifts")" the Debtor agreed to use commercially reasonable efforts to either transfer the benefit of the Applicable Gifts to Assumption if the applicable documents permit such transfers, or, after the Closing and at Anna Maria College's own cost and expense, seek a *cy pres* order from the appropriate court to modify the Applicable Gifts to permit Assumption to obtain

the benefit of such Applicable Gifts for its nursing program. Assumption agrees to provide reasonable cooperation with Anna Maria College in these efforts. *APA* at Par. 1.02. While the Debtor's advisors have not yet identified any Applicable Gifts, to the extent that the Debtor's records demonstrate that the Debtor is the beneficiary of Applicable Gifts that have not yet been exhausted, the Debtor, in compliance with the APA, will take steps to permit the Applicable Gifts to be used by Assumption in the Debtor's place, which shall include filing a separate motion with notice to impacted donors and appropriate regulatory agencies.

**B. Waiver of the Fourteen-Day Stay under Bankruptcy Rules 6004(h) and 6006(d) is Warranted.**

28. Pursuant to Bankruptcy Rule 6004(h), unless the Bankruptcy Court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. Similarly, under Bankruptcy Rule 6006(d), unless the Bankruptcy Court orders otherwise, all orders authorizing the assignment of contracts or unexpired leases are automatically stayed for fourteen days after entry of the order. The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h); Advisory Committee Notes to Fed. R. Bankr. P. 6006(d).

29. Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, commentators agree that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure. *See generally Collier on Bankruptcy* ¶ 6004.11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Furthermore, if an objection is filed and overruled, and the objecting party informs the Bankruptcy

Court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. *Id.*

30. Classes for the Fall 2026 semester at Assumption begin Monday, August 31, 2026. This fixed date leaves c no flexibility to defer the transfer of the Nursing Program Assets without jeopardizing Assumption's ability to receive and support the Enrolled Students at the start of the Fall 2026 semester. Thus, the Debtor submits that waiver of any applicable stays is appropriate in this circumstance.

31. Based on the foregoing circumstances, the Debtor submits that approval of the Sale Notice and entry of the Sale Order is necessary and appropriate under Section 363(b) and (f) and applicable Local Rules and procedures.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that this Court: (a) approve the Sale Notice and schedule the Hearing on or before September 11, 2026 at the Court's convenience; (b) following the conclusion of the Hearing, enter the Sale Order, thereby authorizing the sale of the Nursing Program Assets pursuant to the APA, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code, with such interests attaching to the net sale proceeds; and (c) grant such other and further relief as this Court deems just and proper.

Dated: August 14, 2026

Respectfully submitted,

/s/ *John J. Monaghan*
John J. Monaghan (MA Bar #546454)
Lynne B. Xerras (MA Bar #632441)
Kathleen St. John (MA Bar #681565)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue
Boston, MA 02116
Telephone: (617) 523-2700
Facsimile: (617) 523-6850
E-mail: john.monaghan@hklaw.com
lynne.xerras@hklaw.com
kathleen.stjohn@hklaw.com

*Counsel to the Debtor/Debtor-in-Possession*

**CERTIFICATE OF SERVICE**

I, John J. Monaghan, counsel for The Sisters of Saint Ann d/b/a Anna Maria College, the debtor and debtor in possession in the above-captioned chapter 11 case, hereby certify that on August 14, 2026, I caused copies of the foregoing *Motion for Entry of an Order (I) Authorizing the Private Sale of Nursing Program Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (II) Granting Related Relief*, together with its Exhibits to be served by the Court's CM/ECF electronic filing system on all registered users.

*/s/ John J. Monaghan*___________________
John J. Monaghan

**EXHIBITS**

Exhibit A — Proposed Sale Order

Exhibit B — Asset Purchase Agreement and Transfer Agreement

Exhibit C — Proposed Sale Notice