# EXHIBIT B

# PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "**Agreement**"), dated as of August 12, 2026 (the "**Execution Date**"), is entered into by and among The Sisters of Saint Ann, a Massachusetts non-profit corporation doing business as Anna Maria College ("**Anna Maria College**"), and Assumption University, a Massachusetts non-profit corporation ("**Assumption**" and collectively with Anna Maria College, the "**Parties**" with each of the Parties individually referred to as a "**Party**"). Capitalized terms used in this Agreement have the meanings given to such terms herein.

## RECITALS

**WHEREAS**, the Parties desire to accommodate the transfer and enrollment of current and admitted nursing students from Anna Maria College's School of Nursing and Health Science (the "**AMC Nursing School**") to the Froelich School of Nursing at Assumption (the "**Froelich School**"), as well as to arrange the transfer and assignment of certain curricular materials and other assets owned by Anna Maria College, in a transaction (the "**Transaction**") subject to the approval of the Massachusetts Board of Registration in Nursing ("**MBORN**").

**WHEREAS**, in June, 2026, the Parties submitted to MBORN for approval, conditioned upon the consummation of the transaction contemplated in this Agreement, a 6.09 Change of Governance Application in the form attached hereto as Exhibit A (the "**6.09 Application**"), including a request for approval of the expansion of Assumption's existing allocated nursing student enrollment capacity from 90 to 135 with the 6.09 Application (45 additional seats).

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

## AGREEMENT

## ARTICLE I
## ENROLLMENT OF CURRENT ANNA MARIA NURSING STUDENTS; ASSETS

**Section 1.01 Current and Admitted Anna Maria Nursing Students.** (i) Anna Maria College Nursing prelicensure and Nursing RN-BSN students enrolled in Anna Maria College's Spring 2026 semester who were in good academic standing at the freshman, sophomore or junior level and (ii) students admitted by Anna Maria College for enrollment in the class of 2030 of the AMC Nursing School (each, a "**Current Anna Maria Nursing Student**") at the end of the Spring 2026 semester have been offered (and, upon acceptance of such offer by such students, shall be automatically admitted to) continued enrollment in the nursing program at Assumption University's Froelich School to teach out the nursing curriculum pursuant to the Transfer Agreement of even date herewith, by and between Anna Maria College and Assumption (the "**Transfer Agreement**"). Each Current Anna Maria Nursing Student that has indicated in writing by July 31, 2026 their intention to enroll as a student at the Froelich School for the 2026-27 academic year shall be referred to herein and in the Transfer Agreement as an "**Enrolled Student**", and collectively, the "**Enrolled Students**". Any Current Anna Maria Nursing Student that would otherwise be eligible for transfer to Assumption University under the Transfer Agreement will be

excluded from the Transfer Agreement and shall not be considered a Current Anna Maria Nursing Student or an Enrolled Student for purposes of this Agreement if they have already applied to and been accepted by Assumption as of June 2, 2026 for the 2026-27 academic year.

**Section 1.02 Transfer of Applicable Gifts.** To the extent that Anna Maria College is the beneficiary of certain restricted gifts that are intended to benefit the AMC Nursing School (such restricted gifts, the "**Applicable Gifts**"), Anna Maria College agrees to use commercially reasonable efforts to either transfer the benefit of the Applicable Gifts to Assumption if the applicable documents permit such transfers, or, after the Closing and at Anna Maria College's own cost and expense, seek a *cy pres* order from the appropriate court to modify the Applicable Gifts to permit Assumption to obtain the benefit of such Applicable Gifts for its nursing program. Assumption agrees to provide reasonable cooperation with Anna Maria College in these efforts.

**Section 1.03 Anna Maria Legacy.** After the Closing, Assumption shall apply commercially reasonable efforts to take actions (mutually agreed upon by the Parties) in order to preserve the name and legacy of the Anna Maria College nursing program.

**Section 1.04 Assignment of Assets.** In connection with the enrollment of Current Anna Maria Nursing Students specified in the Transfer Agreement and subject to the terms and conditions set forth herein, at the Closing Anna Maria College shall sell, convey, assign, transfer, and deliver to Assumption, and Assumption shall purchase from Anna Maria College, all of Anna Maria College's right, title, and interest in, to, and under all of the following tangible and intangible assets and properties (collectively, the "**Assets**"):

(a) all of the curricular materials, other files, plans, documents, correspondence, lists, notebooks, creative materials, studies, reports, or records of Anna Maria College owned by Anna Maria College and relating solely to the AMC Nursing School or its provision of educational services to the Current Anna Maria Nursing Students, as set forth on Schedule 1.04(a), in each case whether written or electronically stored or otherwise recorded; and

(b) all goodwill of the Assets.

**Section 1.05 Excluded Assets.** Notwithstanding the foregoing, except for the Assets specifically referred to in Section 1.04, the Assets shall not include any other assets, properties, real estate, student records, Contracts, tangible or intangible assets, and/or any other rights of Anna Maria College, including, but not limited to, all assets comprising or relating to the Simulator Lab on site at Anna Maria College (collectively, the "**Excluded Assets**"), and all of the Excluded Assets shall be owned by Anna Maria College on and after the Closing.

**Section 1.06 No Assumption of Liabilities.** Notwithstanding any provision in this Agreement to the contrary, Assumption shall not assume and shall not be responsible to pay, perform, or discharge any Liabilities (including without limitation any Contracts, Benefits Plan, or Liabilities associated therewith) of either Anna Maria College or any of its Affiliates of any kind or nature whatsoever, including any Contracts of either Anna Maria College or any of its Affiliates of any kind or nature (any and all such Liabilities, the "**Excluded Liabilities**").

**Section 1.07 Definitions.** In addition to the other capitalized terms defined in the body of this Agreement, for purposes of this Agreement, the following capitalized terms shall have the indicated meanings:

(i) "**AMC Disclosure Schedules**" means the disclosure schedules of Anna Maria College attached hereto, and as they may be updated or otherwise modified hereafter in compliance with Section 5.09.

(ii) "**Affiliate**" of a Person means any other Person that directly or indirectly, through one or more intermediaries, Controls, is Controlled by, or is under common Control with, such Person; the "**Business Day**" means any day except Saturday, Sunday, or any other day on which commercial banks located in Boston, MA are authorized or required by Law to be closed for business.

(iii) "**Contract**" means contracts, leases, licenses, instruments, notes, commitments, undertakings, indentures, joint ventures, and all other agreements, commitments, and legally binding arrangements, whether written or oral;

(iv) "**Control**" (including the terms "**Controlled by**" and "**under common Control with**") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise;

(v) "**Disclosure Schedules**" means the AMC Disclosure Schedules.

(vi) "**Knowledge**" means with respect to (i) Anna Maria College, the conscious awareness of Anna Maria College's current President (Sean Ryan), and (ii) Assumption, the conscious awareness of Assumption's current President (Greg Weiner).

(vii) "**Liabilities**" means liabilities, obligations, or commitments of any nature whatsoever, whether asserted or unasserted, known or unknown, absolute or contingent, accrued or unaccrued, matured or unmatured, or otherwise.

**Section 1.08 Purchase Price for Assets.**

(a) Purchase Price. The aggregate purchase price for the Assets shall be One Million One Hundred Thousand Dollars ($1,100,000.00) (the "**Purchase Price**"). The Purchase Price, less the Holdback Amount, shall be paid to Anna Maria College by wire transfer of immediately available funds in accordance with the wire transfer instructions provided by Anna Maria College to Assumption in writing in advance of the Closing, to be distributed by Anna Maria College in accordance with the Approval Order authorizing the Transaction. (the "**Closing Payment**").

(b) Holdback. At the Closing, Assumption will withhold One Hundred Ten Thousand Dollars ($110,000.00) of the Purchase Price (such withheld cash, the "**Holdback Amount**") to be used as the sole source to satisfy and as security for Anna Maria College's indemnification obligations for Indemnifiable Damages (as defined in Section 6.01(b)),

except as otherwise provided in Section 6.06. The Holdback Amount will be held by Assumption, subject to the terms and conditions of ARTICLE VI, until the day that is twelve (12) months after the Closing Date, at which point, the balance of the Holdback Amounts, less the Holdback Reserve shall be released to Anna Maria College, in accordance with Section 6.04(d) (the "**Holdback Release Date**").

**Section 1.09 Allocation of Purchase Price.** The Purchase Price (including all adjustments thereto under this Agreement) and all other relevant items (including but not limited to items constituting purchase price for income tax purposes) shall be allocated in accordance with Section 1060 of the Code (and any corresponding provisions of other applicable legal requirements, as applicable) to the extent applicable. Each of Assumption and Anna Maria College shall timely file all returns, declarations, reports, information returns and statements, and other documents relating to Taxes (including amended returns and claims for refund) ("**Tax Returns**") (including IRS Form 8594) in a manner consistent with Section 1060 of the Internal Revenue Code of 1986, as amended (the "**Code**").

**Section 1.10 Taxes.** All sales, use, registration, and other such Taxes and fees (including any penalties and interest) incurred by Anna Maria College in connection with this Agreement and the other Transaction Documents, if any, shall be borne and paid by Anna Maria College when due. Anna Maria College shall, at its own expense, timely file any Tax Return or other document with respect to such Taxes or fees (and Assumption shall cooperate with respect thereto as necessary). Assumption shall be entitled to withhold from the Purchase Price all Taxes that Assumption may be required to withhold under any provision of Tax Law. All such withheld amounts shall be treated as delivered to Anna Maria College hereunder.

