**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>THE SISTERS OF ST. ANN<br>d/b/a ANNA MARIA COLLEGE,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-40758<br><br>Adv. Proc. No. __________ |
| DAVID E. ROY, ELAINA M. ROY,<br>and DAVID E. ROY, JR.,<br><br>Plaintiffs,<br><br>v.<br><br>THE SISTERS OF ST. ANN<br>d/b/a ANNA MARIA COLLEGE,<br><br>Defendant. | |

**COMPLAINT FOR DECLARATORY JUDGMENT**
**DETERMINING EQUITABLE TITLE TO REAL PROPERTY**

Plaintiffs David E. Roy, Elaina M. Roy, and David E. Roy, Jr. (collectively, the "Roys"), by and through their undersigned counsel, bring this adversary proceeding against The Sisters of St. Ann d/b/a Anna Maria College (the "College" or "Debtor") and allege as follows:

**JURISDICTION AND VENUE**

1. The Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), styled *In re The Sisters of St. Ann d/b/a Anna Maria College*, No. 26-40758, in the United States Bankruptcy Court for the District of Massachusetts, Central Division on June 26, 2026 (the "Petition Date"). The Debtor continues to operate and

manage their property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. This adversary proceeding is commenced pursuant to Rules 7001(b), 7001(g) and 7001(i) of the Federal Rules of Bankruptcy Procedure.

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

4. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. This Court has personal jurisdiction over the College pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure.

7. Under Rule 7008 of the Federal Rules of Bankruptcy Procedure, the Roys confirm their consent to entry of a final order by the Court to the extent it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**PARTIES**

8. Plaintiff David E. Roy ("David") is an individual residing at 71 Streeter Road in Paxton, Massachusetts.

9. Plaintiff Elaina M. Roy ("Elaina") is an individual residing at 71 Streeter Road in Paxton, Massachusetts.

10. Plaintiff David E. Roy, Jr. ("David, Jr.") is an individual residing at 71 Streeter Road in Paxton, Massachusetts.

11. The Sisters of St. Ann d/b/a Anna Maria College (the "College") is a Massachusetts corporation with its principal place of business at 50 Sunset Lane in Paxton, Massachusetts.

**FACTUAL ALLEGATIONS**

**A. The Property and the College's Promise to Convey It**

12. In 1997, David and Elaina purchased the land on which they currently reside from the Sisters of Saint Ann, the founders of the College.

13. Around the time of this purchase, the Sisters of Saint Ann also gave them a right of first refusal to purchase additional undeveloped land held by the Sisters of Saint Ann.

14. In late 2022, David and Elaina learned that the Sisters of Saint Ann intended to gift certain remaining land to the College.

15. In December 2022, David and Elaina met with the President of the College, Mary Lou Retelle ("President Retelle"), and the College's Executive Vice President and Chief Information Officer, Michael Miers ("Vice President Miers"), to discuss a portion of the land the Sisters of Saint Ann had gifted to the College that David and Elaina wished to acquire (the "Property").

16. The Property comprises approximately 2.4 acres and is depicted as "Lot 2" on a Progress Print prepared in connection with the College's efforts to separate the Property from its remaining land. A copy of the Progress Print is attached hereto as Exhibit 1. The location of the Property in relation to the College's remaining property is also depicted on the College's Overall Layout Plan attached hereto as Exhibit 2.

17. The Property abuts David and Elaina's existing property and remains undeveloped.

18. The Property has unique value to the Roys because it abuts David and Elaina's existing property, can be developed for the construction of a single home, and was intended to serve as their retirement home.

19. During the December 2022 meeting, David and Elaina expressed to President Retelle and Vice President Miers their desire to acquire the Property to use as a retirement home for themselves and to have their children, including David, Jr., move into David and Elaina's existing home.

20. During that meeting, President Retelle and Vice President Miers confirmed that the College had no plans to use the Property but asked for additional time to consider conveying it to David and Elaina.

21. On or about January 20, 2023, David and Elaina again met with President Retelle and Vice President Miers, who agreed that the College would convey the Property and further represented that the College would convey the Property as a gift.

22. During that meeting, President Retelle specifically represented that, in gifting the Property, the College was "trying to right a wrong."

23. In another meeting on April 14, 2023, President Retelle again represented that the Property would be conveyed as a gift to the Roys.

24. That same day, President Retelle sent David an email stating:

> *Dave. It is our pleasure to afford your family with something that is justly deserved. Your family is obviously part of the Anna Maria history and I am happy to include with actual affirmation. Stay well and let me know big other* [*sic*] *issues arise.*
>
> *Mary Lou*

A copy of the April 14, 2023 email exchange is attached hereto as Exhibit 3.

