**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>THE SISTERS OF ST. ANN<br>d/b/a ANNA MARIA COLLEGE,<br><br>Debtor. | Chapter 11<br>Case No. 26-40758 |

**OBJECTION OF DAVID E. ROY, ELAINA M. ROY, AND DAVID E. ROY, JR.**
**TO DEBTOR'S MOTION FOR ENTRY OF ORDERS APPROVING SALE**
**PROCEDURES AND SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

# TABLE OF CONTENTS

TABLE OF CONTENTS …………………………………………………………………… i

TABLE OF AUTHORITIES ………………………………………..…………………...…...….. iii

INTRODUCTION ……………………………………………………………..……………… 1

BACKGROUND ………………………………………………………...…………….….…. 3

A. The College's Promise to Convey the Property ……………………………….... 3

B. The State Court Action …………………………………………………..……. 4

C. The College Seeks to Sell the Property Before the Ownership Dispute is Adjudicated. ……………………………………………. 5

D. The Adversary Proceeding ………………………………………………..…….. 6

ARGUMENT …………………………………………………………………………….… 7

A. The College May Sell Only Property of the Estate, and the Bankruptcy Filing Did Not Enlarge Whatever Property Interest the College Held on the Petition Date. ……………………………...……………………...…...… 7

B. Under *Worcester Country Club Acres*, § 363(f)(4) Does Not Permit the College to Sell the Property Itself Before the Threshold Ownership Dispute Is Resolved. …………..……………………………………………….………. 9

C. The Pending Adversary Proceeding Is the Appropriate Vehicle for the Final Ownership Determination That Must Precede a Sale Free and Clear of the Roys' Asserted Interest. ……………………………….... 12

D. The College's Assertion of § 544(a)(3) Does Not Justify Using § 363(f)(4) to Avoid Adjudication of the Ownership Dispute. ……………………………………...……….. 14

E. The College Has Not Shown That Another Provision of § 363(f) Authorizes the Proposed Sale. …………………..…………………….….. 17

F. Attachment to Sale Proceeds Does Not Cure the Threshold Ownership Problem or Establish Adequate Protection. ........................................................................ 19

G. A Purchaser of the Property Cannot Acquire it as a Good Faith Purchaser Under § 363(m). ........................................ 22

H. The Court Should Not Waive the Fourteen-Day Stay Under Rule 6004(h). .................................................................. 23

CONCLUSION ........................................................................................................ 23

CERTIFICATE OF SERVICE ................................................................................ 25

**TABLE OF AUTHORITIES**

**Decisions** **Page(s)**

*Abboud v. The Ground Round, Inc. (In re The Ground Round, Inc.)*,
482 F.3d 15 (1st Cir. 2007) .......... 8

*Braunstein v. Hajjar (In re Hajjar)*,
385 B.R. 482 (Bankr. D. Mass. 2008) .......... 8

*City of Springfield v. Ostrander (In re LAN Tamers, Inc.)*,
329 F.3d 204 (1st Cir. 2003) .......... 7, 12–13

*In re Borders Group, Inc.*,
453 B.R. 477 (Bankr. S.D.N.Y. 2011) .......... 23

*In re Corse*,
486 B.R. 241 (Bankr. D.R.I. 2013) .......... 14

*In re Daufuskie Island Props., LLC*,
431 B.R. 626 (Bankr. D.S.C. 2010) .......... 17

*In re Dewey Ranch Hockey, LLC*
414 B.R. 577 (Bankr. D. Ariz. 2009) .......... 20–21

*In re DVI, Inc.*,
306 B.R. 496 (Bankr. D. Del. 2004) .......... 20

*In re Genesys Research Institute, Inc.*,
No. 15–12794–JNF, 2016 WL 3583229 (Bankr. D. Mass. June 24, 2016) .......... 9–11

*In re Goli Nutrition Inc.*,
No. 24-10438 (LSS), 2024 WL 1748460 (Bankr. D. Del. Apr. 23, 2024) .......... 10–11

*In re Haskell L.P.*,
321 B.R. 1 (Bankr. D. Mass. 2005) .......... 17–18, 20

*In re Laines*,
352 B.R. 410 (Bankr. E.D. Va. 2005) .......... 17

*In re Mill Concepts Corp.*,
123 B.R. 938 (Bankr. D. Mass. 1991) .......... 15

*In re Robotic Vision Systems, Inc.*,
322 B.R. 502 (Bankr. D.N.H. 2005) .......... 10

*In re Signal Hill-Liberia Avenue Ltd. Partnership*,
189 B.R. 648 (Bankr. E.D. Va. 1995) ……………………………………………...….. 8

*In re Worcester Country Club Acres, LLC*,
655 B.R. 41 (Bankr. D. Mass. 2023) ……………………….....….………… 2, 9–12, 16, 20

*Jeremiah v. Richardson*,
148 F.3d 17 (1st Cir. 1998) …………………………………………………...………….. 22

*Mission Product Holdings, Inc. v. Schleicher & Stebbins Hotels, L.L.C. (In re Old Cold, LLC)*,
976 F.3d 107 (1st Cir. 2020) ……………………………………………….……………. 19

*Rodolakis v. Pedone (In re Belba)*,
226 B.R. 738 (Bankr. D. Mass. 1998) ……………………………………….……… 15–16

*Tran v. Citizens Bank, N.A. f/k/a RBS Citizens, N.A. (In re Tran)*,
142 F.4th 60 (1st Cir. 2025) ……………………………...…………………………... 14

**Statutes**

11. U.S.C. § 363 ……………………………………………………….. 2–3, 7–12, 14, 16–23

11. U.S.C. § 363(b) ………………………………………………………………….. 7–8, 10, 19

11. U.S.C. § 363(b)(1) ……………………………………………………….……………. 7

11. U.S.C. § 363(c) ………………………………………………………………….. 7–8, 10, 19

11. U.S.C. § 363(e) …………………………………………………………………….. 3, 19–21

11. U.S.C. § 363(f) …………………………………………………… 2–3, 5, 7–12, 14, 16–18, 20

11. U.S.C. § 363(f)(1) ……………………………………………………………………... 17

11. U.S.C. § 363(f)(2) ……………………………………………………………...…… 17

11. U.S.C. § 363(f)(3) …………………………...……………...…………………….. 17

11. U.S.C. § 363(f)(4) ……………………………………………………… 2, 5, 8–12, 14, 16–17, 20

11. U.S.C. § 363(f)(5) ……………………...……………………………………….. 3, 17–18

11. U.S.C. § 363(m) ……………………………...……………………………………… 22

11. U.S.C. § 363(p)(1) ........................................................................................... 19

11. U.S.C. § 365(h) ................................................................................................. 20

11. U.S.C. § 541 ..................................................................................... 2, 6–7, 9, 11, 15

11. U.S.C. § 541(a) ................................................................................................... 7

