**THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>THE SISTERS OF SAINT ANN<br>d/b/a ANNA MARIA COLLEGE,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 26-40758-EDK |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO TRANSFER POSSESSION OF CERTAIN MEMORIALS TO DONORS FOR RELOCATION**

The Sisters of Saint Ann d/b/a Anna Maria College, debtor and debtor in possession in the above-captioned chapter 11 case (the "College" or the "Debtor"), hereby moves (the "Motion") pursuant to sections 105(a), 363, and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1, and 9013-1 of the Local Rules for the United States Bankruptcy Court for the District of Massachusetts (the "Local Rules"), for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtor to transfer possession of four donor restricted memorials (the "Memorials") currently located on the College's campus to the donors of those Memorials for their relocation to sites capable of continuing their charitable purposes. To be clear, this is not a motion seeking approval of a sale of property of the estate—no property of the estate is at issue, no consideration is being sought or received and, because the Debtor does not hold title to the Memorials, no transfer

[1] The last four digits of the Debtor's taxpayer identification number are 2060. The Debtor's address is 50 Sunset Lane, Paxton, MA 01612.

of title is envisioned. The transfer of possession, however, does constitute an out-of-the-ordinary course transaction so not authorized without Court authority under § 363(c) of the Bankruptcy Code, rendering approval under § 363(b) necessary to undertake the envisioned transfer of possession. In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested are sections 105(a), 363(b), and 541 of the Bankruptcy Code, as complemented by Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure and Rule 9013-1 of the Local Rules.

## BACKGROUND

4. On June 26, 2026 (the "Petition Date"), the Debtor commenced the above-captioned chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition for relief under the Bankruptcy Code, in the United States Bankruptcy Court for the District of Massachusetts, Central Division (the "Court"). The Debtor continues to manage its property as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On July 16, 2026, the United States Trustee for Region 1 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") in this Chapter 11 Case. *See* Dkt. No. 69.

6. Additional factual background information about the Debtor, including its business operations, its corporate and capital structures, its restructuring efforts and the events leading to

the filing of the Chapter 11 Case, is set forth in detail in the First-Day Declaration.[2]

**A. The Campus Memorials.**

7. The Debtor is a Massachusetts nonprofit corporation, known as The Sisters of Saint Ann, which for approximately 80 years operated a private, nonprofit, Catholic institution of higher education known as "Anna Maria College" in Paxton, Massachusetts. The College was founded in 1946 by the Sisters of Saint Ann under a charter granted in 1887 by the Commonwealth of Massachusetts.

8. Located on the grounds of the College's campus are the four Memorials, each of which was donated to the College subject to restrictions and each of which is proposed to be relocated off-Campus at the request of the respective donors. The four Memorials are: (i) the Molly Bish Memorial; (ii) the 9/11 Memorial; (iii) the Worcester Firefighters Memorial; and (iv) a 1955 grotto with a cement statue (the "Grotto").

9. These Memorials are not ordinary fixtures of the Campus. Their significance is commemorative or devotional, and their proposed relocation is intended to preserve that significance with the donors and affected communities.

10. The Molly Bish Memorial, also known as the Garden of Hope, commemorates Molly Ann Bish, a 16-year-old lifeguard from Warren, Massachusetts, who was abducted from her post at Comins Pond on June 27, 2000. Molly's father was a professor at Anna Maria College, making her loss part of the College community as well as a story that resonated far beyond it. Established in 2024 through a partnership between Anna Maria College and the Molly Bish Center for the Protection of Children and the Elderly, the Garden of Hope provides a place where visitors can honor victims of violent crime and missing persons. Centered around a landscaped garden and

---

[2] All capitalized terms not expressly defined herein shall have the same meaning as ascribed in the First-Day Declaration.

an engraved stone memorial, the site occupies a quiet area near the rear of campus, creating a peaceful space for reflection and remembrance. The memorial makes private grief visible within a shared setting while extending an expression of solidarity to families whose losses remain unresolved. Its location integrates remembrance into the daily life of a Catholic college, while preserving a sense of distance from the more active areas of campus and allowing for contemplation and reflection.

