**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br><br>THE SISTERS OF SAINT ANN<br>d/b/a ANNA MARIA COLLEGE,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 26-40758-EDK |

**DEBTOR'S REPLY TO OBJECTION OF DAVID E. ROY, ELAINA M. ROY, AND DAVID E. ROY, JR. TO DEBTOR'S MOTION FOR ENTRY OF ORDERS APPROVING SALE PROCEDURES AND SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

The Debtor, The Sisters of Saint Ann d/b/a Anna Maria College (the "College" or "Debtor"), respectfully submits this reply (the "Reply") to the Objection [Dkt. No. 175] (the "Objection") of David E. Roy, Elaina M. Roy, and David E. Roy Jr. (collectively, the "Roys") to the *Debtor's Motion for Entry of an Order (A) Approving the Sale of Substantially All of the Debtor's Assets, in One or More Transactions Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* [Dkt. No. 5] (the "Sale Motion"),[2] and respectfully states as follows:

## INTRODUCTION

1. The central premise of the Roys' Objection is that a disappointed next-door neighbor who learned that legal constraints precluded a not-for-profit corporation from gifting them 2.4 acres of real property should be permitted to block a potential transaction involving not

[1] The last four digits of the Debtor's taxpayer identification number are 2060. The Debtor's address is 50 Sunset Lane, Paxton, MA 01612.

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

just those 2.4 acres but the additional 259± acres that an all-asset buyer might be willing to acquire at fair market value. The statutory reality is that the Roys, as holders of nothing more than an ill-informed email chain and with no *lis pendens* of record, no attachment of record and no other interest of record of any sort, assert exactly the sort of unperfected interests that section 544(a)(3) was promulgated to avoid and section 363(f)(4) was enacted to override.

2. The Roys' Objection attempts to invoke this Court's decision in *In re Worcester Country Club Acres, LLC*, 655 B.R. 41 (Bankr. D. Mass. 2023), for the proposition that a debtor cannot sell property under section 363(f)(4) without first showing that the property belongs to the estate. The Debtor makes that showing here. There is no dispute that the Debtor holds record title to the real property that encompasses the approximately 2.4-acre area known as Lot 2, or that Citizens Funding Corp., Citizens Bank, N.A. (collectively, "Citizens") holds a properly perfected first-priority mortgage lien on that property. *See Quitclaim Deed from The Community of the Sisters of Saint Anne to The Sisters of Saint Ann*, dated April 14, 2022, recorded with the Worcester District Registry of Deeds on December 8, 2022, in Book 68580, Page 352 (the "2022 Deed"), attached hereto as **Exhibit A**; *Amendment No. 1 to Mortgage, Security Agreement and Fixture Filing*, dated September 30, 2024, recorded on October 2, 2024, in Book 71102, Page 299, (amendment of Citizens' mortgage on the Debtor's real property to add the legal description of the 2022-conveyed land, including Lot 2, extending Citizens' first-priority lien to cover the land conveyed under the 2022 Deed), attached hereto as **Exhibit B**.

3. The Roys claim to hold an unrecorded equitable interest in Lot 2 and argue that this bare assertion supported by no more than a stream of emails and several conversations mandates full and final determination of their recently filed adversary proceeding before the Debtor may complete the very sale process that it entered this case to pursue, including the hoped-for October

31, 2026 closing of the sale of substantially all of its real estate assets necessary to satisfy or make distribution to its creditors, importantly including its DIP financing obligations. Their attendant request that the court unilaterally redraft section 363(f)(4)'s provisions so that it no longer provides for a sale free and clear of an interest that is in "bona fide dispute" but that it instead reads that a free and clear sale can only occur if there is no dispute at all because any controversy has been fully adjudicated through the years-long process of litigating even the thinnest reed of a claim to a property interest through cert. denied should be rejected.

