# Exhibit A

Lease Agreement #: LEASE-3907

Master's Leasing & Rental
a division of MaTran, Inc.

## Vehicle Lease Agreement

This VEHICLE LEASE AGREEMENT (this "Lease"), made and entered into by and between Anna Marie College, hereinafter designated as "Lessee", and Master's Leasing, a division of MaTran, Inc., 800 Quik Trip Way, Belton, MO 64012, hereinafter designated as "Lessor".

**General Information**:

| | |
|---|---|
| Base Payment: | **$4851.04 per Month, per Vehicle** |
| Free Miles: | **2083 per Month, per Vehicle** |
| Commencement Date: | **09/01/2024** |
| Expiration Date: | **36 months from the Commencement Date** *(note: In the event that the Commencement date changes via written and executed Addendum to this Lease, the Expiration Date will change accordingly. The Expiration Date will be 36 months from the Commencement Date as amended.)* |
| Security Deposit: | **$500 per Vehicle** |
| First Month Payment: | **$4851.04 per Vehicle** |
| Lessee's Insurance Co: | Policy No: |
| F.O.B.: | MaTran Inc., Belton, MO Delivery Fee: **$ per Mile, per Vehicle** |

**Description of Equipment:**

| Unit No. | Stock No. | Year/Make/Model | VIN |
|---|---|---|---|
| Z-W0492 | GL22-278 | 2023 Freightliner Glaval | 4UZADRFD5PCUW0492 |

**Location of Equipment:** 50 Sunset Lane, Paxton, MA. 01612

WITNESSETH:

Lessor, for and in consideration of the rents, conditions and agreements hereinafter contained, on the part and behalf of Lessee to be paid, kept and performed, does hereby lease to Lessee, and Lessee does hereby lease and rent from Lessor the motor Vehicle(s) described above, said Vehicle(s) being hereinafter referred to as the "Vehicle(s)". ***Title to all Vehicle(s) shall, at all times, remain with Lessor.***

The Vehicle(s) that are the subject of this contract have been equipped with a geolocation device that allows the owner of the Vehicle(s) to track and monitor the location, operation, and movement of the Vehicle(s). By initialing this paragraph, Lessee hereby gives express consent to Lessor to track, store and utilize data from all installed geolocation devices. For more information on Lessor's data privacy policies please contact 855-935-1383 or www.masterstransportation.com.

Initial: MM

This Lease is expressly made subject to the following terms, conditions, and agreements:

1. TERMS OF LEASE: The term of this Lease shall be as stated above, unless earlier terminated as provided herein, commencing on the Commencement Date stated above and ending on the Expiration date stated above. If Lessee remains in possession of all or any part of the leased Vehicle(s) after the Expiration Date or any extension hereof, this Lease shall be extended on a month-to-month basis, and all terms and conditions of this Lease shall apply until the Vehicle(s) are returned in the condition required by this Lease.

2. RENT: For the use of the Vehicle(s), Lessee shall pay to the Lessor, at the above-stated address, rent in the following amounts and manner:

   a. **$4851.04 per month, per Vehicle** plus any applicable taxes for each month during the term of this Lease. The first payment and a security deposit of **$500 per Vehicle** (if deposit was NOT already paid to hold the Vehicle(s)) will be due on the Commencement Date with all remaining monthly payments due on the first (1st) day of each month following.



Initial: MM

b. A late fee shall be paid by Lessee in the amount equal to five percent (5%) of the unpaid balance of any payment under this Lease not made by the fifteenth (15th) day of the month. Such amount shall be assessed for each month or part thereof such payment is past due and shall be due and payable immediately upon notice of past-due status.

c. Rent includes **2083 miles per Month, per Vehicle**, at no charge. Miles driven in excess of this amount will be charged at $0.39 per mile due upon the Expiration Date or earlier termination of this Lease and the return of the Vehicle(s).

