**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>THE SISTERS OF SAINT ANN<br>d/b/a ANNA MARIA COLLEGE,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 26-40758-EDK |

**ORDER GRANTING DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE SALE OF PARCEL OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (II) GRANTING RELATED RELIEF**

Upon consideration of the *Motion for Entry of (I) An Order (A) Approving Sale Procedures in Connection with the Sale of Substantially All of the Debtor's Assets in One or More Transactions, (B) Scheduling an Auction and Hearing to Approve the Sale(s) and the Form and Manner of Notice Thereof, (C) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Authorizing De Minimis Sales of Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (E) Granting Related Relief; and (II) An Order (A) Approving the Sale of Substantially All of the Debtor's Assets, in One or More Transactions, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* [Dkt. No. 5] (the "Sale Motion")[2] filed by the above-captioned debtor and debtor in possession (the "Debtor") on June 26, 2026,

---

[1] The last four digits of the Debtor's taxpayer identification number are 2060. The Debtor's address is 50 Sunset Lane, Paxton, MA 01612.
[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Sale Procedures Order.

seeking, among other things, entry of an order (a) approving the sale (each, a "Sale" and collectively, the "Sales") of substantially all of the Debtor's assets, other than the Excluded Assets (the "Sale Assets"), or a subset thereof, in one or more transactions, to a Successful Bidder(s) free and clear of all liens, claims, encumbrances, and other interests (collectively, "Interests") pursuant to section 363(f) of the Bankruptcy Code, and granting related relief; and this Court having entered the *Order (A) Approving Sale Procedures in Connection with the Sale of Substantially All of the Debtor's Assets, in One or More Transactions, (B) Approving the Form and Manner of Notice of the Auction and Sale Hearing, (C) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Authorizing De Minimis Sales of Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, and (E) Granting Related Relief* [Dkt. No. 80] on July 20, 2026 (the "Sale Procedures Order"); an initial hearing regarding approval of the Sale on a free and clear basis having been held before the United States Bankruptcy Court for the District of Massachusetts (J. Katz) ("Court") on September 24, 2026 and the Court having entered the *Order Authorizing Debtor to Sell Sale Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests* on October 7, 2026; abutting landowners David E. Roy and Elaina M. Roy ("Roys") having submitted a bid to acquire approximately 2.4161 acres subdivided as Lot 2 of Parcel Three of the Sale Assets located to the easterly side of 72 Streeter Road, Paxton Massachusetts ("Parcel"), for consideration of $175,000 ("Purchase Price") and other terms as described in a Purchase and Sale Agreement presented by the Roys ("PSA") (attached hereto as Exhibit A) to the Debtor in accordance with the Sale Procedures Order; no Qualifying Bids for the entirety of the Sale Assets having been timely received leading to the cancellation of the Auction, with the Debtor having agreed, with assent of the Consultation Parties, to proceed to sell the Parcel to the Roys pursuant to the PSA terms, as modified herein; the Debtor

having filed the *Notice of Successful Bidder for Lot 2 (2.4 Acre Parcel)* on October 21, 2026 [Dkt. No. 249]; the Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, the Sale Motion being a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; having determined that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED, as set forth herein.

2. Any objections to the sale of the Parcel pursuant to the PSA that have not been withdrawn, waived, or settled, are hereby denied and overruled with prejudice.

3. The terms of the PSA are hereby approved, as modified below. Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Parcel to the Roys on the date of Closing (the "Closing Date") in accordance with the terms of the PSA ("Sale Transaction"); the sale, assignment, and transfer of Parcel to the Roys shall constitute legal, valid and effective transfer of the Debtor's and the estate's right, title and interest in and to the Parcel free and clear of all liens (including, but not limited to, any 'lien' as defined in section 101(37) of the Bankruptcy Code), claims (including, but not limited to, any 'claim' as defined in section 101(5) of the Bankruptcy Code), security interests, mortgages, encumbrances, interests and restrictions of every kind or nature, whether known or unknown, liquidated or unliquidated, disputed or undisputed, contingent, inchoate or matured, in law or equity (collectively, "Liens"), which any person or entity now has or ever had against the Debtor or the Parcel pursuant to Section 363(f) of the Bankruptcy Code, as of the Closing Date.

4. Any perfected, enforceable, and valid Liens encumbering the Parcel shall attach to the proceeds of the Sale Transaction in accordance with the priorities established under applicable law and separate orders of this Court and shall be applied in accordance with the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Approving Postpetition Financing, (II) Granting Liens And Providing Superpriority Administrative Expense Status, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief,* ECF No. 146, as may be amended or supplemented.

5. The Purchase Price to be funded by the Roys is fair and reasonable, constitutes a transfer for reasonably equivalent value and fair consideration, and may not be avoided under Section 363(n) of the Bankruptcy Code. The record demonstrates that the Sale Transaction was negotiated, proposed, and entered into by the Debtor and the Roys without collusion, in good faith, and from arm's-length bargaining positions. The Roys are a good faith purchaser as that term is defined in section 363(m) of the Bankruptcy Code and as purchaser, are entitled to all of the protections afforded thereunder.

6. Notwithstanding the provisions of the PSA, any cost and fee associated with seeking additional approvals from the Town of Paxton Planning Board of the form of Approval Not Required Plan for recording with the Worcester District Registry of Deeds to enable the sale of the Parcel as subdivided, if any, shall be split equally at Closing by the Roys and the Debtor; any other costs and charges shall be allocated as set forth in the PSA.

7. Upon closing of the Sale Transaction, the Roys and their successors and assigns shall be deemed to have fully released and discharged any and all claims and causes of action held or asserted against the Debtor with regard to the Sale Assets or otherwise, with the Roys and the Debtor to jointly cause the dismissal of litigation stylized as *David E. Roy, Elaina M. Roy, and*

*David E. Roy, Jr. v. Anna Maria College*, No. 25-cv-823 pending in the Superior Court of Massachusetts, Middlesex County and the litigation initiated by the Roys against the Debtor with the Court, Adv. Proc. No. 26-4027, with prejudice and without costs within seven days of occurrence of the Closing; the Roys shall also withdraw any previously filed proofs of claim.

8. Each and every federal, state, and local governmental agency, department, or unit, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the applicable Sale Document.

9. The Court shall retain exclusive jurisdiction to enforce, interpret and implement the terms and provisions of the Sale Documents and this Order.

10. This Order shall be effective and enforceable immediately. The provisions of Bankruptcy Rule 6004(h) and 6006(d) staying the effectiveness of this Order for fourteen (14) days are hereby waived, and this Order shall be effective, and the parties may consummate the transactions contemplated by the Private Sale immediately upon entry of this Order.