## ARTICLE II
## CLOSING

**Section 2.01 Closing.** Subject to the terms and conditions of this Agreement, the consummation of the transactions contemplated by this Agreement (the "**Closing**") shall take place remotely by exchange of documents and signatures (or their electronic counterparts), no later than the tenth (10th) Business Day after all of the conditions to Closing set forth in ARTICLE VII are either satisfied or waived (other than conditions which, by their nature, are to be satisfied on the Closing Date), or at such other time or place or in such other manner as Anna Maria College and Assumption may mutually agree upon in writing. The date on which the Closing occurs is herein referred to as the "**Closing Date**." The Closing shall be effective for all purposes of this Agreement at 12:01 AM Eastern Time on the Closing Date.

**Section 2.02 Closing Deliverables.**

(a) At the Closing, Anna Maria College shall deliver to Assumption the following:

(i) a bill of sale in the form attached hereto as Exhibit B (the "**Bill of Sale**"), duly executed by Anna Maria College, effecting the assignment to Assumption of the Assets;

(ii) a certificate of the Secretary (or equivalent officer) of Anna Maria College certifying as to (A) the resolutions of the Board of Trustees of Anna Maria College, which authorize the execution, delivery, and performance of this Agreement, the Bill of Sale, and the other agreements, instruments, and documents required to be delivered in connection with this Agreement or at the Closing (including the Transfer Agreement, collectively, the "**Transaction Documents**") and the consummation of the transactions contemplated hereby and thereby, and (B) the names and signatures of the officers of Anna Maria College authorized to sign this Agreement and the other Transaction Documents;

(iii) an IRS Form W-9, duly executed by Anna Maria College;

(iv) a Letter of Direction, addressed to Assumption and executed by Anna Maria College (the "**Letter of Direction**"), setting forth the wire transfer instructions for each account to which any portion of the Purchase Price is to be sent; and

(v) such other customary instruments of transfer or assumption, filings, or documents, in form and substance reasonably satisfactory to Assumption, as may be required to give effect to the transactions contemplated by this Agreement.

(b) At the Closing, Assumption shall deliver to Anna Maria College the following:

(i) the Purchase Price (less the Holdback Amount and any tax amounts that may be withheld in accordance with the penultimate and final sentences of Section 1.10) via wire transfer to the accounts and the recipients as specified in the Letter of Direction;

(ii) a certificate of the Secretary (or equivalent officer) of Assumption certifying as to (A) the resolutions of the Board of Trustees of Assumption, which authorize the execution, delivery, and performance of this Agreement and the other Transaction Documents and the consummation of the transactions contemplated hereby and thereby, and (B) the names and signatures of the officers of Assumption authorized to sign this Agreement and the other Transaction Documents;

(iii) the Bill of Sale, duly executed by Assumption; and

(iv) such other customary filings, or documents, in form and substance reasonably satisfactory to Anna Maria College, as may be required to give effect to the transactions contemplated by this Agreement.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF ANNA MARIA COLLEGE

Anna Maria College hereby represents and warrants to Assumption that except as set forth in the AMC Disclosure Schedules, the statements contained in this ARTICLE III are true and correct as of the Execution Date and as of the Closing Date.

**Section 3.01 Organization and Authority of Anna Maria College.** Anna Maria College is a non-profit corporation duly organized, validly existing, and in good standing under the Laws of the Commonwealth of Massachusetts. Anna Maria College has no capital stock or other equity securities outstanding. No director, officer, member, founder, donor, or other person possesses any ownership interest in Anna Maria College or its assets. Except for the voting rights of the members of the Board of Trustees, solely in their role as Trustees, no person has any right to vote, control, acquire, or receive any economic interest in Anna Maria College or its assets. Anna Maria College has full power and authority to enter into this Agreement and the other Transaction Documents to which Anna Maria College is a party, to carry out its obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby. The execution and delivery by Anna Maria College of this Agreement and any other Transaction Document to which Anna Maria College is a party, the performance by Anna Maria College of its obligations hereunder and thereunder, and the consummation by Anna Maria College of the transactions contemplated hereby and thereby have been duly authorized by all requisite corporate action on the part of Anna Maria College. This Agreement and the Transaction Documents constitute legal, valid, and binding obligations of Anna Maria College, enforceable against Anna Maria College in accordance with their respective terms.

**Section 3.02 No Conflicts or Consents.** Except as set forth in Section 3.02 of the AMC Disclosure Schedules, the execution, delivery, and performance by Anna Maria College of this Agreement and the other Transaction Documents to which they are a party, and, upon entry of the Approval Order(s), the consummation of the transactions contemplated hereby and thereby, do not and will not: (a) violate or conflict with any provision of the articles of organization, bylaws, or other governing documents of Anna Maria College; (b) violate or conflict with any provision of any statute, law, ordinance, regulation, rule, code, constitution, treaty, common law, other requirement, or rule of law (collectively, "**Law**") of any federal, state, local, or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any arbitrator, court, or tribunal of competent jurisdiction (collectively, "**Governmental Authority**"), or any order, writ, judgment, injunction, decree, stipulation, determination, penalty, or award entered by or with any Governmental Authority ("**Governmental Order**") applicable to either Anna Maria College or the Assets; (c) require the consent, notice, declaration, or filing with or other action by any individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association, or other entity ("**Person**") or require any permit, license, or Governmental Order; or (d) result in the creation or imposition of any charge, claim, pledge, equitable interest, lien, security interest, restriction of any kind, or other encumbrance ("**Encumbrance**") on the Assets.

**Section 3.03 Financial Information.** Anna Maria College has delivered complete copies of certain financial information and data in respect of the Current Anna Maria Nursing Students and the Assets, including without limitation financial aid award letters for each of the Current Anna Maria Nursing Student and the BSN Program Analysis and Nursing Student Admissions Data delivered by Anna Maria College to Assumption on April 17, 2026 (the

"**Financial Information**"). The Financial Information is true and correct in all material respects as of the date of this Agreement and as of the Closing Date.

**Section 3.04 Absence of Certain Changes, Events, and Conditions.** Except for the initiation by Anna Maria College on June 26, 2026 (the "**Petition Date**") of a Chapter 11 bankruptcy case, captioned as *In re The Sisters of St. Ann d/b/a Anna Maria College*, Case No. 26-40758-EDK (the "**Bankruptcy Case**"), and as provided in Section 3.04 of the AMC Disclosure Schedules, since January 1, 2026, there has not been any change, event, condition, or development that is, or could reasonably be expected to be, individually or in the aggregate, materially adverse to the value of the Assets.

**Section 3.05 Contracts.** Except as set forth in Section 3.05 of the AMC Disclosure Schedules, there are no: (a) Contracts relating to indebtedness (including, without limitation, guarantees) by which any of the Assets are bound or affected; and (b) Contracts for the sale of any of the Assets or for the grant to any Person of any option, right of first refusal or preferential or similar right to purchase any of the Assets. Except as set forth in Section 3.05 of the AMC Disclosure Schedules, none of Anna Maria College, or, to Anna Maria College's Knowledge, any other party thereto is in breach of or default under (or is alleged to be in breach of or default under) or has provided or received any notice of any intention to terminate, any such Contract. No event or circumstance has occurred that, with notice or lapse of time or both, would constitute an event of default under any such Contract, or result in a termination thereof or would cause or permit the acceleration or other changes of any right or obligation or the loss of any benefit thereunder.

**Section 3.06 Title to Assets.** Except as set forth in Section 3.06 of the AMC Disclosure Schedules, Anna Maria College has good and valid title to all of the Assets, free and clear of all Encumbrances. Neither Anna Maria College nor any of its Affiliates is bound by any outstanding judgment, injunction, order, or decree restricting the use of the Assets, or restricting the licensing or transfer thereof to any Person.

**Section 3.07 Legal Proceedings; Governmental Orders.** Except for the Bankruptcy Case and as set forth in Section 3.07 of the AMC Disclosure Schedules, Anna Maria has received no notice of any claims, actions, causes of action, demands, lawsuits, arbitrations, inquiries, audits, notices of violation, proceedings, litigation, citations, summons, subpoenas, or investigations of any nature, whether at law or in equity (collectively, "**Actions**") pending and none has been threatened against or by Anna Maria College: (a) relating to or affecting the Assets; or (b) that challenge or seek to prevent, enjoin, or otherwise delay the Transactions contemplated by this Agreement. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Action. There are no outstanding Governmental Orders against, relating to, or affecting the Assets or the transactions contemplated by this Agreement.

**Section 3.08 Benefit Plans.** Nothing has occurred with respect to any Anna Maria College employee benefit plan as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974 (each a "**Benefit Plan**"), whether or not written and whether or not subject to ERISA, or any supplemental retirement, compensation, employment, consulting, profit-sharing, deferred compensation, incentive, bonus, equity, change in control, retention, severance, salary continuation, and other similar agreement, plan, policy, program, practice, or arrangement, in each

case that could with respect to any period on or after the Closing Date, subject Assumption or any of its Affiliates, to a civil action, penalty, surcharge, or Tax under applicable Law.