**B. The College Takes Steps Toward Conveying the Property**

25. Following the College's promise to convey the Property, the Roys remained in communication with the College, particularly through Vice President Miers, regarding surveying and subdividing the Property from the College's remaining land and obtaining the necessary approval from the Town of Paxton. On April 19, 2023, Vice President Miers advised the Roys that he had contacted the assessors and zoning offices to determine the appropriate steps. A copy of that email exchange is attached hereto as Exhibit 4.

26. On May 3, 2023, Vice President Miers sent the Roys an email, copying President Retelle, outlining the steps necessary for conveying the Property, including surveying the proposed parcel and obtaining Planning Board approval. A copy of that email and its attachments is attached hereto as Exhibit 5.

27. On June 26, 2023, Vice President Miers sent David a proposal outlining the surveying work required to convey the Property. A copy of the proposal and related correspondence is attached hereto as Exhibit 6.

28. On August 16, 2023, Vice President Miers represented that "everything is all set to go in front of the planning board at their September meeting" and stated, "I'm glad we are finally getting this moved to completion." A copy of the relevant email chain is attached hereto as Exhibit 7.

29. On September 18, 2023, the Town of Paxton Planning Board unanimously approved an Approval Not Required Plan "to create one buildable lot." A copy of the Planning Board minutes is attached hereto as Exhibit 8.

30. In presenting the matter to the Planning Board, Vice President Miers represented that the College "had promised the Roy Family a parcel of land" and that "[t]his lot will be transferred over to David Roy." *See* Exhibit 8.

31. Later that day, Vice President Miers represented to David: "I have signed plots, so we are good to go. We need to discuss next steps. We need to record it for deed purposes and then work with legal for the transfer." *See* Exhibit 7.

**C. The Roys Rely on the College's Promise**

32. Based on the College's repeated promises, representations, and conduct that it would convey the Property to the Roys, the Roys undertook significant actions in anticipation of and preparation for receiving the Property.

33. Among other things, the Roys forewent the sale of their current home for profit and other economically advantageous opportunities to purchase homes elsewhere.

34. By foregoing those opportunities in reliance upon the College's promises, representations, and conduct, the Roys suffered (and continue to suffer) financial detriment and limited their ability to secure long-term living arrangements in different locations.

**D. The College Refuses to Convey the Property**

35. In the months following the September 18, 2023 Planning Board meeting, the Roys continued to follow up with the College concerning the conveyance of the Property.

36. On October 17, 2023, Vice President Miers represented that the promised conveyance was now "more complicated than I had anticipated." A copy of the relevant email chain is attached hereto as Exhibit 9.

37. Approximately two weeks later, Vice President Miers advised the Roys that "legal is saying we cannot 'gift' the land." *See* Exhibit 9.

38. The College did not convey the Property to the Roys.

**E. The Roys file the State Court Action**

39. On June 18, 2025, the Roys commenced an action against the College in the Worcester Superior Court, captioned *Roy, et al. v. Anna Maria College*, Case No. 2585CV00823 (the "State Court Action"), based upon the College's promises to convey the Property and the Roys' detrimental reliance upon those promises.

40. In the State Court Action, the Roys sought, among other relief, specific performance requiring the College to convey the Property.

41. On July 3, 2025, the Worcester Superior Court entered an Order that restrained and enjoined the College from "further encumbering, selling, transferring, disposing and/or conveying" the Property until further agreement of the parties or order of the Worcester Superior Court. A copy of that Order is attached hereto as Exhibit 10.

42. On July 24, 2025, the Worcester Superior Court entered another Order that restrained and enjoined the College "from encumbering, selling, transferring, disposing, conveying, donating, exchanging, improving, grading, excavating, pruning, removing any tree and/or other vegetation, harvesting, deforesting, and/or otherwise modifying and/or altering" the Property until further agreement of the parties or order of the Worcester Superior Court. A copy of that Order is attached hereto as Exhibit 11.

**F. The College Seeks to Sell the Property in Bankruptcy**

43. On June 26, 2026, the College commenced the above-captioned chapter 11 case.

44. That same day, the College filed a motion seeking authority to sell substantially all of its assets, including the Property, free and clear of any interest in such assets other than the

bankruptcy estate, pursuant to section 363 of the Bankruptcy Code (the "Sale Motion"). *See* Dkt. No. 5.

45. The Sale Motion acknowledges that Lot 2 was separately approved for development in 2023, remains titled in the College's name, is the subject of the State Court Action, and is being marketed for sale with the College's other real property. *See* Dkt. No. 5 at 10 n.4.