11. U.S.C. § 541(d) ............................................................................... 2, 7, 9, 11, 15

11. U.S.C. § 544(a)(3) ........................................................................... 2, 5, 9, 14–16

11 U.S.C. § 1107(a) ................................................................................................. 7

Mass. Gen. Laws ch. 184, § 17 ................................................................................ 14

**Rules**

Fed R. Bankr. P. 6004(h) ................................................................................. 22–23

Fed. R. Bankr. P. 7001 ..................................................................................... 12–13

Fed. R. Bankr. P. 7001(b) ........................................................................................ 12

Fed. R. Bankr. P. 7001 (i) ........................................................................................ 12

David E. Roy, Elaina M. Roy, and David E. Roy, Jr. (collectively, the "Roys"), by and through their undersigned counsel, hereby object (the "Objection") to the *Debtor's Motion for Entry of (I) an Order (A) Approving Sale Procedures in Connection with the Sale of Substantially All of the Debtor's Assets in One or More Transactions, (B) Scheduling an Auction and Hearing to Approve the Sale(s) and the Form and Manner of Notice Thereof, (C) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Authorizing De Minimis Sales of Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, and (E) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtor's Assets, in One or More Transactions Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* [Dkt. No. 5] (the "Sale Motion"), solely to the extent the Sale Motion seeks authority to sell, transfer, or convey the real property known as "Lot 2" free and clear of the Roys' asserted equitable ownership interest.

## INTRODUCTION

1. This Objection concerns a piece of real property and a threshold question that should be resolved before that property is sold. Before bankruptcy, the College repeatedly promised to convey approximately 2.4 acres of land identified by the Debtor as "Lot 2" (the "Property") to the Roys, took steps toward conveying the Property, and represented to the Paxton Planning Board that it had promised the Roy Family a parcel of land. *See generally* Exhibit A to Affidavit of Robert F. Callahan, Jr. ("Verified State Court Complaint").

2. The Roys relied on those promises and commenced an action in Worcester Superior Court seeking specific performance after the College refused to complete the conveyance. *See id.*

¶¶ 37–44; 46–52. Since filing that action, the Roys have commenced an adversary proceeding in this Court seeking a determination of their asserted equitable title.[1]

3. The Sale Motion seeks to accomplish first what the College says can be adjudicated later. The proposed Sale Order would find that Lot 2 "is property of the Debtor's estate," authorize its sale free and clear of the Roys' claims for specific performance, promissory estoppel, and equitable title, and provide that any interest the Roys ultimately establish will attach instead to sale proceeds. At the same time, the proposed Sale Order expressly states that it does not finally determine the validity, priority, extent, enforceability, or avoidability of the Roys' asserted interest. *See* Sale Motion, Ex. B, Findings W–X, at 11–12 & ¶ 13, at 19–20.

4. That sequence is inconsistent with the limits of § 363 of the Bankruptcy Code. Section 363 permits the College to sell property of the estate; it does not itself enlarge the estate's ownership. If the Roys establish equitable title, § 541(d) of the Bankruptcy Code limits the estate to the College's corresponding legal interest unless and until the College establishes a superior right under an applicable avoidance provision. And *In re Worcester Country Club Acres, LLC*, 655 B.R. 41 (Bankr. D. Mass. 2023), holds that § 363(f)(4) of the Bankruptcy Code cannot be used to sell the disputed property itself before deciding the antecedent question whether the property belongs to the estate.

5. Nor do the remaining provisions of § 363 cure that problem. Section 544(a)(3) of the Bankruptcy Code remains an unresolved avoidance theory, not an adjudicated basis for disregarding the Roys' asserted equitable ownership. The College has identified no proceeding in which it could compel the Roys to accept money in satisfaction of their asserted right to this

[1] The factual allegations underlying the Roys' Complaint for Declaratory Judgment Determining Equitable Title to Real Property in the adversary proceeding largely track the factual allegations in the Roys' Verified State Court Complaint.

specific Property as required by § 363(f)(5). *See* Sale Motion ¶ 89, at 53 (invoking § 363(f)(5) only with respect to an unrelated mechanics' lien). The Court should therefore deny or defer any sale of the Property free and clear of the Roys' asserted interest until the Adversary Proceeding determines the parties' respective rights. At a minimum, if a sale is nevertheless authorized, § 363(e) of the Bankruptcy Code requires protection of the Roys' asserted interest beyond a conclusory finding that it may attach to sale proceeds. *See id.* ¶¶ 84, 91, at 51–54; *id.*, Ex. B, Finding W, at 11.

## BACKGROUND

### A. The College's Promise to Convey the Property

6. David and Elaina Roy own and reside on property in Paxton, Massachusetts adjacent to the Property. *See* Verified State Court Complaint ¶¶ 10; 16–18; Exs. 1–2.

7. In late 2022, David and Elaina met with then-President of the College Mary Lou Retelle ("President Retelle") and then-Executive Vice President Michael Miers ("Vice President Miers") concerning the Property. *See id.* ¶¶ 14–16.

8. On or about January 20, 2023, President Retelle and Vice President Miers agreed that the College would convey the Property to the Roys and represented that the conveyance would be made as a gift. *See id.* ¶¶ 24–25.

9. President Retelle reaffirmed the College's promise in April 2023, including in a written communication recognizing the Roy family's longstanding relationship with the College. *See id.* ¶¶ 26–29; Exs. 3.

10. The College thereafter undertook concrete steps toward completing the conveyance. Among other things, College representatives worked to survey and subdivide the

Property from the College's remaining land and obtain the municipal approval necessary to create Lot 2 as a separate lot. *See id.* ¶¶ 29–33; Exs. 4–6.