11. Anna Maria College's 9/11 Memorial consists of a "Freedom Tree," a silver maple, and a four-foot-high, 1,500-pound granite monument honoring the nearly 3,000 individuals killed in the September 11, 2001 attacks. Together, these elements connect a national tragedy to the College community, giving broad historical events a local and personal dimension. The pairing of the living tree and enduring stone, one symbolizing growth and renewal, the other permanence and memory, integrates remembrance into the everyday campus landscape while preserving the solemnity of a dedicated place for reflection and tribute.

12. The Worcester Firefighters Memorial at Anna Maria College consists of a large white cross, approximately twenty feet tall, accompanied by six maple trees, each planted in honor of a firefighter who lost his life in the Worcester Cold Storage Fire of 1999. The tragedy marked the first line-of-duty deaths of Worcester firefighters since 1962 and was among the deadliest firefighter disasters in the nation in a quarter century. Together, the memorial's elements commemorate both individual sacrifice and collective loss. The six maple trees give each firefighter a living and enduring presence on campus, while the white cross serves as a unifying symbol of service, sacrifice, and mourning. Over time, the trees have grown too large to be relocated and will remain in place. Accordingly, the proposed relocation concerns only the cross, while, for as long as the Debtor controls its campus, the six living memorials will continue to honor

the fallen firefighters from the landscape where the College community has long recognized and remembered them.

13. The Grotto[3] is a small, 1955 devotional structure, featuring a cement statue set atop a stacked-stone base that is now approximately seventy years old. Donated by the Catholic Women of the Worcester Diocese, it forms part of the College's earliest Catholic landscape and reflects its longstanding religious identity. Located in a wooded area at the edge of campus, the Grotto has become increasingly enveloped by surrounding vegetation over time, creating a secluded setting at the boundary between the designed campus and the natural landscape. Unlike the College's larger memorials, the Grotto invites reflection in a quieter and more intimate register, offering a modest space for prayer, contemplation, and spiritual continuity.

**B. Donors and Proposed Logistics.**

14. Each of the Memorials is proposed to be relocated to an identified off-campus site, as described below.

15. The Molly Bish Memorial is proposed to be relocated to Mount Wachusett Community College, at the request of the Bish family. The Home Depot, one of the original donors, has agreed to fund the relocation of the Molly Bish Memorial, and Empire Granite, another donor, has agreed to perform the relocation.

16. The 9/11 Memorial is proposed to be relocated to the Paxton Fire Department grounds. As with the Molly Bish Memorial, The Home Depot has agreed to fund the relocation, and Empire Granite has agreed to perform it.

---

[3] As a devotional structure of the Roman Catholic faith, the Grotto is the type of sacred object over which, under the practices and governance of the Church, the local diocese ordinarily exercises stewardship. The Worcester Diocese has expressed interest in receiving the Grotto, which is consistent both with the donors' original charitable and religious purpose and with the customary treatment of such items.

17. The Worcester Firefighters Memorial is proposed to be relocated to a site designated by the City of Worcester Fire Department. The Home Depot has agreed to fund the relocation, and Empire Granite has agreed to perform it.

18. With respect to the Grotto, the Worcester Diocese has expressed interest in receiving it; however, no specific relocation site, timing, or funding arrangement has been finalized as of the date of this Motion.

19. Importantly, no cost of relocation will be borne by the estate. As described above, The Home Depot has agreed to fund the relocation of the Molly Bish Memorial, the 9/11 Memorial, and the Worcester Firefighters Memorial, and Empire Granite has agreed to perform the physical relocation of each. The Grotto relocation arrangements remain subject to finalization with the Worcester Diocese. In each case, all costs of relocation, including any and all appropriate insurance, will be borne by the respective donors or third parties undertaking the relocation (collectively, the "Responsible Relocation Parties") and not by the Debtor or the estate. The Responsible Relocation Parties have also agreed to perform the relocation in a reasonable manner that minimizes damage to the Debtor's Campus, to restore the original memorial sites to a condition similar to the immediately surrounding Campus area following the relocation, and to bear responsibility for any claims or damages resulting from the relocation

## RELIEF REQUESTED

20. By this Motion, the Debtor respectfully requests entry of the Proposed Order attached hereto as **Exhibit A**, authorizing the Debtor to permit the relocation of the Memorials by their respective donors, outside the ordinary course of business and notwithstanding the automatic stay; and granting such other and further relief as the Court deems just and proper.