4. The Roys never meaningfully address the threshold problem with their claim to title identified in the Sale Motion: the Debtor's strong-arm power under section 544(a)(3) defeats any equitable interest the Roys may have, because the debtor is deemed to be a bona fide purchaser ("BFP") of its own real property without regard to any knowledge it or its creditors may have. Whatever interest the Roys may assert they have, it is wholly unrecorded. They are not in possession of Lot 2. They made no improvements. They paid no consideration. There is nothing in the public record or on the ground to alert any purchaser to their claim. Under Massachusetts law, that is the end of the inquiry.

5. The Roys also misconstrue this Court's *Worcester Country Club* decision. This is not a case where the Court must determine ownership before authorizing a sale. The College holds *undisputed record title* to Lot 2 by virtue of the 2022 Deed, recorded at the Worcester District Registry of Deeds. *See* Exhibit A. The Roys hold no recorded interest of any kind. Unlike *Worcester Country Club*, there is no genuine question here about whether Lot 2 is property of the estate.

6. In stark contrast, the Debtor does not ask that the Court rewrite the Bankruptcy Code or revisit its prior decision. Rather, the Debtor asks that the Court recognize that there is a

bona fide dispute regarding what the Roys assert to be their *competing claim* to an interest in property of the estate. The Debtor's section 544(a)(3) argument provides the objective basis for that dispute: a BFP without knowledge of a competing assertion to title would take Lot 2 free of the Roys' unrecorded interest. The Debtor does not seek a final avoidance ruling at the sale-motion stage; it recognizes that the Roys' alleged property interest will attach to that portion of the sale proceeds that are allocable to the 2.4-acre parcel at issue, subject to and subordinate to all prior-perfected interests, including Citizens' first priority mortgage lien, until the Roys' unrecorded, undocumented, and unpaid-for claimed interest is finally avoided. For now, all the Debtor seeks is a finding that the dispute is bona fide, so that the estate may sell Lot 2 free and clear under section 363(f)(4).

## **REPLY**

### I. The Debtor's Strong-Arm Power Under Section 544(a)(3) Defeats the Roys' Unrecorded Equitable Interest.

7. The Sale Motion expressly identified the basis for the bona fide dispute: "Neither the State Court Injunction nor the [Roys'] Interest were recorded with the Worcester County Registry of Deeds prepetition rendering them subject to avoidance under the strong arm powers of section 544(a)(3) and, therefore subject to a bona fide dispute and subject to the free and clear provisions of section 363(f)(4)." *Sale Motion* ¶ 86. The Roys' Objection does not engage with this argument on the merits. Instead, they attempt to recharacterize the dispute as one about "ownership" that must be resolved before any sale can proceed. The Bankruptcy Code, however, compels a different result.

8. Under section 544(a)(3), as of the commencement of the case, the debtor-in-possession obtains the rights of "a bona fide purchaser of real property . . . against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has

perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists." 11 U.S.C. § 544(a)(3). Critically, the Debtor exercises these rights "without regard to any knowledge of the trustee or of any creditor." 11 U.S.C. § 544(a).

9. Under Massachusetts law, the applicable recording act provides that a conveyance of interests in real property "shall not be valid as against any person, except the grantor or lessor, his heirs and devisees and persons having actual notice of it" unless recorded. M.G.L. ch. 183, § 4. Massachusetts courts have been "quite strict in construing the requirement of 'actual notice.' They distinguish between actual notice and so-called inquiry notice, holding that it is not sufficient that there be notice of facts which would be sufficient to induce a reasonable person to inquire further and thereby determine the existence of the conveyance or lease in question." *In re Webber Lumber & Supply Co.*, 134 B.R. 76, 78 (Bankr. D. Mass. 1991) (citing *Mister Donut of America, Inc. v. Kemp*, 368 Mass. 220 (1975); *Tramontozzi v. D'Amicis*, 344 Mass. 514 (1962); *McCarthy v. Lane*, 301 Mass. 125 (1938)). "Actual notice is equated in these decisions to actual knowledge." *Id.* The Massachusetts Supreme Judicial Court has broadly defined claims "affecting title to real property" that must be recorded to include any claim asserting "some interest in the real estate ... including a lien or encumbrance." *Wolfe v. Gormally*, 440 Mass. 699, 706 (2004).