3. CONDITION OF THE VEHICLE(S): Lessee acknowledges that it is qualified to inspect the Vehicle(s), that it has inspected the Vehicle(s), knows the condition thereof, and that the same is in good condition and repair. LESSEE ACKNOWLEDGES THAT: LESSOR IS NOT THE MANUFACTURER OF THE VEHICLE(S), NOR THE MANUFACTURER'S AGENT, NOR A DEALER THEREIN; THE VEHICLE(S) IS OF A SIZE, DESIGN, CAPACITY, DESCRIPTION, AND MANUFACTURE SELECTED BY LESSEE; LESSEE IS SATISFIED THAT THE VEHICLE(S) IS SUITABLE AND FIT FOR ITS PURPOSES; AND LESSOR HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY WITH RESPECT TO THE VEHICLE(S), EXPRESS OR IMPLIED, AND LESSOR SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE, OR AS TO THE QUALITY, CONDITION, OR CAPACITY OF THE VEHICLE(S), OR THE MATERIALS IN THE VEHICLE(S), OR WORKMANSHIP OF THE VEHICLE(S), LESSOR'S TITLE TO THE VEHICLE(S), OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER. LESSOR SHALL NOT BE LIABLE TO LESSEE FOR ANY LOSS, DAMAGE, OR EXPENSE OF ANY KIND OR NATURE CAUSED, DIRECTLY OR INDIRECTLY, BY ANY VEHICLE(S), OR THE USE OR MAINTENANCE THEREOF, OR THE FAILURE OR OPERATION THEREOF, OR THE REPAIR, SERVICE, OR ADJUSTMENT THEREOF, OR BY ANY DELAY OR FAILURE TO PROVIDE ANY SUCH MAINTENANCE, REPAIRS, SERVICE, OR ADJUSTMENT, OR BY AN INTERRUPTION OF SERVICE, OR LOSS OF USE THEREOF, OR FOR ANY LOSS OF BUSINESS HOWSOEVER CAUSED. LESSOR SHALL NOT BE LIABLE FOR DAMAGES OF ANY KIND, INCLUDING ANY LIABILITY FOR CONSEQUENTIAL DAMAGES, ARISING OUT OF THE USE OF OR THE INABILITY TO USE THE VEHICLE(S). No defect or unfitness of the Vehicle(s), and no failure on the part of the manufacturer or the shipper of the Vehicle(s) to deliver the Vehicle(s) or any part thereof to Lessee shall relieve Lessee of the obligation to pay rent or any other obligation hereunder. Lessor shall have no obligation in respect of the Vehicle(s) and shall have no obligation to install, erect, test, adjust, or service the Vehicle(s). Lessee shall only look to persons other than Lessor, such as the manufacturer, vendor or carrier thereof, should any item of Vehicle(s) for any reason and in any way be defective. To the extent permitted by the manufacturer and/or vendor and provided Lessee is not in default under the Lease, Lessor shall make available to Lessee all manufacturer and/or vendor warranties with respect to the Vehicle(s).

4. USE OF VEHICLE(S):

a. Lessee shall have care, custody and control of the Vehicle(s) and will conduct all required and necessary safety inspections to insure safe operation.
b. Lessee and Drivers will abide by Vehicle(s) usage procedures and the Manufacturer's Operating Manual.
c. Lessee shall register and license the Vehicle(s) and comply with all applicable federal, state, county or municipal laws relating to licensing, registration, taxes, minimum insurance requirements and operation of Vehicle(s).
d. Lessee shall pay all taxes, licensing and/or registration fees, and all other governmental fees or regulatory charges during the term of this Lease, as well as any taxes, licensing, and/or registration fees, and all other governmental fees or regulatory charges incurred by Lessor upon the termination of this Lease and Lessee's return of the Vehicle(s).
e. Lessee is responsible for complying with all DOT requirements applicable to the area in which the Vehicle(s) will be operated, including but not limited to minimum insurance requirements.
f. Lessee shall permit only safe, careful, authorized, and properly licensed and insured drivers to operate the Vehicle(s). Drivers must submit a copy of their commercial license to Lessee for Vehicle(s) over fifteen (15) passengers.
g. Lessee shall not permit the Vehicle(s) to be used in violation of any federal, state, county or municipal statutes, laws, ordinances, rules, or regulations. The Vehicle(s) shall not be used outside of the United States without Lessor's prior written consent. Lessee shall indemnify and hold Lessor harmless from any and all fines, forfeitures, damages, or penalties assessed against Lessor resulting from violation of such statues, laws, ordinances, rules, or regulations.