Dated: November 2, 2026

Elizabeth D. Katz
UNITED STATES BANKRUPTCY JUDGE

# PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "Agreement"), dated effective as of October __, 2026 ("Execution Date"), is entered into by and among David E. Roy, an individual, Elaina M. Roy, an individual (collectively, "Buyer"), with a mailing address of 71 Streeter Road, Paxton, MA 01612, and The Sisters of Saint Ann d/b/a Anna Maria College, a Massachusetts non-profit entity ("Seller") with a mailing address of 50 Sunset Lane, Paxton, MA 01612, and debtor and debtor-in-possession in chapter 11 case pending before the U.S. Bankruptcy Court, District of Massachusetts, Case No. 26-40758 ("Bankruptcy Case"). Each signatory hereto may be individually referred to herein as a "Party," and collectively as the "Parties."

1. **Defined Terms.** The terms listed below shall have the following meanings throughout this Agreement:

| | |
|---|---|
| Bankruptcy Court: | U.S. Bankruptcy Court, District of Massachusetts |
| Broker: | Kelleher & Sadowsky |
| Closing Date: | As defined in Section 8 below. |
| Business Days: | All days except Saturdays, Sundays, and all legal holidays on which government offices in the Town of Paxton, Massachusetts, are closed. |
| Fixtures: | All fixtures owned by Seller located at and attached and appurtenant to or forming a part of the Real Property. |
| Good-Faith Deposit: | $8,750.00, funded in accordance with the procedures for sale of the Seller's real property approved and established pursuant to the *Order (A) Approving Sale Procedures in Connection with the Sale of Substantially All of the Debtor's Assets in One or More Transactions, (B) Approving the Form and Manner of Notice of the Auction and Sale Hearing, (C) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Authorizing De Minimis Sales of Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, and (E) Granting Related Relief* [ECF No. 80] (the "Bid Procedures Order"). |

| | |
|---|---|
| Hazardous Substances: | Asbestos-containing materials, polychlorinated biphenyls, flammable materials, explosives, radioactive materials, petroleum products and those materials or substances now or heretofore defined as "hazardous substances," "hazardous materials," "hazardous waste," "toxic substances," or other similar designations under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. Section 9601 et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901 et seq., the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801 et seq., the Federal Water Pollution Control Act, 33 U.S.C. Section 1251 et seq., the Clean Air Act, 42 U.S.C. Section 7401 et seq., the Toxic Substances Control Act, 15 U.S.C. Section 2601 et seq., the Refuse Act, 33 U.S.C. Section 407 et seq., together with all implementing regulations or any other applicable, similar state, federal, county, regional, municipal or local law, statute, ordinance, rule or regulation governing the control of substances dangerous to public health or safety as same may be amended from time to time. |
| Improvements: | Buildings and other structures and improvements located on or affixed to the Land. |
| Intangibles: | (a) All transferable permits, certificates, licenses or other forms of authorization or approval issued by a government agency or authority for the proper operation and use of the Real Property and Fixtures (including, without limitation, any certificates of occupancy with respect to the Improvements, elevator permits, conditional use permits, and zoning variances), and (b) any transferable guaranties and warranties in effect as of or after the date hereof with respect to the Real Property and Fixtures. |
| Land: | Those certain parcels of land located in Paxton, MA, more particularly described and denoted as Lot 2, with 105,245 square feet, comprising 2.4161 acres, on the Progress Print, dated June 30, 2023, by Thompson-Liston Associates, Inc., attached hereto as **Exhibit A**, together with all rights and interests appurtenant thereto. |
| Liabilities: | All debts, adverse claims, liabilities, commitments, responsibilities, and obligations of any kind or nature whatsoever, direct or indirect, absolute or contingent, whether accrued or unaccrued, vested or otherwise, liquidated or unliquidated, whether known or unknown, and whether or not actually reflected, or required to be reflected, in such party's balance sheet or other books and records. |

| | |
|---|---|
| Liens: | Liens shall have the meaning specified in section 101(37) of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101, et seq. ("Bankruptcy Code") and shall include any pledge, option, charge, lien, license, trust deeds, hypothecation, easement, security interest, right-of-way, encroachment, mortgage, deed of trust, defect of title, restriction on transferability, restriction on use or other encumbrance, in each case whether imposed by agreement, law, equity or otherwise. |
| Permitted Liens: | As set forth in Section 10 herein. |
| Personal Property: | All personal property owned by Seller and located at and used in connection with the Property, other than the Proprietary Materials. |
| Property: | The Real Property and Personal Property (as defined herein). |
| Proprietary Materials: | Books, records or files (whether in a printed or electronic format) proprietary to Seller and comprised of, but not limited to the following: appraisals; student records; personally identifiable information; feasibility studies; market studies; strategic plans for the Real Property; internal analyses; information regarding the marketing of the Real Property for sale; information relating to obtaining internal authorization for the sale of the Real Property by Seller; attorney and accountant work product; attorney-client privileged documents; internal correspondence of Seller; information relating to properties other than the Real Property; documents, information and agreements relating to Seller's internal ownership and leasing structure for the Real Property; but excluding in each case (i) materials in the nature of property condition reports and (ii) environmental assessments, records, reports and notices. |
| Purchase Price: | $175,000.00, as defined in Section 5 below. |
| Purchased Property: | As identified in Section 2 below. |
| Real Property: | The Land, Improvements and Fixtures. |
| Sale Order: | The order of the Bankruptcy Court, in form and substance reasonably acceptable to both the Buyer and the Seller pursuant to, *inter alia*, Bankruptcy Code sections 363 and 105 authorizing and approving, *inter alia*, this Agreement and the transactions contemplated thereby, which order shall include the provisions set forth in Section 6(d). |

Title Company: Commonwealth Land Title Insurance Company
265 Franklin Street- 8th Floor
Boston, MA 02110
Attention: Philip M. Saba II, Esquire
Vice President
Phone: 617-619-4815
Email: Philip.Saba@fnf.com

Transfer Taxes: Any and all transfer, sales, use, value added, excise, filing, recording, registration, documentary, stamp or other similar Taxes applicable to, imposed upon or arising out of the transactions contemplated by this Agreement.

2. **Scope of Purchased Property:** Upon the terms and subject to the conditions of this Agreement, Seller hereby agrees to sell, transfer, convey, assign and deliver to Buyer, free and clear of all Liens other than Permitted Liens, defined below, and Buyer hereby agrees to purchase, acquire and accept from Seller, substantially all of Seller's rights, title and interest in and to the following Property (excluding the Excluded Assets, collectively, the "Purchased Property"):

a. the Real Property owned by the Seller.

3. **Excluded Assets**: Notwithstanding anything to the contrary contained in Section 2 or elsewhere in this Agreement, the following property, rights and assets of Seller (collectively, the "Excluded Assets") are not part of the sale and purchase contemplated hereunder, are excluded from the Purchased Property and shall remain the property of Seller after the Closing:

a. any Proprietary Materials;

b. any asset or property interest of the Seller that is not specifically identified as part of the Purchased Property;

c. any cause of action or rights against third-parties of the Seller; and

d. the rights which accrue or will accrue to Seller under the Transaction Documents.