**Section 3.09 Intellectual Property.** The Assets include all of the intellectual property rights necessary for the ownership and use of the Assets, whether registered or unregistered, that are recognized in any jurisdiction of the world, including such rights in patents, utility models, trademarks and tradenames, copyrights, trade secrets, and domain names (and any registrations of or applications to register any of the foregoing). To Anna Maria College's Knowledge, the prior and current use of the Assets by Anna Maria College has not and does not infringe, violate, dilute, or misappropriate such intellectual property rights of any Person. There are no claims pending or threatened by any Person with respect to the ownership, validity, enforceability, effectiveness, or use of the Assets. Neither the execution, delivery, or performance of this Agreement, nor the consummation of the transactions contemplated hereunder, will result in the loss or impairment of or payment of any additional amounts with respect to, or require the consent of any other Person in respect of, the Assumption's right to own or use any Assets in the conduct of its business.

**Section 3.10 Taxes.** All Taxes due and owing by Anna Maria College have been, or will be, timely paid. No extensions or waivers of statutes of limitations have been given or requested with respect to any Taxes of Anna Maria College. All Tax Returns required to be filed by Anna Maria College for any tax periods prior to Closing have been, or will be, timely filed. The term "**Taxes**" means all federal, state, local, foreign, and other income, gross receipts, sales, use, production, ad valorem, transfer, documentary, franchise, registration, profits, license, withholding, payroll, employment, unemployment, excise, severance, stamp, occupation, premium, property (real or personal), customs, duties, or other taxes, fees, assessments, or charges of any kind whatsoever, together with any interest, additions, or penalties with respect thereto.

**Section 3.11 Brokers.** No broker, finder, or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions contemplated by this Agreement or any other Transaction Document based upon arrangements made by or on behalf of Anna Maria College.

**Section 3.12 Regulatory Matters**.

(a) Except as set forth in Section 3.12 of the AMC Disclosure Schedules, since January 1, 2021, Anna Maria College has not received any regulatory or other comments regarding the AMC Nursing School or related to the Assets or Enrolled Students from the New England Commission of Higher Education, MBORN, the Massachusetts Department of Higher Education or any other regulator (collectively, the "**Regulators**") (i.e., a deficiency or other comment letter from any of the Regulators).

(b) Anna Maria College is in compliance with (i) all policies and procedures regarding data security, student record keeping, privacy, data transfer and the use of data, (ii) all Laws pertaining to data privacy, student record keeping, confidentiality and protection and data security, and any information that constitutes "personal information," "personal data," "personally identifiable information" or analogous term as defined in applicable laws (collectively, "**Personal Information**"), and (iii) to the extent Anna Maria College maintains or transmits protected health information, as defined under 45 C.F.R. §

160.103, as a covered entity or business associate, as defined therein, Anna Maria College is in compliance with the applicable requirements of the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**"), as amended by the Health Information Technology for Economic and Clinical Health Act, including all binding rules and regulations promulgated thereunder. There have been no (i) losses or thefts of data or security breaches relating to data in the possession, custody or control of either Anna Maria College; (ii) violations of any security policy regarding any such data; (iii) unauthorized access or unauthorized use of any such data; or (iv) unintended or improper disclosure of any Personal Information, protected health information, or other data subject to Law pertaining to data privacy, confidentiality and protection and data security in the possession, custody or control of Anna Maria College or any contractor or agent acting on behalf of Anna Maria College.

**Section 3.13 Full Disclosure.** No representation or warranty by Anna Maria College in this Agreement, as qualified by the AMC Disclosure Schedules, and no statement contained in the AMC Disclosure Schedules to this Agreement or any certificate or other document furnished or to be furnished to Assumption pursuant to this Agreement contains any untrue statement of a material fact, or omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF ASSUMPTION

Assumption represents and warrants to Anna Maria College that the statements contained in this ARTICLE IV are true and correct as of the Execution Date and as of the Closing Date.

**Section 4.01 Organization and Authority of Assumption.** Assumption is a non-profit corporation duly organized, validly existing, and in good standing under the Laws of the Commonwealth of Massachusetts. Assumption has no capital stock or other equity securities outstanding. Assumption has full corporate power and authority to enter into this Agreement and the other Transaction Documents to which Assumption is a party, to carry out its obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby. The execution and delivery by Assumption of this Agreement and any other Transaction Document to which Assumption is a party, the performance by Assumption of its obligations hereunder and thereunder, and the consummation by Assumption of the transactions contemplated hereby and thereby have been duly authorized by all requisite corporate action on the part of Assumption. This Agreement and the Transaction Documents constitute legal, valid, and binding obligations of Assumption enforceable against Assumption in accordance with their respective terms.

**Section 4.02 No Conflicts; Consents.** The execution, delivery, and performance by Assumption of this Agreement and the other Transaction Documents to which it is a party, and the consummation of the transactions contemplated hereby and thereby, do not and will not: (a) violate or conflict with any provision of the certificate of incorporation, bylaws, or other organizational documents of Assumption; (b) violate or conflict with any provision of any Law or Governmental Order applicable to Assumption; or (c) require the consent, notice, declaration, or filing with or other action by any Person or require any permit, license, or Governmental Order.

**Section 4.03 Brokers.** No broker, finder, or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions contemplated by this Agreement or any other Transaction Document based upon arrangements made by or on behalf of Assumption.

**Section 4.04 Legal Proceedings.** There are no Actions pending or, to Assumption's knowledge, threatened against or by Assumption that challenge or seek to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Action.

## ARTICLE V
## COVENANTS

**Section 5.01 Bankruptcy Process**. The Parties acknowledge that Anna Maria College's ability to transfer title of the Assets to Assumption pursuant to this Agreement is expressly conditioned upon approval of the United States Bankruptcy Court for the Central District of Massachusetts (the "**Bankruptcy Court**") in connection with the Bankruptcy Case, and, in connection therewith, the Parties hereby agree and covenant as follows:

(a) Anna Maria College shall file within three (3) Business Days of execution of this Agreement by the Parties, a motion with the Bankruptcy Court under 11 U.S.C. § 363(f) and § 365 seeking approval the sale of the Assets to Assumption pursuant to this Agreement (the "**Sale Motion**"), which Sale Motion shall be in a form acceptable to Assumption;

(b) It shall be a condition to Closing that the Bankruptcy Court has entered one or more orders ("**Approval Order(s)**"), each in a form acceptable to Assumption, approving the process that will govern approval of the Sale on the timeline set forth in this Agreement (which shall include a Sale Procedures Order, defined below), and authorizing Anna Maria College to consummate the Transaction pursuant to the terms of this Agreement as described in the Sale Motion, which sale approval order shall provide, among other things, that: (i) Assumption is a purchaser in good faith entitled to the protections under Section 363(m) of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., as amended (the "**Bankruptcy Code**"); (ii) the transfer of the Assets shall vest Assumption with all right, title, and interest of Anna Maria College in the Assets free and clear of any and all liens, claims and interests pursuant to section 363(f) of the Bankruptcy Code, with such liens to attach to the proceeds of the Purchase Price, with the same priority, validity, force, and effect as they held against Anna Maria College or the Assets as of the Petition Date, (iii) any subsequently appointed estate representative, including without limitation any Chapter 7 trustee, shall be bound by the requirements, terms and conditions of this Agreement and the Approval Orders.

**Section 5.02 Confidentiality.** From and after the Closing, other than disclosures made in connection with the Sale Motion and in seeking approval of the Transaction, Anna Maria College shall, and shall cause its Affiliates to, hold, and shall use its reasonable best efforts to cause its or their respective directors, officers, employees, consultants, counsel, accountants, and other agents ("**Representatives**") to hold, in confidence any and all information, whether written

or oral, concerning the Assets and this Transaction, except to the extent that Anna Maria College can show that such information: (a) is generally available to and known by the public through no fault of Anna Maria College, any of its Affiliates, or their respective Representatives; or (b) is lawfully acquired by Anna Maria College, any of its Affiliates, or their respective Representatives from and after the Closing from sources which are not prohibited from disclosing such information by a legal, contractual, or fiduciary obligation. If Anna Maria College or any of its Affiliates or their respective Representatives are compelled to disclose any information by Governmental Order or Law, Anna Maria College shall promptly notify Assumption in writing and shall disclose only that portion of such information which is legally required to be disclosed, provided, that, Anna Maria College shall use reasonable best efforts to obtain as promptly as possible an appropriate protective order or other reasonable assurance that confidential treatment will be accorded such information.

**Section 5.03 Public Announcements.** The Parties agree to consult with each other before issuing any press release or making any public statement with respect to this Agreement or the transactions contemplated hereby and the Parties will not issue any such press release or make any such public statement without Assumption's and Anna Maria College's prior written consent, such consent not to be unreasonably withheld, conditioned, or delayed. The restrictions set forth in this Section 5.03 shall not apply to any press release or other public statement relating to the terms of this Agreement or the transactions contemplated hereby, to the extent that the content and substance of such press release or other public statement is consistent with the content and substance of any prior press release or other public statement previously approved by the other Party for issuance pursuant to this Section 5.03. Notwithstanding the foregoing, Anna Maria College may announce the pendency of the Transaction in required public filings, following the filing of the Sale Motion.