46. Through its proposed sale order, the College seeks authority to sell the Property through the bankruptcy process and has asked this Court to declare that such sale would be free and clear of any interest of the Roys. *See* Dkt. No. 5. The Roys assert they hold equitable title to the Property and that their holding such title precludes any such relief.

**FIRST CLAIM FOR RELIEF FOR DECLARATORY JUDGMENT TO DETERMINE EQUITABLE TITLE TO THE PROPERTY BASED ON PROMISSORY ESTOPPEL**

47. The Roys repeat and reallege Paragraphs 1 through 46 as if fully set forth herein.

48. The College repeatedly promised the Roys that it would convey the Property to them, and the College reasonably should have expected those promises to induce reliance by the Roys.

49. The Roys reasonably relied on the College's promises and representations that it would convey the Property.

50. The Roys relied on the College's promises, representations, and conduct to their detriment, including by foregoing the sale of their current home for profit and other economically advantageous opportunities to purchase homes elsewhere.

51. The College's repeated promises and representations, together with its conduct in surveying, subdividing, and obtaining municipal approval for the Property, confirmed that the promised conveyance would occur.

52. The College has failed to honor its promises and representations to convey the Property to the Roys.

53. Enforcement of the College's promise is necessary to avoid unjust and unconscientious injury and loss to the Roys.

54. An award of damages would be an inadequate remedy for the harm and injury suffered by the Roys because the Property is unique real property that directly abuts their existing residence and was intended for a specific residential purpose.

55. By reason of the College's enforceable promise and the Roys' reasonable and detrimental reliance thereon, the Roys contend that they hold equitable title to the Property.

56. Pursuant to 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." In addition, pursuant to 28 U.S.C. § 2202, "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

57. An actual controversy has arisen and now exists between the Roys, on the one hand, and the College, on the other hand, concerning their respective ownership interests in the Property. The Roys contend that they hold equitable title to the Property and that the College holds, at most, the corresponding legal title. The College disputes the Roys' asserted equitable title and contends that the Property is property of its bankruptcy estate that may be sold free and clear of the Roys' asserted interest.

58. A declaratory judgment determining whether the College's promises are enforceable under the doctrine of promissory estoppel, whether the Roys hold equitable title to the Property, and the corresponding nature of the College's interest in the Property as of the Petition Date that became property of the bankruptcy estate is necessary and appropriate at this time because it will resolve the present uncertainty and controversy concerning the parties' respective ownership interests in the Property.

59. The Roys are therefore entitled to a declaration that the College's promises to convey the Property are enforceable under the doctrine of promissory estoppel, that the Roys hold equitable title to the Property, that the College holds, at most, only bare legal title to the Property, that the College cannot sell or attempt to sell the Roys' beneficial ownership in the Property as its property or property of the bankruptcy estate.

60. The College's conduct with respect to the Property has harmed the Roys and will continue to harm the Roys into the future if not enjoined.

61. The Roys are entitled to an injunction to prevent further irrepaarably harm in the form of the College's continued attempt to sell the Property in the bankruptcy process, free and clear of any interest therein, because the Roys hold equitable title to the Property.

**WHEREFORE,** the Roys respectfully request that this Court:

1. Enter a declaratory judgment in favor of the Roys and against the College;
2. Enter a declaratory judgment that the College's promises to convey the Property to the Roys are enforceable under the doctrine of promissory estoppel;
3. Enter a declaratory judgment that, based upon the College's enforceable promises and the Roys' reasonable and detrimental reliance thereon, the Roys hold equitable title to the Property;

4. Enter a declaratory judgment that the College holds, at most, only bare legal title to the Property;

5. Enter a declaratory judgment that the College cannot sell or attempt to sell the Roys' beneficial ownership in the Property as its property or property of the bankruptcy estate;

6. Issue a permanent injunction prohibiting the College and all those acting in concert therewith from asserting ownership over, using, selling, conveying, transferring or otherwise disposing of the Property as its property or property of the bankruptcy estate;

7. Awarding the Roys their costs of suit herein, including reasonable attorneys' fees, as allowed by law; and

8. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

DAVID E. ROY, ELAINA M. ROY,
and DAVID E. ROY, JR.

By their attorneys,

Dated: August 21, 2026

*/s/ Robert F. Callahan, Jr.*

Anthony A. Froio, Esq. (BBO No. 554708)
Robert F. Callahan, Jr., Esq. (BBO No. 685728)
ROBINS KAPLAN LLP
800 Boylston Street, Suite 2500
Boston, Massachusetts 02199-7080
Telephone: (617) 267-2300
Facsimile: (617) 267-8288
afroio@robinskaplan.com
rcallahan@robinskaplan.com