11. On September 18, 2023, the Paxton Planning Board unanimously approved an ANR plan to create "one buildable lot." In presenting the matter to the Planning Board, Vice President Miers represented that the College "had promised the Roy Family a parcel of land" and that "[t]his lot will be transferred over to David Roy." *See id.* ¶¶ 34–35; Ex. 8.

12. Later that day, Vice President Miers informed David that the signed plans were in hand and that the remaining steps were to record the plans for deed purposes and work with legal counsel to complete the transfer. *See id.* ¶ 36; Ex. 7.

13. In reliance on the College's repeated promises, representations, and conduct, the Roys altered their long-term housing plans and forewent other economic opportunities, including opportunities relating to the sale of their existing home and the purchase of other homes. *See id.* ¶¶ 37–38; 48–50.

14. The College ultimately refused to complete the promised conveyance. *See id.* ¶¶ 39–44; Ex. 9.

**B. The State Court Action**

15. On June 18, 2025, the Roys commenced an action against the College in Worcester Superior Court, captioned *Roy, et al. v. Anna Maria College*, Case No. 2585CV00823 (the "State Court Action"), arising from the College's promise to convey the Property and the Roys' detrimental reliance on that promise. *See generally* Verified State Court Complaint.

16. The Roys asserted a claim for promissory estoppel and detrimental reliance and sought, among other relief, specific performance requiring the College to convey the Property. *See id.* ¶¶ 46–52; Relief Requested.

17. On July 24, 2025, the Superior Court entered an Order that restrained and enjoined the College "from encumbering, selling, transferring, disposing, conveying, donating, exchanging, improving, grading, excavating, pruning, removing any tree and/or other vegetation, harvesting, deforesting, and/or otherwise modifying and/or altering" the Property until further agreement of the parties or order of the Worcester Superior Court. *See* Exhibit B to Affidavit of Robert F. Callahan, Jr. ("State Court Injunction Order").

18. The State Court Action remained pending on the Petition Date.

**C. The College Seeks to Sell the Property Before the Ownership Dispute is Adjudicated.**

19. On June 26, 2026 (the "Petition Date"), the College commenced the above-captioned Chapter 11 case and filed the Sale Motion. *See* Sale Motion ¶ 2, at 3.

20. Through the Sale Motion, the College proposes to market and sell substantially all of its assets, including the Property. *See id.* ¶ 18, at 9; *id.* ¶¶ 36–37, at 18; *id.* ¶ 19(a)(iii) & n.4, at 10.

21. The Sale Motion acknowledges that the Property comprises approximately 2.4161 acres, that record title remains in the College's name, and that the Roys' State Court Action concerns an asserted interest in that property. *Id.* ¶ 19(a)(iii) & n.4, at 10; *see also id.* ¶ 25(d), at 13–14.

22. As to the Property, the College contends that the Roys' asserted interest is subject to a bona fide dispute under 11 U.S.C. § 363(f)(4), including because the College asserts an objective basis under § 544(a)(3) to avoid the State Court Injunction Order and any related interest. *See id.* ¶¶ 86–88 & n.18, at 52–53; *id.*, Ex. B, Finding X, at 12.

23. Based on that asserted dispute, the proposed Sale Order would authorize the Property to be sold free and clear of any interest asserted by the Roys, including any claim for

"specific performance, promissory estoppel, or equitable title." *Id.*, Ex. B, Finding X, at 12 & ¶ 13, at 19–20.

24. At the same time, the College expressly disclaims any request for a final determination through the Sale Motion of the "validity, priority, extent, enforceability, or avoidability" of the Roys' asserted interest. *See id.* ¶ 88 n.18, at 53; *id.*, Ex. B, Finding X, at 12 & ¶ 13, at 19–20. Instead, the proposed Sale Order provides that any interest the Roys ultimately establish would attach to the net cash proceeds of the sale. *See id.*, Ex. B, Finding X, at 12 & ¶ 13, at 19–20. Yet the same proposed Sale Order asks this Court to find that the Property "is property of the Debtor's estate within the meaning of section 541 of the Bankruptcy Code." *Id.*, Ex. B, Finding X, at 12.

25. The Sale Motion therefore seeks to convey the Property free and clear of the Roys' asserted ownership before the Court determines whether that asserted ownership exists or is avoidable. *See id.* ¶¶ 86–88 & n.18, at 52–53; *id.*, Ex. B, Finding X, at 12 & ¶ 13, at 19–20.

**D. The Adversary Proceeding**

26. The Roys have commenced an adversary proceeding seeking, among other relief, a declaratory judgment determining that the Roys hold equitable title to the Property and, correspondingly, the College has only bare legal title to the Property. *See Roy, et al. v. The Sisters of St. Ann d/b/a Anna Maria College*, Adv. Proc. No. 26-04027 (the "Adversary Proceeding").

27. The Adversary Proceeding provides the procedural vehicle for finally adjudicating the ownership dispute that the Sale Motion expressly leaves unresolved.

28. The Roys therefore object to any sale that would convey the Property free and clear of their asserted equitable ownership before that threshold dispute is adjudicated.

## ARGUMENT

**A. The College May Sell Only Property of the Estate, and the Bankruptcy Filing Did Not Enlarge Whatever Property Interest the College Held on the Petition Date.**

29. Under § 1107(a) of the Bankruptcy Code, a debtor in possession may exercise the powers of a trustee, including the authority under § 363(b)(1) of the Bankruptcy Code to sell, after notice and a hearing, "property of the estate" outside the ordinary course of business. 11 U.S.C. §§ 363(b)(1), 1107(a). Section 363(f) of the Bankruptcy Code, in turn, authorizes a sale free and clear of certain third-party interests only of "property under subsection (b) or (c)." 11 U.S.C. § 363(f).

30. Section 363 of the Bankruptcy Code does not itself create or enlarge the estate's ownership interests. Sections 363(b) and (c) authorize the sale only of property of the estate, while § 363(f) permits that property to be sold free and clear of qualifying interests under specified conditions.

31. Section 541 of the Bankruptcy Code defines the scope of those rights. Although § 541(a) broadly encompasses the debtor's legal and equitable interests, § 541(d) provides that where the debtor holds "only legal title and not an equitable interest," the property becomes property of the estate "only to the extent of the debtor's legal title" and not to the extent of any equitable interest the debtor does not hold. 11 U.S.C. § 541(d).