**BASIS FOR RELIEF**

21. The relief requested in this Motion is authorized by sections 105(a), 363(b), and 541 of the Bankruptcy Code, as complemented by Bankruptcy Rules 6004 and 9014.

22. The Memorials are not property of the Debtor's estate within the meaning of section 541. At most, the donated Memorials are held by the College in trust or quasi-trust and impressed with specific charitable and commemorative purpose restrictions. Were the Memorials to constitute property of the estate, the Debtor's decision to permit the respective donors to relocate the Memorials for no consideration and at no cost to the estate in furtherance of the purposes of each Memorial would represent a sound exercise of the Debtor's business judgment that should be approved under section 363(b). Additionally, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Entry of an order authorizing delivery of possession to the donors of the Memorials and their relocation is necessary and appropriate to carry out sections 541 and 363 of the Bankruptcy Code and to afford the Debtor and the donors the certainty required to effectuate the relocation in an orderly manner.

**A. The Memorials Are Not Property of the Debtor's Estate Under Section 541 of the Bankruptcy Code.**

23. Section 541(a)(1) of the Bankruptcy Code provides that the commencement of a case creates an estate comprising "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Although that definition is broad, section 541(c)(2) makes clear that restrictions on transfer of property held in trust are enforceable in bankruptcy and section 541(d) makes clear that where a debtor "holds, as of the commencement of the case, only legal title and not an equitable interest" in property, such property "becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to

the extent of any equitable interest in such property that the debtor does not hold.” 11 U.S.C. § 541(d).

24. Because the Bankruptcy Code does not itself define the nature or extent of a debtor’s property interests, bankruptcy courts look to applicable nonbankruptcy law to determine whether, and to what extent, the debtor holds an interest in the properties at issue. *See Davis v. Cox*, 356 F.3d 76, 85 (1st Cir. 2004); *In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100 (1st Cir. 2005) (applying Massachusetts law to assess the debtor's property interests); *In re Piccerelli*, 525 B.R. 184, 190 (Bankr. D. Mass. 2015); *In re Tosi*, 383 B.R. 1, 10 (Bankr. D. Mass. 2008).

25. Under Massachusetts law, property donated to a charitable corporation for a designated purpose is not held by the corporation as its own; rather, it is impressed with a charitable trust or “quasi-trust” obligating the recipient to devote the property to the purpose for which it was given. *See In re Bos. Reg’l Med. Ctr., Inc.*, 410 F.3d 100, 108 (1st Cir. 2005) (“[c]haritable gifts are impressed with a kind of quasi-trust, which demands that they be applied to charitable purposes”) citing *Hillman v. Roman Catholic Bishop of Fall River*, 24 Mass. App. Ct. 241, 243, 508 N.E.2d 118, 119 n.3 (1987) (“[a] gift with a general charitable intent, of course, imposes a trust of a sort in the sense that the grantee may not use the assets for private, personal purposes; the assets must be used for charitable purposes consistent with those of the designated charity.”); *Animal Rescue League of Bos. v. Assessors of Bourne*, 310 Mass. 330, 334 (1941) (where property is donated to a charity with specific use restrictions, “the property is held by the corporation not as its own but in its capacity as a trustee and as an instrumentality of the settlor or testator in carrying out his directions in its use of the property”). Consistent with these principles, bankruptcy courts have held that donor-restricted charitable property is not property of a bankruptcy estate available to satisfy creditor claims, because the debtor holds only legal title and not the equitable

interest. *See In re Parkview Hosp.*, 211 B.R. 619, 641 (Bankr. N.D. Ohio 1997); *see also In re Bishop Coll.*, 151 B.R. 394, 399 (Bankr. N.D. Tex. 1993) (bankruptcy estate of defunct college had no enforceable property interest in charitable assets dedicated to its educational mission).