10. The Roys' claimed interest in Lot 2 is wholly unrecorded and unperfected. No deed, written agreement, *lis pendens,* or other instrument has been recorded at the Worcester District Registry of Deeds evidencing any interest of the Roys in Lot 2. The Worcester Superior Court injunction (obtained July 24, 2025) was never recorded. Nothing in the public land records would put any purchaser on notice of the Roys' claim. As an unrecorded judgment or decree affecting title, the injunction is not valid against a bona fide purchaser. *See* M.G.L. c. 184, § 17. In any event, even if it were valid, the injunction is stayed pursuant to section 362(a) of the Bankruptcy

Code and has no operative effect against the estate. And an order of this Court authorizing a sale under section 363 supersedes any inconsistent state court injunction as to property within this Court's exclusive *in rem* jurisdiction. *See* 28 U.S.C. § 1334(e).

11. The Roys' position is analogous to, but weaker than, the claimant in *In re Pina*, 363 B.R. 314 (Bankr. D. Mass. 2007). There, the claimant held an unrecorded state-court judgment of specific performance ordering the debtor to convey her property interest. This Court held that the judgment, at most, "gave [the claimant] the status of a holder of an unrecorded deed" and that the trustee's section 544(a)(3) BFP status trumped the unrecorded interest. *Id.* at 326, 330. The Roys hold far less than the claimant in *Pina*. They have no judgment ordering conveyance, only an unrecorded preliminary injunction (now stayed) and an unproven promissory estoppel claim. Had the Roys "availed [themselves] of the expedient of recording" the injunction, "the Trustee would have had notice and, therefore, would be unable to prevail as a hypothetical bona fide purchaser without notice." *Id.* at 330. They did not.

12. Nor does the Roys' physical relationship to the property provide constructive notice. The only exception to the Massachusetts recording statute that might apply, the doctrine of open and notorious possession, has no application here. *See In re Golemo*, 494 B.R. 588, 594 (Bankr. D. Mass. 2013) (rejecting argument that claimant's long-term exclusive possession constituted constructive notice because "Massachusetts law does not recognize inquiry notice of unrecorded deeds or mortgages"); *In re Dlott*, 43 B.R. 789, 794 (Bankr. D. Mass. 1983) (explaining "[e]vidence of open occupation, possession and cultivation of land . . . is not sufficient to warrant the inference that a third person had any notice of such deed") (citing *Pomroy v. Stevens*, 52 Mass. 244 (1846)). The Roys are not in possession of Lot 2, have made no improvements, and

paid no consideration. Lot 2 is an undeveloped portion of the College's campus with nothing on the ground that would alert any purchaser to the Roys' claimed equitable interest.

13. *Webber Lumber* is directly on point. There, this Court held that a debtor-in-possession could avoid an unrecorded lease and purchase option under section 544(a)(3) *even though the lessee was in possession of the property*. 134 B.R. at 78–80. The Court emphasized that under Massachusetts law, possession gives only "inquiry notice," which is insufficient because the statute requires "actual knowledge," which the hypothetical BFP by definition does not possess. *Id.* at 78. The Roys' position is weaker than the claimant's in *Webber Lumber* in every respect. There, the claimant had an unrecorded lease and purchase option and was in actual possession of the property, and even that was insufficient to defeat the strong-arm power. Here, there is even less basis to find notice.

## II. Section 544(a)(3) Operates Independently from Section 541(d) and Brings the Full Interest into the Estate

14. The Roys argue that the estate holds only "bare legal title" to Lot 2 under section 541(d) as a result of their asserted "equitable ownership." *Objection* at 5–7. This argument fails because it ignores the independent operation of section 544(a)(3), which courts in this District have repeatedly held is not limited by section 541(d).