5. MAINTENANCE AND REPAIRS:

a. Lessee shall at all times during the term hereof and without cost to Lessor, be responsible for all necessary labor, material, parts, fuel, and supplies for routine maintenance and shall maintain and keep the Vehicle(s) in good running condition and working order. Lessee agrees to reimburse Lessor for all expenses, including but not limited to parts and labor, for mechanical and physical damage repairs to the Vehicle(s) caused by Lessee's neglect or failure to maintain the Vehicle(s) in good operating condition while under Lessee's custody or control.
b. If, during the term of this Lease, any Vehicle(s) is involved in an accident or has mechanical failure exceeding $500.00, Lessee shall contact Lessor at 800-783-3613 within forty-eight (48) hours after such incident and put Lessor in contact with service/repair facility.
c. Required routine maintenance is the sole responsibility of the Lessee and will be performed in accordance with the Manufacturer's Operating Manual.

6. RETURN OF VEHICLE(S):



Initial: MM

a. Lessee shall return the Vehicle(s) to Lessor's place of business at Lessee's expense in accordance with Schedule A hereto.

b. Lessee shall return the Vehicle(s) on or before the Expiration Date, or any earlier termination of this Lease, in the same condition as when delivered (ordinary wear and tear excluded), or pay an additional rent and/or Lessor's cost of repairing any damage to the Vehicle(s) in excess of ordinary wear and tear. In addition, for purposes of clarity only and in no way limiting other provisions of Section 6 a-c:
   i. Lessee shall return the Vehicle(s) free from all body damage and free from all broken or cracked glass.
   ii. Upon return of the Vehicle(s), the Vehicle(s) must pass the Department of Transportation inspection including minimum standards for tires and brakes.
   iii. Upon return of the Vehicle(s), the air conditioning/cooling system must be in proper working order.
   iv. All Vehicle(s) shall be returned with all original equipment that was installed at the Commencement of the Lease or during the term of the Lease.

c. Lessee further agrees to keep the Vehicle(s) free of any and all claims and encumbrances by any person.

7. INSURANCE: Lessee, at its own expense, shall obtain and keep effective during the entire term of this Lease insurance policies insuring the Vehicle(s) against loss or damage because of fire, theft, collision, flood, windstorm, or other casualty to the extent of the full cash value of such Vehicle(s) as shown on the Vehicle Schedule, less any deductible permitted under this Lease. All Lessees and additional drivers shall have liability insurance that transfers to large passenger vehicles. Lessee, at its own expense, shall obtain and keep effective during the entire term of this Lease, an insurance policy naming Lessor as additional "insured and loss payee" and Lessee shall provide proof of minimum liability coverage for any loss arising out of death, injury, or property damage in the minimum amount of $1,500,000.00 for vehicles with capacity up to and including fifteen (15) passengers and $5,000,000.00 for vehicles with greater than fifteen (15) passenger capacity. In the event Lessee cannot show proof of liability coverage in the minimum amount required by this section, Lessee will be charged an additional fee. Lessee's insurance policy shall expressly provide coverage for Lessee's contractual obligation and liability of this Lease and shall contain a stipulation or agreement by the insurance carrier that the Lessor shall receive at least thirty (30) days' prior written notice of any cancellation, or intended cancellation, or reduction of the coverage provided herein, or ten (10) days' prior notice of any lapse of said coverage due to nonpayment. In the event Lessee fails to provide the coverage required, Lessee's rights under this Lease may be terminated immediately and the Lessor shall be entitled to immediate possession of the Vehicle(s) rented under this Lease. Upon the receipt of any notice to Lessor of cancellation or nonrenewal, Lessee will provide evidence of replacement insurance coverage or Lessee will be obligated to pay Lessor for any and all costs to secure replacement coverage in compliance with the requirements of this paragraph. Lessee shall deliver to Lessor prior to the delivery of the Vehicle(s) satisfactory evidence of insurance as described herein followed by a Certificate of Insurance evidencing said insurance coverage. Lessee shall provide such evidence of Insurance coverage prior to the delivery of the Vehicle(s) and at any time as reasonably requested by Lessor during the term of this Lease. Lessee hereby assigns to Lessor the proceeds of all such insurance and directs any insurer to make payments directly to Lessor. Lessor shall be under no duty to ascertain the existence of, or to examine any such policy, or to advise Lessee in the event any such policy shall not comply with the requirements hereof.