4. **Assumed Liabilities and Excluded Liabilities**. Buyer shall assume, effective as of the Closing Date, and shall timely perform and discharge in accordance with their respective terms, only the following Liabilities of Seller (collectively, the "Assumed Liabilities," which term, for the avoidance of doubt, shall not include any Excluded Liabilities):

a. any Liability for Taxes (defined below) and otherwise arising out of the ownership or operation of the Purchased Property and accruing or arising on and after the Closing Date; and

b. the costs and expenses of Buyer incurred in negotiating, entering into and carrying out its obligations pursuant to this Agreement.

Except for the Assumed Liabilities, Buyer shall not assume or be responsible for any Liabilities whatsoever of Seller (collectively, the "Excluded Liabilities"). The Excluded Liabilities shall

remain the sole responsibility of and shall be retained, paid, performed and discharged by the Seller.

5. **Purchase Price**. The total consideration for the sale transaction described herein shall consist of cash equal to **$175,000** ("Purchase Price"). The Purchase Price shall be payable by the Buyer to Seller at Closing, net of the Good-Faith Deposit to be applied towards the Purchase Price, by wire transfer of immediately available funds to such accounts as may be designated by Seller.

6. **Form of Purchase Documents.** Seller shall sell the Purchased Property to Buyer, and Buyer shall purchase the Purchased Property from Seller, subject to all of the terms, covenants and conditions hereinafter set forth in this Agreement, and as follows:

a. Real Property and Fixtures. Seller shall sell the Real Property that constitute Purchased Property to Buyer, and Buyer shall purchase the Real Property from Seller, on all mutual terms, covenants and conditions hereinafter set forth in this Agreement. The Real Property that constitute Purchased Property shall be conveyed to Buyer by a Release Deed ("Deed") in the form substantially similar to that attached hereto as **Exhibit B** and incorporated herein by this reference.

b. Sale Order. The Sale Order shall, without limitation:

(1) approve, pursuant to Section 363 of the Bankruptcy Code, (i) the execution, delivery and performance by Seller of this Agreement; (ii) the sale of the Purchased Property to Buyer on the terms set forth herein and free and clear of all Encumbrances (other than Permitted Liens), and (iii) the performance by Seller of its obligations under this Agreement;

(2) find that Buyer is a "good faith" Buyer within the meaning of Section 363(m) of the Bankruptcy Code and grant Buyer the protections of Section 363(m) of the Bankruptcy Code;

(3) find that Buyer and Seller have not engaged in conduct that would result in the avoidance of the transactions contemplated under this Agreement pursuant to Section 363(n) of the Bankruptcy Code;

(4) find that Buyer is not a "successor" to the Seller or its estate by reason of any theory of law or equity, including, but not limited to, under any doctrine or theory of successor liability, or similar theory or basis of liability except for the assumption of the Assumed Liabilities as expressly provided in this Agreement, and find that, except for, and solely to the specific and limited extent of, the assumption by Buyer of the Assumed Liabilities, neither the purchase of the Purchased Property by Buyer or any of its affiliates nor the fact that the Buyer or any of its affiliates is using any of the Purchased Property previously operated by the Seller will cause Buyer or any of its affiliates to be deemed a successor in any respect to the Seller's business or any liability derived therefrom; and

(5) find that Buyer shall have no liability for any obligation of Seller that is not an Assumed Liability and provide that the transfer of the Purchased Property shall vest Buyer with all right, title, and interest of the Seller in the Purchased Property pursuant to section 363(f) of the Bankruptcy Code, free and clear of any and all Liens, whether arising before or after the commencement of the Bankruptcy Case, whether known or unknown, including, but not limited

to, Liens held or asserted by any of the creditors, vendors, employees, suppliers, or lessors of the Seller or any other party in interest, other than Permitted Liens. Any and all such Liens shall attach to the proceeds of the Purchase Price, with the same priority, validity, force, and effect as they held against the Seller or the Purchased Property as of the Petition Date, and hold that Buyer shall not be liable for any liability or any Liens, other than Assumed Liabilities.

7. **Deposit**.

a. Contemporaneously with execution of this Agreement, Buyer shall fund or have funded the Good-Faith Deposit, to be held by or on Seller's behalf, in accordance with the Bid Procedures Order.

b. The Good-Faith Deposit shall be held in a non-interest bearing account and either applied pursuant to this Agreement, or returned, in accordance with the Bid Procedures Order.

8. **Closing**.

a. Subject to the terms and conditions of this Agreement, the consummation of the sale transaction contemplated by this Agreement shall take place at the offices of Holland & Knight LLP, or remotely by exchange of documents and signatures (or their electronic counterparts), on the second Business Day after all of the conditions to Closing set forth in Section 9 are either satisfied or waived (other than conditions which, by their nature, are to be satisfied on the Closing Date), or at such other time, date or place as Seller and Buyer may mutually agree upon in writing, with the payment of the balance of the Purchase Price (collectively, "Closing") shall be performed in escrow through the Title Company.

b. The date on which the Closing is to occur is herein referred to as the "Closing Date".

9. **Closing Conditions: Bankruptcy Requirements**.

a. Contingencies to Purchase: Bankruptcy Requirements. The Parties agree and acknowledge that this Agreement is subject to approval by the Bankruptcy Court and, in accordance with the Bid Procedures Order, the consideration by Seller of higher or better competing bids in respect of all or any part of the Purchased Property at the Auction (each, a "Competing Bid"), as determined in Seller's sole and exclusive discretion. In addition, Seller shall have the responsibility and obligation to respond to any inquiries or offers for a Competing Bid and perform any and all other acts related thereto which are required under the Bankruptcy Code, the Bid Procedures Order or other applicable law, including supplying information relating to the Property and the Purchased Property, to prospective bidders. In addition, the ability of the Seller to sell and the Buyer to purchase the Purchased Property is conditioned, in all respects, upon issuance by the Bankruptcy Court of the Sale Order.

b. Conditions to Obligations of All Parties. The obligations of each party to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment, at or prior to Closing, of the following conditions:

(1) No Governmental Authority shall have enacted, issued, promulgated, enforced or entered any Governmental Order which is in effect and has the effect of

making the transactions contemplated by this Agreement illegal, otherwise restraining or prohibiting consummation of such transactions or causing any of the transactions contemplated hereunder to be rescinded following completion thereof.

(2) The Sale Order shall have been entered by the Bankruptcy Court, shall be in full force and effect, and shall not have been stayed, reversed or vacated as of the Closing Date.

c. Conditions to Obligations of Buyer. The obligations of Buyer to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment or Buyer's waiver, at or prior to Closing, of each of the following conditions:

(1) The representations and warranties of Seller contained in Section 14 shall be true and correct in all respects as of the Closing Date with the same effect as though made at and as of such date (except those representations and warranties that address matters only as of a specified date, which shall be true and correct in all respects as of that specified date);

(2) Seller shall have duly performed and complied in all material respects with all agreements, covenants and conditions required by this Agreement to be performed or complied with by it prior to or on the Closing Date;

(3) Seller shall have made the deliveries to Buyer required under Section 11 of this Agreement; and

(4) Seller shall have recorded with the Worcester District Registry of Deeds an Approval Not Required Plan under MGL Ch. 41, Section 81P, duly endorsed by the Paxton Planning Board, showing that the Land does not require subdivision approval.

d. Conditions to Obligations of Seller. The obligations of Seller to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment or Seller's waiver, at or prior to Closing, of each of the following conditions:

(1) The representations and warranties of Buyer contained in Section 15 shall be true and correct in all respects as of the Closing Date with the same effect as though made at and as of such date (except those representations and warranties that address matters only as of a specified date, which shall be true and correct in all respects as of that specified date).