**Section 5.04 Further Assurances.** Following the Closing, each of the Parties hereto shall, and shall cause their respective Affiliates to, execute and deliver such additional documents, instruments, conveyances, and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement and the other Transaction Documents. Each Party hereto shall use commercially reasonable efforts to take such actions as are necessary to expeditiously satisfy the closing conditions set forth in ARTICLE VII hereof, including, but not limited to (a) the obtaining of all necessary actions, waivers, consents and approvals from Governmental Authorities and the making of all necessary registrations and filings (including filings with Governmental Authorities, if any) and the taking of all reasonable steps as may be necessary to obtain an approval or waiver from, or to avoid an action or proceeding by, any Governmental Authorities; (b) the delivery of required notices to, and the obtaining of required consents or waivers from, third parties; and (c) the execution and delivery of any additional instruments necessary to consummate the transactions contemplated hereby and to fully carry out the purposes of this Agreement, including without limitation the transfer and enrollment of the Enrolled Students from the AMC Nursing School to the Froelich School.

**Section 5.05 Communications Post-Closing**. Following the Closing, Anna Maria College shall promptly notify Assumption of any potentially material third party inquiry, request or order, whether received telephonically, electronically or through the mail, relating to the Assets or Enrolled Students and refer such inquiry, request or order directly to Assumption (and shall

include with such notice copies of any relevant written document received by Anna Maria College in connection therewith).

**Section 5.06 Conduct Prior to the Closing**. From the date hereof until the Closing, except as otherwise required, authorized or restricted pursuant to the Bankruptcy Code or an Order of the Bankruptcy Court, Anna Maria College shall use commercially reasonable efforts to maintain, defend and preserve intact the Assets.

**Section 5.07 Access to Information.** From the date hereof until the Closing, Anna Maria College shall (i) afford Assumption and its Representatives full and free access to and the right to inspect all of the properties, assets, premises, books and records, Contracts and other documents and data related to the Assets during such Anna Maria College's normal business hours; (ii) furnish Assumption and its Representatives, as promptly as possible and at Assumption's expense, with such financial, operating and other data and information related to the Assets as Assumption or any of its Representatives may reasonably request, including without limitation any and all data and other information relating to and reasonably necessary to assist Assumption's integration efforts in respect of the Enrolled Students and the Assets; and (iii) instruct the Representatives of Anna Maria College to cooperate with Assumption in its investigation of the Assets and all reasonable efforts to plan for the successful integration of the Enrolled Students and the Assets into Assumption's operations after the Closing. No investigation by Assumption or other information received by Assumption shall operate as a waiver or otherwise affect any representation, warranty or agreement given or made by Anna Maria College in this Agreement.

**Section 5.08 No Solicitation of Other Bids**. From the date hereof until the earlier to occur of the Closing or the termination of this Agreement, except to the extent otherwise ordered by the Bankruptcy Court pursuant to an Order requiring and directing solicitation of other bids or offers for the Assets ("**Sale Procedures Order**"), Anna Maria College shall not, and shall not authorize or permit any of their Affiliates or any of their Representatives to, directly or indirectly, (i) encourage, solicit, initiate, facilitate or continue inquiries regarding an Acquisition Proposal; (ii) enter into discussions or negotiations with, or provide any information to, any Person concerning a possible Acquisition Proposal; or (iii) enter into any agreements or other instruments (whether or not binding) regarding an Acquisition Proposal. Anna Maria College shall immediately cease and cause to be terminated and shall cause its Affiliates and all of its and their Representatives to immediately cease and cause to be terminated, all existing discussions or negotiations with any Persons conducted heretofore with respect to, or that could lead to, an Acquisition Proposal. For purposes hereof, "**Acquisition Proposal**" means any inquiry, proposal or offer from any Person (other than Assumption or any of its Affiliates) relating to the direct or indirect disposition, whether by sale, merger or otherwise, of all or any portion of the Assets. Anna Maria College agrees that the rights and remedies for noncompliance with this Section 5.08 shall include having such provision specifically enforced by any court having equity jurisdiction, it being acknowledged and agreed that any such breach or threatened breach shall cause irreparable injury to Assumption and that money damages would not provide an adequate remedy to Assumption.

**Section 5.09 Notice of Certain Events.**

(a) From the date hereof until the Closing, Anna Maria College shall promptly notify Assumption in writing of (each an "**Interim Disclosure**"):

(i) any fact, circumstance, event or action the existence, occurrence or taking of which (A) has had, or could reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect, (B) has resulted in, or could reasonably be expected to result in, any representation or warranty made by Anna Maria College hereunder not being true and correct or (C) has resulted in, or could reasonably be expected to result in, the failure of any of the conditions set forth in Section 7.01 to be satisfied;

(ii) any notice or other communication from any Governmental Authority in connection with the transactions contemplated by this Agreement;

(iii) any Actions commenced or, to Anna Maria College's Knowledge, threatened against, relating to or involving or otherwise affecting the Assets that relates to the consummation of the transactions contemplated by this Agreement; or

(iv) any Acquisition Proposal or any request for information with respect to any Acquisition Proposal, including the material terms and conditions of such request, Acquisition Proposal or inquiry, and the identity of the Person making the same.

(b) Except as provided in **Error! Reference source not found.**, Assumption's receipt of information pursuant to this Section 5.09 shall not operate as a waiver or otherwise affect any representation, warranty or agreement given or made by Anna Maria College in this Agreement and shall not be deemed to amend or supplement the AMC Disclosure Schedules.

(c) Notwithstanding the foregoing, Anna Maria College may, prior to Closing, from time to time, but in no event later than five (5) Business Days prior to the Closing, supplement or amend the AMC Disclosure Schedules, but only with respect to any event, circumstance or matter (each a "**New Matter**") first arising after the Execution Date, that is required to be set forth or described in such AMC Disclosure Schedules (a "**Disclosure Update**") to make such AMC Disclosure Schedules true and correct as of the Closing Date. Except as set forth in the penultimate sentence of this Section 5.09(c), any such Disclosure Update will not cure any breach or inaccuracy of any representation or warranty made in this Agreement for any purpose or diminish the rights or remedies of Assumption with respect thereto, nor shall any such notification affect any conditions to the obligations of the Parties hereunder. Notwithstanding the foregoing, in the event that any New Matter, individually or in the aggregate with all New Matters, taken as a whole, would result in the failure of any condition set forth in Section 7.01 to be satisfied, then Assumption may terminate this Agreement by providing to Anna Maria College prior to the earlier of (i) the expiration of ten (10) Business Days after delivery to Assumption of the applicable Disclosure Update, or (ii) the Closing, a notice of such termination (a "**Termination Notice**"). In the event Assumption has the right to terminate this Agreement pursuant to

the forgoing provisions of this Section 5.09(c) as the result of a Disclosure Update, and fails to exercise such right by providing a timely Termination Notice, Assumption waives any and all rights it may have to claim that the information in such Disclosure Update (or any prior Disclosure Update) results in the failure of a condition to Closing in Section 7.01, and Assumption shall be deemed to have waived all rights, if any, that it may have with respect to any damages it may have suffered or incurred, or other rights or remedies it may have had based upon, arising out of, or otherwise in respect of the subject matter of such Disclosure Update (or any prior Disclosure Update), in each case only to the extent such New Matter first arose after the Execution Date. For avoidance of doubt, no such Disclosure Update shall be deemed to supplement or amend the Disclosure Schedule for the purpose of (i) determining the accuracy of any representation or warranty made by the Seller in this Agreement as of the Execution Date, or (ii) determining whether any of the conditions set forth in Section 7.01 and referencing the Execution Date has been satisfied, nor shall any such update be deemed be an admission of materiality.

## ARTICLE VI
## INDEMNIFICATION

**Section 6.01 Survival; Definitions.**

(a) Survival. All of the representations, warranties, covenants, and agreements contained herein and all related rights to indemnification shall survive the Closing for the periods set forth herein. All of the representations and warranties contained herein shall remain in full force and effect and shall expire on the date that is 18 months after the Closing Date; provided, however, that the representations and warranties in (i) Section 3.01, Section 3.02, Section 3.06, Section 3.07, Section 3.13, Section 4.01, and Section 4.02, shall survive indefinitely, and (ii) Section 3.11 shall survive for the full period of all applicable statutes of limitations (giving effect to any waiver, mitigation or extension thereof) plus 60 days (such representations and warranties listed in clauses (i) and (ii) above, the "**Fundamental Representations**"). All covenants and agreements of the Parties contained herein shall survive the Closing indefinitely or for the period explicitly specified therein. Notwithstanding the foregoing, any claims asserted in good faith with reasonable specificity (to the extent known at such time) and in writing by notice from the non-breaching Party to the breaching Party prior to the expiration date of the applicable survival period shall not thereafter be barred by the expiration of the relevant representation or warranty and such claims shall survive until finally resolved.

(b) Definitions. For purpose of this ARTICLE VI:

(i) "**Breach**" of a representation, warranty, covenant, obligation or other provision means if there has been (A) any inaccuracy in or breach (including any inadvertent or innocent breach) of, or any failure (including any inadvertent failure) to comply with or perform, such representation, warranty, covenant, obligation or other provision, or (B) any claim (by any Person) or other circumstance that is inconsistent with such representation, warranty, covenant, obligation or other provision; and the term "Breach" shall be deemed to refer to any such inaccuracy, breach, failure, claim or circumstance.