32. In *City of Springfield v. Ostrander (In re LAN Tamers, Inc.)*, 329 F.3d 204 (1st Cir. 2003), the First Circuit held that federally regulated reimbursement funds were not property of the bankruptcy estate because the debtor was merely a delivery vehicle, lacked any equitable interest in the funds, and at most arguably held bare legal title. *Id.* at 209–15. The court emphasized that "the estate can only succeed to the same property interest that the debtor possesses, and cannot achieve a greater interest." *Id.* at 212–13.

33. The First Circuit reiterated that principle in *Abboud v. The Ground Round, Inc. (In re The Ground Round, Inc.)*, 482 F.3d 15 (1st Cir. 2007), with limited exceptions, "[a] bankruptcy estate cannot succeed to a greater interest in property than the debtor held prior to bankruptcy." *Id.* at 18 (quoting *In re NTA, LLC*, 380 F.3d 523, 528 (1st Cir. 2004)). Where state law recognizes that another party "holds something akin to a right in property held by the debtor, that right survives bankruptcy and remains enforceable to recover property from the estate" unless a provision of the Bankruptcy Code cuts it off. *Id.* at 19.

34. *In re Signal Hill-Liberia Avenue Ltd. Partnership*, 189 B.R. 648 (Bankr. E.D. Va. 1995), applies the same principle in the context of an actual proposed sale of real property. There, after determining that a nondebtor held equitable title while the debtor held legal title, the court held that the trustee lacked authority under § 363(f) to sell the real property because §§ 363(b), (c), and (f) are limited to property of the estate. *Id.* at 651–52. The court also rejected the trustee's alternative characterization of the proposed transaction as a sale of the debtor's partnership interest. The notice clearly proposed to sell the real property itself, did not mention the partnership interest, and included property that was not part of the bankruptcy estate of debtors. Accordingly, the court sustained the objection and denied the proposed sale. *Id.* at 652.

35. *Braunstein v. Hajjar (In re Hajjar)*, 385 B.R. 482 (Bankr. D. Mass. 2008), provides a local illustration of the same limitation. After determining that a nondebtor held a defeasible life estate and the debtor held only a one-third remainder interest, the court held that the trustee could sell the debtor's remainder interest under § 363(b), but only subject to the other interests in the property. *Id.* at 487–89. The trustee likewise could not sell the remainder interest free and clear of the life estate under § 363(f)(4). *Id.*

36. The same distinction matters here. The Sale Motion does not propose merely to transfer whatever limited legal or contingent interest the College may ultimately be determined to hold in the Property. It proposes to convey the Property itself and extinguish against the Property the Roys' asserted equitable ownership, relegating any such interest to the sale proceeds. *See* Sale Motion ¶ 82, at 50–51; *id.*, Ex. B, Finding X, at 12 & ¶ 13, at 19–20. If the Roys establish equitable title to the Property, § 541(d) would limit what initially entered the estate with respect to the Property to the College's corresponding interest, subject to whatever avoidance rights the College establishes under § 544(a)(3). The scope of the College's interest in the Property is therefore a threshold question that § 363(f) does not itself answer.

**B. Under *Worcester Country Club Acres*, § 363(f)(4) Does Not Permit the College to Sell the Property Itself Before the Threshold Ownership Dispute Is Resolved.**

37. The Sale Motion relies specifically on § 363(f)(4) as to the Roys' asserted interest. *See* Sale Motion ¶¶ 86–88, at 52–53; *id.*, Ex. B, Finding X, at 12. That provision permits estate property to be sold free and clear of an interest that is "in bona fide dispute." The College argues that because it has an objective legal basis for disputing the Roys' asserted interest, including its position under § 544(a)(3), that dispute itself supplies authority to sell the Property free and clear before determining whether the Roys' interest exists or is avoidable. *See* Sale Motion ¶¶ 87–88 & n.18, at 52–53.

38. *In re Worcester Country Club Acres, LLC*, 655 B.R. 41 (Bankr. D. Mass. 2023), rejects that sequencing. There, the debtor proposed a sale involving real property whose ownership was disputed. The debtor relied on *In re Genesys Research Institute, Inc.*, No. 15–12794–JNF, 2016 WL 3583229 (Bankr. D. Mass. June 24, 2016), and argued that because the competing ownership interests were in bona fide dispute, § 363(f)(4) permitted a sale before ownership was adjudicated. *Worcester Country Club Acres*, 655 B.R. at 44–46. The court agreed that § 363(f)(4)

ordinarily permits estate property to be sold without first resolving every disputed lien or interest. It also recognized that property of the estate may include contingent or disputed interests held by the debtor. *Id.* at 45–46.

39. However, the court expressly disagreed with *Genesys* where the dispute concerns whether the interest proposed for sale belongs to the estate at all. *Id.* at 46. Because §§ 363(b) and (c) authorize sales only of estate property, the court held that the estate-property question must be answered before § 363(f)(4) can be used to strip competing interests from the property. *Id.* at 46–47. The court therefore distinguished between selling whatever contingent or disputed interest the estate itself possesses and selling the disputed property itself free and clear of another party's ownership claim. A debtor may do the former without finally resolving ownership; it may not do the latter. *Id.* at 47.

40. Other courts similarly recognize that § 363(f) presupposes an adequate basis for treating the property as property of the estate. In *In re Robotic Vision Systems, Inc.*, 322 B.R. 502 (Bankr. D.N.H. 2005), a bankruptcy court within the First Circuit held that the threshold determination under § 363(f)(4) "necessarily requires a finding that the disputed property is or could become property of the bankruptcy estate." *Id.* at 508. Because the debtor had no interest in the disputed property on the petition date and the movants failed to establish an objective basis for recovering it for the estate, the court denied their motion for a determination of a bona fide dispute. *Id.* at 508–09. A 2024 bankruptcy decision in Delaware reached the same conclusion, relying on *Worcester Country Club Acres*. In *In re Goli Nutrition Inc.*, No. 24-10438 (LSS), 2024 WL 1748460, at *5–6 (Bankr. D. Del. Apr. 23, 2024), the court held that § 363(f) "does not provide independent authority for a trustee to sell assets," but instead authorizes a free-and-clear sale only of property otherwise subject to sale under § 363(b) or (c). The court therefore concluded that

courts relying on § 363(f)(4) to sell property where ownership itself is disputed "are mistaken," because the disputes contemplated by § 363(f)(4) are not ownership disputes. *Id.* at *6.