26. As described above, each of the Memorials was donated to the College for a specific commemorative or devotional purpose: the Molly Bish Memorial commemorates Molly Ann Bish; the 9/11 Memorial honors the victims of the September 11, 2001 terrorist attacks; the Worcester Firefighters Memorial honors the six firefighters who perished in the 1999 Worcester Cold Storage Fire; and the Grotto is a 1955 devotional structure donated by the Catholic Women of the Worcester Diocese.

27. As with the donor-restricted funds addressed in the Debtor's cash management motion, the Debtor holds at most bare legal title to the Memorials, in its capacity as trustee or instrumentality for the donors and for the charitable and commemorative purposes to which the Memorials are dedicated; it does not hold the equitable interest in them. The Memorials are therefore excluded from property of the estate under section 541(c) and (d).

**B. Permitting the Donors to Relocate the Memorials Is Consistent with Massachusetts Charitable-Trust Principles and with the Intent of the Donors.**

28. Under Massachusetts law, a gift to a charitable organization is ordinarily construed as a gift for a charitable purpose and is impressed with a trust obligating the recipient to devote the property to that purpose. *See Wellesley Coll. v. Attorney Gen.*, 313 Mass. 722, 724, 49 N.E.2d 220, 223 (1943) (a gift to a charitable organization is ordinarily construed as a gift for a charitable purpose); *Osgood v. Rogers*, 186 Mass. 238, 240, 71 N.E. 306, 308 (1904) (same); *Hillman v. Roman Catholic Bishop of Fall River*, 24 Mass. App. Ct. 241, 508 N.E.2d 118, 119 n.3 (1987) (a gift made with general charitable intent imposes a trust in the sense that the grantee may not apply the assets to private, personal purposes but must use them for charitable purposes consistent with

those of the designated charity); *see also Bos. Reg'l Med. Ctr.*, 410 F.3d at 108 (charitable gifts under Massachusetts law are impressed with a kind of quasi-trust that demands they be applied to charitable purposes).

29. Each proposed relocation preserves the commemorative and charitable character of the original gift: the Molly Bish Memorial is proposed to be relocated to Mount Wachusett Community College, the 9/11 Memorial to the Paxton Fire Department grounds, the Worcester Firefighters Memorial to a site designated by the City of Worcester Fire Department, and the Grotto to a site designated by the Worcester Diocese.

30. Because the College has permanently ceased operations, has received authority to undertake a sale of the property on which the Memorials are currently located and cannot itself continue to maintain the Memorials on its campus, relocation to comparable public and charitable stewards honors donor intent and the purposes for which the Memorials were given, consistent with the deference Massachusetts law affords to charitable purposes. *See In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 109 (1st Cir. 2005) (recognizing that under Massachusetts law, an organization that is the beneficiary of a charitable bequest is not disqualified from receiving the bequest merely because it has ceased actively to provide charitable services, as long as the organization has the capacity to redirect funds to another organization that is actively engaged in charitable endeavors); *Rogers v. Attorney Gen.*, 347 Mass. 126, 131, 196 N.E.2d 855, 860 (1964) (recognizing that if the donor's charitable purpose cannot be strictly carried out, the court may cause it to be fulfilled as nearly in conformity with the donor's intent as practicable).

**C. Because Delivery of Possession Is Not an Ordinary Course Transaction, Approval Under Section 363(b) of the Bankruptcy Code Is Necessary and Appropriate.**

31. Whether or not any of the Memorials is property of the estate, approval of the proposed relocation is necessary under Section 363(b). If, as the Debtor posits, the Memorials do

not constitute property of the estate, the relocation of Memorials that have occupied the same place on the College's campus for years and in one instance decades is clearly not an ordinary course undertaking. Were there disagreement regarding the Debtor's interest in the Memorials, the relocation should nonetheless be authorized. In either scenario, the Debtor is permitted "after notice and a hearing," to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

32. Courts in this Circuit approve a debtor's use or disposition of property outside the ordinary course where the debtor articulates a sound business justification for the transaction. *See Rosa Dairy Farm, Inc.*, 622 B.R. 806 (B.A.P. 1st Cir. 2020); *In re Cadkey Corp.*, 317 B.R. 19 (D. Mass. 2004); *In re Aerovox, Inc.*, 269 B.R. 74 (Bankr. D. Mass. 2001). Under this deferential "business judgment" standard, a debtor's decision "should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice." *In re Aerovox, Inc.*, 269 B.R. at 80 (internal quotation omitted).