15. Sections 541(d) and 544(a) are separate and independent provisions with distinct functions. Section 541(d) defines the scope of the estate at its creation. Section 544(a) independently confers upon the estate the rights and powers of a hypothetical BFP, which expand the estate's enforceable interests beyond what the debtor "owned" in an equitable sense. As this Court has noted, "a reading and comparison of § 541(d) and § 544 leads to the inescapable conclusion that § 541(d) does not represent a general limitation on the trustee's avoidance powers under § 544." *In re Dlott*, 43 B.R. at 793 (quotation omitted). This Court later reaffirmed that

holding, adopting the majority view that "property not part of the debtor's estate under § 541(d) may still be brought into the estate under § 544(a)" because the two provisions "operate independently of one another." *In re Pina*, 363 B.R. at 330–31.

16. Subsequent decisions in this District have consistently applied this principle. In *In re Duda*, this Court held that a Chapter 7 trustee's section 544(a)(3) BFP status defeated an unrecorded "equitable interest" in real property, even where the claimant argued that the debtor held only bare legal title. 422 B.R. 339, 346 (Bankr. D. Mass. 2010) (explaining that section 544(a)(3) deems a trustee without notice of unrecorded interests, "employing his bona fide purchaser status under § 544(a)(3), [the trustee's] rights . . . supersede" those of the alleged equitable interest holder); *see also In re Golemo*, 494 B.R. 588, 594 (Bankr. D. Mass. 2013) (applying section 544(a)(3) to avoid interests arising from an unrecorded divorce decree, even though the ex-wife had been in long-term possession of the properties). The Roys' position is weaker than the claimants in either of those cases: they hold no recorded interest, no court decree, and are not in possession.

17. The Seventh and Ninth Circuits have reached the same conclusion. *See Belisle v. Plunkett*, 877 F.2d 512, 516 (7th Cir. 1989) ("[A]llowing the estate to 'benefit from property that the debtor did not own' is exactly what the strong-arm powers are about: they give the trustee the status of a bona fide purchaser for value, so that the estate contains interests to which the debtor lacked good title."); *Nat'l Bank of Alaska v. Erickson (In re Seaway Express Corp.)*, 912 F.2d 1125, 1128–1129 (9th Cir. 1990) ("When a creditor claims an inchoate equitable interest in real property owned by the debtor at the commencement of the case, which interest is not evidenced by a recorded instrument and not yet granted by a state court, the trustee as bona fide purchaser

prevails."). *See also Bakst v. Corzo (In re Corzo)*, 406 B.R. 154, 160-61 (Bankr. S.D. Fla. 2008) (same). The Roys' section 541(d) argument collapses under the weight of this authority.[3]

## III. The Debtor's Section 544(a)(3) Argument Provides the Objective Basis for a "Bona Fide Dispute" Under Section 363(f)(4), and the Court Need Not Enter a Final Avoidance Ruling.

18. The Roys mischaracterize what the Debtor is asking this Court to do. The Debtor does not seek a final avoidance ruling at this stage. *See Sale Motion* ¶ 88 n.18. Rather, the existence of the section 544(a)(3) avoidance argument, supported by the undisputed facts that the Roys' alleged interest is unrecorded and the Roys are not in possession, constitutes a "bona fide dispute" within the meaning of section 363(f)(4).

19. A "bona fide dispute" under section 363(f)(4) requires only "an objective basis for either a factual or a legal dispute as to the validity of" the claimed interest. *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987); *see also Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 7 (1st Cir. 2016) (adopting this standard); *In re Genesys Research Institute, Inc.*, Case No. 15-12794-JNF, 2016 WL 3583229, at *20 (Bankr. D. Mass. June 24, 2016). The court need not determine the probable outcome of the dispute, only whether one exists. *Busick*, 831 F.2d at 750. And courts have squarely held that a section 544(a)(3) avoidance theory, without a filed adversary proceeding, provides a sufficient objective basis. *In re Bedford Square Associates, L.P.*, 247 B.R. 140, 145 (Bankr. E.D. Pa. 2000) ("Although the Debtor has not commenced a § 544(a)(3) action, the fact