Further, in the event of any loss arising out of the possession, use, operation, or condition of the Vehicle(s) during the term of this Lease, Lessee shall immediately provide notice of such loss to the Lessor. Whenever a Vehicle(s) is damaged and such damage can be repaired, Lessee shall, at its expense, promptly effect such repairs as Lessor shall deem necessary for compliance with paragraph 5 above. Proceeds of insurance shall be paid to Lessor with respect to such reparable damage to the Vehicle(s) and shall, at the election of Lessor, be applied either to the repair of the Vehicle(s) by payment by Lessor directly to the party completing the repairs, or to the reimbursement of Lessee for the cost of such repairs provided, however, that Lessor shall have no obligation to make such payment or any part thereof until receipt of such evidence as Lessor shall deem satisfactory that such repairs have been completed and further provided that Lessor may apply such proceeds to the payment of any rent or other sum due or to become due hereunder if at the time such proceeds are received by Lessor there shall have occurred any Event of Default or any event which with lapse of time or notice, or both, would become an Event of Default.

8. LESSEE COVENANTS, REPRESENTATIONS AND WARRANTIES:

a. Affirmative Covenants. Lessee shall:

   i. Pay all shipping and delivery charges and other expenses incurred in connection with the Vehicle(s) and pay all lawful claims, whether for labor, materials, supplies, rent or services, which might or could if unpaid become a lien on the Vehicle(s);
   ii. Comply with all laws, regulations, and rules, all manufacturer's instructions and warranty requirements, and with the conditions and requirements of all policies of insurance relating to each Vehicle(s) and its use;
   iii. Mark and identify the Vehicle(s) with all information and in such manner as Lessor or its assigns may request from time to time and replace promptly any such markings or identification which are removed, defaced, or destroyed;
   iv. At any and all times during business hours, grant Lessor free access to enter upon the premises wherein the Vehicle(s) shall be located or used and permit Lessor to inspect the Vehicle(s) and all applicable maintenance records; provided, however, that Lessor shall have no obligation to inspect any Vehicle(s) or records;

v. Maintain a system of accounts established and administered in accordance with generally accepted accounting principles and practices consistently applied;

vi. Within forty-five (45) days after the end of each fiscal quarter, other than the final fiscal quarter of each fiscal year, deliver to Lessor a balance sheet and statement of income as at the end of such quarter, each setting forth in comparative form the corresponding figures for the comparable period in the preceding fiscal year;

vii. Within one-hundred-twenty (120) days after the end of each fiscal year, deliver to Lessor a balance sheet as at the end of such year and statements of income and cash flows for such year, with accompanying notes to financial statements, each setting forth in comparative form the corresponding figures for the preceding year, in each case prepared in accordance with generally accepted accounting principles and practices consistently applied and certified by Lessee's chief financial officer as fairly presenting the financial position and results of operations of Lessee, and, in the case of year-end financial statements, certified by an independent accounting firm acceptable to Lessor; and

vii. With reasonable promptness, furnish Lessor with such other information, financial or otherwise, relating to Lessee or the Vehicle(s) as Lessor shall reasonably request.

b. Negative Covenants. Lessee shall not:

i. Voluntarily or involuntarily create, incur, assume, or suffer to exist any mortgage, lien, security interest, pledge, or other encumbrance or attachment of any kind whatsoever upon, affecting, or with respect to the Vehicle(s) or this Lease or any of Lessee's interest thereunder;

ii. Permit the name of any person, association or corporation other than the Lessor or Lessee to be placed on the Vehicle(s);

iii. Part with possession or control of or suffer or allow to pass out of its possession or control any item of the Vehicle(s) or change the location of the Vehicle(s) or any part thereof from the address shown in the Lease;

iv. ASSIGN OR IN ANY WAY TRANSFER OR DISPOSE OF ALL OR ANY PART OF ITS RIGHTS OR OBLIGATIONS UNDER THIS AGREEMENT OR ENTER INTO ANY SUBLEASE OF ALL OR ANY PART OF THE VEHICLE(S);

v. Change:

1. Its name or address from that set forth above;
2. The state under whose laws it is organized as of the date hereof; or
3. The type of organization under which it exists as of the date hereof unless it shall have given Lessor or its assigns no less than thirty (30) days' prior written notice of any such proposed change;

vi. Permit the sale or transfer of any shares of its capital stock or of any ownership interest in the Lessee to any person, persons, entity or entities (whether in one transaction or in multiple transactions) which results in a transfer of a majority interest in the ownership and/or the control of the Lessee from the person, persons, entity or entities who hold ownership and/or control of the Lessee as of the date of this Lease;

vii. Consolidate with or merge into or with any other entity, or purchase or otherwise acquire all or substantially all of the assets or stock or other ownership interest of any person or entity or sell, transfer, lease or otherwise dispose of all or substantially all of Lessee's assets to any person or entity; or

viii. Allow a Blocked Person to have an ownership interest in or control of Lessee. "Blocked Person" means any person or entity that is now or at any time:

1. On a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list; or
2. Whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government; or
3. Otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Lessor, to be a person with whom Lessor is not permitted to extend credit to or with regard to whom a lessee relationship may result in penalties against Lessor or limitations on a lessor's ability to enforce a transaction.

c. Representations and Warranties. Lessee represents and warrants to Lessor, that:

i. The Lease has been duly authorized and executed and is not in contravention of, and will not result in a breach of, any of the terms of Lessee's charter, by-laws, articles of incorporation or other organic documents or any loan agreements or indentures of Lessee, or any other contract, agreement or instrument to which Lessee is a party or by which it is bound;

ii. Lessee's exact legal name as it appears on its charter or other organic documents, including as to punctuation and capitalization, and its principal place of business or chief executive office are as set forth in the heading of this Lease;

iii. Lessee is duly organized, validly existing and in good standing under the laws of the state of its incorporation or formation and is duly qualified and authorized to transact business in, and is in good standing under the laws of, each other state in which the Vehicle(s) is or will be located;

iv. There has been no change in the name of the Lessee, or the name under which Lessee conducts business within the one year preceding the date hereof except as previously reported in writing to Lessor;



Initial: MM

v. Lessee has not moved its principal place of business or chief executive office, or has not changed the jurisdiction of its organization within the one year preceding the date hereof except as previously reported to Lessor in writing;

vi. This Lease constitutes a legal, valid and binding obligation of Lessee, enforceable against Lessee in accordance with its terms;

vii. All information provided by Lessee to Lessor in connection with this Lease is true and correct;

viii. The Vehicle(s) will be used primarily for business purposes as opposed to personal, family or household purposes; and

ix. There are no suits pending or threatened against Lessee or any guarantor of the Lessee's obligations (each, a "Guarantor") which, if decided adversely, might materially adversely affect Lessee's or such guarantor's financial condition, the value, utility or remaining useful life of the Vehicle(s), the rights intended to be afforded to Lessor hereunder or under any guarantee or the ability of Lessee or any guarantor to perform its obligations under the Lease or any document delivered in connection with the Lease.

9. INDEMNITY: Lessee shall defend, indemnify and hold harmless Lessor and the officers and employees of Lessor and its insurer from and against any damage, loss, theft, or destruction of the Vehicle(s) and against all losses, liabilities, damages, injuries, claims, demands, costs, and expenses of every kind and nature, including bodily injury, property damage and death, whether or not covered by insurance, including legal fees and disbursements arising out of and in connection with the use, condition, maintenance, or operation of the Vehicle(s) during the Lease term or while the Vehicle(s) is in the Lessee's possession or under its control; the performance or nonperformance of Lessee hereunder and any act or omission of Lessee, and its agents, servants or employees. Lessee shall further indemnify and hold harmless Lessor for any and all governmental fees or regulatory charges due pursuant to paragraph 4.e. of this Lease, including any late penalties or interest accrued thereupon.

10. ASSIGNMENT: Lessor may sell or assign any or all of its interest in this Lease or sell or grant a security interest in all or any part of the Equipment, without notice to or the consent of Lessee. Lessee agrees not to assert against any assignee of Lessor any setoff, recoupment, claim, counterclaim or defense Lessee may have against Lessor or any person other than such assignee. Lessee agrees that if it receives written notice of an assignment from Lessor, it will pay all rent and other payments payable under each Supplement to such assignee or as instructed by Lessor or the assignee identified in the notice received from Lessor. An assignee of Lessor shall have all rights of Lessor under the applicable Lease, to the extent assigned, separately exercisable by such assignee independently of Lessor or any assignee with respect to other leases. Upon any such assignment and except as may otherwise be provided therein all references in this Lease to Lessor shall include such assignee.