(2) Buyer shall have duly performed and complied in all material respects with all agreements, covenants and conditions required by this Agreement to be performed or complied with by it prior to or on the Closing Date.

(3) Buyer shall have made the deliveries to Seller or the Title Company required under Section 11 of this Agreement.

(4) Seller shall have received the Purchase Price as payable in the manner provided for in this Agreement.

10. **Title.** At Closing, Seller shall convey and transfer to Buyer fee simple record title to the Real Property constituting Purchased Property. Notwithstanding anything contained herein to the contrary, the Real Property shall be conveyed subject to the following matters, which shall be deemed to be "Permitted Liens": (i) the lien of all ad valorem real estate taxes and assessments including all that are currently outstanding and those that are not yet due and payable as of the Closing Date, (ii) local, state and federal laws, ordinances or governmental regulations, including but not limited to, building and zoning laws, ordinances and regulations, now or hereafter in effect relating to the Property, and (iii) all the easements, encumbrances and restrictions of record with respect to the Real Property recorded with the Worcester District Registry of Deeds.

11. **Closing Deliveries**.

a. Seller's Deliveries. Seller shall deliver or cause to be delivered to Title Company the following documents ("Seller's Documents") at or before the Closing:

(1) The duly executed and acknowledged Release Deed.

(2) A certification duly executed by Seller under penalty of perjury stating that Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986, as amended, in the form annexed hereto as **Exhibit C**.

(3) The title affidavit in the form annexed hereto as **Exhibit D**.

(4) Such evidence as the Title Company may reasonably require as to the good standing of Seller and the authority of Seller or any individuals or constituent members in Seller to execute any instruments executed and delivered by Seller at Closing.

(5) Any additional documents that Title Company may reasonably require for the proper consummation of the transaction contemplated by this Agreement (provided, however, that no such additional document shall expand any obligation, covenant, warranty or representation of Seller beyond those expressly set forth herein).

b. Mutual Deliveries. Buyer and Seller shall deliver or cause to be delivered to Title Company the following at or before the Closing:

(1) A closing statement reflecting the adjustments made at the Closing.

c. Buyer's Deliveries. Buyer shall, at the Closing:

(1) Pay to Seller (through Title Company) the full amount of the Purchase Price in excess of the Good-Faith Deposit (subject to adjustment for closing costs and prorations, as hereinafter set forth) by wire transfer of immediately available funds.

(2) Deliver evidence as the Title Company may reasonably require as to the authority of any individuals or constituent members in Buyer to execute any instruments executed and delivered by Buyer at Closing.

(3) Deliver any additional documents that Title Company may reasonably require for the proper consummation of the transaction contemplated by this Agreement (provided, however, that no such additional document shall expand any obligation, covenant, warranty or representation of Buyer beyond those expressly set forth herein).

12. **Escrow and Closing Procedures**.

a. Title Company Performance. Title Company is authorized and instructed to conduct the escrow in accordance with this Agreement, applicable law, and customary escrow practice in the Commonwealth of Massachusetts, including any reporting requirements of the Internal Revenue Service. Title Company shall close the Transaction by recording the Deed and such other documents required to be recorded and by disbursing the funds and documents in accordance with this Agreement.

b. Compliance with Notices, Demands or Changes. Title Company shall not comply with any notice, demand or change of the escrow instructions unless such notice, demand or change is signed by authorized representatives of both parties or of one party if the terms of this Agreement state that such notice may be provided solely by such one party.

c. Deliveries Into Escrow. No later than 1:00 p.m. Eastern Time on the Business Day prior to the Closing Date, Seller and Buyer shall each deliver to Title Company, all documents and other items necessary on the part of each party to comply with this Agreement and as necessary for the Title Company to close the escrow in accordance with terms of this Agreement. These documents include, without limitation, the documents and items set forth in Section 11 of this Agreement.

d. Close of Escrow. As used in this Agreement, "Close of Escrow" means the recordation of the Release Deed by filing it for registration with the Worcester District Registry of Deeds. Title Company shall complete the Closing on the Closing Date if it has received all the cash funds and documents required to be delivered into escrow by Buyer and Seller and if all conditions to Closing specified in this Agreement have been satisfied. Right to possession of the Purchased Property shall transfer to Buyer at the Close of Escrow, subject to Buyer's rights of early entry and investigation set forth herein, and further subject to the Permitted Liens.

e. Recordation and Distribution. To close the escrow, the Title Company shall do the following: (i) cause the Deed to be filed for registration with the Worcester District Registry of Deeds and pay any Transfer Taxes; (ii) deliver Seller's Non-Foreign Affidavit to Buyer; (iii) deliver to Buyer and Seller, as applicable, copies of all closing deliveries set forth in Section 11 and provide to Buyer and Seller recording or filing information for all Seller's Documents which are recorded or filed; and (iv) concurrently deliver to Seller cash funds in the amount of the Purchase Price due and owing.

f. Closing Costs. Seller shall pay: (a) deed excise tax; (b) recording/filing fees customarily paid by sellers in the Commonwealth of Massachusetts; (c) one-half of any escrow fee charged by the Title Company; (d) the fees of any counsel representing it in connection with this transaction; and (e) any Transfer Taxes. Buyer shall pay: (i) the fees of any counsel representing it in connection with this transaction; (ii) recording fees customarily paid by buyers

in the Commonwealth of Massachusetts; (iii) the fee for any title insurance premium for the Owner's title insurance policy issued to Buyer by the Title Company; (iv) the costs for any Survey obtained by the Buyer; and (v) one-half any escrow fee charged by the Title Company.

g. Prorations and Adjustments. The Purchase Price shall be subject to the following prorations and adjustments.

(1) Taxes. Seller shall be responsible for all Real Property taxes and general and special assessments ("Taxes") attributable to taxable periods, or portions thereof, ending on or before the Closing Date (or, for any tax period beginning before and ending after the Closing Date, to the extent allocable to the portion of such period before the Closing Date), which Taxes shall be an Excluded Liability. Buyer shall be responsible for all Taxes attributable to taxable periods, or portions thereof, beginning on and after the Closing Date (or, for any tax period beginning before and ending after the Closing Date, to the extent allocable to the portion of such period on and after the Closing Date), which Taxes shall be an Assumed Liability, consistent with Section 4.a above.

(2) Utilities. Utilities used at the Property shall be prorated through the Closing Date for the month in which the Closing occurs.