(ii) "**Claim Notice**" shall be deemed to have been given if any Party to this Agreement, acting in good faith, delivers to the other Party a written notice stating that such Party believes that there is or has been a possible Breach of a representation, warranty or covenant and containing (A) a brief description of the circumstances supporting such Party's belief that there is or has been such a possible Breach, and (B) a non-binding, preliminary estimate of the aggregate dollar amount of the actual and potential Indemnifiable Damages that have arisen and may arise as a result of such possible Breach.

(iii) "**Indemnifiable Damages**" means any losses, damages, liabilities, deficiencies, Actions, settlement, judgments, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees ("**Damages**") that are suffered or incurred by a Person entitled to indemnification under this Agreement or to which any such Person may otherwise become subject at any time (regardless of whether or not such Damages relate to any Third Party Claim) and that arise directly from or as a result of the matters set forth in Section 6.02.

(iv) "**Third-Party Claim**" means notice of the assertion or commencement of any Action made or brought by any Person who is not a Party to this Agreement or an Affiliate of a Party to this Agreement or a Representative of the foregoing.

(c) Holdback Amount. The Holdback Amount shall be available to compensate Assumption (on behalf of itself or any other Assumption Indemnitee (as such term is defined in Section 6.02 below)) for Indemnifiable Damages incurred pursuant to the indemnification obligations of Anna Maria College (up to the balance of the Holdback Amount), provided however, that the rights of Assumption and any Assumption Indemnitee to recovery shall be limited in all respects to the Holdback Amount and such Holdback Amount shall be the exclusive source for satisfying any indemnification obligation of Anna Maria College to Assumption or any other Assumption Indemnitee under this Agreement, it being understood that nothing in this Section 6.01(c) or elsewhere in this Agreement shall affect the Parties' rights to (a) specific performance or other equitable remedies with respect to the covenants referred to in this Agreement to be performed after the Closing Date, or (b) to bring claims arising from fraud or willful misconduct on the part of a Party hereto in connection with the transactions contemplated by this Agreement).

**Section 6.02 Indemnification by Anna Maria College.** Subject to the other terms and conditions of this ARTICLE VI, including, but not limited to Section 6.01(c), from and after Closing, Anna Maria College shall indemnify and defend each of Assumption and its Affiliates and their respective Representatives (collectively, the "**Assumption Indemnitees**") against, and shall hold each of them harmless from and against, any and all Indemnifiable Damages incurred or sustained by, or imposed upon, the Assumption Indemnitees based upon, arising out of, or with respect to:

(a) any Breach of any of the representations or warranties of Anna Maria College contained in this Agreement, any other Transaction Document, or any schedule, certificate, or exhibit related thereto, as of the date such representation or warranty was made or as if such representation or warranty was made on and as of the Closing Date (except for representations and warranties that expressly relate to a specified date, the inaccuracy in or breach of which will be determined with reference to such specified date);

(b) any Breach of any covenant, agreement, or obligation to be performed by Anna Maria College pursuant to this Agreement, any other Transaction Document, or any schedule, certificate, or exhibit related thereto;

(c) any Excluded Asset or any Excluded Liability;

(d) any Third-Party Claim based upon, resulting from, or arising out of the business, operations, properties, assets, or obligations of Anna Maria College or any of its Affiliates conducted, existing, or arising prior to the Closing Date; or

(e) Anna Maria College's failure to return any deposits, pre-payments or other payments received by Anna Maria College with respect to any Enrolled Students for the 2026-27 academic year for any reason, including any order of the Bankruptcy Court.

**Section 6.03 Indemnification Procedures.** Whenever any claim shall arise for indemnification hereunder, the Party hereto entitled to indemnification (the "**Indemnified Party**") shall promptly provide written Claim Notice of such claim to the other Party hereto (the "**Indemnifying Party**"). In connection with any Third Party Claim giving rise to indemnity hereunder resulting from or arising out of any Action by a Person who is not a party to this Agreement, the Indemnifying Party, at its sole cost and expense and upon written notice to the Indemnified Party, may assume the defense of any such Action with counsel reasonably satisfactory to the Indemnified Party. The Indemnified Party shall be entitled to participate in the defense of any such Action, with its counsel and at its own cost and expense. If the Indemnifying Party does not assume the defense of any such Action, the Indemnified Party may, but shall not be obligated to, defend against such Action in such manner as it may deem to be appropriate, including settling such Action, after giving notice of it to the Indemnifying Party, on such terms as the Indemnified Party may deem appropriate, and no action taken by the Indemnified Party in accordance with such defense and settlement shall relieve the Indemnifying Party of its indemnification obligations herein provided with respect to any Indemnifiable Damages resulting therefrom; provided, however, that no settlement or resolution of any Third Party Claim shall be determinative of the existence of or amount of Indemnifiable Damages relating to such matter unless the Indemnifying Party has consented to such settlement; and, provided further, the Indemnifying Party shall not settle any Action without the Indemnified Party's prior written consent (which consent shall not be unreasonably withheld, conditioned, or delayed).

**Section 6.04 Limitations.**

(a) Notwithstanding any other provision in this Agreement to the contrary, no Indemnifying Party shall be liable to any Indemnified Party for any Indemnifiable

Damages comprised of punitive, incidental, consequential, special, or indirect damages unless such damages were awarded to an unaffiliated third party.

(b) The aggregate amount of all Indemnifiable Damages for which Anna Maria College shall be liable pursuant to Section 6.02(a) shall not exceed the Holdback Amount, except as otherwise provided in Section 6.06.

(c) For purposes of this Article VI (including for purposes of determining the existence of any Breach and for calculating the amount of any Indemnifiable Damages with respect thereto), any Breach of any representation or warranty shall be determined without regard to any materiality, material adverse effect or other similar qualification contained in or otherwise applicable to such representation or warranty, except where any such provision requires disclosure of items of a material nature or above a specified threshold, in which case such qualification shall not be disregarded.

(d) Except as set forth below, the period during which claims for Indemnifiable Damages may be made against the Holdback Amount for Indemnifiable Damages arising from or in connection with the matters listed in Section 6.02 shall commence at the Closing and terminate at 5:00 PM, Eastern Time, on the date that is twelve (12) months following the Closing Date (the "**Claims Period**"). The Claims Period for Indemnifiable Damages arising out of, resulting from or in connection with fraud, willful breach of a covenant set forth in this Agreement, or intentional misrepresentation by Anna Maria College, shall commence at the Closing and terminate upon the expiration of the applicable statute of limitations. Notwithstanding anything contained herein to the contrary, such portion of the Holdback Amount as in the reasonable judgment of Assumption may be necessary to satisfy any unresolved or unsatisfied claims for Indemnifiable Damages (the "**Holdback Reserve**") specified in any Claim Notice delivered to Anna Maria College prior to the Holdback Release Date ("**Timely Claims**"), shall remain withheld until such Timely Claims for Indemnifiable Damages have been resolved or satisfied, and the Holdback Amount less the Holdback Reserve shall be paid by Assumption to Anna Maria College in immediately available funds on the Holdback Release Date. Any amount of the Holdback Reserve remaining after the resolution or satisfaction of the Timely Claims shall be released and paid by Assumption to Anna Maria College in immediately available funds ten (10) Business Days after such resolution or satisfaction of the Timely Claims.

**Section 6.05 Exclusivity of Indemnification Remedies and Holdback Amount.** From and after the Closing Date, the indemnification provisions of this ARTICLE VI shall be the exclusive remedy with respect to any Breach of this Agreement by Anna Maria College, and recovery against the Holdback Amount pursuant to this ARTICLE VI shall be the sole and exclusive remedy of Assumption (and all other Assumption Indemnitees) for Indemnifiable Damages under the indemnification provisions contained in, and for any Breach of, this Agreement (it being understood that nothing in this Section 6.05 or elsewhere in this Agreement shall affect the Parties' rights to (a) specific performance or other equitable remedies with respect to the covenants referred to in this Agreement to be performed after the Closing Date, or (b) to bring claims arising from fraud or willful misconduct on the part of a Party hereto in connection with the transactions contemplated by this Agreement).

**Section 6.06 Purchase Price Adjustment**. Any payment made pursuant to this ARTICLE VI will be treated by the Parties for accounting purpose as an adjustment to the purchase price payable under Section 1.08.

## ARTICLE VII
## CONDITIONS TO CLOSING

**Section 7.01 Conditions to Obligations of Assumption.** The obligations of Assumption to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment or Assumption's waiver, at or prior to the Closing, of each of the following conditions:

(a) Representations and Warranties. The representations and warranties of Anna Maria College contained in this Agreement and the other Transaction Documents shall be true and correct in all respects on and as of the Execution Date and on and as of the Closing Date with the same effect as though made at and as of such date.

(b) Third-Party Consents. All consents, authorizations, approvals, waivers or permits of any Person or any Governmental Order of any Governmental Authority necessary or desirable for the consummation of all of the transactions contemplated by this Agreement and the assignment to Assumption of all of Anna Maria College's right, title and interest in the Assets shall have been obtained, including without limitation: (i) MBORN approval for the 6.09 Change of Governance Application as submitted, (ii) federal and state regulatory agencies, (iii) MBORN approval for the expansion of Assumption's existing allocated nursing student enrollment capacity from 90 to 135 in accordance with the 6.09 Application as submitted; (iv) approval of the teach-out plan prepared by Assumption that is consistent with the standards of the New England Commission of Higher Education and MBORN and the Massachusetts Department of Higher Education; and (v) any notices, approvals, consents or waivers from any lenders, third-party payers, vendors, or other parties listed on Schedule 7.01(b) (collectively, the "**Required Approvals**"), and all such Required Approvals shall be effective as of the Closing. No Governmental Authority shall have enacted, issued, promulgated, enforced or entered any Governmental Order which is in effect and has the effect of making the transactions contemplated by this Agreement illegal, otherwise restraining or prohibiting consummation of such transactions or causing any of the transactions contemplated hereunder to be rescinded following completion thereof.