41. The College impermissibly seeks the latter transaction. It does not propose merely to sell whatever disputed right, title, and interest the estate may possess in Lot 2. It proposes to sell Lot 2 itself and extinguish the Roys' asserted equitable ownership. *See* Sale Motion, Ex. B, Finding X, at 12 & ¶ 13, at 19–20. The Roys do not merely assert a lien or other encumbrance against property concededly owned by the College. They contend that, if their asserted equitable ownership is established under applicable nonbankruptcy law, the College held only bare legal title and the Roys' equitable interest did not become property of the estate. *See* 11 U.S.C. § 541(d).

42. The fact that *Worcester Country Club Acres* arose from an objection to a disclosure statement does not alter its substantive holding. The court expressly framed the issue as whether § 363(f)(4) permitted the contemplated sale "prior to a final adjudication of the parties' claims with respect to the property rights at issue." 655 B.R. at 42. It then held that the plan was currently unconfirmable because it proposed to sell the disputed property itself before determining whether the debtor owned it. *Id.* at 47–48.

43. The court also expressly rejected the contrary reasoning of *Genesys*, upon which the College relies here. In *Genesys*, the court concluded that § 363(f)(4) did not require resolution of an ownership dispute before sale and required only an objective basis for the dispute. 2016 WL 3583229, at *19–20. *Worcester Country Club Acres* disagreed with that analysis where the dispute concerns the threshold question whether the property being sold is estate property. 655 B.R. at 46–47.

44. The proposed Sale Order would do precisely what *Worcester Country Club Acres* prohibits. It would affirmatively declare Lot 2 property of the estate and extinguish the Roys'

asserted ownership, while expressly declining to determine whether that ownership is valid, enforceable, or avoidable. *See* Sale Motion, Ex. B, Finding X, at 12 & ¶ 13, at 19–20. Section 363(f)(4) cannot transform an unresolved dispute over estate ownership into the mechanism for extinguishing the competing ownership before that dispute is adjudicated.

45. The Court should therefore deny or defer the Sale Motion to the extent it seeks authority to sell the Property free and clear of the Roys' asserted interest until the threshold ownership issues are resolved.

**C. The Pending Adversary Proceeding Is the Appropriate Vehicle for the Final Ownership Determination That Must Precede a Sale Free and Clear of the Roys' Asserted Interest.**

46. The threshold dispute concerning the validity and extent of the Roys' asserted equitable interest cannot properly be finally adjudicated through this contested Sale Motion. Federal Rule of Bankruptcy Procedure 7001(b) requires an adversary proceeding to determine the validity, priority, or extent of an interest in property, and Rule 7001(i) likewise requires an adversary proceeding for related declaratory relief. Accordingly, neither the Roys nor the College could properly obtain a final adjudication of the parties' competing ownership interests through this contested matter. The Roys have therefore commenced the Adversary Proceeding contemplated by Rule 7001 to obtain that determination.

47. In *In re Lan Tamers*, when the City of Springfield asserted ownership of reimbursement funds that creditors claimed were property of the estate, the bankruptcy court characterized Springfield's claim as one "to title and to recover an asset" and concluded that the claim should be asserted through an adversary proceeding under Rule 7001(2). 329 F.3d 204, 208. Springfield then commenced an adversary proceeding, in which the bankruptcy court adjudicated

the ownership issue and determined that the reimbursements were not property of the estate. *Id.* at 208–209.

48. Whether the College holds bare legal title matters here because the proposed Sale Order seeks a finding that the Property "is property of the Debtor's estate" while simultaneously purporting to reserve the ultimate validity and extent of the Roys' asserted interest. *See* Sale Motion, Ex. B, Finding X, at 12. Those propositions cannot be reconciled if the requested estate-property finding is intended to establish that the College owns the equitable interest claimed by the Roys. Any final determination of the nature or extent of that competing interest must therefore be made in the Adversary Proceeding prescribed by Rule 7001, not through this contested Sale Motion.

49. The Roys have followed that course here. Their Adversary Proceeding seeks a final declaration concerning equitable title to the Property and the corresponding extent of the College's interest.

50. This Objection serves the complementary purpose of asking the Court to preserve the Property until that threshold dispute is resolved.

51. A sale free and clear would not leave the ownership dispute untouched. It would remove the Roys' asserted interest from the specific real property and replace it with whatever rights the Sale Order affords them against the sale proceeds. *See* Sale Motion, Ex. B, ¶ 13, at 19–20. The College should not be permitted to obtain that consequential relief while reserving for later adjudication whether the interest it seeks to extinguish belongs to the Roys.

52. For the reasons set forth above, the Court should defer authorization of a sale free and clear of the Roys' asserted interest in the Property until the Adversary Proceeding resolves the threshold ownership dispute.

**D. The College's Assertion of § 544(a)(3) Does Not Justify Using § 363(f)(4) to Avoid Adjudication of the Ownership Dispute.**

53. The College relies in part on § 544(a)(3) of the Bankruptcy Code as the basis for its asserted bona fide dispute. *See* Sale Motion ¶¶ 86–88, at 52–53; *id.*, Ex. B, Finding X, at 12.

54. Section 544(a)(3) gives a trustee or debtor in possession the rights and powers of a hypothetical bona fide purchaser of real property as of the petition date. Depending on applicable state law, those rights may take priority over an unrecorded equitable interest. *See In re Corse*, 486 B.R. 241, 246–47 (Bankr. D.R.I. 2013).

55. But to prevail on the merits of its § 544(a)(3) theory, the College must identify both the property interest at stake and a transfer of that interest that is subject to avoidance. The First Circuit recently explained that the analysis begins by determining "what property interest is at stake and when any 'transfer' occurred," and only then asks "whether a hypothetical bona-fide purchaser would have been able to avoid that 'transfer.'" *Tran v. Citizens Bank, N.A. f/k/a RBS Citizens, N.A. (In re Tran)*, 142 F.4th 60, 64 (1st Cir. 2025). Where no transfer of a particular property interest occurred, there is "nothing to 'avoid.'" *Id.* at 65. Thus, whether § 544(a)(3) gives the College any purported rights superior to the Roys' asserted equitable interest depends on what interest the Roys possess, whether the creation or acquisition of that interest involved a "transfer" within the meaning of the Bankruptcy Code, and whether that transfer is avoidable under applicable law. *Tran* does not permit those questions to be bypassed; it identifies them as the necessary components of the avoidance analysis.