33. Sound business justification amply supports the relocation of the Memorials here. The College has permanently ceased academic operations, graduated its final class, and terminated substantially all of its employees. It is now winding down its affairs while pursuing a Court-supervised sale of substantially all of its assets, including the campus, and will not resume operations. The Memorials are specialized commemorative and devotional structures that generate no revenue for the estate, upon information and belief carry no realizable market value, and are subject to the donors' charitable and commemorative interests. Their relocation imposes no cost on the estate: all costs, including insurance, will be borne by the Responsible Relocation Parties, who will also be responsible for restoring the memorial sites and for any claims or damages arising

from the relocation. To the contrary, relocation will relieve the estate of the ongoing burden of maintaining the Memorials during the wind-down, honor the intent of the donors and the affected communities, and facilitate the orderly sale of the College's assets. The relocation is therefore a paradigmatic exercise of sound business judgment that preserves value for the estate and its creditors.

34. The Grotto, in particular, is a devotional and blessed object associated with the Roman Catholic faith. As a practical matter, such a sacred item carries no realizable market value to the estate. Under the tenets and customary practices of the Church, blessed and religious objects are not freely alienable into ordinary secular commerce; rather, they are customarily transferred to another church or ecclesiastical body, and any attempt by the Debtor to sell the Grotto would be expected to draw objection on those grounds. Permitting the Worcester Diocese to receive the Grotto therefore occasions no loss of value to the estate. To the contrary, it relieves the estate of an item that could not meaningfully be monetized while honoring the religious and commemorative purposes for which it was given. The Debtor does not ask the Court to resolve any question of canon law or the interplay between canon law and the Bankruptcy Code; these considerations are noted solely as context bearing on the absence of realizable value and the soundness of the Debtor's exercise of business judgment.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) granting the Motion; (ii) authorizing delivery of possession of the Memorials to their respective donors and permitting the relocation of the Memorials; and (iii) granting such other and further relief as is just and proper.

Dated: September 3, 2026

Respectfully submitted,

/s/ *Kathleen M. St. John*
John J. Monaghan (MA Bar #546454)
Lynne B. Xerras (MA Bar #632441)
Kathleen St. John (MA Bar #681565)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue
Boston, MA 02116
Telephone: (617) 523-2700
Facsimile: (617) 523-6850
E-mail: john.monaghan@hklaw.com
lynne.xerras@hklaw.com
kathleen.stjohn@hklaw.com

*Counsel to the Debtor-in-Possession*

**CERTIFICATE OF SERVICE**

I, Kathleen M. St. John, counsel for The Sisters of Saint Ann d/b/a Anna Maria College, the debtor and debtor in possession in the above-captioned chapter 11 case, hereby certify that on September 3, 2026, I caused copies of the foregoing *Motion for Entry of an Order Authorizing the Debtor to Transfer Possession of Certain Memorials to Donors for Relocation* to be served by the Court's CM/ECF electronic filing system on all registered users as well as those listed on the Service List attached hereto.

*/s/ Kathleen M. St. John*____________
Kathleen M. St. John

**SERVICE LIST**

Paxton Fire Department
Attn Michael Pingitore Fire Chief
576 Pleasant Street
Paxton, MA 01612

Worcester Fire Department
141 Grove Street
Worcester, MA 01605

Empire Granite Company
1325 Main Street
Worcester, MA 01603

The Home Depot
2455 Paces Ferry Road
Atlanta, GA 30339

The Bish Family
The Molly Bish Foundation, Inc.
14 Many Oaks Circle
Yarmouth Port, MA 02675

Roman Catholic Diocese of Worcester
Chancery Office
49 Elm Street
Worcester, MA 01609-2597

The Home Depot
Attn: Joseph Bougie
130 Gold Star Blvd
Worcester, MA 01606

Mount Wachusett Community College
Attn: James L. Vander Hooven, Ed.D., President
444 Green Street
Gardner, MA 01440