[3] The Debtor acknowledges that an earlier decision of this Court, *In re Mill Concepts Corp.*, 123 B.R. 938 (Bankr. D. Mass. 1991), reached a contrary conclusion, holding that section 544(a)(3) applies only to transfers *by the debtor* and does not reach property retained by the debtor subject to a constructive trust. But *Mill Concepts* involved a fraudulent conveyance by a predecessor in title, not a transfer by the debtor itself, and its reasoning has been overtaken by the subsequent decisions in *Pina*, *Duda*, and *Golemo*. Moreover, the policy concern that animated *Mill Concepts*, preventing the estate from benefiting at the expense of a constructive trust beneficiary, has no application here: the Roys are not beneficiaries of any trust, constructive or otherwise. They assert an unproven promissory estoppel claim that, even if meritorious, was never reduced to a court order or recorded instrument. Section 544(a)(3) and the recordation requirements under Massachusetts law exist to protect the estate's creditors against claimants in exactly the Roys' position.

that it could in all probability do so successfully is sufficient to establish that a 'bona fide dispute' ... for purposes of § 363(f)(4) exists."); *In re Gaylord Grain L.L.C.*, 306 B.R. 624, 628 (B.A.P. 8th Cir. 2004) (trustee "may nevertheless sell free and clear of the bank's liens if he can show, pursuant to 11 U.S.C. § 544, an objective basis for avoiding the liens"); *In re Millerburg*, 61 B.R. 125, 128 (Bankr. E.D.N.C. 1986) (potential avoidance action "qualif[ies] as a bona fide dispute for purposes of § 363(f)(4)"); *In re Genesys Research Institute, Inc.*, 2016 WL 3583229, at *19 (Bankr. D. Mass. June 24, 2016) ("Nothing in section 363 requires a trustee to commence an adversary prior to sale, where there is an established bona fide dispute.").

20. Here, the Debtor's section 544(a)(3) theory is not merely colorable; it is overwhelming on the undisputed facts and provides the objectively grounded legal basis that section 363(f)(4) requires: the Roys assert equitable ownership; the Debtor asserts avoidability because the interest is unrecorded and the Roys are not in possession. Under governing Massachusetts law and section 544(a)(3), a hypothetical BFP takes free of the interest. That legal theory, standing alone, is sufficient to establish the bona fide dispute.[4]

[4] Even setting aside section 544(a)(3), the Roys' underlying claim faces a formidable independent obstacle: the statute of frauds. Under M.G.L. c. 259, § 1, an agreement for the transfer of an interest in land is unenforceable unless evidenced by a writing signed by the party to be charged. The Roys concede there is no written agreement. They rely on oral promises allegedly made by former College officials. To take an oral promise to convey land outside the statute of frauds, Massachusetts law requires "part performance," typically some combination of possession, payment of consideration, and valuable improvements. *See Gordon v. Anderson*, 348 Mass. 787, 787 (1965). The Roys have none of these. Their claimed reliance is limited to foregoing the sale of their current home and foregoing other home-purchase opportunities, acts that do not constitute the kind of part performance necessary to take an oral promise outside the statute. The Supreme Judicial Court has held that merely refraining from attempting to purchase property was "illusory reliance" insufficient to estop a defendant from invoking the statute of frauds, and that continued occupancy and relinquishment of opportunities to rent elsewhere were insufficient absent improvements, repairs, or expenditures. *Nessralla v. Peck*, 403 Mass. 757, 761–62 (1989); *Walsh v. Slater*, 361 Mass. 875, 875 (1972); *cf. Gordon v. Anderson*, 348 Mass. at 787 (finding sufficient part performance where the buyers paid a down payment, took possession, made substantial improvements, and sold their prior residence). This provides yet another objective basis for the bona fide dispute. The Roys assert a purely oral claim to real property, without any of the traditional indicia of part performance. Whether that claim can survive the statute of frauds is itself disputed on an objective basis; that dispute, standing alone, satisfies section 363(f)(4).