11. DEFAULT: An Event of Default shall occur if:

a. Lessee is delinquent on any payment due hereunder and in default as provided in paragraph 2 of this Lease;
b. Lessee breaches any other agreement, term, covenant or condition which this Lease requires, and such breach continues for a period of ten (10) days after notice from Lessor to Lessee;
c. Lessee or any Guarantor or any partner of Lessee if Lessee is a partnership shall cease doing business as a going concern, make an assignment for the benefit of creditors, become insolvent, or engage in any dissolution or liquidation proceedings;
d. Lessee or any Guarantor or any partner of Lessee if Lessee is a partnership shall voluntarily file, or have filed against it involuntarily, a petition for liquidation, reorganization, adjustment of debt, or similar relief under the federal Bankruptcy Code or any other present or future federal or state bankruptcy or insolvency law, or a trustee, receiver, or liquidator shall be appointed of it or of all or a substantial part of its assets;
e. Lessee or any Guarantor shall be in breach of or in default in the payment or performance of any material obligation under any credit agreement, conditional sales contract, lease, guaranty, or other contract with Lessor, an affiliate of Lessor or any other person or entity, howsoever arising;
f. Any individual Lessee, Guarantor, or partner of Lessee if Lessee is a partnership shall die;
g. Lessee, or any Guarantor of this Lease shall suffer a material adverse change in its financial condition from the date hereof, and as a result thereof Lessor deems itself or any of the Vehicle(s) to be insecure; or
h. Any Guarantor fails to pay or perform any obligation owing to Lessor, or breaches or fails to observe or perform any term, condition, covenant, representation or warranty contained in any agreement made by such Guarantor in favor of Lessor and such failure or breach continues beyond the applicable grace or cure period set forth in such agreement, if any.

Upon the occurrence of any Event of Default, Lessor may, in addition to any other right or remedy given by law, terminate this Lease immediately and require Lessee, at its own expense, to return the Vehicle(s) pursuant to paragraph 6 of this Lease within three (3) days of the Event of Default. Lessor may also enter upon the premises where the Vehicle(s) is located and take immediate possession of and remove the same with or without instituting legal proceedings. The exercise of any one remedy shall not be deemed an election of such remedy or preclude the exercise of any other remedy, and such remedies may be exercised concurrently or separately but only to the extent necessary to permit Lessor to recover amounts for which Lessee is liable hereunder. Lessor shall be entitled to, and Lessee agrees to pay, damages equal to the sum of:

a. Accrued and unpaid rent, including interest;

b. The present value of the rent for the remaining lease term under this Lease discounted to such present value at a rate of [3%] per annum;
c. Any and all costs, expenses, penalties, fees or charges of any kind incurred by Lessor as a result of or relating to Lessee's default; and
d. As permitted by applicable law, any and all attorney fees, legal expenses or litigation costs Lessor incurs as a result of or relating to Lessee's default. If, after Lessee's payment of damages as provided in this paragraph, Lessor disposes of the Vehicle(s) to a third party prior to the end of the term of this Lease, Lessor shall credit Lessee with the present value of the portion of the new lease applicable to the remaining term of this Lease.

If this Lease is deemed at any time to be a lease intended as security, Lessee grants Lessor a security interest in the Vehicle(s) to secure its obligations under such Lease, all other Leases and all other indebtedness at any time owing by Lessee to Lessor. Lessee agrees that upon the occurrence of an Event of Default, in addition to all of the other rights and remedies available to Lessor hereunder, Lessor shall have all of the rights and remedies of a secured party under the Uniform Commercial Code.

12. NOTICES: Any notice hereunder to Lessee or Lessor shall be in writing and shall be deemed to have been given when delivered personally or deposited with a nationally-recognized overnight courier service or in the United States mails, postage prepaid, addressed to recipient at its address set forth above or at such other address as may be last known to the sender.