13. **Bankruptcy Provisions: Covenants.**

a. This Agreement is subject to approval by the Bankruptcy Court and, in accordance with the Bid Procedures Order, the consideration by Seller of higher or better competing bids in respect of all or any part of the Purchased Property at the Auction (each, a "Competing Bid"), as determined in Seller's sole and exclusive discretion. In addition, Seller shall have the responsibility and obligation to respond to any inquiries or offers for a Competing Bid and perform any and all other acts related thereto which are required under the Bankruptcy Code, the Bid Procedures Order or other applicable law, including supplying information relating to the Property, to prospective buyers.

b. From the Execution Date until the earlier of (i) the valid termination of this Agreement in accordance with Section 17 and (ii) the Closing Date, Seller shall use reasonable best efforts to pursue the entry of the Sale Order, by the Bankruptcy Court. Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of demonstrating that Buyer is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code.

c. Seller and Buyer shall appear in the Bankruptcy Court if reasonably requested by the other Party or required by the Bankruptcy Court in connection with the transaction contemplated herein and keep the other reasonably apprised of the status of material matters related to this Agreement, including, upon reasonable request promptly furnishing the other with copies of notices or other communications received by Seller from the Bankruptcy Court or any third party and/or any government authority with respect to the transaction contemplated herein.

d. Seller and Buyer agree that, in the event that Buyer is not the winning bidder, if and only if (a) Buyer submits the second highest or second best bid for the Purchased Property and is

named the Back-Up Bidder at the Auction, in each case, as determined by Seller, and (b) Seller gives notice to Buyer on or before the Outside Date, stating that the Seller (i) failed to consummate the sale with the winning bidder, and (ii) has terminated the purchase agreement with the winning bidder, Buyer shall promptly consummate the transaction contemplated herein upon the terms and conditions as set forth herein (provided that, for the avoidance of doubt, at or prior to the date that Seller gives notice to Buyer in accordance with this Section 13, Seller shall update and revise as necessary, the Schedules to this Agreement such that they are true and correct as of the Execution Date and so long as any such update or revision is not material, such updated disclosure shall be deemed to cure any breach, including the Purchase Price, as the same may be increased by Buyer at the Auction).

e. This Agreement is subject to the terms and conditions of the Bid Procedures Order and Bid Procedures, the terms of which are incorporated herein by reference.

14. **Seller's Representations and Warranties.**

Except as disclosed in a Schedule to this Agreement, which Schedule shall correspond numerically to the Section of these representations and warranties as to which it is setting forth exceptions, Seller hereby represents and warrants (with respect to itself) to Buyer as of the date of this Agreement (except as to such representations and warranties that address matters as of a particular date, which are given only as of such date), as follows:

a. Governmental and Other Consents and Approvals**.** The execution, delivery and performance of this Agreement by Seller does not and will not require any consent, approval, authorization or other order of, action by, filing with or notification to, any governmental authority, other than the Sale Order.

b. Brokers. Seller has not incurred any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement for which Buyer will have any responsibility whatsoever. Any commission due to the Broker shall be paid by Seller in accordance with the Sale Order.

c. Litigation. There are no actions by or against Seller relating to the Purchased Property that are pending or, to Seller's Knowledge, threatened against Seller relating to the Purchased Property, except as described in **Schedule 14(c)**.

d. Permits. Seller has all Permits required to permit Seller to use the Property as currently conducted by Seller.

e. Real Property. Exhibit A contains true and accurate legal descriptions of the Property. There are no pending or, to Seller's Knowledge, threatened condemnation proceedings against or relating to the Real Property. Seller has not received any written notice of any pending or threatened condemnations, planned public improvements, annexation, special assessments, zoning or subdivision changes affecting the Real Property, or no Environmental Liabilities associated with operation of the Real Property.

f. Title to Assets. Seller has good and valid title to the Purchased Property, free and clear of all Liens other than those disclosed in the Bankruptcy Case. As of the Closing Date, there

will be no outstanding agreements or options to sell that grant to any Person, other than Buyer, the right to the use, benefit and/or enjoyment of, or to purchase or otherwise acquire any of the Purchased Property.

g. The representations and warranties of the Seller hereto contained in this Agreement shall automatically expire and terminate at Closing.

15. **Buyer's Representations, Warranties and Covenants.** Buyer hereby makes the following representations, warranties and covenants to Seller as of the Effective Date:

a. Due Authorization. Buyer has full legal capacity, right and authority to execute and deliver this Agreement and to perform Buyer's obligations hereunder.

b. Enforceability. This Agreement and all documents required hereby to be executed by Buyer, when so executed, shall be legal, valid, and binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, and other similar laws affecting the rights of creditors generally and, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

c. No Conflict. The execution and delivery of, and consummation of the transactions contemplated by this Agreement is not prohibited by, and will not conflict with, constitute grounds for termination of, or result in the breach of any agreement or instrument to which Buyer is now a party or otherwise subject.

d. As-Is Purchase. Buyer agrees and acknowledges that Buyer is a sophisticated, knowledgeable investor in real property and acquires the Purchased Property solely upon its own judgment as to any matter germane to the Purchased Property or to Buyer's contemplated use of the Purchased Property, and not upon any statement, representation or warranty by Seller, or any agent or representative of Seller. Seller has no obligation to repair or correct any facts, circumstances, conditions or defects regarding the Purchased Property or to compensate Buyer therefor. As a material inducement to Seller to execute this Agreement, Buyer acknowledges, represents and warrants that (i) Buyer will have fully examined and inspected the Purchased Property and such other documents and materials with respect to the Purchased Property which Buyer deems necessary or appropriate in connection with its investigation and examination of the Purchased Property, (ii) Buyer will have accepted the foregoing and the physical condition, value, presence/absence of Hazardous Substances, financing status, use, leasing, operation, tax status, income and expenses of the Purchased Property (the "Property Condition"), (iii) subject to the express representations and warranties of Seller set forth in this Agreement and the Seller Documents, the Purchased Property will be purchased by Buyer "AS IS" and "WHERE IS" and with all faults and, upon Closing, Buyer shall assume responsibility for the Property Condition of the Purchased Property, and (iv) Buyer will have decided to purchase the Purchased Property solely on the basis of its own independent investigation. Seller has not made, does not make, and has not authorized anyone else to make any representation as to the present or future Property Condition, value, presence/absence of Hazardous Substances, financing status, leasing, operation, use, tax status, income and expenses, development potential, status of any permits and approvals, or any other matter or thing pertaining to the Property, and Buyer acknowledges that no such

representation or warranty has been made and that in entering into this Agreement it does not rely on any representation or warranty. SELLER MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED OR ARISING BY OPERATION OF LAW, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY. Seller shall not be liable for or bound by any verbal or written statements, representations, real estate broker's "setups" or information pertaining to the Property furnished by any real estate broker, agent, employee, servant or any other person. The provisions of this **Section 15(d)** shall survive the Closing.