(c) Bankruptcy Court Sale Order. The Approval Order or Approval Orders, as applicable, shall have been entered by the Bankruptcy Court authorizing the execution, delivery, and performance of this Agreement, including without limitation the transfer of the Assets to Assumption on the terms set forth in this Agreement, and which shall provide, among other things, that: (i) Assumption is a purchaser in good faith entitled to the protections under Section 363(m) of the Bankruptcy Code; (ii) the transfer of the Assets shall vest Assumption with all right, title, and interest of Anna Maria College in the Assets free and clear of any and all liens, claims and interests pursuant to section 363(f) of the Bankruptcy Code, with such liens to attach to the proceeds of the Purchase Price, with the same priority, validity, force, and effect as they held against Anna Maria College or the Assets as of the Petition Date, (iii) any subsequently appointed estate representative,

including any Chapter 7 trustee, shall be bound by the requirements, terms and conditions of this Agreement and the Approval Orders. Such Sale Order shall be in full force and effect, shall be in form and substance reasonably satisfactory to Assumption, and it shall not have been stayed, vacated, or reversed.

(d) Covenants. Anna Maria College shall have duly performed and complied in all material respects with all agreements and covenants required by this Agreement and each of the other Transaction Documents to be performed or complied with by them prior to or on the Closing Date.

(e) Litigation. No Action shall have been commenced against Assumption or Anna Maria College that would prevent the Closing. No injunction or restraining order shall have been issued by any Governmental Authority, and be in effect, which restrains or prohibits any transaction contemplated hereby.

(f) Material Adverse Change. From the date of this Agreement, there shall not have occurred any event, occurrence, fact, condition or change that is, or could reasonably be expected to become, individually or in the aggregate, materially adverse to (a) the value of the Assets, or (b) the ability of Anna Maria College to consummate the transactions contemplated hereby on a timely basis (collectively, a "**Material Adverse Effect**"), nor shall any event or events have occurred that, individually or in the aggregate, with or without the lapse of time, could reasonably be expected to result in a Material Adverse Effect.

(g) Closing Certificate. Assumption shall have received a certificate, dated the Closing Date and signed by a duly authorized officer of Anna Maria College, that each of the conditions set forth in Section 7.01(a), Section 7.01(b), Section 7.01(d), and Section 7.01(f) have been satisfied (the "**Anna Maria College Closing Certificate**").

(h) Secretary's Certificate. Anna Maria College shall have delivered to Assumption a certificate, dated as of the Closing Date and executed on behalf of Anna Maria College by its Secretary, certifying Anna Maria College's (A) articles of organization, (B) bylaws, and (C) resolutions from the Board of Trustees approving the principal terms of this Agreement and the sale of the Assets.

(i) W-9. Assumption shall have received a valid Form W-9, Request for Taxpayer Identification Number and Certificate, duly executed by an officer of Anna Maria College.

(j) Liabilities. Assumption shall have received documentation evidencing release of the Assets from any existing encumbrances to its satisfaction, which may include, without limitation, the Approval Order(s) providing for the transfer of the Assets free and clear of all liens, claims, encumbrances and interests or written release from Anna Maria College's creditors holding liens on such Assets.

(k) No Injunction. Except as provided in Bankruptcy Court Rule 6004(h), there shall not be in effect any applicable Law or any injunction or other Governmental Order

that (a) stays or prohibits the consummation of the Transactions, and (b) has been adopted or issued, or has otherwise become effective, since the date of this Agreement.

(l) Other Documentation. Anna Maria College shall have delivered to Assumption such other documents or instruments as Assumption reasonably requests and are reasonably necessary to consummate the transactions contemplated by this Agreement.

(m) Transfer Agreement. The Transfer Agreement shall not have been terminated and shall continue in full force and effect as of the Closing Date.

(n) Applicable Gifts. Prior to the Closing, Assumption and Anna Maria College shall negotiate in good faith and agree on a mutually agreed list of the Applicable Gifts subject to the covenant set forth in Section 1.02, which list shall be attached to this Agreement as Schedule 7.01(n).

**Section 7.02 Conditions to Obligations of Anna Maria College.** The obligations of Anna Maria College to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment or Anna Maria College's waiver, at or prior to the Closing, of each of the following conditions:

(a) Representations and Warranties. The representations and warranties of Assumption contained in this Agreement and the other Transaction Documents shall be true and correct in all respects on and as of the Execution Date and on and as of the Closing Date with the same effect as though made at and as of such date.

(b) Covenants. Assumption shall have duly performed and complied in all material respects with all agreements and covenants required by this Agreement and each of the other Transaction Documents to be performed or complied with by it prior to or on the Closing Date.

(c) Required Approvals. All Required Approvals shall have been obtained and shall be effective as of the Closing. No Governmental Authority shall have enacted, issued, promulgated, enforced or entered any Governmental Order which is in effect and has the effect of making the transactions contemplated by this Agreement illegal, otherwise restraining or prohibiting consummation of such transactions or causing any of the transactions contemplated hereunder to be rescinded following completion thereof.

(d) Litigation. No Action shall have been commenced against Assumption or Anna Maria College that would prevent the Closing. No injunction or restraining order shall have been issued by any Governmental Authority, and be in effect, which restrains or prohibits any transaction contemplated hereby.

(e) Closing Certificate. Anna Maria College shall have received a certificate, dated the Closing Date and signed by a duly authorized officer of Assumption, that each of the conditions set forth in Section 7.02(a) and Section 7.02(b) have been satisfied (the "**Assumption Closing Certificate**").

(f) Bankruptcy Court Sale Order. The Approval Order(s) shall have been entered by the Bankruptcy Court authorizing the execution, delivery, and performance of this Agreement, including without limitation the transfer of the Assets to Assumption, and which shall provide, among other things, that: (i) Assumption is a purchaser in good faith entitled to the protections under Section 363(m) of the Bankruptcy Code; (ii) the transfer of the Assets shall vest Assumption with all right, title, and interest of Anna Maria College in the Assets free and clear of any and all liens, claims and interests pursuant to section 363(f) of the Bankruptcy Code, with such liens to attach to the proceeds of the Purchase Price, with the same priority, validity, force, and effect as they held against Anna Maria College or the Assets as of the Petition Date, (iii) any subsequently appointed estate representative, including any Chapter 7 trustee, shall be bound by the requirements, terms and conditions of this Agreement and the Approval Orders. Such Sale Order shall be in full force and effect, shall be in form and substance reasonably satisfactory to Assumption, and it shall not have been stayed, vacated, or reversed, and no stay or appeal thereof shall be pending as of the Closing.

(g) Transfer Agreement. The Transfer Agreement shall not have been terminated and shall continue in full force and effect as of the Closing Date.

(h) Secretary's Certificate. Assumption shall have delivered to Anna Maria College a certificate, dated as of the Closing Date and executed on behalf of Assumption by its Secretary, certifying Assumptions resolutions from the Board of Trustees approving the purchase of the Assets at the Purchase Price.

(i) No Injunction. Except as provided in Bankruptcy Court Rule 6004(h), there shall not be in effect any applicable Law or any injunction or other Governmental Order that (a) stays or prohibits the consummation of the Transactions, and (b) has been adopted or issued, or has otherwise become effective, since the date of this Agreement.

(j) Other Documentation. Assumption shall have delivered to Anna Maria College such other documents or instruments as Anna Maria College reasonably requests and are reasonably necessary to consummate the transactions contemplated by this Agreement.

## ARTICLE VIII
## TERMINATION

**Section 8.01 Termination.** This Agreement may be terminated at any time prior to the Closing:

(a) by the mutual written consent of Anna Maria College and Assumption;

(b) by either Anna Maria College or Assumption, upon written notice to the other Party, if the transactions contemplated by this Agreement have not been consummated on or before September 30, 2026 (the "**Drop Dead Date**"); *provided, however*, that the right to terminate this Agreement pursuant to this Section 8.01(b) shall not be available to any Party whose breach of any representation, warranty, covenant, or

agreement set forth in this Agreement has been the cause of, or resulted in, the failure of the transactions contemplated by this Agreement to be consummated on or before the Drop Dead Date;

(c) by either Party, by written notice to the other Party, if the terminating Party is not then in material breach of any provision of this Agreement and there has been a material breach, inaccuracy in or failure to perform any representation, warranty, covenant or agreement made by the other Party pursuant to this Agreement that would give rise to the failure of any of the conditions specified in ARTICLE VII and such material breach, inaccuracy or failure has not been cured by the breaching Party within ten (10) days of its receipt of written notice of such breach from the terminating Party; or

(d) by either Party if (i) there shall be any Law that makes consummation of the transactions contemplated by this Agreement illegal or otherwise prohibited or (ii) any Governmental Authority shall have issued a Governmental Order restraining or enjoining the transactions contemplated by this Agreement, and such Governmental Order shall have become final and non-appealable; or (iii) the Bankruptcy Court enters an order denying the Sale Motion.