56. The College's recording argument does not resolve those questions. The Sale Motion principally relies on the fact that the State Court Injunction Order was not recorded and cites Mass. Gen. Laws ch. 184, § 17, which addresses the effect of an unrecorded judgment or decree affecting title. *See* Sale Motion ¶¶ 86–88 & n.17, at 52–53. But the proposed Sale Order

reaches substantially further: it would strip from Lot 2 every interest asserted by the Roys, including claims of equitable title, specific performance, and promissory estoppel arising from the College's alleged prepetition promises and the Roys' reliance. *See id.*, Ex. B, Finding X, at 12 & ¶ 13, at 19–20. Whether § 544(a)(3) permits the College to avoid those underlying interests, not merely the unrecorded State Court Injunction Order, is a separate question that the proposed Sale Order expressly declines finally to decide, and in any event, cannot be properly adjudicated through this contested Sale Motion. *See id.* ¶ 88 n.18, at 53; *id.*, Ex. B, Finding X, at 12 & ¶ 13, at 19–20.

57. Bankruptcy court decisions in this District further confirm that § 544(a)(3) does not simply transform whatever title the debtor holds into full ownership free of another party's beneficial interest. In *In re Mill Concepts Corp.*, 123 B.R. 938 (Bankr. D. Mass. 1991), the court held that § 544(a)(3) "grants only the ability to avoid an unperfected transfer made by the debtor." *Id.* at 941. The court rejected the contention that hypothetical bona fide purchaser status, standing alone, permitted a debtor in possession to retain property free of another party's beneficial interest, reasoning that such an interpretation would conflict with § 541(d). *Id.* at 941–46.

58. *Rodolakis v. Pedone (In re Belba)*, 226 B.R. 738 (Bankr. D. Mass. 1998), applied the same interpretation. Although the court permitted the trustee to avoid an unrecorded deed through which the debtor had transferred his interest in real property, it rejected the trustee's separate attempt to use § 544(a)(3) to eliminate a preexisting partnership interest in that property. The court explained that § 544(a)(3) permits a trustee to avoid "a transfer of real estate previously made by the Debtor," but does not permit the trustee to "*effect* a transfer from the debtor to the estate free of the interest of others in the Debtor's property." *Id.* at 743 (emphasis in original); *see also id.* at 744–45.

59. Those decisions make the nature and source of the Roys' asserted interest consequential. The College may contend that its alleged prepetition promises and the Roys' reliance resulted in a "transfer" of an equitable interest that § 544(a)(3) permits it to avoid. But the Sale Motion is not the procedural vehicle for obtaining a final determination that any such transfer is avoidable, and the proposed Sale Order neither identifies such a transfer nor purports finally to adjudicate its avoidability. To the contrary, the proposed order expressly provides that the sale ruling will not constitute a final determination of the "avoidability" of the Roys' asserted interest. *See* Sale Motion, Ex. B, Finding X, at 12 & ¶ 13, at 19–20. It would nevertheless strip that interest from Lot 2 and preserve the Roys' rights only against the sale proceeds. *See id.*, Ex. B, ¶ 13, at 19–20.

60. Again, that is the sequencing problem identified in *Worcester Country Club Acres*. When the dispute concerns whether the nondebtor owns an equitable interest in the property itself, as opposed to merely holding a lien or other nonownership interest, § 363(f)(4) does not permit the debtor to sell the property itself before determining what interest in that property belongs to the estate. 655 B.R. at 48–50.

61. The College therefore cannot rely on § 544(a)(3) merely as an unresolved basis for disputing the Roys' equitable ownership while simultaneously selling Lot 2 as though the College's superior ownership had already been established.

**E. The College Has Not Shown That Another Provision of § 363(f) Authorizes the Proposed Sale.**

62. The College must establish that at least one of § 363(f)'s statutory conditions applies to the Roys' asserted interest before the Property may be sold free and clear of that interest. *See In re Laines*, 352 B.R. 410, 414 (Bankr. E.D. Va. 2005) (For approval of a sale free and clear of liens, "[t]he trustee must prove that one of the five conditions listed in § 363(f) is applicable."); *In re Daufuskie Island Props., LLC*, 431 B.R. 626, 637 (Bankr. D.S.C. 2010) ("the Trustee must show that one of the provisions of § 363(f)(1)–(5) is applicable to each lien or interest from which the Sale is to be free and clear"); *see also In re Haskell L.P.*, 321 B.R. 1, 9–10 (Bankr. D. Mass. 2005) (denying a sale motion where the debtor failed to establish application of § 363(f)(5) to interest in the property).

63. The proposed findings specific to the Property rely on § 363(f)(4). *See* Sale Motion, Ex. B, Finding X, at 12 & ¶ 13, at 19–20. Although the proposed Sale Order also contains a generic finding that one or more of §§ 363(f)(1) through (5) is satisfied as to all Sale Assets, *see id.*, Ex. B, Finding W, at 11, the College has not established that any other provision of § 363(f) authorizes it to sell the Property free and clear of the Roys' asserted ownership interest.

64. Section 363(f)(1) does not apply because the College has identified no applicable nonbankruptcy law permitting the Property to be sold free and clear of the Roys' asserted equitable ownership.

65. Section 363(f)(2) does not apply because the Roys do not consent to the proposed sale free and clear of their interest.

66. Section 363(f)(3) applies where the relevant interest "is a lien." The Roys assert equitable ownership of the Property, not a lien securing payment of a debt.

67. Section 363(f)(5) applies only where the holder "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction" of its interest. 11 U.S.C. § 363(f)(5).

68. In *In re Haskell L.P.*, 321 B.R. 1 (Bankr. D. Mass. 2005), the court rejected the argument that § 363(f)(5) is satisfied whenever it is theoretically possible for an interest to be converted into money. *Id.* at 9. Rather, "the statute requires that the trustee or the debtor be the party able to compel monetary satisfaction for the interest which is the subject of the sale," and "[t]he focus of § 363(f)(5) is on whether the interest is reducible to a claim." *Id.* Under *Haskell*, the College must therefore identify a legal or equitable mechanism by which it could compel the Roys to accept money in satisfaction of the particular interest they assert.