21. The Roys' reliance on *Tran v. Citizens Bank*, *N.A. (In re Tran)*, 142 F.4th 60 (1st Cir. 2025) is misplaced. In *Tran*, a Chapter 13 debtor sought to use section 544(a)(3) to avoid the transfer of his equity of redemption at a foreclosure sale, arguing that the foreclosure deed was improperly recorded. The First Circuit held against the debtor because a properly recorded affidavit of sale provided constructive notice of the foreclosure under Massachusetts law, such that a hypothetical BFP could not avoid the transfer. *Id.* at 66-67. *Tran* thus confirms, under First Circuit law, that the section 544(a)(3) inquiry turns on whether a hypothetical BFP would have constructive notice of the competing interest under Massachusetts recording law. *Id.* at 64-66 (citing *In re Ryan*, 851 F.2d 502, 506 (1st Cir. 1988)). In *Tran*, the answer was yes, because, unlike here, there was a recorded instrument. Here, there is nothing in the Worcester District Registry of Deeds evidencing any interest of the Roys in Lot 2. *Tran* therefore supports, rather than undermines, the Debtor's section 544(a)(3) theory.

22. The Debtor therefore asks only for the threshold finding that section 363(f)(4) requires: that there is an objective basis for a bona fide dispute as to the enforceability of the Roys' interest against the estate.

## IV. The Debtor Satisfies the Threshold Requirement of *In re Worcester Country Club Acres, LLC*

23. As noted, this Court held in *Worcester Country Club*, that a debtor must show the property belongs to the estate before selling under section 363(f)(4). 655 B.R. at 46. The Debtor satisfies that requirement here.

### A. The Estate's Property Interest is Established by Record Title.

24. In *Worcester Country Club*, the debtor was a condominium developer that had recorded a master deed creating a condominium on land it owned. 655 B.R. at 43. The Condominium Trust argued that the master deed's legal description encompassed *all* of the

debtor's land, leaving nothing outside the condominium's common areas. *Id.* The debtor disagreed, arguing that the master deed submitted only a portion of the land and that it retained ownership of the remaining portion. *Id.* at 43–44. That dispute required interpreting the debtor's own recorded instrument, the master deed itself, to determine whether the debtor owned anything to sell. The debtor also claimed development rights that the Trust contended had expired under the master deed's terms. *Id.* In short, the debtor's own recorded documents created a genuine question about whether the property the debtor proposed to sell belonged to the estate at all.

25. Here, there is no ambiguity in the chain of title whatsoever. The College holds record title to Lot 2 by virtue of the recorded 2022 Deed. No competing recorded instrument purports to convey Lot 2 to anyone else. The Roys have no deed or recorded judgment. There is nothing in the registry of deeds suggesting they have any interest in Lot 2. The College's title is clear on the face of the public records.

**B. Section 544(a)(3) Forecloses the Roys' "Bare Legal Title" Argument and Confirms the Bona Fide Dispute.**

26. In *Worcester Country Club*, the debtor could not point to anything in the public records establishing its ownership. Its own master deed arguably conveyed the disputed land to the condominium unit owners, and it had no other recorded instrument showing that it owned what it proposed to sell. This Court held that the estate must demonstrate a property interest before section 363(f)(4) can clear competing claims. 655 B.R. at 45.

27. Here, by contrast, the College's recorded deed answers that threshold question. But the Roys argue that, notwithstanding holding clean record title, the estate holds only "bare legal title" under section 541(d) because the Roys hold "equitable ownership." Section 544(a)(3) forecloses that argument. Even assuming that the Roys had some form of equitable claim, the estate's hypothetical BFP would take free of it because the claim is unrecorded and the Roys are

not in possession. The estate therefore holds the full interest in Lot 2, not merely bare legal title. What remains is a dispute over the Roys' claim to that property, squarely within the scope of section 363(f)(4). Independent of section 544(a)(3), any equitable interest the Roys may be able to establish would be junior to the prior recorded first-priority mortgage of Citizens, which was of record as to Lot 2 on October 2, 2024, long before the Roys asserted any claim of record. The Roys therefore could never obtain the unencumbered conveyance their state court complaint demands.