13. NET LEASE AND UNCONDITIONAL OBLIGATION: This Lease is a completely net lease and Lessee's obligation to pay rent and all other amounts payable by Lessee hereunder is absolute, unconditional, and irrevocable, and shall be paid without any abatement, reduction, setoff, or defense of any kind. This Lease cannot be canceled, prepaid, or terminated except as expressly provided herein.

14. GOVERNING LAW AND FORUM SELECTION, JURY TRIAL WAIVER: This Lease and all issues of Lessee's relationship with Lessor shall be governed by and determined by application of Missouri law. Further, Lessor and Lessee acknowledge Lessor's home office is in Belton, Missouri, and all payments hereunder are to be received in Belton, Missouri. Lessor and Lessee select the state courts sitting within Cass County, Missouri, and the United States District Court for the District Court of Missouri as exclusive venue for all disputes, claims, or causes of action of the like involving Lessor and Lessee. LESSEE HEREBY WAIVES ANY RIGHT TO A JURY TRIAL WITH RESPECT TO ANY MATTER ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT. TIME IS OF THE ESSENCE WITH RESPECT TO THE OBLIGATIONS OF LESSEE UNDER THIS AGREEMENT.

No course of dealing between Lessor and Lessee or any delay or omission on the part of Lessor in exercising any rights hereunder shall operate as a waiver of any rights of Lessor. A waiver on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion. No waiver or consent shall be binding upon Lessor unless it is in writing and signed by Lessor. To the extent permitted by applicable law, Lessee hereby waives the benefit and advantage of, and covenants not to assert against Lessor, any valuation, inquisition, stay, appraisement, extension, or redemption laws now existing or which may hereafter exist which, but for this provision, might be applicable to any sale or re-leasing made under the judgment, order or decree of any court or under the powers of sale and re-leasing conferred by this Lease or otherwise. To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a Lessee by Article 2A-508 through 2A-522 of the Uniform Commercial Code, including but not limited to Lessee's rights to:

a. Cancel this Lease;
b. Repudiate this Lease;
c. Reject the Vehicle(s);
d. Revoke acceptance of the Vehicle(s);
e. Recover damages from Lessor for any breaches of warranty or for any other reason;
f. Claim a security interest in the Vehicle(s) in Lessee's possession or control for any reason;
g. Deduct all or any part of any claimed damages resulting from Lessor's default, if any, under this Lease;
h. Accept partial delivery of the Vehicle(s);
i. "Cover" by making any purchase or lease of or contract to purchase or lease Vehicle(s) in substitution of Vehicle(s) identified to this Lease;
j. Recover any general, special, incidental, or consequential damages, for any reason whatsoever; and
k. Specific performance, replevin, detinue, sequestration, claim, delivery, or the like for any Vehicle(s) identified to this Lease.

15. GENERAL AND MISCELLANEOUS:

a. No forbearance to exercise any rights or privileges under this Lease, or waiver of any breach of any of its terms, shall be construed as a waiver of Lessor's rights or privileges under any such terms, and the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.
b. The terms of this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. This Lease constitutes the entire agreement between the parties hereto and may not be amended except in writing signed by the duly authorized representative of the parties hereto.



Initial: DS MM

c. In the event that any provision of this Lease shall be held by any court of competent jurisdiction to be invalid or unenforceable, such holding shall not invalidate or render unenforceable any other provision hereof

d. This Lease shall be deemed to be a Missouri contract and shall be governed by the laws of the State of Missouri. Any legal proceedings pertaining to the Lease will be processed in the State of Missouri, County of Cass.

e. In the event that any provision of this Lease is in any way breached by the Lessee or Lessee fails in any way to perform as agreed herein, the Lessor may, at its election, terminate this Lease after first providing Lessee notice and ten (10) days in which to cure said breach. If Lessee fails to cure within the agreed upon time frame, Lessor may have the immediate right to possession of the Vehicle(s) leased hereunder and shall be entitled to immediate payment of all amounts due under this Lease.

f) There shall be one original of the Lease and it shall be marked "Original". To the extent that any Lease constitutes chattel paper (as that term is defined by the Uniform Commercial Code), a security interest may only be created in the Lease marked "Original".