e. Release. Upon Closing, Buyer shall assume the risk that a Property Condition may not have been revealed by Buyer's investigations. The release and waiver of claims set forth below shall be referred to as the "Release." Upon the Closing, Buyer, on its own behalf and on behalf of each of its successors and assigns and each and all of its and their respective members, partners, officers, directors, employees, parents, affiliates and subsidiaries, and each of their respective successors and assigns (collectively, "Waiver Parties") releases Seller and its respective members, partners, affiliates, parent business organizations, subsidiary business organizations, shareholders, officers, directors, beneficiaries, agents, employees, attorneys and representatives and their respective successors and assigns (collectively, "Released Parties") from, and waives any and all liability, claims, demands, damages and costs (including attorneys' fees and expenses) of any and every kind or character, known or unknown, for, arising out of, or attributable to, any and all Property Condition, including, without limitation, any and all actual, threatened or potential claims, claims for contribution under any law relating to Hazardous Substances, suits, proceedings, actions, causes of action, demands, liabilities, losses, obligations, orders, requirements or restrictions, liens, penalties, fines, charges, debts, damages, costs, and expenses of every kind and nature, whether now known or unknown, whether foreseeable or unforeseeable, whether under any foreign, federal, state or local law (both statutory and non-statutory), and, whether asserted or demanded by a third party against any of the Waiver Parties or incurred directly or indirectly by any of the Waiver Parties themselves, that any of the Waiver Parties may now or hereafter have against any of the Released Parties, and that arise in connection with or in any way are related to (i) the physical condition of the Purchased Property, the financial condition of the Property, the value of the Purchased Property or its suitability for Buyer's use, the development, ownership, management or operation of the Property, including the accuracy or completeness of any information reviewed by Buyer in connection with its investigations of the Purchased Property and which may have been relied upon by Buyer in deciding to purchase the Purchased Property, (ii) any handling of any Hazardous Substances at, beneath, to, from, or about the Purchased Property, (iii) any compliance or non-compliance with environmental laws regarding any Hazardous Substances or any handling related thereto at, beneath, to, from, or about the Purchased Property, (iv) any acts, omissions, services or other conduct related to any of the foregoing items "(i)" through "(iii)," inclusive, and/or (v) any condition, activity, or other matter respecting the Purchased Property that is not addressed by any of the foregoing items "(i)" through "(iv)," inclusive, and that is related to pollution or protection of the environment, natural resources, or public health. Subject to the express representations and warranties of Seller set forth in this Agreement and the Seller Documents, Buyer acknowledges that any condition of the Property which Buyer discovers or desires to correct or improve prior to or after the Closing Date shall be at Buyer's sole expense. This Release shall survive the close of escrow and the recording of the Deed conveying the Purchased Property from Seller to Buyer.

**The provisions of Section 15 shall survive the close of escrow and the recording of the Deed conveying the Purchased Property from Seller to Buyer.**

16. **Actions After the Execution Date**. The Parties covenant to do the following:

a. Maintenance and Operation of Property. From the Execution Date until the Closing or earlier termination of this Agreement, Seller shall use reasonable efforts to maintain all property insurance and all commercial general liability insurance policies currently in force with respect to the Purchased Property and shall keep the Purchased Property secure and in its current condition, normal wear and tear excepted.

b. Prohibited Actions. From the Execution Date until the Closing or earlier termination of this Agreement, Seller shall not take any of the following actions without the express prior written consent of Buyer, which may be withheld in Buyer's sole and absolute discretion:

(i) make or permit to be made any material alterations to or upon the Purchased Property; or

(ii) alienate, encumber or otherwise transfer the Purchased Property or any portion thereof except subject to this Agreement, other than in accordance with the Bid Procedures Order or order of the Bankruptcy Court approving post-petition financing, and grant, impose or suffer to be imposed any liens upon any of the Property (whether tangible or intangible) other than Permitted Liens or liens that will be satisfied and discharged at Closing;

c. Entry; Buyer's Inspection; Termination. After the Execution Date, unless and until this Agreement is terminated, Buyer and Buyer's Agents may enter the Purchased Property from time to time (and without unreasonably interfering with the Seller's use, occupancy and operation of the Purchased Property) for purposes of (i) performing non-invasive physical tests (except that Buyer may perform minor testing to determine the presence of asbestos-containing materials, termites and other wood destroying insects, provided that all damage resulting therefrom is promptly repaired by Buyer at its sole expense and to Seller's reasonable satisfaction) and (ii) conducting any and all engineering, environmental and other inspections at the Purchased Property. In the event Seller permits soil and/or ground water sampling, no such sampling shall be performed unless and until the location, scope and methodology of such sampling and the environmental consultant selected by Buyer to perform such sampling have all been approved by Seller which approval will not be unreasonably withheld, conditioned or delayed. Prior to conducting any such sampling, Buyer shall have a utility mark-out performed for the Purchased Property which Seller must be given for prior approval. Buyer shall perform any testing or inspection of the Purchased Property only after Buyer has provided to Seller certificates of insurance or other evidence reasonably satisfactory to Seller that Buyer and/or Buyer's Agents carries the following insurance: (a) commercial general liability insurance on an occurrence, not claims-made, basis (including coverage for bodily injury, property damage, personal injury, advertising injury, products/completed operations, and contractual liability) with minimum limits of $1,000,000.00 per occurrence and $2,000,000.00 in the annual aggregate, covering all operations by or on behalf of Buyer and/or Buyer's Agents, as the case may be, pursuant to this Agreement, (b) automobile liability insurance covering owned, hired and non-owned vehicles,

used in connection with operations at the Property, with limits of at least $1,000,000.00 combined single limit for bodily injury and property damage, if applicable; and (c) workers' compensation as required by law. Seller shall be included as an additional insured on the commercial general liability policy. Seller shall have the right, at its option, to cause Seller's representative to be present at all inspections, reviews and examinations conducted on the Purchased Property by or on behalf of Buyer. Notwithstanding anything to the contrary contained in this Agreement, any investigation or examination of the Purchased Property or other materials with respect to the Purchased Property performed by Buyer or Buyer's Agents prior to the Closing shall be performed at the sole risk and expense of Buyer, and Buyer shall be solely responsible for the acts or omissions of any of Buyer's Agents brought on, or to, the Purchased Property by Buyer. Following each entry by Buyer with respect to inspections and/or tests on the Purchased Property, Buyer shall restore the Purchased Property to substantially the same condition as existed prior to any such inspection and/or tests. Buyer shall defend, indemnify and hold Seller, its subsidiaries and affiliates, and their respective officers, directors, shareholders, employees and agents harmless from and against all demands, suits, charges, and causes of action, and all resulting liabilities, losses, judgments, penalties, fines, settlements, costs and expense (including, but not limited to, reasonable attorneys' fees and court costs arising from the enforcement of this indemnity), arising out of, resulting from or in connection with claims for bodily injury (including death) or property damage arising from or as a result of any act or omission of Buyer or Buyer's Agents or their respective employees or agents in connection with any inspection or examination of the Purchased Property. **The provisions of this Section 16(c) shall survive the Closing or the earlier termination of this Agreement.**