(e) by Assumption pursuant to Section 5.09(c);

(f) by Assumption, if the Interim Disclosures, individually or in the aggregate, have caused or could reasonably be expected to cause or result in regulatory or reputational risk or damage that could reasonably be expected to be material to the Assets, Assumption or any of its Affiliates.

**Section 8.02 Effect of Termination.** In the event of the termination of this Agreement in accordance with this ARTICLE VIII, this Agreement shall forthwith become void and there shall be no liability on the part of any Party hereto except:

(a) that the obligations set forth in this ARTICLE VIII and ARTICLE IX hereof shall survive termination; and

(b) that nothing herein shall relieve any Party hereto from liability for any antecedent breach of this Agreement or the Transaction Documents.

## ARTICLE IX
## MISCELLANEOUS

**Section 9.01 Expenses.** All of the costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the Party hereto incurring such costs and expenses.

**Section 9.02 Notices.** All notices, claims, demands, and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); or (c) on the third day after the date mailed, by

certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 9.02):

| | |
|---|---|
| If to Anna Maria College: | Anna Maria College<br>50 Sunset Lane<br>Paxton, MA 01611<br>Attn: President Sean J. Ryan<br>Email: SRyan@annamaria.edu |
| with a copy (which shall not constitute notice) to: | Holland & Knight, LLP<br>10 St. James Avenue<br>Boston, MA 02116<br>Attn: Richard M Yanofsky, Esq.<br>Email: richard.yanofsky@hklaw.com |
| If to Assumption: | Assumption University<br>Legal Affairs Office<br>500 Salisbury St.<br>Worcester, MA 01609 |
| with a copy (which shall not constitute notice) to: | Bowditch & Dewey<br>144 Turnpike Road<br>Suite 350<br>Southborough, MA 01772<br>Attention: Timothy P. Van Dyk |

**Section 9.03 Interpretation.**

(a) This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the Party drafting an instrument or causing any instrument to be drafted. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

(b) The meaning assigned to each term defined herein shall be equally applicable to both the singular and the plural forms of such term and vice versa, and words denoting either gender shall include both genders as the context requires. When a reference is made in this Agreement to an Article, Section, paragraph, Exhibit or Schedule, such reference is to an Article, Section, paragraph, Exhibit or Schedule to this Agreement unless otherwise specified. A reference to any party to this Agreement or any other agreement or document shall include such party's predecessors, successors and permitted assigns. Reference to any Law means such Law as amended, modified, codified, replaced or reenacted, and all rules and regulations promulgated thereunder.

**Section 9.04 Severability.** If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement.

**Section 9.05 Entire Agreement.** This Agreement and the other Transaction Documents constitute the sole and entire agreement of the Parties to this Agreement with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and those in the other Transaction Documents, the Exhibits, and the Disclosure Schedules (other than an exception expressly set forth as such in the Disclosure Schedules), the statements in the body of this Agreement will control.

**Section 9.06 Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and permitted assigns. Anna Maria College shall not assign its rights or obligations hereunder without the prior written consent of Assumption. Assumption may assign its rights and obligations to an Affiliate of Assumption after providing Anna Maria College with notice thereof and obtaining all requisite approvals of the Regulators (if any). Any purported assignment in violation of this Section 9.06 shall be null and void. No assignment shall relieve the assigning Party of any of its obligations hereunder.

**Section 9.07 Amendment and Modification; Waiver.** This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each Party hereto. No waiver by any Party hereto of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party hereto so waiving. No failure to exercise, or delay in exercising, any right or remedy arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy.

**Section 9.08 Governing Law; Submission to Jurisdiction.** All matters arising out of or relating to this Agreement shall be governed by and construed in accordance with the internal laws of the Commonwealth of Massachusetts without giving effect to any choice or conflict of law provision or rule (whether of the Commonwealth of Massachusetts or any other jurisdiction), except to the extent that the Laws of such state are superseded by the Bankruptcy Code. Any legal suit, action, proceeding, or dispute arising out of or related to this Agreement, the other Transaction Documents, or the transactions contemplated hereby or thereby may be instituted in the federal courts of the United States of America located in the Commonwealth of Massachusetts or the courts of the Commonwealth of Massachusetts, and each Party hereto irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, proceeding, or dispute.

**Section 9.09 No Third-Party Beneficiaries.** Except as provided in ARTICLE VI, this Agreement is for the sole benefit of the Parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 9.10 No Personal Liability**. It is expressly understood and agreed that none of the officers, directors, employees, agents, or representatives of either Party shall have any personal liability in connection with the matters contemplated by this Agreement or any of the other Transaction Documents.

**Section 9.11 Counterparts; Electronic Signatures.** This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by email or other means of electronic transmission, including via portable document format (pdf) or DocuSign, shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, the Parties hereto have caused this Purchase and Sale Agreement to be executed as of the date first written above by their duly authorized representatives.

**THE SISTERS OF SAINT ANN**

Signed by:
By: ______________________
471DAE6771BD4F9...
Name: Sean Ryan
Title: President

**ASSUMPTION UNIVERSITY**

Signed by:
By: ______________________
C26EE0D1D89E4D1...
Name: Greg Weiner
Title: President

**Exhibits**

| | |
|---|---|
| Exhibit A | 6.09 Application |
| Exhibit B | Bill of Sale |

**Schedules**

| | |
|---|---|
| Schedule 1.02 | Applicable Gifts |
| Schedule 1.04 | Assets |
| Schedule 7.01(b) | Approvals, Consents and Waivers |

AMC Disclosure Schedules

## Schedule 1.02

## Applicable Gifts

[ To be attached at Closing ]

# Schedule 1.04(a)

## Assets

Curricular materials for senior cohort
Curricular materials for RN_BSN program

**Schedule 7.01(b)**

**Approvals, Consents and Waivers**

None

## ASSUMPTION UNIVERSITY / ANNA MARIA COLLEGE

## TRANSFER AGREEMENT

This Transfer Agreement ("**Transfer Agreement**") is entered into on August 12, 2026 (the "**Execution Date**"), by and between Assumption University, a Massachusetts non-profit corporation ("**Assumption**"), and The Sisters of Saint Ann, a Massachusetts non-profit corporation doing business as Anna Maria College ("**Anna Maria College**" and collectively with Assumption, the "**Parties**" with each of the Parties individually referred to as a "**Party**"), both institutions of higher education accredited by the New England Commission of Higher Education. Capitalized terms used in this Transfer Agreement and not otherwise defined herein, shall have the meanings ascribed to them in the Purchase and Sale Agreement (as defined below).

## RECITALS

**WHEREAS**, Assumption operates its nursing educational programs through its Froelich School of Nursing (the "**Froelich School of Nursing**") and Anna Maria College operates its nursing educational programs through its School of Nursing and Health Science (the "**AMC Nursing School**").

**WHEREAS**, Assumption and Anna Maria College desire to enter into this Transfer Agreement to set forth the terms applicable to the transfer of enrollment and teach-out of (i) certain prelicensure and Nursing RN-BSN students enrolled in the AMC Nursing School's Spring 2026 semester who were in good standing at the freshman, sophomore or junior level, and (ii) students admitted by Anna Maria College for enrollment in the class of 2030 of the AMC Nursing School, to the Froelich School of Nursing (each, a "**Current Anna Maria Nursing Student**").

**WHEREAS**, in connection with the transactions contemplated by this Transfer Agreement, Assumption and Anna Maria College have also entered into an agreement attached hereto as Exhibit A (the "**Purchase and Sale Agreement**") whereby Assumption agreed to purchase, and Anna Maria College agreed to sell, certain Assets, with the express purpose of facilitating the transfer and enrollment of the Current Anna Maria Nursing Students in a transaction (the "**Transaction**") subject to the approval of the Massachusetts Board of Registration in Nursing ("**MBORN**").

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

## ARTICLE I

## CURRENT ANNA MARIA NURSING STUDENTS

**Section 1.01 Current Anna Maria Nursing Students.** Each Current Anna Maria Nursing Student has been offered and, upon acceptance of such offer by such student, will be automatically admitted to continued enrollment in the Froelich School of Nursing to teach out the

nursing curriculum. Any Current Anna Maria Nursing Student who would otherwise be eligible for transfer to Assumption University under this Transfer Agreement will be excluded from this Transfer Agreement and shall not be considered a Current Anna Maria Nursing Student for purposes of this Transfer Agreement if they have already applied to and been accepted by Assumption as of June 2, 2026 for the 2026-27 academic year.

**Section 1.02 Undertakings Applicable to Current Anna Maria Nursing Students.** Effective upon the Closing (as defined in the Purchase and Sale Agreement), the following will apply with respect to each Current Anna Maria Nursing Student who has indicated in writing by July 31, 2026, their intention to enroll as students of the Froelich School of Nursing for the 2026-27 academic year (each, an "**Enrolled Student**", and collectively, the "**Enrolled Students**"):

(a) Admission. For Enrolled Students, Assumption shall:

(i) Admit for transfer Enrolled Students who are in good disciplinary and academic standing as of the date of this Transfer Agreement.

(ii) Waive all application fees.

(iii) Consider exceptions to existing transfer policies on a case-by-case basis.