69. The College has identified no such mechanism here. The Roys assert an equitable ownership interest in specifically identified real property directly adjoining their residence and seek specific performance requiring conveyance of that Property. They do not assert a lien securing repayment of a monetary debt. Nothing in the Sale Motion identifies a legal or equitable proceeding in which the College could compel the Roys to surrender that asserted ownership interest in exchange for money. *See* Sale Motion ¶ 89, at 53.

70. Although it did not address § 363(f)(5), the First Circuit's decision in *Ground Round* reinforces the distinction between the availability of a monetary claim and the continued enforceability of a right to specific property. The court explained that a property-like right in an asset held by the debtor may remain enforceable to recover the property unless the Bankruptcy Code cuts off that right. 482 F.3d at 19. The court further recognized that the failure to return the property could give rise to damages as an alternative to specific performance, but held that "[t]hat one has a claim does not automatically foreclose a demand for specific property if state law recognizes the interest and the Bankruptcy Code does not disallow it." *Id.* at 20. Thus, the

possibility that the Roys' rights might be assigned an economic value does not, without more, establish that they could be compelled to surrender their asserted equitable ownership for money within the meaning of § 363(f)(5).

71. Accordingly, § 363(f)(5) does not provide an alternative basis on the present record for selling the Property free and clear of the Roys' asserted interest.

**F. Attachment to Sale Proceeds Does Not Cure the Threshold Ownership Problem or Establish Adequate Protection.**

72. The proposed Sale Order provides that any interest the Roys establish will attach to sale proceeds rather than remain enforceable against the Property. *See* Sale Motion, Ex. B, Finding X, at 12 & ¶ 13, at 19–20.

73. The proposed attachment to sale proceeds does not provide adequate protection of the Roys' asserted equitable ownership. Section 363(e) provides, "[n]otwithstanding any other provision of this section," that upon the request of an entity having an interest in property proposed to be sold, the Court "shall prohibit or condition" the sale as necessary to provide adequate protection of that interest. 11 U.S.C. § 363(e). The Roys hereby request such. Because their asserted interest is equitable ownership of unique real property, rather than a lien securing payment of a monetary obligation, replacing that interest with a claim against sale proceeds does not preserve the interest they assert in the Property itself. The College bears the burden of proof on the issue of adequate protection. *Id.* § 363(p)(1).

74. Attachment to proceeds is commonly used to protect liens and security interests in property of the estate. *See Mission Product Holdings, Inc. v. Schleicher & Stebbins Hotels, L.L.C. (In re Old Cold, LLC)*, 976 F.3d 107, 118–19 (1st Cir. 2020). *Old Cold*, however, involved a security interest in estate property. It did not address an asserted ownership interest in the property being sold.

75. The threshold problem here arises before the adequacy of any proposed protection. Unless and until the ownership dispute is resolved, the Court has not determined that the Property itself, as opposed to whatever legal interest the College may hold, is property of the estate and subject to sale. Adequate protection under § 363(e) cannot create sale authority that §§ 363(b), (c), and (f) do not otherwise provide.

76. *Worcester Country Club Acres* confirms the threshold nature of the ownership issue. The court held that the disputed property could not be sold under § 363(f)(4) before estate ownership was resolved. 655 B.R. at 46–48. Although the objector there separately raised § 363(e), the court did not reach that issue because the supplemental briefing requested by the court was limited to § 363(f)(4). *Id.* at 48 n.4.

77. Even if the Court reaches adequate protection, the nature and value of the asserted interest matter. In *Haskell*, the debtor argued that a tenant was adequately protected because its lien would attach to the sale proceeds. 321 B.R. at 5–7. The court rejected that contention because the senior mortgage exceeded the property's appraised value, making any recovery on the replacement lien unlikely. *Id.* at 9–10. The court concluded that under the circumstances, adequate protection could be achieved only through continued possession. *Id.* at 10. Although *Haskell* involved a leasehold and the protections of § 365(h), it demonstrates that attachment to proceeds is not automatically the indubitable equivalent of every nonmonetary property interest.

78. Nor does the existence of a bona fide dispute eliminate § 363(e)'s adequate-protection requirement. In *In re DVI, Inc.*, 306 B.R. 496, 503–05 (Bankr. D. Del. 2004), the court, applying an approach to § 363(f)(4) that *Worcester Country Club Acres* later declined to follow, permitted a sale notwithstanding a disputed constructive-trust claim, but required all proceeds to be held in escrow pending determination of the claimant's interest. And in *In re Dewey Ranch*

*Hockey, LLC*, 414 B.R. 577, 590–92 (Bankr. D. Ariz. 2009), the court assumed that the asserted interests were subject to bona fide dispute but denied the proposed sale because the nonmonetary interests could not be adequately protected.

79. Here, the Roys assert ownership of unique real property directly adjoining their residence and seek specific performance requiring conveyance of that property. The Sale Motion contends generally that holders of interests will be adequately protected because their interests will attach to sale proceeds, and the proposed Sale Order adopts that conclusion. *See* Sale Motion ¶¶ 84, 91, at 51–54; *id.*, Ex. B, Finding W, at 11. But cash proceeds do not preserve the Roys' asserted ownership of this particular Property or their claimed right to obtain the Property itself. The proposed attachment to proceeds therefore does not provide adequate protection of the interest the Roys assert.

80. The proposed attachment to proceeds compounds that deficiency. The Sale Motion requests authority, at closing, to apply net sale proceeds first to the DIP Obligations and Prepetition Bond Obligations and thereafter to retain remaining proceeds for administration of this Chapter 11 Case or later distribution. *See* Sale Motion ¶ 101, at 57. Thus, before the Roys' ownership interest has been adjudicated, the proposed Sale Order would remove that asserted interest from the Property and substitute proceeds that the College seeks authority to use for obligations of the estate. That treatment does not adequately protect the Roys' asserted equitable ownership. The College therefore has not established adequate protection under § 363(e), and the Sale Motion should be denied to the extent it seeks to sell the Property free and clear of the Roys' interest.