**C. *Worcester Country Club*'s Own Statement of Section 363(f)(4)'s Purpose Supports the Debtor Here.**

28. This Court stated in *Worcester Country Club* that "[t]he general purpose of § 363(f)(4) is to permit property of the estate to be sold free and clear of interests that are disputed by the representative of the estate so that liquidation of the estate's assets need not be delayed while such disputes are being litigated." 655 B.R. at 45 (quoting *Genesys*, 2016 WL 3583229, at *19 (quoting *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 171 (B.A.P. 9th Cir. 2001))). That purpose applies directly here – the Debtor seeks to sell property to which it holds record title, free and clear of the Roys' disputed interest, so that the estate's liquidation is not held hostage to the Roys' adversary proceeding.

29. Moreover, *Worcester Country Club* approvingly cited *In re Atlantic Gulf Communities Corp.*, 326 B.R. 294, 300 (Bankr. D. Del. 2005), which allowed the trustee to sell property by quitclaim deed conveying "whatever interest the estate may have." 655 B.R. at 47. Here, the Debtor's position is stronger than that of the *Atlantic Gulf* trustee in every material respect: the Debtor is not selling a mere disputed interest by quitclaim but rather Lot 2, to which it holds undisputed record title, free and clear of a competing claim that is wholly unrecorded and asserted by claimants not in possession.

## V. Rule 7001 Does Not Bar Sale Authorization Because the Court Is Not Being Asked to Make a Final Determination of Ownership.

30. The Roys argue that Rule 7001 requires an adversary proceeding before the Court can authorize the sale. *Objection* at 9–10. This argument misunderstands what the Debtor is asking the Court to do.

31. The Court is not being asked to determine whether the Roys' equitable interest exists or is valid. Nor is it being asked to enter a final avoidance order. It is being asked to find that the Roys' claimed interest is in *bona fide dispute* for purposes of section 363(f)(4). That determination does not require a Rule 7001(2) adversary proceeding because it is not a final adjudication of the validity or priority of any interest in property. It is a threshold finding that the Debtor has articulated an objectively grounded legal theory, section 544(a)(3), that creates a genuine dispute as to the enforceability of the Roys' claim against the estate.

32. Indeed, the Roys themselves have filed an adversary proceeding (Adv. Case No. 26-04027), seeking final adjudication of their ownership claim. The sale-motion hearing is not the vehicle for that final adjudication. The question before the Court at the September 24 hearing is whether the dispute is bona fide, not whether the Debtor will ultimately prevail.

33. Moreover, the Debtor raises section 544(a)(3) defensively in response to the Roys' Objection to the sale, not offensively in a standalone avoidance action. Courts have recognized that section 544(a)(3) may be asserted defensively in a contested matter without a separate adversary proceeding. *See In re Loewen Group International, Inc.*, 292 B.R. 522, 528 (Bankr. D. Del. 2003) (holding that a Chapter 11 debtor-in-possession could invoke section 544(a)(3) defensively in opposition to third parties' claim to sale proceeds based on an unrecorded resulting trust, in the context of a contested matter arising from the sale motion and the objection thereto). This Court has applied section 544(a)(3) to defeat a co-tenant's unrecorded state-court judgment

in the context of a motion to compel compliance with that judgment, not a standalone adversary proceeding. *See In re Pina*, 363 B.R. at 331-32. Indeed, the courts that have held that a section 544(a)(3) theory establishes a bona fide dispute under section 363(f)(4) have done so in exactly this procedural posture – a trustee raising the strong arm power at the sale motion stage to demonstrate a bona fide dispute, without first commencing or completing a separate avoidance action. *See In re Bedford Square Assocs., L.P.*, 247 B.R. 140, 145 (Bankr. E.D. Pa. 2000); *In re Gaylord Grain L.L.C.*, 306 B.R. 624, 628 (B.A.P. 8th Cir. 2004); *In re Genesys Research Institute, Inc.*, No. 15-12794-JNF, 2016 WL 3583229, at *19 (Bankr. D. Mass. June 24, 2016). Nothing in section 363 or Rule 6004 requires a trustee or debtor-in-possession to commence an adversary prior to sale where there is an established bona fide dispute.