Lessee: Anna Marie College
50 Sunset Lane, Paxton, MA. 01612

Lessor: **Master's Leasing, a Division of MaTran, Inc.**
800 Quik Trip Way, Belton, MO 64012

BY: DocuSigned by: Michael Miers
03C5F8EC1FD3466...
Signature
Date: 9/16/2024

Michael Miers Executive Vice President
Printed Name, Title

BY: DocuSigned by: John Goodbrake
D6ED831A39EB4AE...
Signature
Date: 9/16/2024

John D. Goodbrake, President
Printed Name, Title



Initial: MM

**SCHEDULE A**
**EQUIPMENT USAGE & RETURN PROCEDURES**

**DRIVERS:** All drivers must be at least 25 years of age, possess a valid driver's license, have at least two (2) years' experience, be covered by Lessee's insurance policy and, for Vehicle(s) over fifteen (15) passengers, must submit a copy of their commercial license to Lessee.

**PASSENGERS:** The total of passengers transported at any one time in each Vehicle(s) shall not exceed the maximum capacity shown for each Vehicle(s) listed on the **Vehicle Schedule**.

**NO SMOKING OR ALCOHOL BEVERAGES** allowed in Vehicle(s).

**INSPECTIONS:**

1. **Vehicle Acceptance/Inspection**: Lessee/Rentee (or authorized representative) shall inspect the Vehicle(s) immediately upon receipt and notify Lessor within 48 hours of any nonconformity or defect.

2. **Daily Driver Inspection Reports**: Driver shall perform a DOT Pre-Trip Inspection and complete a *Bus Driver's Vehicle Inspection Report* (Inspection Report Book located in each Vehicle(s)) prior to each day's usage.

   DEFECTS discovered upon inspection or MECHANICAL PROBLEMS encountered during usage need to be noted in the Inspection Report Book.

   a. All mechanical problems must be reported by Driver to Lessee and corrected.

3. **Required routine maintenance** is the sole responsibility of the Lessee and shall be made in accordance with the Manufacturer's recommendations and Operator's manual.

4. **All maintenance and repair obligations and liability are solely the responsibility of the Lessee**. In the event that Lessee contracts with a third party for maintenance and repair services, all liability for maintenance or repair remains with Lessee or third party. Lessor does not assume or accept any maintenance or repair liability.

**RETURN PROCEDURES:** Vehicle(s) are to be returned in same condition as at time of possession with emphasis on:
Exterior - washed; Interior - cleaned, swept and/or vacuumed; Fuel Tank - full

**$425 Cleaning Fee and/or $5.00/Gal Fuel Fee** will be assessed if not returned in same condition as picked up.

**D.O.T. Safety Equipment**: Fire Extinguisher, I.C.C. Kit (triangle reflectors), & First Aid Kit Equipment are on each Vehicle(s).
$50 Replacement Fee will be assessed for each item found to be missing, used or discharged.

**A Damage Estimate** will be invoiced to Lessee/Rentee for any NEW exterior damage (scrapes, dents, chips in windshield, etc.), and/or any NEW interior damage (torn or stained seats, stains or tears in carpet, or foul odors, etc.)

I hereby acknowledge and will abide by the above listed procedures:

Lessee: Signature: DocuSigned by: Michael Miers 03C5F8FC1FD3466... Date: 9/16/2024

Printed Name: Michael Miers



Initial: DS MM

Lease Agreement #: LEASE-3907

**VEHICLE SCHEDULE**

LESSEE: Anna Marie College
Term: 09/01/2024–09/01/2027 (3 Years, 12 Months per Year)

| UNIT NO. | STOCK NO. | DESCRIPTION | VIN | VALUE | CAPACITY |
|---|---|---|---|---|---|
| Z-W0492 | GL22-278 | 2023 Freightliner Glaval | 4UZADRFD5PCUW0492 | $225,500 | 35 |

Location of Equipment: 50 Sunset Lane, Paxton, MA. 01612

Lessee: DocuSigned by: Michael Miers
03C6F8FC1FD3466...
Signature — Date: 9/16/2024

Michael Miers
Printed Name

Lessor: DocuSigned by: John Goodbrake
D6ED831A39EB4AE...
Signature — Date: 9/16/2024

John D. Goodbrake, President
Printed Name



Initial: MM