d. Damage to Property. If the Purchased Property or any part thereof (i) is damaged by casualty or (ii) is taken by exercise of the power of eminent domain prior to the Closing Date, and in the case of either such casualty or taking the damage to the Purchased Property exceeds Fifty Thousand ($50,000.00) Dollars, as reasonably determined by Seller, Buyer may terminate this Agreement by notice given to Seller within ten (10) days of the date Seller gives notice to Buyer of such casualty or taking. If Buyer does so terminate this Agreement, Seller shall promptly return the Good-Faith Deposit to Buyer. If Buyer does not so terminate this Agreement or such damage does not exceed Fifty Thousand ($50,000.00) Dollars, the parties shall proceed to Closing without any reduction in the Purchase Price except as specifically provided below. At the Closing, Seller shall assign to Buyer all insurance proceeds arising from the casualty (to the extent not applied to any restoration relating thereto), together with a credit against the Purchase Price equal to the deductible amount under the applicable insurance policy, or pay over or assign to Buyer all awards recovered or recoverable on account of such taking.

17. **Termination**. This Agreement and the transactions contemplated herein may be terminated at any time prior to Closing:

a. by the mutual written agreement of Seller and Buyer;

b. by Seller, if Buyer has materially breached this Agreement and such breach causes any of the conditions to Closing not to be satisfied (or, if prior to Closing, is of such a magnitude or effect that it will not be possible for such condition to be satisfied);

c. by Buyer, if Seller has materially breached this Agreement and such breach causes any of the conditions to Closing not to be satisfied (or, if prior to Closing, is of such a magnitude or effect that it will not be possible for such condition to be satisfied), or in the event of casualty, pursuant to Section 16(d) above;

d. by either Seller or Buyer, if (i) the Bankruptcy Court shall enter an order approving a transaction involving the direct or indirect sale, transfer, or other disposition of the Purchased Property to a purchaser other than the Buyer ("Competing Transaction") pursuant to the Bid Procedures Order and (ii) (A) Buyer is not designated as the Back-Up Bidder or (B) Buyer is designated as the Back-Up Bidder and such Competing Transaction is consummated;

e. by Buyer, if at any time after entry of the Sale Order, the Sale Order is reversed, stayed for more than thirty (30) days, vacated or modified to the extent that such Sale Order is not acceptable in form to Buyer, or if the Sale Order has not entered by the date that is forty-five (45) days following execution of this Agreement;

f. by Seller or Buyer, if the Bankruptcy Court enters a final, non-appealable order dismissing, or converting the Bankruptcy Case into a case under chapter 7 of the Bankruptcy Code, or appointing a trustee in the Bankruptcy Case or appointing a responsible officer or an examiner under Bankruptcy Code section 1106(b);

g. by Buyer or Seller if the Closing shall not have occurred on or before December 30, 2026 (the "Outside Date"), provided, however that no termination may be made by a Party under this Section 17(g) if the failure to close on or before the Outside Date was caused by the material breach of any representations, warranties, covenants or agreements contained in this Agreement by such Party;

18. **Impact of Termination; Liquidated Damages**:

a. In the event of termination pursuant to Section 17 hereof, written notice thereof will be given to the other Party specifying the provision pursuant to which such termination is made. If this Agreement is terminated, Seller shall thereafter be free to market, negotiate with, and sell the Purchased Property to any third party. If this Agreement is terminated by Seller pursuant to Section 17(b), the Good-Faith Deposit shall be promptly delivered to Seller.

b. If this Agreement is terminated other than in a manner provided by Section 17(b), the Good-Faith Deposit will be promptly delivered to Buyer. The Parties acknowledge that the agreements contained in this Section 18 are an integral part of the sale transaction that is described herein, that the damages resulting from termination of this Agreement under circumstances where Seller is entitled to the Good-Faith Deposit are uncertain and incapable of accurate calculation and that the delivery of the Good-Faith Deposit pursuant to Section 18 is not a penalty but rather constitutes liquidated damages in a reasonable amount that will compensate Seller in the circumstances where Seller is entitled to the Good-Faith Deposit for the efforts and resources expended and opportunities forgone while negotiating this Agreement and in reliance on this Agreement and on the expectation of the consummation of the transactions contemplated hereby, and that, without these agreements, Seller and Buyer would not enter into this Agreement. Notwithstanding anything to the contrary in this Agreement, without limiting Seller's rights under

Section 17, in the event Buyer breaches this Agreement (including failure to consummate the Closing and the transactions contemplated thereby), (i) Seller's sole remedy will be to terminate this Agreement in accordance with any applicable provision of Section 17 and, if applicable, to retain the Good-Faith Deposit and (ii) in no event shall Buyer be liable for monetary damages in connection with this Agreement and the sale transactions except for the Good-Faith Deposit as set forth in this Section. If any Party fails to take any action necessary to cause the delivery of the Good-Faith Deposit to any other Party under circumstances where such other Party is entitled to the Good-Faith Deposit, in order to obtain such Good-Faith Deposit, such other Party commences a suit which results in a judgment in favor of such other Party, such failing Party will pay to such other Party an amount in cash equal to the costs and expenses (including attorney's fees) incurred by such other Party in connection with such suit.

19. **Successors and Assigns**. The terms, covenants and conditions herein contained shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto. Except as herein otherwise provided, Buyer may not assign its rights under this Agreement without first obtaining Seller's written approval, which approval may be given or withheld in Seller's sole and absolute discretion. No assignment shall release or otherwise relieve Buyer from any obligations hereunder.

20. **Entire Agreement**. This Agreement contains all of the covenants, conditions and agreements between the parties and shall supersede all prior correspondence, agreements and understandings, both verbal and written. The parties intend that this Agreement constitute the complete and exclusive statement of its terms and that no extrinsic evidence may be introduced in any proceeding involving this Agreement.

21. **Attorneys' Fees**. Each party shall bear its own attorneys' fees in connection with the preparation of this Agreement and the consummation of the transactions contemplated hereunder.