(b) Tuition. Tuition charged by Assumption to Enrolled Students for the 2026-2027 academic year shall be no greater than the Net Tuition charged by Anna Maria College for the 2025-2026 academic year, increased by the same percentage increase as the increase, if any, in Assumption's tuition for its legacy nursing students for 2026-2027 as compared to its 2025-2026 tuition for such legacy students. Similarly, increases in Enrolled Student tuition for subsequent academic years shall be in the same percentage as such increases, if any, for Assumption legacy nursing students. "**Net Tuition**" shall mean tuition net of all institutional (as opposed to third-party) financial aid (including, without limitation, loans, discounts, scholarships, and the like).

(c) Room and Board. Assumption shall offer room and board to the Enrolled Students at the same cost and on the same terms and conditions as made available to Assumption's legacy nursing students (pending available housing).

(d) Course Transfer. Assumption shall fully recognize all academic credits recognized by Anna Maria College.

(e) Financial Aid. Assumption will consider all Enrolled Students for financial aid using Assumption's financial aid awards and awarding practices. Full consideration will require Enrolled Students to forward their 2026-27 FAFSA to Assumption.

(f) Support. Assumption shall provide orientation and academic support to Enrolled Students transferring to Assumption and shall make best efforts to ensure that Enrolled Students are able to register for the classes they need, or shall consider authorizing appropriate substitute courses consistent with the nursing program requirements.

(g) Grade Point Average Calculation. As with all other transfer students, for Enrolled Students who transfer to Assumption in accordance with this Transfer Agreement, the student Grade Point Average will be computed using the grades earned at Assumption.

(h) Graduation. Enrolled Students who enroll and complete their nursing degree at Assumption will receive an Assumption diploma.

(i) Transcripts. (i) Prior to the Closing, Anna Maria College will, and (ii) on and after the Closing, Regis will, provide copies of official transcripts as requested by Enrolled Students who transition to Assumption.

(j) Tuition. If Anna Maria College or any of its Affiliates receives or collects any deposits, pre-payments or other payments for any Enrolled Students for the 2026-2027 academic year, Anna Maria College or its Affiliate shall return such funds to the payor, unless and only to the extent otherwise required by the Bankruptcy Court.

**Section 1.03 Student Records.** As of the Closing Date, Anna Maria College shall have delivered, or shall have caused to be delivered, to Regis, all nursing student records for the Enrolled Students and for prior graduates and other attendees of Anna Maria College's School of Nursing and Health Science, and such student records shall have been transitioned to Regis to be held and maintained by Regis as custodian pursuant to the student records custodial agreement in customary form (the "**Student Records**"). Anna Maria shall cooperate with Assumption and Regis to ensure that Assumption is provided copies of all transcripts and other academic records reasonably requested by Assumption that are associated with the Enrolled Students.

**Section 1.04 Privacy Matters.** To the extent that the Parties need to provide and/or receive access to information, including Student Records, protected health information and/or personal information under this Transfer Agreement, the Purchase and Sale Agreement or any other Transaction Document, they shall comply with their respective obligations under federal and state law regarding the confidentiality of same, including the Family Educational Rights and Privacy Act (FERPA), 34 C.F.R. Part 99, the Health Insurance Portability and Accountability Act of 1996 and the regulations thereunder (collectively, HIPAA), and Chapters 93H and 93I of the Massachusetts General Laws, including regulations promulgated thereunder.

## ARTICLE II

## TERMINATION

**Section 2.01 Termination.** This Transfer Agreement may be terminated at any time prior to the Closing:

(a) by the mutual written consent of Anna Maria College and Assumption;

(b) by either Anna Maria College or Assumption, upon written notice to the other Party, if the Purchase and Sale Agreement has been terminated in accordance with its terms;

(c) by either Party if (i) there shall be any Law that makes consummation of the transactions contemplated by this Transfer Agreement illegal or otherwise prohibited or (ii) any Governmental Authority shall have issued a Governmental Order restraining or enjoining the transactions contemplated by this Transfer Agreement, and such Governmental Order shall have become final and non-appealable; or

(d) by either Party if the Bankruptcy Court does not grant the motion of Anna Maria College seeking approval and authority to consummate the transactions contemplated in the Purchase and Sale Agreement.

**Section 2.02 Effect of Termination.** In the event of the termination of this Transfer Agreement in accordance with this Article, this Transfer Agreement shall forthwith become void and there shall be no liability on the part of any Party hereto except that nothing herein shall relieve any Party hereto from liability for any antecedent breach of this Transfer Agreement.

## ARTICLE III

## MISCELLANEOUS

**Section 3.01 Expenses.** All of the costs and expenses incurred in connection with this Transfer Agreement and the transactions contemplated hereby shall be paid by the Party hereto incurring such costs and expenses.

**Section 3.02 Notices.** All notices, claims, demands, and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); or (c) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective Parties at the following addresses (or at such other address for a Party as shall be specified in a notice given in accordance with this Section 3.02):

| | |
|---|---|
| If to Anna Maria College: | Anna Maria College<br>50 Sunset Lane<br>Paxton, MA 01611<br>Attn: President Sean J. Ryan<br>Email: Sryan@annamaria.edu |
| with a copy (which shall not constitute notice) to: | Holland & Knight, LLP<br>10 St. James Ave.<br>Boston, MA 02116<br>Attn: Richard M Yanofsky, Esq.<br>Email: richard.yanofsky@hklaw.com |
| If to Assumption: | Assumption University<br>Legal Affairs Office<br>500 Salisbury St. |

Worcester, MA 01609

| | |
|---|---|
| with a copy (which shall not constitute notice) to: | Bowditch & Dewey<br>144 Turnpike Road<br>Suite 350<br>Southborough, MA 01772<br>Attention: Timothy P. Van Dyk |

**Section 3.03 Interpretation.**

(a) This Transfer Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The headings in this Transfer Agreement are for reference only and shall not affect the interpretation of this Transfer Agreement.

(b) The meaning assigned to each term defined herein shall be equally applicable to both the singular and the plural forms of such term and vice versa, and words denoting either gender shall include both genders as the context requires. When a reference is made in this Transfer Agreement to an Article, Section, paragraph, Exhibit or Schedule, such reference is to an Article, Section, paragraph, Exhibit or Schedule to this Transfer Agreement unless otherwise specified. A reference to any party to this Agreement or any other agreement or document shall include such party's predecessors, successors and permitted assigns. Reference to any Law means such Law as amended, modified, codified, replaced or reenacted, and all rules and regulations promulgated thereunder.

**Section 3.04 Severability.** If any term or provision of this Transfer Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Transfer Agreement.

**Section 3.05 Entire Agreement.** This Transfer Agreement and the Purchase and Sale Agreement, together with their respective exhibits and schedules, constitute the sole and entire agreement of the Parties to this Transfer Agreement with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Transfer Agreement and the Purchase and Sale Agreement, the statements in the body of the Purchase and Sale Agreement will control.

**Section 3.06 Successors and Assigns.** This Transfer Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and permitted assigns. Anna Maria College shall not assign its rights or obligations hereunder without the prior written consent of Assumption. Assumption may assign its rights and obligations to an Affiliate of Assumption after providing Anna Maria College with notice thereof and obtaining all requisite approvals of the Regulators (if any). Any purported assignment in violation of this Section 3.06 shall be null and void. No assignment shall relieve the assigning Party of any of its obligations hereunder.

**Section 3.07 Amendment and Modification; Waiver.** This Transfer Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each Party hereto. No waiver by any Party hereto of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party hereto so waiving. No failure to exercise, or delay in exercising, any right or remedy arising from this Transfer Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy.

**Section 3.08 Governing Law; Submission to Jurisdiction.** All matters arising out of or relating to this Transfer Agreement shall be governed by and construed in accordance with the internal laws of the Commonwealth of Massachusetts without giving effect to any choice or conflict of law provision or rule (whether of the Commonwealth of Massachusetts or any other jurisdiction), except to the extent that the Laws of such state are superseded by the Bankruptcy Code. Any legal suit, action, proceeding, or dispute arising out of or related to this Transfer Agreement, or the transactions contemplated hereby may be instituted in the federal courts of the United States of America located in the Commonwealth of Massachusetts or the courts of the Commonwealth of Massachusetts, and each Party hereto irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, proceeding, or dispute.

**Section 3.09 No Third-Party Beneficiaries.** This Transfer Agreement is for the sole benefit of the Parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Transfer Agreement.

**Section 3.10 No Personal Liability**. It is expressly understood and agreed that none of the officers, directors, employees, agents, or representatives of either Party shall have any personal liability in connection with the matters contemplated by this Transfer Agreement, by the Purchase and Sale Agreement or by any of the other Transaction Documents.

**Section 3.11 Counterparts.** This Transfer Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Transfer Agreement delivered by email or other means of electronic transmission, including via portable document format (pdf) or DocuSign shall be deemed to have the same legal effect as delivery of an original signed copy of this Transfer Agreement.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Transfer Agreement to be executed as of the date first written above by their duly authorized representatives.

**The Sisters of Saint Ann**

By: Signed by: 471DAE6771BD4F9...
Name: Sean Ryan
Title: President

**ASSUMPTION UNIVERSITY**

By: Signed by: C26EE0D1D89E4D1...
Name: Greg Weiner
Title: President

**Exhibit A**

Purchase and Sale Agreement