81. If the Court were nevertheless inclined to approve a sale encompassing the Property before that determination, the Roys request that the Court preserve their asserted interest and require that the gross proceeds attributable to the Property, or another amount demonstrated

to provide equivalent protection, be separately escrowed and withheld from use, surcharge, or distribution pending resolution of the Adversary Proceeding.

82. Any such order should preserve the Roys' position that sale proceeds do not constitute adequate protection of their asserted equitable ownership.

**G. A Purchaser of the Property Cannot Acquire it as a Good Faith Purchaser Under § 363(m).**

83. Any purchaser of the Property cannot qualify as a good faith purchaser under § 363(m) of the Bankruptcy Code while on notice of the Roys' asserted ownership interest. In the First Circuit, a "good faith" purchaser "is one who buys property in good faith and for value, *without knowledge of adverse claims*." *Jeremiah v. Richardson*, 148 F.3d 17, 23 (1st Cir. 1998) (emphasis in original) (quoting *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993)). In *Jeremiah*, the First Circuit held that § 363(m) did not protect a purchaser who had knowledge of a pending adversary proceeding asserting an adverse claim concerning the property. *Id.* The court explained that the purchaser could not be afforded good-faith status where he had "notice and knowledge of the very same claim" at issue. *Id.*

84. The same is true here. The Roys assert equitable ownership of the Property, have sought specific performance requiring its conveyance, obtained the State Court Injunction Order preventing its sale pending adjudication of their claims, commenced the Adversary Proceeding to determine equitable title, and now object to the proposed sale. Their asserted ownership is therefore an adverse claim to the College's asserted right to sell Lot 2 itself. Any purchaser will acquire the Property with notice of that claim and therefore cannot qualify for the protections afforded a good faith purchaser under § 363(m).

**H. The Court Should Not Waive the Fourteen-Day Stay Under Rule 6004(h).**

85. The College also requests waiver of the fourteen-day stay imposed by Federal Rule of Bankruptcy Procedure 6004(h). *See* Sale Motion ¶¶ 102–104, at 57–58. Rule 6004(h) stays an order authorizing a sale for fourteen days after its entry unless the Court orders otherwise. The purpose of that period is to afford an objecting party sufficient time to seek a stay pending appeal before the sale is consummated, because an unstayed closing may render an appeal moot. Fed. R. Bankr. P. 6004(h); *In re Borders Group, Inc.*, 453 B.R. 477, 486 (Bankr. S.D.N.Y. 2011).

86. Waiver is not warranted as to the Property. *Borders*, adopting guidance from *Collier*, explains that when an objection has been filed and overruled, the fourteen-day period should be eliminated or reduced only upon a showing of a sufficient business need to close within that period and that the objecting party's interests—taking into account its likelihood of success on appeal—are sufficiently protected. 453 B.R. at 486. If the objecting party intends to appeal and seek a stay, the period should not be shortened below the time necessary to permit it to seek a stay unless the need for an earlier closing outweighs the objector's interests. *Id.*

87. Here, the Roys dispute the College's threshold authority to sell property they claim to own. Waiving the stay would eliminate the automatic period Rule 6004(h) provides for them to seek appellate relief before the Property is transferred and could render that relief ineffective. The Court should therefore deny the requested waiver as to any sale encompassing the Property.

## **CONCLUSION**

For the foregoing reasons, the Roys object to the relief sought in the Sale Motion to the extent it seeks to sell the Property free and clear of the Roys' asserted equitable ownership before their rights in the Property are adjudicated. The Roys respectfully request that the Court deny the Sale Motion to the extent it seeks authority to sell the Property free and clear of the Roys' asserted

interest or, alternatively, defer any such sale until the parties' respective rights are determined in the Adversary Proceeding. If the Court were nevertheless inclined to approve a sale encompassing the Property before that determination, the Roys request that the Court preserve their asserted interest and require that the gross proceeds attributable to the Property, or another amount demonstrated to provide equivalent protection, be separately escrowed and withheld from use, surcharge, or distribution pending resolution of the Adversary Proceeding.

Respectfully submitted,

DAVID E. ROY, ELAINA M. ROY,
and DAVID E. ROY, JR.

By their attorneys,

Dated: August 21, 2026

*/s/ Robert F. Callahan, Jr.*

Anthony A. Froio, Esq. (BBO No. 554708)
Robert F. Callahan, Jr., Esq. (BBO No. 685728)
ROBINS KAPLAN LLP
800 Boylston Street, Suite 2500
Boston, Massachusetts 02199-7080
Telephone: (617) 267-2300
Facsimile: (617) 267-8288
afroio@robinskaplan.com
rcallahan@robinskaplan.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2026, I caused a true and correct copy of the foregoing Objection of David E. Roy, Elaina M. Roy, and David E. Roy, Jr. to Debtor's Motion for Entry of Orders Approving Sale Procedures and Sale of Substantially All of the Debtor's Assets to be served on all parties receiving notice and service in this case through the Court's CM/ECF electronic filing system, and upon the following Objection Notice Parties so as to be actually received in accordance with the Sale Procedures:

Debtor's Counsel:
Holland & Knight LLP
Attn: John J. Monaghan, Esq., Lynne B. Xerras, Esq., and Kathleen St. John, Esq.
10 Saint James Avenue, 11th Floor
Boston, Massachusetts 02116
c/o lynne.xerras@hklaw.com

Counsel to the DIP Lender and Prepetition Secured Creditor:
Choate, Hall & Stewart LLP
Attn: Douglas R. Gooding, Esq. and Jonathan D. Marshall, Esq.
Two International Place
Boston, Massachusetts 02110
c/o dgooding@choate.com

Office of the United States Trustee for the District of Massachusetts:
Attn: William K. Harrington
5 Post Office Square, Suite 1000
Boston, Massachusetts 02116

Official Committee of Unsecured Creditors of The Sisters of Saint Ann d/b/a Anna Maria College:
Dentons Bingham Greenebaum, LLP
Attn: Andrew C. Helman, Esq., Lauren M. Macksoud, Esq., Kyle D. Smith, Esq.,
Henry Thomas, Esq.
1 City Center, Suite 11100
Portland, Maine 04101
c/o andrew.helman@dentons.com, lauren.macksoud@dentons.com, kyle.d.smith@dentons.com, henry.thomas@dentons.com

*/s/ Robert F. Callahan, Jr.*
Robert F. Callahan, Jr.