**VI. The Roys' Remaining Arguments Do Not Preclude Sale Authorization.**

**A. Attachment of Proceeds Provides Adequate Protection.**

34. Where a bona fide dispute exists under section 363(f)(4), the disputed interest attaches to sale proceeds under section 363(e), and the sale may proceed. *See* 11 U.S.C. § 363(e); *Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.)*, 600 F.3d 231, 257 (2d Cir. 2010) (attachment of interests to sale proceeds is "squarely within the letter and purpose" of adequate protection); *In re DVI, Inc.*, 306 B.R. 496, 504–05 (Bankr. D. Del. 2004) (authorizing sale free and clear of constructive trust claim, with claimant's interests "protected by placing the proceeds in escrow until his rights can be determined"); *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 171 (B.A.P. 9th Cir. 2001) (proceeds of sale "preserve[] all parties' rights by simply transferring interests from property to dollars that represent its value").

35. The Roys argue that attachment of proceeds cannot adequately protect their claim because they seek "unique" real property. But a party whose interest is subject to a bona fide dispute has no right to block the sale; its remedy is a claim against the proceeds. The Roys' remedy,

if they ultimately prevail in the adversary proceeding, is a monetary recovery from the estate, not a veto over the sale process. Moreover, as demonstrated above, the Roys' interest is subject to avoidance under section 544(a)(3). Their claim to "unique" property that was never conveyed to them, that they never possessed, and for which they paid nothing exemplifies the very disputed interests from which section 363(f)(4) authorizes the estate to sell free and clear. Moreover, the Roys' asserted interest can be satisfied by cash. Their state court complaint seeks damages, including multiple damages, interest, fees and costs, and pleads injury "in an amount to be determined at trial." The reliance they allege consists of forgone profit on the sale of their existing home and forgone opportunities to purchase elsewhere. In each case, those are money damages.

**B. The Good Faith Purchaser Issue is Premature.**

36. The Roys' argument regarding good faith under section 363(m) is premature. No purchaser has been selected. The Bid Deadline is October 9, 2026, the Auction is October 20, and the Sale Hearing, at which section 363(m) good faith will be adjudicated, is October 30. The Roys will have a full opportunity to be heard on good faith at that hearing. Their anticipatory objection does not provide a basis to deny sale authorization now.

**C. Waiver of the Rule 6004(h) Stay Is Appropriate.**

37. The Roys' request that the Court not waive the 14-day stay under Rule 6004(h) can be addressed at the Sale Hearing. It is not a basis for denying authorization to sell free and clear of the Roys' disputed interest.

## CONCLUSION

38. For the foregoing reasons, the Debtor respectfully requests that the Court overrule the Roys' Objection and authorize the sale of Lot 2 free and clear of the Roys' asserted interest pursuant to 11 U.S.C. § 363(f)(4), with such interest, if any, to attach to the allocable sale proceeds,

subject to and subordinate to all prior-perfected interests, pending resolution of Adversary Case No. 26-04027.

Dated: September 4, 2026

Respectfully submitted,

/s/ *John J. Monaghan*
John J. Monaghan (MA Bar #546454)
Lynne B. Xerras (MA Bar #632441)
Kathleen St. John (MA Bar #681565)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue
Boston, MA 02116
Telephone: (617) 523-2700
Facsimile: (617) 523-6850
E-mail: john.monaghan@hklaw.com
lynne.xerras@hklaw.com
kathleen.stjohn@hklaw.com

*Counsel to the Debtor/Debtor in Possession*