22. **Notices**. Any notice, demand, request, consent, approval, disapproval or certificate ("Notice") required or desired to be given under this Agreement shall be in writing and given by (a) personal delivery, (b) Federal Express or a similar nationwide over-night delivery service providing a receipt for delivery.(c) certified mail, return receipt requested, or (d) electronic mail (provided a copy of such notice given by electronic mail is sent for next-day delivery via Federal Express or a similar nationwide over-night delivery service providing a receipt for delivery). Notices may not be given by facsimile. The date of giving or receipt of any Notice shall be deemed to be the date upon which delivery is actually made by one of the methods described in this Section 22 (or attempted if said delivery is refused or rejected). If a Notice is received on a Saturday, Sunday or legal holiday, it shall be deemed received on the next Business Day. Notices given on behalf of a party by its attorneys in the manner provided for in this Section 22 shall be considered validly given. All notices, demands, requests, consents, approvals, disapprovals, or certificates shall be addressed as follows:

If to Buyer:

David E. Roy
Elaina M. Roy
71 Streeter Road
Paxton, MA 01612

| | |
|---|---|
| With a copy to | Anthony A. Froio, Esq.<br>Robins Kaplan LLP<br>800 Boylston Street, 25th Floor<br>Boston, MA 02199<br>Email: afroio@robinskaplan.com |
| If to Seller: | President Sean J. Ryan<br>Anna Maria College<br>c/o Keith Lowey<br>Verdolino & Lowey P.C. |
| with a copy to: | John Monaghan, Esquire<br>Holland & Knight LLP<br>10 Saint James Avenue, 11th Floor<br>Boston, MA 02116<br>Email: john.monaghan@hklaw.com |

Either party may change its address by giving reasonable advance written notice of its new address in accordance with the methods described in this Section 22.

23. **Exhibits and Defined Terms**. All exhibits attached hereto are incorporated herein by reference thereto. All of the terms and definitions set forth in the Defined Terms section are incorporated in this Agreement by reference thereto.

24. **Further Assurances**. Whenever and so often as requested by a party hereto, the other party will promptly execute and deliver or cause to be executed and delivered all such other and further instruments, documents or assurances, and promptly do or cause to be done all such other and further things as may be necessary and reasonably required in order to further and more fully vest in such party all rights, interest, powers, benefits, privileges and advantages conferred or intended to be conferred upon it by this Agreement.

25. **Time**. Time is of the essence of every provision herein contained. When the last day for the performance of any act permitted or required hereunder falls on any day which is not a Business Day, such act may be performed on the next Business Day. When an act must be performed or a notice given by the end of a specified day, such act must be performed or such notice given by 8:00 p.m. EST.

26. **Applicable Law**. This Agreement shall be governed by the laws of the Commonwealth of Massachusetts.

27. **No Oral Modification or Waiver**. This Agreement may not be changed or amended orally, but only by an agreement in writing. No waiver shall be effective hereunder unless given in writing, and waiver shall not be inferred from any conduct of either party.

28. **Counterparts; Electronic Copy**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute

one and the same instrument. This Agreement is legally effective, valid, and enforceable despite the fact that it or signatures on it may be in electronic form or that it may have been created, transmitted, stored, or otherwise handled or formed, in whole or in part, by electronic means.

29. **Captions**. The captions of this Agreement are for convenience and reference only and in no way define, describe, extend or limit the scope, meaning or intent of this Agreement.

30. **Severability**. The invalidation or unenforceability in any particular circumstance of any of the provisions of this Agreement shall in no way affect any of the other provisions hereof which shall remain in full force and effect.

31. **No Joint Venture**. This Agreement shall not be construed as in any way establishing a partnership, joint venture, express or implied agency, or employer-employee relationship between Buyer and Seller.

32. **No Third Party Beneficiaries**. This Agreement is for the sole benefit of the parties hereto, their respective successors and permitted assigns, and no other person or entity shall be entitled to rely upon or receive any benefit from this Agreement or any term hereof.

33. **OFAC Compliance**. Each party shall take any actions that may be required to comply with the terms of the USA Patriot Act of 2001, as amended, any regulations promulgated under the foregoing law, Executive Order No. 13224 on Terrorist Financing, any sanctions program administered by the U.S. Department of Treasury's Office of Foreign Asset Control or Financial Crimes Enforcement Network, or any other laws, regulations or executive orders designed to combat terrorism or money laundering, if applicable, to this Agreement and the transactions contemplated herein (collectively, the "OFAC Laws"). Each party represents and warrants to the other party that it is not an entity named on the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Department of Treasury, as last updated prior to the date of this Agreement. The parties shall make the representations and warranties contained herein as of the Closing Date. Each party shall notify the other party prior to the Closing Date, if such party becomes aware that representations and warranties made by such party under this Section 33 (the "OFAC Representations") are no longer accurate. Upon receipt of such notice, the other party (the "Terminating Party") shall have the right to terminate this Agreement. Without limiting the provisions of Section 18 hereof, the Terminating Party shall be entitled to receive the Deposit and any interest accrued thereon, so long as doing so does not violate the OFAC Laws.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

**BUYER**

By:______________________________
Name: David E. Roy

By:______________________________
Name: Elaina M. Roy

**SELLER**

By:______________________________
Name:

EXHIBIT A

[SEE ATTACHED]


PROGRESS PRINT
THE COMMUNITY OF THE SISTERS OF SAINT ANNE
STREETER ROAD
GROVE STREET
LOT 1
LOT 2
PROGRESS PRINT

EXHIBIT B

FORM OF DEED

RELEASE DEED

The Sisters of Saint Ann, a Massachusetts not for profit corporation ( "Grantor") for consideration paid of One Hundred Seventy-Five Thousand NO/100 DOLLARS ($175,000), releases, without covenants, to David E. Roy and Elaina M. Roy, individuals whose address is 71 Streeter Road, Paxton, MA 01612 ("Grantee"), the parcels of land with the improvements located thereon, located in the Town of Paxton, Worcester County, Massachusetts, bounded and more particularly described on Exhibit A attached and made a part hereof, together with all buildings and other improvements thereon and all appurtenances thereto (collectively, the "Property");

This conveyance is made subject to, and with the benefit of, all easements, covenants, conditions, agreements, reservations, restrictions, and other matters of record, insofar as the same are in force and applicable.

*[Signature(s) and Acknowledgement(s) appear on the following page]*

IN WITNESS WHEREOF, Grantor has executed this Release Deed as a sealed instrument as of the __ day of _________, 202[_].

GRANTOR:

By: ______________________
Name: ____________________
Title: _____________________

COMMONWEALTH OF MASSACHUSETTS

County of _________________, ss.

On this _____ day of ________, 202[_], before me, the undersigned Notary Public, personally appeared _________________________, the _________________ of ___________ proved to me by satisfactory evidence of identification, which was (check whichever applies): □ driver's license or other state or federal governmental document bearing a photographic image, □ oath or affirmation of a credible witness known to me who knows the above signatory, or □ my own personal knowledge of the identity of the signatory, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose, as the voluntary act of The Sisters of Saint Ann.

___________________________________
Notary Public
Printed Name: ______________________
My commission expires: ______________

[AFFIX SEAL]

EXHIBIT A TO RELEASE DEED

Description of the Property

EXHIBIT C

*FIRPTA*

[TO BE PROVIDED]

# EXHIBIT D

## TITLE INSURANCE AFFIDAVIT

TO BE PROVIDED

**SELLER DISCLOSURE SCHEDULES**

**Schedule 14(c)**

None, other than the claims raised in pending adversary proceeding, captioned *Roy v. The Sisters of Saint Ann d/b/a Anna Maria College (In re The Sisters of Saint Ann d/b/a Anna Maria College)*, Adv. Proc. No. 26-04027-EDK (Bankr. D. Mass.).